Ramsey Judah (CA 342300)
JUDAH LAW GROUP, LC
1026 W Foothill Blvd
Upland, CA 91786
626 899 7667 | ramsey@JudahLawGroup.com

Attorney for Defendants Cynthia Carter and Christopher Lopez

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHING LUNG LAU, HOI KAN LAU, SIU FAN TSANG, <br><br> Plaintiffs, <br> v. <br><br> KEVIN HERMANSEN, BEHNAM GHARAGOZLI, CHRISTOPHER LOPEZ, CYNTHIA CARTER, LAW OFFICES OF BEN GHARAGOZLI, LAW OFFICE OF KEVIN P. HERMANSEN, P.C., <br><br> Defendants. | Case No: 2:26-CV-00305-MWF-AGRx <br><br> Judge:  Hon. Michael W. Fitzgerald <br><br> **NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **(Filed concurrently with Motion to Strike (Anti-SLAPP) and [Proposed] Order)** <br><br> Date:         June 24, 2026 <br> Time:         10:00 a.m. <br> Location:   Courtroom 5A (5th floor) <br> Original Action Filed: January 12, 2026 |

*NOTICE OF MOTION AND MOTION TO DISMISS*

**PLEASE TAKE NOTICE** that on June 24, 2026 at 10:00 AM, or as soon thereafter as the matter may be heard in Courtroom 5A of the above-entitled Court located at 350 W. 1st Street, Los Angeles, CA 90012, Defendants KEVIN

---

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1

HERMANSEN, BEHNAM GHARAGOZLI, CHRISTOPHER LOPEZ, CYNTHIA CARTER, LAW OFFICES OF BEN GHARAGOZLI, and LAW OFFICE OF KEVIN P. HERMANSEN, P.C. (collectively, "Defendants") will, and hereby do, move this Court for an order dismissing all six counts of Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

This Motion is made on the grounds that Plaintiffs have failed to plead sufficient facts to establish the essential elements of any of the six causes of action in the First Amended Complaint. Specifically:

1. **Noerr-Pennington Doctrine:** The alleged "predicate acts" consist entirely of litigation activities in state court (filing motions, serving documents, making legal arguments regarding statutes, and examining witnesses) which are protected petitioning activities under the First Amendment and cannot form the basis of a RICO claim.

2. **Failure to Allege a Pattern:** Plaintiffs allege a single dispute regarding a single tenancy and eviction action, involving a single set of victims. This lacks the requisite "continuity" to establish a pattern of racketeering activity under *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989).

3. **Failure to Allege an Enterprise:** Plaintiffs fail to allege a RICO enterprise distinct from the defendants themselves, or a structure beyond the ordinary attorney-client relationship.

4. **Failure to Allege Predicate Acts:** The alleged "wire fraud" consists of procedural disputes over service of process, legal arguments regarding "reconsideration" motions, and witness examination tactics. These are not federal crimes. Furthermore, Plaintiffs admit they did not rely on the alleged misrepresentations, negating an essential element of fraud.

5. **Lack of Standing/Causation:** Plaintiffs' alleged economic injuries (payment of attorney's fees and costs) were caused by valid state court judgments, not by fraud. Furthermore, claims for personal injury are not recoverable under civil RICO.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such other argument and evidence as may be presented at the hearing.

DATE: May 26, 2026                    **Judah Law Group**

By: _____

Ramsey Judah

---

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

3

# TABLE OF CONTENTS

**A. Statement of Issues to be Decided** ..................................................................... **1-2**

**B. Memorandum of Points and Authorities** ..............................................................

  I.  Introduction ..................................................................................................... 3-5

  II.  The FAC's Factual Allegations..................................................................... 6-8

     A.  The Underlying State Court Litigation .................................................6

     B.  The Alleged "Racketeering" Activity ............................................... 7-8

  III.  Argument .....................................................................................................

     A.  Rule 12(b)(6) Motion to Dismiss Standard...........................................9

     B.  The Noerr-Pennington Doctrine Bars RICO Liability for Litigation Activities.... 10-11

     C.  The § 1985(2) Conspiracy Claim Fails (Count I) .................................. 12-13

     D.  The § 1985(3) Conspiracy Claim Fails as a Matter of Law (Count II) ................. 14-16

       1.  Plaintiffs Fail to Allege a State Actor........................................................14

       2.  Plaintiffs Fail to Allege Class-Based Discriminatory Animus ...............................15

       3.  Plaintiffs Fail to Plead the Conspiracy with Specificity ..................................16

     E.  Plaintiffs Fail to Allege a "Pattern of Racketeering Activity" Under 18 U.S.C. § 1962(c) (Count III) ..................................................................... 17-18

       1.  The Alleged Acts Lack "Closed-Ended" Continuity............................................17

       2.  The Alleged Acts Lack "Open-Ended" Continuity .............................................18

     F.  Plaintiffs Fail to Allege a Cognizable RICO "Enterprise" ..................................... 19-20

       1.  The FAC's Four Overlapping "Enterprises" Are Internally Contradictory............19

       2.  Failure to Plead a Distinct Structure ................................................................20

       3.  Failure to Plead a Common Purpose Beyond Self-Interest ..................................20

     G.  Plaintiffs Fail to Plead Predicate Acts ...................................................... 21-24

       1.  Plaintiffs' Wire Fraud Allegations Fail ..................................................... 22-23

         a.  Plaintiffs do not allege a scheme to defraud .....................................................22

         b.  Emails Are Not Wire Fraud................................................................... 22-23

         c.  Plaintiffs' Allegations Prove Defendants Had No Intent to Defraud ...............23

       2.  The § 1957 Money Laundering Predicates Fail as a Matter of Law ............... 23-24

         a.  Plaintiffs Allege No Monetary Transaction Involving Criminally Derived Property........................................................................................24

         b.  Plaintiffs' Arguments are Impermissibly Circular .........................................24

     H.  Plaintiffs Lack Standing Because There Is No Proximate Cause ................................25

       1.  Intervening Cause (State Court Judgment)...................................................25

     I.  The RICO Conspiracy Claim Under § 1962(d) Fails (Count IV) ................................26

     J.  The Breach of Contract Claim Fails (Count V) .......................................................27

     K.  The Breach of Implied Covenant Claim Fails (Count VI)........................................28

  IV.  Conclusion........................................................................................ 29-31

# TABLE OF AUTHORITIES

## Cases

Action Apartment Assn., Inc. v. City of Santa Monica, 41 Cal.4th 1232 (2007)...........................28

Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006)..................................................................25

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ...........................................................................................9

Baumer v. Pachl, 8 F.3d 1341 (9th Cir. 1993)................................................................................20

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .............................................................................9

Boyle v. United States, 556 U.S. 938 (2009)............................................................................. 19-20

Bray v. Alexandria Women's Health Clinic, 506 U.S. 263 (1993) ................................................16

Bretz v. Kelman, 773 F.2d 1026 (9th Cir. 1985)............................................................................12

Burns v. County of King, 883 F.2d 819 (9th Cir. 1989)..................................................................16

Carma Developers (Cal.), Inc. v. Marathon Development California, Inc., 2 Cal.4th 342 (1992)29

Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001) ............................................. 19-20

Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp., 235 F. Supp. 3d 1132 (E.D. Cal. 2017) ..................................................................................................................................14

Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260 (D.C. Cir. 1995).........18

Edwards v. Marin Park, Inc., 356 F.3d 1058 (9th Cir. 2004) .......................................................21

Griffin v. Breckenridge, 403 U.S. 88 (1971)............................................................................13, 16

Guz v. Bechtel National, Inc., 24 Cal.4th 317 (2000) ...................................................................29

H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989)................................................. 17-18

Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258 (1992)..................................................................25

Howard v. America Online Inc., 208 F.3d 741 (9th Cir. 2000).....................................................27

Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621 (9th Cir. 1988)...................................16

Kim v. Kimm, 884 F.3d 98 (2d Cir. 2018) ......................................................................................23

Kush v. Rutledge, 460 U.S. 719 (1983)..................................................................................... 12-13

Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) ....................................................... 13-14

McCalden v. California Library Ass'n, 955 F.2d 1214 (9th Cir. 1990) .........................................10

Navarro v. Block, 250 F.3d 729 (9th Cir. 2001)...............................................................................9

Odom v. Microsoft Corp., 486 F.3d 541 (9th Cir. 2007) ...............................................................21

Oscar v. Univ. Students Co-op. Ass'n, 965 F.2d 783 (9th Cir. 1992).............................................26

Pasadena Republican Club v. Western Justice Center, 985 F.3d 1161 (9th Cir. 2021) ................15

Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49 (1993)..................12

Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364 (9th Cir. 1992) ..............................................18

Reusser v. Wachovia Bank, N.A., 525 F.3d 855 (9th Cir. 2008) ....................................................26

Scott v. Kuhlmann, 746 F.2d 1377 (9th Cir. 1984) .......................................................................10

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985)......................................................................17

Sever v. Alaska Pulp Corp., 978 F.2d 1529 (9th Cir. 1992).............................................13, 16, 18

Silberg v. Anderson, 50 Cal.3d 205 (1990) ...................................................................................28

---

Sosa v. DIRECTV, Inc., 437 F.3d 923 (9th Cir. 2006) ..........................................................10, 22
Turner v. Cook, 362 F.3d 1219 (9th Cir. 2004)...................................................................19
United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825 (1983)...........................14
United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v.
     Walgreen Co., 719 F.3d 849 (7th Cir. 2013) ........................................................................21
United States v. Miller, 953 F.3d 1095 (9th Cir. 2020)................................................................22
United States v. Santos, 553 U.S. 507 (2008) .............................................................................24
Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir. 2003)..................................................10

## Statutes and Other Authorities

18 U.S.C. § 1957.............................................................................................. 5, 7, 8, 21-25
18 U.S.C. § 1961.....................................................................................................................21
18 U.S.C. § 1961(1) .................................................................................................................21
18 U.S.C. § 1962(c) ............................................................................ 1, 4, 17, 19-20, 27, 29
18 U.S.C. § 1962(d) ......................................................................................... 4, 26-27, 29
18 U.S.C. § 1964(c) .............................................................................................................2, 26
28 U.S.C. § 1927.....................................................................................................................31
42 U.S.C. § 1985(2) ....................................................................................... 4-5, 12-14, 30
42 U.S.C. § 1985(3) ....................................................................................... 3-5, 13-16, 30
Cal. Civ. Code § 47(b) .............................................................................................................28
Cal. Code Civ. Proc. § 1008 ...................................................................................................11
Fed. R. Civ. P. 9(b) ..............................................................................................................9, 21
Fed. R. Civ. P. 11....................................................................................................................31
Fed. R. Civ. P. 12(b)(6) ........................................................................................................1, 9

### *STATEMENT OF ISSUES TO BE DECIDED*

1. Whether the Noerr-Pennington doctrine immunizes the Defendants from RICO liability, where the alleged predicate acts consist entirely of protected litigation activities—such as filing motions, making legal arguments (especially where the court in those actions found the arguments to be persuasive), serving notices, and examining witnesses—and the Plaintiffs have failed to allege facts sufficient to establish the "sham litigation" exception.

2. Whether the First Amended Complaint ("FAC") fails to allege a "pattern of racketeering activity" under 18 U.S.C. § 1962(c), where the allegations involve a single dispute over a single tenancy with a finite goal and a single set of victims, thereby lacking the requisite "continuity" required by Supreme Court precedent.

3. Whether the FAC fails to allege a cognizable RICO "enterprise," where the FAC's four overlapping "enterprise" definitions are internally contradictory and fail to allege a structure or purpose distinct from the Defendants themselves.

4. Whether the FAC fails to plead actionable predicate acts of wire fraud with the particularity required by Rule 9(b), where the alleged misrepresentations

---

concern legal arguments rather than facts, and the Plaintiffs admit they did not rely on the alleged misrepresentations.

5. Whether the FAC's new 18 U.S.C. § 1957 money laundering predicates fail as a matter of law, where they are premised on the receipt of court-ordered attorney's fees, not "criminally derived property," and are alleged in circular fashion that presupposes the very RICO violations they are meant to prove but have not and cannot prove.

6. Whether the Plaintiffs lack standing to assert a civil RICO claim under 18 U.S.C. § 1964(c), where their alleged economic injuries were proximately caused by valid California court judgments rather than the Defendants' conduct, and their claims for personal injury are not recoverable under RICO.

7. Whether the conspiracy claim under 18 U.S.C. § 1962(d) must be dismissed, where the Plaintiffs have failed to state a viable substantive claim under § 1962(c).

8. Whether the § 1985(2) claim for obstruction of justice conspiracy fails, where (a) Plaintiffs do not allege any federal judicial or congressional proceeding was obstructed, nor that any party or witness in a federal proceeding was intimidated or threatened, defeating the first clause; and (b)

Plaintiffs do not allege class-based, invidiously discriminatory animus, defeating the second clause.

9. Whether the § 1985(3) claim for conspiracy to deprive civil rights fails, where Plaintiffs do not allege state action as required for First and Fourteenth Amendment claims, do not allege class-based discriminatory animus, and fail to plead the conspiracy with the specificity required by Ninth Circuit precedent.

10. Whether the breach of contract claim for other defendants fails, where the lease provision invoked does not create a private right of action for alleged violations of law by other parties to the lease, and the alleged breaches are litigation conduct, not lease violations.

11. Whether the breach of implied covenant of good faith and fair dealing claim for other defendants fails derivatively of the contract claim and independently because it seeks to impose obligations beyond the lease terms.

## *MEMORANDUM OF POINTS AND AUTHORITIES*

## I.    INTRODUCTION

Despite enjoying leave to amend, Plaintiffs' lawsuit remains a transparent attempt by disgruntled landlords to re-litigate state court losses by relabeling standard litigation tactics as federal racketeering and civil rights violations.

Plaintiffs Shing Lung Lau, Siu Fan Tsang, and Hoi Kan Lau (collectively, "Plaintiffs") filed three separate unlawful detainer actions against their tenants, Defendants Christopher Lopez and Cynthia Carter ("Tenant Defendants"), and lost all three. On each occasion, the state court ordered Plaintiffs to pay attorney's fees to the prevailing Tenant Defendants and their counsel, Defendants Kevin Hermansen and Ben Gharagozli ("Attorney Defendants"). For these losses, Plaintiffs now seek approximately $4 million in damages from the tenants and their lawyers.

Rather than pursue appellate remedies, Plaintiffs have filed a First Amended Complaint ("FAC") alleging six causes of action: (1) conspiracy to obstruct justice under 42 U.S.C. § 1985(2); (2) conspiracy to deprive civil rights under 42 U.S.C. § 1985(3); (3) substantive RICO under 18 U.S.C. § 1962(c); (4) RICO conspiracy under 18 U.S.C. § 1962(d); (5) breach of contract; and (6) breach of the implied covenant of good faith and fair dealing. Despite the expanded pleading (and simultaneous concession that certain causes of action in the original complaint lacked merit), the fundamental deficiency remains: every allegation of wrongdoing describes routine litigation conduct—filing motions, making legal arguments, serving notices, examining witnesses, and collecting court-ordered fees.

Simply put, a litigant cannot repeatedly lose in California court and then file a Federal lawsuit demanding damages for it.  This is precisely what the litigation privilege forecloses.

The FAC's new claims fare no better than the original. Although the FAC is confusing enough that it is difficult to understand Plaintiffs' claims, 18 U.S.C. § 1985(3) claims require a state actor be involved---a condition not met here---for claims premised on First and Fourteenth Amendment deprivations. Regardless of the variety of the constitutional violation, § 1985(3) claims require allegations of class-based discriminatory animus, also absent from the FAC. The § 1985(2) claim fails because no federal judicial or congressional proceeding was obstructed. Rather, Plaintiffs simply did not like the outcome of the three lawsuits that they filed.

The breach of contract claim rests on a lease provision that does not create a private right of action for alleged violations of law. And the RICO claims, now embellished with eight "Wire Fraud Schemes," four overlapping "enterprises," and circular § 1957 money laundering predicates premised on the receipt of court-ordered attorney's fees, remain fatally deficient for all the reasons previously briefed and more.

Each of the six counts should be dismissed with prejudice. Any amendment would be futile as evidenced by the amendments that Plaintiffs made that constitute their operative complaint.

## II.    THE FAC'S FACTUAL ALLEGATIONS

The following facts are drawn from the allegations in Plaintiffs' FAC and the attached exhibits, accepted as true solely for the purpose of this Motion.

### A. The Underlying State Court Litigation

Plaintiffs are the owners of a residential property and filed three separate unlawful detainer actions against Defendants Cynthia Carter and Christopher Lopez. In each action, the Tenant Defendants retained Attorneys Kevin Hermansen and Ben Gharagozli to defend them. Plaintiffs were unsuccessful in all three attempts to evict their tenants, and the state court awarded attorney's fees to the prevailing Tenant Defendants in each case. (FAC ¶¶ 23-26).

Following the dismissal of the unlawful detainer case, the Attorney Defendants filed a motion for attorney's fees. Plaintiffs allege that they fired their previous attorney, Charles Pok, on October 5, 2023, but did not actually file a Substitution of Attorney form; Attorney Defendants thus served the motion for fees on Mr. Pok on October 16, 2023, rather than on Plaintiffs directly. (FAC ¶¶ 28, 33). Plaintiffs contend this service was "fraudulent" and intended to deprive them

of due process. Despite this, Plaintiffs admit they learned of the motion on November 8, 2023, and answered it. (FAC ¶¶ 35-36). The state court granted the motion, awarding attorney's fees to the Tenant Defendants.

## B. The Alleged "Racketeering" Activity

The FAC now alleges eight "Wire Fraud Schemes" spanning multiple unlawful detainer cases. (FAC ¶¶ 27-194). However, each "scheme" remains a description of a litigation event that Plaintiffs lost. The FAC also identifies four overlapping "enterprises": Enterprise A (the Attorney Defendants), Enterprise B (the Tenant Defendants), Enterprise C (all Defendants), and Enterprise D (all Defendants except Gharagozli, who allegedly maintained "apparent dis-involvement"). (FAC ¶¶ 226-237). The FAC further alleges four counts of money laundering under 18 U.S.C. § 1957, premised on the Attorney Defendants' receipt of court-ordered attorney's fees. (FAC ¶¶ 205-214).

The specific acts alleged to constitute "racketeering" remain derived from state court litigation:

a. Service of Process: Plaintiffs allege Defendants committed wire fraud by emailing the motion for attorney's fees to their former attorney, Charles Pok, despite knowing Pok had been discharged. (FAC ¶ 33).

b. Arguments in Court: Plaintiffs allege the Attorney Defendants made "fraudulent misrepresentations" to the state court judge regarding the status of Plaintiffs' counsel and the interpretation of California Code of Civil Procedure § 1008 (reconsideration). (FAC ¶¶ 47-78).

c. Witness Examination: Plaintiffs allege Defendant Hermansen "fraudulently" manipulated witness testimony during a trial on August 1, 2024. Specifically, Plaintiffs claim Hermansen asked Plaintiff Shing Lung Lau if his father visited the property "often," and later argued to the court that the father "never" visited, which Plaintiffs characterize as "witness tampering" and "wire fraud." (FAC ¶¶ 132-136).

d. Interpreter Dispute: Plaintiffs allege Defendants "fraudulently" convinced the judge to remove their preferred interpreter, Nathan Huang, from the courtroom on August 1, 2024, to prevent Plaintiffs from understanding the proceedings. (FAC ¶¶ 101-116).

e. Perjury: Plaintiffs allege the Tenant Defendants signed declarations and answers containing false statements regarding habitability and notice, suborned by their attorneys. (FAC ¶¶ 141-156, 158-170).

f. Money Laundering: The FAC alleges four counts of § 1957 violations based solely on the Attorney Defendants' receipt of court-awarded attorney's fees. (FAC ¶¶ 205-214).

Plaintiffs claim these actions constitute a "pattern of racketeering activity" involving wire fraud and money laundering. They seek approximately $4 million in compensatory damages plus punitive damages, comprising attorney's fees they paid, lost rent, and emotional distress. (FAC ¶¶ 256-298).

## III.   ARGUMENT

### A. Rule 12(b)(6) Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While the court must accept all well-pleaded factual allegations as true, it is not required to accept "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action." *Twombly*, 550 U.S. at 555. Furthermore, allegations of fraud, which underpin Plaintiffs' RICO claims, must meet the heightened pleading standard of Rule 9(b), requiring the plaintiff to state with particularity the circumstances constituting the fraud, including the "who, what, when, where, and how" of the misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Additionally, an affirmative defense may be raised by a motion to dismiss when the defense is apparent on the face of the complaint. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984); *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).

**B. The Noerr-Pennington Doctrine Bars RICO Liability for Litigation Activities**

As a threshold matter, Plaintiffs' RICO claims must be dismissed because they are predicated entirely on Defendants' petitioning activities—filing motions, making legal arguments, serving notices, and examining witnesses. The Noerr-Pennington doctrine provides immunity from statutory liability for conduct that implicates the First Amendment right to petition the government for redress of grievances. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). This immunity extends to RICO claims. *Id.* at 930.

The Ninth Circuit has explicitly held that "litigation activities" cannot form the basis of a RICO claim unless the litigation is a "sham." *Id.* at 938. This protection covers direct communications with the court and conduct incidental to the prosecution of the suit.

Here, every "wrongdoing" alleged by Plaintiffs constitutes protected litigation activity:

1. **Service of Process and Motions:** The dispute over the service of the attorneys' fee motion on Plaintiffs' former counsel is a procedural issue to be resolved by the state court, not a predicate act of mail fraud.

2. **Legal Arguments:** Plaintiffs' allegation that Defendants "misrepresented the law" regarding CCP § 1008 (reconsideration) describes standard legal advocacy. Disagreement over the interpretation of a statute is the essence of litigation, not fraud. "Misrepresentations of the law are not actionable as fraud... because statements of the law are considered merely opinions and may not be relied upon." *Sosa*, 437 F.3d at 940.

3. **Witness Examination:** Plaintiffs' claim that Defendant Hermansen "manipulated" testimony by asking if a witness visited "often" is a description of cross-examination. This is core petitioning activity protected by the First Amendment.

4. **Interpreter Disputes:** Motions to exclude witnesses or interpreters are procedural matters handled by the trial judge.

The "sham litigation" exception to Noerr-Pennington is narrow and requires a two-part showing: the underlying litigation must be "objectively baseless" in the sense that no reasonable litigant could realistically expect success on the merits, and the litigant's subjective motivation must be to use the governmental process itself as an anticompetitive weapon. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993). Plaintiffs cannot meet this standard. Defendants were successful in obtaining a judgment for attorney's fees in the state court. A successful lawsuit cannot, by definition, be a sham. *Id.* at 60 n.5. Because Plaintiffs' RICO claims seek to penalize Defendants for exercising their constitutional right to litigate the underlying landlord-tenant dispute, they are barred by Noerr-Pennington and must be dismissed.

## C. The § 1985(2) Conspiracy Claim Fails (Count I)

Count I alleges a conspiracy to obstruct justice under 42 U.S.C. § 1985(2). (FAC ¶¶ 215–217). Section 1985(2) is cleanly bifurcated. The Supreme Court in *Kush v. Rutledge*, 460 U.S. 719, 724–725 (1983), held that the first clause applies strictly to the obstruction of justice in federal courts, while the second clause

applies to obstructions in state court proceedings. *Bretz v. Kelman* (9th Cir. 1985) 773 F.2d 1026, 1028.

The FAC does not allege that any Defendant deterred a witness or party from attending or testifying in any federal proceeding, or that any Defendant conspired to obstruct justice in a federal court or congressional proceeding. The FAC's allegations relate entirely to three successive state court unlawful detainer actions filed in the Los Angeles Superior Court. The first clause of § 1985(2) is therefore inapplicable. *Kush*, 460 U.S. at 725.

Plaintiffs' claim thus falls squarely under the second clause of § 1985(2). To state a claim under this clause, a plaintiff must plausibly allege that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Kush*, 460 U.S. at 726; *Lacey*, 693 F.3d at 937. The FAC contains no such allegation. Stripped of legal labels, the FAC explicitly alleges that the Attorney Defendants' conduct was driven by financial self-interest and standard billing practices. Because commercial or economic motivation can never establish the invidious class-based animus required by the statute, Count I must be dismissed with prejudice. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

As to the second clause—obstruction of state court proceedings—Plaintiffs must allege that the conspiracy was motivated by class-based discriminatory animus, the same requirement applicable to § 1985(3). As demonstrated above, the FAC contains no such allegation. The § 1985(2) claim therefore fails for the same reasons the § 1985(3) claim fails: absence of class-based animus. *Lacey*, 693 F.3d at 937.

## D. The § 1985(3) Conspiracy Claim Fails as a Matter of Law (Count II)

Count II of the FAC alleges a conspiracy to deprive Plaintiffs of their civil rights under 42 U.S.C. § 1985(3). (FAC ¶¶ 218–221). To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by class-based discriminatory animus; (3) an act in furtherance of the conspiracy; and (4) a deprivation of equal protection of the laws or of equal privileges and immunities under the laws. *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1185 (E.D. Cal. 2017). The FAC fails to satisfy multiple elements of this claim.

### 1. Plaintiffs Fail to Allege a State Actor

The FAC does not specify how Defendants' alleged conduct violated § 1985(3). As a point of departure, Defendants note that if Plaintiffs are alleging Defendants conspired to deprive Plaintiffs of their First Amendment and

Fourteenth Amendment rights, they must show state involvement. The Supreme Court in *United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 830–33 (1983), held that § 1985(3) does not reach purely private conspiracies aimed at First Amendment rights, because those amendments protect against government action, not private conduct. The Ninth Circuit confirmed this holding in *Pasadena Republican Club v. Western Justice Center*, 985 F.3d 1161, 1171 (9th Cir. 2021), reaffirming that "an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy."

The Defendants are private attorneys and private tenants. The FAC does not allege that any Defendant is a state actor or acted under color of state law. The FAC does not allege any state involvement in the purported conspiracy. Accordingly, the § 1985(3) claim fails as a matter of law. This is not a pleading deficiency that amendment can cure; it is a categorical bar arising from the nature of the defendants and the rights invoked.

### 2.  Plaintiffs Fail to Allege Class-Based Discriminatory Animus

Even if state action were not required, the § 1985(3) claim independently fails because Plaintiffs do not allege class-based discriminatory animus. A § 1985(3) plaintiff must demonstrate that the conspiracy was motivated by "some

---

racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 102. The Supreme Court has construed "class-based animus" narrowly; it must target a class that has been the subject of historically recognized discrimination. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993).

The FAC does not allege that Defendants targeted Plaintiffs because of their race, national origin, or membership in any protected class. The FAC alleges that the Defendants' conduct was motivated by financial self-interest—the desire to earn attorney's fees and defend a tenancy. This is not class-based discriminatory animus; it is ordinary economic motivation. The Ninth Circuit has held that a conspiracy motivated solely by economic or commercial animus is not sufficient to state a claim under § 1985(3). *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

### 3. Plaintiffs Fail to Plead the Conspiracy with Specificity

A claim under § 1985(3) requires a plaintiff to state specific facts to support the existence of the claimed conspiracy. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). A plaintiff must plead an agreement to violate constitutional rights and conclusory allegations of conspiracy are not enough. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).

The FAC alleges no facts showing an agreement among Defendants to deprive Plaintiffs of their civil rights. The FAC describes an attorney-client relationship in which lawyers represented tenants in eviction proceedings. An attorney's vigorous representation of a client is not a "conspiracy" to deprive the opposing party of civil rights. The FAC's conspiracy allegations are entirely conclusory and fail to meet the specificity required by the Ninth Circuit.

**E. Plaintiffs Fail to Allege a "Pattern of Racketeering Activity" Under** 18 U.S.C. § 1962(c) (Count III)

Even if the Court were to conclude that Noerr-Pennington does not bar Plaintiffs' claim, it independently fails because Plaintiffs cannot allege a "pattern of racketeering activity." To state a claim under RICO, 18 U.S.C. § 1962(c), a plaintiff must allege such a pattern. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). A pattern requires at least two acts of racketeering activity, but "while two acts are necessary, they may not be sufficient." *Id.* at 496 n.14. A plaintiff must show that the predicates are related and that they amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "Continuity" requires either a closed period of repeated conduct, or past conduct that by its nature projects into the future with a threat of repetition. *Id.* at 241–42.

### 1. The Alleged Acts Lack "Closed-Ended" Continuity

A "closed-ended" pattern requires a series of related predicates extending over a substantial period of time. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J. Inc.*, 492 U.S. at 242. The Ninth Circuit has rarely found a closed-ended pattern where the conduct lasted less than a year. *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366–67 (9th Cir. 1992).

Here, Plaintiffs allege a single dispute involving a single property and a finite group of victims (the Plaintiffs themselves). Although the FAC now expands the alleged conduct across multiple unlawful detainer cases, the alleged "wrongdoings" all relate to the same tenancy at the same property and the same core dispute. Courts routinely hold that a single scheme with a single purpose and a single set of victims does not constitute a RICO pattern, regardless of the duration. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (dismissing RICO claim involving "a single episode having the singular purpose of impoverishing" the plaintiff); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995). Defendants' actions were all directed toward the singular, lawful goal of defending the Tenant Defendants and collecting awarded fees. This does not constitute long-term criminal conduct.

## 2.  The Alleged Acts Lack "Open-Ended" Continuity

"Open-ended" continuity requires a threat of repetition. *H.J. Inc.*, 492 U.S. at 241. There is no threat of repetition here. The alleged conduct relates exclusively to the specific litigation between these parties. Once the judgments are satisfied, the alleged activity will cease. Enforcing a specific judgment is an inherently finite activity that does not project into the future. *Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004) (no open-ended continuity where alleged mailings would cease once the judgment was collected).

## F.  Plaintiffs Fail to Allege a Cognizable RICO "Enterprise"

Plaintiffs' RICO claim fails for the additional, independent reason that they have not alleged a cognizable RICO "enterprise." To state a claim under § 1962(c), a plaintiff must allege the existence of an "enterprise" that is distinct from the persons alleged to have violated RICO. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). An association-in-fact enterprise must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

### 1.  The FAC's Four Overlapping "Enterprises" Are Internally Contradictory

The FAC now alleges four separate "enterprises": Enterprise A (the Attorney Defendants), Enterprise B (the Tenant Defendants), Enterprise C (all Defendants), and Enterprise D (all Defendants except Gharagozli). (FAC ¶¶ 226-237). This shotgun approach—alleging every possible combination of defendants as a separate enterprise—underscores the absence of a genuine enterprise allegation. Under § 1962(c), the enterprise must be distinct from the "person" conducting its affairs. *Cedric Kushner*, 533 U.S. at 161. Enterprises A and B merely describe subsets of the defendants themselves. Enterprise C is the defendants collectively. Enterprise D excludes one defendant based on the conclusory allegation of "apparent dis-involvement." None of these configurations describes an entity distinct from the alleged RICO "persons."

## 2. Failure to Plead a Distinct Structure

The FAC alleges that the Defendants "schemed" together. (FAC ¶¶ 17, 27). This describes nothing more than an attorney-client relationship. Courts have consistently held that an attorney representing a client does not, without more, constitute a RICO enterprise. *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993). There is no allegation of a structure distinct from the standard professional relationship where lawyers provide legal services to clients.

## 3. Failure to Plead a Common Purpose Beyond Self-Interest

---

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

20

For an association-in-fact enterprise, the members must share a common purpose. *Boyle*, 556 U.S. at 946. However, the shared goal of financial profit, by each party conducting its own business, does not qualify as a common purpose under RICO. *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013). Here, the Tenant Defendants sought to defend their housing. The Attorney Defendants sought to earn legal fees. These are distinct, self-interested goals typical of any attorney-client relationship.

## G. Plaintiffs Fail to Plead Predicate Acts

The FAC also fails at the most granular level: Plaintiffs have not pleaded any actionable predicate acts. A RICO plaintiff must allege "racketeering activity" consisting of enumerated predicate acts. 18 U.S.C. § 1961(1). Plaintiffs allege wire fraud and money laundering.

To plead wire fraud, a plaintiff must allege: (1) a scheme to defraud, (2) use of the wires in furtherance of the scheme, and (3) specific intent to defraud. *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007). Under Rule 9(b), the plaintiff must state the time, place, and specific content of the false representations. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).

Plaintiffs' money laundering predicate hinges on the allegations of wire fraud. Liability for money laundering under 18 U.S.C.§ 1957 strictly requires a "monetary transaction" involving "criminally derived property," defined as property constituting, or derived from, proceeds obtained from a criminal offense. 18 U.S.C. § 1957(a), (f).

### 1. Plaintiffs' Wire Fraud Allegations Fail

#### a.    Plaintiffs do not allege a scheme to defraud

Plaintiffs' "fraud" allegations are actually complaints about legal arguments. Allegations that defendants "lied about the application for relief" by arguing it was a reconsideration motion (FAC ¶¶ 48-52) are disputes of law, not fact. "Misrepresentations of the law are not actionable as fraud." *Sosa*, 437 F.3d at 940. Similarly, arguments about the service of process are procedural disputes for the state court, not evidence of a scheme to defraud.

#### b.    Emails Are Not Wire Fraud

Moreover, Plaintiffs' entire wire fraud theory rests on the unremarkable fact that attorneys used email and electronic filing in the course of litigation. This is how all litigation is conducted. Wire fraud requires a scheme "to defraud or obtain money or property," i.e., to cheat someone out of something valuable. *United States v. Miller* (9th Cir. 2020) 953 F.3d 1095, 1101. Making legal arguments that

---

a court later rejects is not an intent to "deceive and cheat" anyone. Serving a motion via email does not transform standard advocacy into a federal crime. Accepting Plaintiffs' theory would mean that every attorney who loses a motion and used email or e-filing has committed wire fraud, a result that is both absurd and incompatible with the First Amendment right to petition. *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) ("[A]llegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act.").

### c. Plaintiffs' Allegations Prove Defendants Had No Intent to Defraud

Plaintiffs' own allegations negate any intent to defraud. Plaintiffs allege that their attorney Charles Pok was "fired" but did not actually file a Substitution of Attorney form with the court. However, Plaintiffs then undermine their claim because they actually opposed the motion on the merits. (FAC ¶ 36). When Defendants argued the motion was a reconsideration, Plaintiffs responded. (FAC ¶¶ 53-59). Plaintiffs were not deceived by any of the alleged misrepresentations— they contested each one in real time before the California court. There is no "scheme to defraud" where the alleged victim is fully aware of the supposed deception and actively opposes it.

### 2.     The § 1957 Money Laundering Predicates Fail as a Matter of Law

The FAC adds four schemes of money laundering under 18 U.S.C. § 1957, alleging that the Attorney Defendants' receipt of court-ordered attorney's fees constitutes money laundering because the fees were purportedly derived from the underlying wire fraud schemes. (FAC ¶¶ 205-214). This theory is fatally circular and legally untenable.

### a. Plaintiffs allege no monetary transaction involving criminally derived property

Liability under § 1957 strictly requires a "monetary transaction" involving "criminally derived property," defined as property constituting, or derived from, proceeds obtained from a criminal offense. 18 U.S.C. § 1957(a), (f). Here, each monetary transfer at issue was paid to satisfy valid, legally binding judgments entered by a state court judge who reviewed the motions, heard the arguments, and awarded fees. A judicially ordered award of prevailing party attorney's fees is an independent legal act. It cannot constitute "proceeds" of a criminal offense. *United States v. Santos*, 553 U.S. 507, 511 (2008) (plurality opinion) (holding that "proceeds" in the money laundering context refers to profits derived from unlawful activity, not legitimate transfers). Because a valid state court judgment serves as an intervening legal cause, the funds collected are not "criminally derived property" and cannot form the basis of a money laundering predicate.

The FAC's theory is that the fees were obtained by fraud, making their receipt money laundering. As demonstrated above, no fraud occurred. The § 1957 allegations thus depend entirely on the viability of the wire fraud allegations, which fail for all the reasons set forth above.

### b.  Plaintiffs' Arguments are Impermissibly Circular

Moreover, the § 1957 predicates are alleged in an impermissibly circular fashion: the money laundering is predicated on the wire fraud, and the wire fraud is alleged to be part of the RICO pattern that the money laundering is meant to bolster. This failed bootstrapping attempt does not satisfy RICO's requirements.

### H. Plaintiffs Lack Standing Because There is No Proximate Cause

Even if the Court were to find that Plaintiffs have adequately pleaded predicate acts, their RICO claim still fails because they cannot establish proximate causation. A RICO plaintiff must show that the defendant's violation was the proximate cause of their injury. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). There must be a direct relation between the injury asserted and the injurious conduct alleged. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

### 1.  Intervening Cause (State Court Judgment)

---

Plaintiffs claim defendants' violation led to damages including attorney's fees and costs. However, their alleged damages are the direct result of the adverse judgments entered by the state court, not any "fraud" by Defendants. The state court reviewed the motions, heard the arguments, and awarded fees. Plaintiffs' injury flows from the court's independent judicial decision. Under the Rooker-Feldman doctrine and principles of causation, a plaintiff cannot establish RICO standing by claiming that a state court judgment was procured by fraud. *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (federal courts lack jurisdiction to review state court judgments).

If Plaintiffs believe the judgments were erroneous or procured by misconduct, their remedy lies in the state appellate courts, not a federal RICO action. Moreover, Plaintiffs' own allegations confirm they were not deceived by any of the alleged misrepresentations, as they contested each one in real time. Where the alleged victim is fully aware of the supposed fraud and actively opposes it in court, there is no causal connection between the alleged fraud and the resulting injury.

Plaintiffs also seek damages for emotional distress. RICO allows recovery only for injury to "business or property." 18 U.S.C. § 1964(c). Courts consistently hold that personal injuries, including physical illness and emotional distress, are

not recoverable under RICO. *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992). Therefore, the claims regarding the plaintiffs' emotional distress must be dismissed.

## I.    The RICO Conspiracy Claim Under § 1962(d) Fails (Count IV)

Plaintiffs' RICO conspiracy claim under 18 U.S.C. § 1962(d) must be dismissed because it is entirely derivative of the failed substantive claim under § 1962(c). A conspiracy claim under § 1962(d) requires an agreement to violate one of RICO's substantive provisions. Because Plaintiffs have failed to state a viable claim under § 1962(c) for all of the reasons set forth above, the conspiracy claim necessarily fails as well. *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.").

## J.    The Breach of Contract Claim Fails (Count V)

Count V alleges breach of contract against the Tenant Defendants. (FAC ¶¶ 249–254). Plaintiffs allege that paragraph 17 of the lease required tenants to "comply with all laws, orders, rules, requests, and directions of all government authorities," and that the Tenant Defendants breached this provision by allegedly participating in the conduct described in the RICO and civil rights counts.

This theory fails for multiple reasons. First, paragraph 17 of a residential lease—a standard provision requiring compliance with laws—is not a private right of action for alleged violations of federal criminal statutes. The provision is designed to address conduct such as building code violations, nuisance, or illegal use of the premises. It does not create a contractual obligation for a tenant to refrain from defending an eviction action or authorizing their attorney to make legal arguments.

Third, the breach of contract claim is barred by California's absolute litigation privilege. California Civil Code § 47(b) provides a broad privilege for communicative acts performed in the course of judicial proceedings. *Silberg v. Anderson*, 50 Cal.3d 205, 215 (1990). The California Supreme Court has held that the litigation privilege applies broadly to immunize eviction-related litigation conduct. *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1241 (2007). Here, the alleged "breaches" are exclusively communicative litigation acts—filing answers, e-filing documents, making legal arguments, and cross-examining witnesses. These are precisely the activities the privilege protects. Permitting landlords to treat standard courtroom defense strategies as an actionable breach of a generic lease clause would gut the statutory protections of the

privilege. Because the contract claims are premised entirely on privileged litigation conduct, they are barred as a matter of law.

**K. The Breach of Implied Covenant Claim Fails (Count VI)**

Count VI, pleaded in the alternative to Count V, alleges breach of the implied covenant of good faith and fair dealing. (FAC ¶ 255). This claim fails derivatively of the contract claim: if there is no viable breach of contract claim, there can be no breach of the implied covenant. The implied covenant is read into every contract but cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement. *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 349–350 (2000); *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 373 (1992).

Here, the implied covenant cannot be used to transform a standard lease compliance clause into a private right of action for federal criminal violations. The implied covenant supplements the express terms of a contract; it does not create new obligations untethered to the parties' agreement. Because the underlying contract claim fails, the implied covenant claim fails as well.

**IV.  CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss all six counts of the First Amended Complaint.

Counts III and IV (RICO § 1962(c) and § 1962(d)) should be dismissed with prejudice. Plaintiffs have failed to plead a cognizable RICO claim, and the conduct complained of is protected litigation activity. Because every alleged predicate act is protected litigation activity, no amendment can cure the fundamental defect. The Noerr-Pennington doctrine categorically bars RICO liability for the litigation conduct alleged here. This is not a pleading deficiency that amendment can cure—it is a categorical bar. No amendment can transform protected petitioning activity into racketeering.

Count II (§ 1985(3)) should be dismissed with prejudice because to the extent Plaintiffs are claiming First and Fourteenth Amendment deprivations, it requires state actor involvement and Defendants are private parties. This deficiency is inherent and cannot be cured by amendment.

Count I (§ 1985(2)) should be dismissed with prejudice to the extent it relies on the first clause of § 1985(2), as no federal proceeding was obstructed. To the extent it relies on the second clause, it should be dismissed with prejudice for the same reason the § 1985(3) claim fails—absence of class-based discriminatory animus.

Counts V and VI (breach of contract and breach of implied covenant) should be dismissed. The lease provision invoked does not create a private right of action

for alleged criminal violations, and the alleged "breaches" are privileged litigation conduct.

Plaintiffs filed three unlawful detainer actions against their tenants and lost all three. Rather than accept those outcomes or seek appellate review, they have filed this action seeking approximately $4 million in damages from the tenants and their lawyers for having the audacity to defend themselves (and win). Every allegation of "racketeering" in the FAC describes routine litigation conduct: filing motions, making legal arguments, examining witnesses, and collecting court-ordered fees. This is not a RICO case, a civil rights case, or a breach of contract case. It is a retaliatory lawsuit by unsatisfied litigants.

Defendants further reserve the right to seek sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 based on the filing of this frivolous action.

DATE:  May 26, 2026                                **Judah Law Group, LC**

_____

Ramsey Judah Attorney for Defendants, Cynthia Carter and Christopher Lopez

.

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF System.

Participants in the case who are registered CM/ECF Users will be served by the CM/ECF System.

I also emailed a copy to Plaintiffs at justiceforthepeopleca@gmail.com as requested by Plaintiffs.

Judah Law Group, LC


By:_____
        Ramsey Judah
        Attorney for Defendants

---

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, Cynthia Carter and Christopher Lopez, certifies that this brief contains 6158 words, which complies with the word limit of L.R. 11-6.1.


DATE:  May 26, 2026                    Judah Law Group, LC


By: _____
       Ramsey Judah
       Attorney for Defendants, Cynthia
       Carter and Christopher Lopez

## DECLARATION REGARDING L.R. 7-3 COMPLIANCE

The undersigned, counsel of record for Defendants, Cynthia Carter and Christopher Lopez, pursuant to L.R. 7-3, declares under penalty of perjury that before bringing the present motion, there was a conference that took place with Plaintiffs on May 24, 2026.  Plaintiffs' position was they would seek leave to amend and Defendants' position was that no amendment can cure the FAC's deficiencies.

DATE:  May 26, 2026                    Judah Law Group, LC

                                       By: _____
                                           Ramsey Judah
                                           Attorney for Defendants, Cynthia
                                           Carter and Christopher Lopez