FILED

2026 JUN -3 AM 10: 07

ST COURT
CALIF.
LES

SHING LUNG LAU,
SIU FAN TSANG,
HOI KAN LAU
6726 Salter ave, Arcadia, CA 91007
Plaintiffs In Pro Se

**United States District Court for the Central District of California**

**Western Division**

| | |
|---|---|
| SHING LUNG LAU, ) | CASE NO. : |
| HOI KAN LAU, ) | **2:26-CV-00305-MWF-AGRx** |
| SIU FAN TSANG ) | |
| ) | Judge: Hon. Michael W. Fitzgerald |
| ) | |
| Plaintiffs, ) | **OPPOSITION TO DEFENDANTS'** |
| ) | **MOTIONS TO DISMISS;** |
| v. ) | **MEMORANDUM OF POINTS AND** |
| ) | **AUTHORITIES;** |
| KEVIN HERMANSEN, ) | **EXHIBITS;** |
| individually and as agent of ) | |
| Cynthia Carter and Christopher ) | |
| Lopez; BEHNAM ) | |
| GHARAGOZLI, individually ) | Date: June 24, 2026 |
| and as agent of Cynthia Carter ) | Time: 10 A.M. |
| and Christopher Lopez; ) | Place: First Street U.S. Courthouse, Los Angeles |
| CYNTHIA CARTER, ) | Courtroom 5A, 5th Floor |
| individually and as principal ) | |
| of Kevin Hermansen and ) | |
| Behnam Gharagozli; ) | |
| CHRISTOPHER LOPEZ, ) | |
| individually and as principal of ) | |
| Kevin Hermansen and ) | |
| Behnam Gharagozli; ) | |
| LAW OFFICE OF KEVIN P. ) | |
| HERMANSEN, P.C.; ) | |
| LAW OFFICES OF ) | |
| BEN GHARAGOZLI ) | |
| ) | |

1

**OPPOSITION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT the plaintiff do hereby opposes Mark Kleiman and Thomas Harvey's motion to dismiss and memorandum (as well as Ramsey Judah's near identical motion to dismiss and exact copy of memorandum) based on this opposition, the attached Memorandum of Points and Authorities, the existing record in this matter, and any such additional authority and argument as may be requested.

In the plaintiff's memorandum attached to this motion, the plaintiff has gone through and debunked the entirety of Mark Kleiman and Thomas Harvey's Motion to Dismiss and Memorandum (by extension, also Ramsey Judah's)

Mark Kleiman and Thomas Harvey's (and Ramsey Judah)'s Motion to Dismiss and Memorandum are filled with numerous **falsehoods** and **fallacies**.

Some valid deficiencies were raised but these are NOT FATAL deficiencies as Mark and Thomas claim to be. The deficiencies raised can be fixed with an amendment.

In the interest of justice, the court should freely give plaintiff leave to amend to fix such deficiencies.

Their **Argument A** is false. It is basically that the plaintiff did not provide enough evidence of the defendants' wrong doings. This is false as the complaint has ample evidence of the defendants' various attorney deceits (a crime under BPC § 6128) and fraudulent misrepresentations (which constitutes as Wire Fraud because they were faciliated by the use of the interent) that caused damage to the plaintiffs.

Their **Argument B** is false. It is basically that the Noerr-Penningto Doctrine protects their clients. This is **false**. As **the Noerr-Pennington doctrine protects people who file petitions/lawsuits in good faith.** And this case is not a case about a **petition/lawsuit** the defendants had filed in the past at all. **The Noerr-Pennington doctrine is not applicable to this case.**

2

Their **Argument C** is true, but the deficiney can be fixed with an amendment. It is basically that the 42 U.S. Code § 1985(2) cause of action fails because allegations of class-based discriminatory animus is missing from the complaint. The plaintiff admits that such is missing from the complaint because the plaintiff did not know it was required. The plaintiff should be granted leave to amend to fix this oversight. Pursuant to Federal Rule of Civil Procedure 15(a)(2), the court "should freely give leave" to amend a pleading "when justice so requires"

Their **Argument D** is false. It is basically that the 42 U.S. Code § 1985(2) cause of action fails as a matter of law due to their **FRAUDULENT citation** of Justice White's sentence in the U.S. Supreme Court opinion in *Carpenters v. Scott*, 463 U.S. 825 (1983)

Mark and Thomas (and Ramsey) literally **CHOPPED** the **second half of the sentence** and hid it, this is **FRAUD BY OMISSION**.

What Mark and Thomas (and Ramsey) cited:

"An alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy"

What the **FULL** SENTENCE is:

"An alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy **or** the aim of the conspiracy is to influence the activity of the State." *Carpenters v. Scott*, 463 U.S. 825 (1983)

The part **CHOPPED** by Mark and Thomas (and Ramsey) : "**or the aim of the conspiracy is to influence the activity of the State**" applies **squarely** to this case.

As such, the 42 U.S. Code § 1985(2) cause of action does **NOT** fail as a matter of law.

Also, the lack of allegation of class-based discriminatory animus (ill-will) and lack of allegation of agreement to the conspiracy are **not** FATAL defects to the 42 U.S. Code § 1985 claims and can be fixed with an amendment. Once such allegations are added to

3

the complaint, the court must take them to be true in a motion to dismiss hearing. And it is the jury's job to fact-find and decide if the allegations are true at the trial. The court should not dismiss the 42 U.S. Code § 1985 causes of action with prejudice without allowing the plaintiff a chance to fix the oversight. Pursuant to Federal Rule of Civil Procedure 15(a)(2), the court "should freely give leave" to amend a pleading "when justice so requires".

Their **Argument E, F, G, H, I** are either debunked or neutralized in the attached memorandum.

Their **Argument J and K** should be **moot** as the plaintiff had always wanted to remove all contract causes of action from the complaint (because the plaintiff does not want to deal with anti-slapp appeals either during or after trial) and failed to do so only because the plaintiff did not know that contract law is state law.

More details about how all their arguments are wrong, fraudulent, or can be fixed with an amendment can be found on the attached Memorandum of Points and Authorities.

As such, the court should dismiss Mark Kleiman and Thomas Harvery's (and Ramsey Judah's) Motion to Dismiss and grant the plaintiff leave to amend to fix the deficiencies that were raised.

May the court dismiss the defendants' motion to dismiss in the interest of justice.

Amen.

Date: June 1, 2026

_____

Shing Lung Lau, plaintiff in pro se

4

## Table of Contents

False Claim that the Noerr-Pennington Doctrine Protects the Defendants.................9

Claim that Plaintiff Failed to Allege a Pattern.................................................11

Claim that the Plaintiff failed to Allege an Enterprise.....................................12

False Claim that the Plaintiff Failed to Allege Predicate Acts........................13

False Claim that there is a Lack of Standing/Causation...................................13

False Statement that Every Allegation of Wrongdoing Describes Routine Litigation Conduct................................................................................................14

Claim that 42 U.S.C. § 1985(3) Requires that a State Actor to be Involved and that the Requirement is not met.................................................................................14

Claim that 42 U.S.C. § 1985(3) Needs the State to be Involved in the Conspiracy....14

Fraud by Omission..............................................................................................15

Noerr-Pennington Doctrine Revisited.................................................................16

Claim that 42 U.S.C. § 1985(2) Requires Class-based Discrimination.........16

Claim that the 42 U.S.C. § 1985(3) Claim Lacked Specificity.......................16

Claim that FAC Failed to Allege Class-Based Discrimination.......................17

Claim that the FAC Failed to Plead Conspiracy with Specificity..................17

Claim that Plaintiffs Failed to Allege Pattern of Racketeering......................17

Claim that Plaintiff Failed to Plead Distinct Enterprises...............................19

Claim that Plaintiff Failed to Plead A Common Purpose...............................20

Claim that "Misrepresentations of the law are not actionable as fraud"..................20

Claim that Emails are Not Wire Fraud.............................................................20

Claim that Fraudulent Litigation Activities Cannot Constitute as RICO Predicate21

Fraudulent Claim that Plaintiffs Proved that the Defendants Had No Intent to Defraud............................................................................................................21

Fraudulent Claim that the Plaintiff Had Contested the Misrepresentations in Real Time................................................................................................................22

**Rooker Feldman Doctrine has Very Narrow Scope and Does Not Apply**....................26

**Fraudulent Claim of Fundamental Defect**....................................................................30

**§ 1985(3) Should Not be Dismissed with Prejudice**....................................................32

**§ 1985(2) Should Not be Dismissed with Prejudice**....................................................33

**FRAUDULENT MISREPRESENTATION AT THE END**...........................................34

**Table of Authorities**

**Case Laws:**

*Baumer v. Pachl*, 8 F.3d 1341, 9th Cir. 1993..................................................................19

*Benavidez*, 993 F.3d at 1143............................................................................................27

*California Motor Transport Co. v. Trucking Unlimited* (1972)......................................11

*Carpenters v. Scott*, 463 U.S. 825 (1983) aka *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983)..............................................................................................................14, 15, 16, 32

*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80 (1957).......13

*CSX Transportation, Inc. v. Robert Gilkison*, No. 09-2135 (4th Cir. 2010).....................30

*Drummond Co. v. Collingsworth* 2:15-CV-506-RDP , 2 (Dec 10, 2024).........................30

*Dwyer v. Regan*, 777 F.2d 825, 828-29 (2d Cir. 1985).................................................13, 33

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.* (1961)...............10

*Flatley v. Mauro*, 39 Cal. 4th 299, 139 P.3d 2, 46 Cal. Rptr. 3d 606 (Cal. 2006)........................................................................................................................9

*Griffin v. Breckenridge* (1971)........................................................................................15

*Kim v Kimm.*, 884 F.3d 98 (2018) ........................................................................21, 24, 31

*Kougasian*, 359 F.3d at 1139–41.....................................................................................27

**Miroth v. County of Trinity**, No. 23-15759 (9th Cir. 2025)....................................27, 28

*Navellier v. Sletten* (2002) 29 Cal.4th 82........................................................................34

Noerr-Pennington Doctrine (*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.* (1961) )...................................................................9, 10, 11, 16, 31, 32

*Paul*, supra, 85 Cal.App.4th at p. 1365.............................................................................9

*Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008).............................26

Rooker Feldman Doctrine ( *Rooker v. Fidelity Trust Co.* (1923) and *District of Columbia Court of Appeals v. Feldman* (1983) )...........................................................26, 27, 28

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974).....13

*Sykes v. Mel Harris & Assocs.*, LLC, 757 F.Supp.2d 413, 418 (S.D.N.Y. 2010)...............30

*United Mine Workers of America v. Pennington* (1965)....................................11

*United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992).............................30

**Statutes**:

18 U.S.C. § 1001.....................................................................22

18 U.S.C. § 1343 Wire Fraud.........................................14, 18, 31

18 U.S.C. § 1957 Money Laundering.............................14, 22, 23, 24

18 U.S.C. § 1962 RICO ACT.........................................29, 30

42 U.S.C. § 1985.........................................14, 15, 16, 32, 33

California Business and Professions Code § 6128 Attorney Deceit....9,14,18, 23, 24,25,31

California Penal Code section 118 Perjury.........................................14

California Penal Code section 127 Subornation of Perjury.........................14

Civil Rights Act of 1964...........................................................33

First Amendment........................................................9, 10, 15, 32

8

## MEMORANDUM OF POINTS AND AUTHORITIES

### False Claim that the Noerr-Pennington Doctrine Protects the Defendants

1. On page 2, line 19 to line 25 of their MTD, Mark and Thomas stated to the effect that their clients' numerous attorney deceits in violation of the CRIMINAL STATUTE BPC § 6128 were entirely of "litigation activities", which are protected petitioning activites subject to the protection of the "Noerr-Pennington Doctrine".

2. First of all, fraudulent misrepresentations, attorney deceits, fraud on the court, etc. are **NOT** considered **legitimate** "litigation activities" as these are specifically barred by Rules 4.1 and 8.4 of the American Bar Assosiciation as well as criminalized by the California Business and Professions Code § 6128 Attorney Deceit Statute.

3. Secondly, cases have concluded that speech that is illegal as a matter of law are not protected speech: "We agree with Paul [[*Paul*, supra, 85 Cal.App.4th at p. 1365.] that section 425.16 **cannot be invoked** by a defendant whose assertedly protected activity is **illegal as a matter of law** and, for that reason, **not protected by constitutional guarantees of free speech and petition**" *Flatley v. Mauro*, 39 Cal. 4th 299, 139 P.3d 2, 46 Cal. Rptr. 3d 606 (Cal. 2006)

4. Thirdly, the Noerr-Pennington Doctrine protects **PETITIONING**.

5. **The Noerr-Pennington doctrine protects people who file petitions/lawsuits in good faith.**

6. Petitioning activity in court consists of filing a formal written petition or complaint seeking **a redress of grievances**.

7. ONLY the plaintiff in a case is called the **petitioner. That has been the case for centuries if not longer.**

8. The **First Amendment** is as follows:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press;

9

or the right of the people peaceably to assemble, and to **petition** the Government for **a redress of grievances**.

9. The meaning of the word of "**petition**" in the First Amendment is the **filing of a complaint, aka a petition**, or other similar activities.

10. The defendants have never engaged in petitioning activity guaranteed under the **First Amendment**. All they have ever done is **defend** against **the plaintiffs' petitioning activities**. The defendants' activities in mounting defenses against the **plaintiffs' petitioning activites** were **due process** activities guaranteed under the **Fourteenth Amendment**.

11. This case filed against the defendants was **NOT** because the defendants filed a petition / lawsuit.

12. The Noerr-Pennington Doctrine would only be applicable to the defendants if this case was because the defendants had file a petition/lawsuit previously and is then being sued as a result of the petition they filed.

13. It makes no sense for the Noerr-Pennington Doctrine to be applicable to the defendants when they had **NEVER** filed any petition at all and this case is not about any petition the defendants had filed in the past.

14. Defendants **NEVER INTITATED** a petition to the government by filing a lawsuit is **NOT** protected by the Noerr-Pennington Doctrine at all.

15. The defendants had not engaged in "petition" as pursuant to the meaning in the **FIRST AMENDMENT**.

16. **The defendants are not defending their filing of a petition/lawsuit in this case.** The Noerr-Pennington doctrine simply does not apply to this case as this case is **NOT the plaintiff suing the defendants because the defendants had previously filed a petition/lawsuit.**

17. Besides common sense, evidence that Noerr-Pennington Doctrine only protects the those who have filed petitions are found in all case laws that involve the Noerr-Pennington Doctrine, these include: *Eastern Railroad Presidents Conference v.*

*Noerr Motor Freight, Inc.* (1961), *United Mine Workers of America v. Pennington* (1965), *California Motor Transport Co. v. Trucking Unlimited* (1972), etc.

18.    All applications of the Noerr-Pennington Doctrine were to protect someone who **INITIATED** or filed petitions/lawsuits.

19.    Further evidence that the Noerr-Pennington Doctrine applies exclusively to petitioners that filed petitions/lawsuits is that the SHAM EXCEPTION only applies to petitioners that filed petitions/lawsuits. There is **no equivalent exception** for defendants that fraudulently defended against other's petitioning.

20.    Mark Kleiman and Thomas Harvery is deceiving the court that the Noerr-Pennington Doctrine protects their clients when they **KNOW** their clients had **NEVER** filed any sort of petition (for themselves) and that this case is about such a petition.

**Claim that Plaintiff Failed to Allege a Pattern**

21.    On page 3, line 1 to line 5 of their MTD, Mark and Thomas claimed a "Failure to Allege a Pattern" because there is but a "**single** dispute", "**single** tenancy and eviction action", "**single** set of victims"

22.    This is **fraudulent** and **false**.

23.    There were **multiple** disputes and **multiple** eviction actions, each with their own cause of action that differed from other disputes' own cause of action, with three different plaintiffs in the different disputes. There were multiple victims as well.

24.    Due to res judicata, the SAME cause of action cannot be litigated again; if the different disputes have the same cause of action, the state court would have dismissed the cases for that.

25.    **Dispute #1** The case LASC Case No. 23PDUD01863, filed by Siu Fan Tsang, took place from June of 2023 to April 2024, involved an owner move-in case cause of action; for which Siu Fan Tsang lost $46,901 to the defendants due to the defendants' various attorney deceit committed in court and in filed court documents, faciliated by the use of the internet.

11

26.    **Dispute #2** The case LASC Case No. 24PDUD01782, filed by Hoi Kan Lau, which took place from April of 2024 to August 2024, involved the defendants Christopher Lopez and Cynthia Carter refusing to pay the unpaid rent of $11,728.80, for the period of: 01/01/2024 through 04/30/2024 (see Exhibit #1 for the pay rent or quit notice); for which Hoi Kan Lau lost $32,385 to the defendants due to the defendants' attorney deceit committed in court and in filed court documents, faciliated by the use of the internet.

27.    **Dispute #3** The case LASC Case No. 24PDUD04392, filed by Siu Fan Tsang, which took place from November of 2024 to Septmber of 2025, involved the defendants Christopher Lopez and Cynthia Carter refusing to pay the unpaid rent of $2,638.98 for the period of 11/4/2024 to 11/30/2024 (see Exhibit #2 for the pay rent or quit notice); for which Siu Fan Tsang lost ~$116,405 to the defendants. This is money that would not have been lost if defendant Kevin Hermansen had not committed attorney deceit back in August 1st, 2024 in LASC Case No. 24PDUD01782.

28.    **Dispute #4** The case LASC Case No. 26PDUD00798, filed by Shing Lung Lau, took place from March 2026 to PRESENT, involved the defendants Christopher Lopez and Cynthia Carter refusing to pay the unpaid rent of $11,728 for the period of 11/1/2025 to 2/28/2026 (see Exhibit #3 for the pay rent or quit notice).

29.    The above lawsuits were multiple disctinct disputes and multiple eviction actions that involved **MULTIPLE DIFFERENT VICTIM** plaintiffs; each lawsuit/dispute has their own cause of action that differed from other disputes' own cause of action. Even if there were 1,000 victims, it can be called a "single set of victims" by the defense, as they are all victimized by the attorney defendants.

### Claim that the Plaintiff failed to Allege an Enterprise

30.    On page 3, line 6 to line 9 of their MTD, Mark and Thomas FRAUDULENTLY claimed a failure to allege an enterprise; "Failure to Allege an Enterprise".

12

31.    The FAC clearly alleges that there are association-in-fact enterprises A, B, C, D that are **distinct** from the defendants' themselves individually.

32.    On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Dwyer v. Regan*, 777 F.2d 825, 828-29 (2d Cir. 1985). Further, the complaint should be **liberally construed** and the allegations in the complaint should be considered in the **light most favorable to plaintiffs**. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974). A motion to dismiss will be granted only if it appears to be **certain** that the plaintiff is entitled to no relief under any set of facts which could be proved in support of the claim made. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80 (1957).

33.    As such, the court should accept that there is nothing wrong with the plaintiff's allegations of the existence of association-in-fact enterprises A, B, C, D.

**False Claim that the Plaintiff Failed to Allege Predicate Acts**

34.    On page 3, line 10 to line 16 of their MTD, Mark and Thomas falsely claimed that there was a failure to allege predicate acts

35.    In the FAC, the plaintiff alleged more than a dozen instances of fraudulent misrepresentations that lead to the defendants unlawfully gaining funds from the different plaintiffs on THREE separate occassions; and that such wire fraud schemes were faciliated by the use of the internet.

36.    On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Dwyer v. Regan*, 777 F.2d 825, 828-29 (2d Cir. 1985). As such, the court should accept that the plaintiff's allegations of the predicate acts are true.

**False Claim that there is a Lack of Standing/Causation**

37.    On page 3, line 18 to line 2 of their MTD, Mark and Thomas FRAUDULENTLY claimed that there is a lack of standing.

38.   There is no **unforeseeable** intervening cause, all the economic **damages** the plaintiffs suffered were FORESEEABLE as a direct result of the defendants' attorney deceits and wire frauds.

**False Statement that Every Allegation of Wrongdoing Describes Routine Litigation Conduct**

39.   On page 4, line 22 to line 25 of their MTD Memorandum, Mark and Thomas **FRAUDULENTLY** stated that "every allegation of wrongdoing describes **routine** litigation conduct—filing motions, making legal arguments, serving notices, examining witnesses, and collecting court-ordered fees."

40.   There were multiple described instances of fraudulent misrepresentations that were the crimes of ATTORNEY DECEIT (in violation of criminal statute BPC § 6128), PERJURY (in violation of penal code section 118), SUBORNATION OF PERJURY (in violation of penal code section 127), WIRE FRAUD (in violation of 18 U.S.C. § 1343), MONEY LAUNDERING (in violation of 18 U.S.C. § 1957).

41.   These are NOT **routine** litigation conduct, these are **illegal activities** barred by criminal statutes.

**Claim that 42 U.S.C. § 1985(3) Requires that a State Actor to be Involved and that the Requirement is not met**

**Claim that 42 U.S.C. § 1985(3) Needs the State to be Involved in the Conspiracy**

42.   On page 5, line 8 of their MTD Memorandum, Mark and Thomas falsely stated that "42 U.S.C. § 1985(3) claims require a state actor be involved---**a condition not met here"**

and

43.   On page 15, line 4 of their MTD Memorandum, Mark and Thomas claimed that *Carpenters v. Scott*, 463 U.S. 825 (1983) held that 42 U.S.C. § 1985(3) "does not

14

reach purely private conspiracies aimed at **First Amendment** rights" and that "an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the **State is involved in the conspiracy.**"

44.     Not only did the U.S. Supreme Court established in *Griffin v. Breckenridge* (1971) that the statute reaches **purely private conspiracies**; as long as there is a class based discrimination.

45.     As a matter of fact, **a state actor was involved.** In *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983), aka *Carpenters v. Scott,* 463 U.S. 825 (1983)

Fifth Circuit Justice White **Held** that "An alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy **or the aim of the conspiracy is to influence the activity of the State.**

46.     42 U.S.C. § 1985(3) applies if **"the aim of the conspiracy is to influence the activity of the State."** With the **state actor** being the one being deceived and subject to undue influence.

47.     The numerous attorney deceits (fraud on the court) committed by Kevin Hermansen and Behnam Gharagozli in their wire fraud schemes to defraud the plaintiffs out of a lot of money falls precisely into **"the aim of the conspiracy is to influence the activity of the State"** as stated by Justice White.

48.     As such, there is a state actor, the Superior Court acted as the one that was deceived by the defendants' **"conspiracy" "to influence the activity of the State".**

### Fraud by Omission

49.     Mark Kleiman and Thomas Harvery's statement that it is "not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy." (Page 15 line 10 of the MTD Memorandum) is what is called **Fraud by Omission.**

50.     They **FRAUDULENTLY omitted** the part of Justice White's statement in the *Scott* case after the **OR** word.

51.     Mark and Thomas purposedly hid **"or the aim of the conspiracy is to influence the activity of the State"** part of the citation from their entire MTD in order that this court may arrive at the wrong conclusion.

52.     This court should not be fooled by Mark Kleiman and Thomas Harvery's **"fraud by omission"** trick.

### Noerr-Pennington Doctrine Revisited

53.     From page 10, line 15 to page 12, line 18 of their MTD Memorandum, they falsely claimed that Noerr-Pennington applies. This has already been debunked previously.

### Claim that 42 U.S.C. § 1985(2) Requires Class-based Discrimination

54.     From page 12, line 19 to page 14, line 8 of their MTD Memorandum, Mark and Thomas stated to the effect that 42 U.S.C. § 1985(2) requires allegations of class-based discrimination and that plaintiff failed to allege such discrimination.

55.     The plaintiff did not know that such allegations of class-based discrimination animus were needed. The court should grant the plaintiff leave to amend to fix this.

### Claim that the 42 U.S.C. § 1985(3) Claim Lacked Specificity

56.     From page 14, line 9 to page 16, line 18 of their MTD Memorandum, Mark and Thomas stated to the effect that the plaintiff failed to "specify how Defendants' alleged conduct violated § 1985(3)"

57.     The plaintiff agrees that that may be true. This can be fixed easily, leave to amend should be granted.

16

**Claim that FAC Failed to Allege Class-Based Discrimination**

58.    On page 15, line 22 of their MTD Memorandum, Mark and Thomas went on to claim that the plaintiff failed to allege Class-Based Discriminatory Animus.

59.    The plaintiff concurs that that was an oversight. The court should allow leave to amend.

**Claim that the FAC Failed to Plead Conspiracy with Specificity**

60.    On page 16, line 19 of their MTD Memorandum, Mark and Thomas went on to claim that the plaintiff failed to plead the conspiracy with specificity.

61.    The plaintiff admit that may be true. The court should grant leave to amend.

_____

62.    On page 17, line 1 of their MTD Memorandum, Mark and Thomas went on to claim that the plaintiff failed to allege and prove that there was "an agreement" to the conspiracy.

63.    The plaintiff admit that may be true. The court should allow leave to amend.

**Claim that Plaintiffs Failed to Allege Pattern of Racketeering**

64.    From page 17, line 9 to page 19 line 11 of their MTD Memorandum, Mark and Thomas stated to the effect that the plaintiff failed to allege a Pattern of Racketeeting Activity because there is a lack of continuity as there is a "finite group of victims" and that the defendants' actions "were all directed toward the singular, **lawful** goal of defending the Tenant Defendants and collecting awarded fees. This does not constitute long-term criminal conduct"

65.    First of all, this is practically an ADMISSION OF GUILT, they in effect conceded that there were indeed criminal conduct.

17

66. Second of all, there is **both** closed-ended continuity and open-ended continuity. A period from 2023 to 2026 is considered long-term. Furthermore, the plaintiffs Hoi Kan Lau and Siu Fan Tsang no longer wish to have anything to do with the property in question. This is the RICO **Closed-Ended Continuity**. Closed-Ended in regards to the plaintiffs Hoi Kan Lau and Siu Fan Tsang. That the plaintiff Shing Lung Lau acquired an interest on 10/8/2026 from the other co-plaintiffs and tried to get the property back from the defendants and Kevin Hermansen continues to be involved is proof of **Open-Ended Continuity**.

67. Thirdly, there is nothing **LAWFUL** about committing attorney deceit and wire fraud in violation of BPC § 6128 and 18 U.S. Code § 1343 in order to unduly influence the court.

68. Fourthly, there is **continuity** due to the attorney defendants continuing partnership and commission of attorney deceit and wire fraud.

69. The 4 lawsuits filed against the defendants were multiple disputes and multiple eviction actions that involved **MULTIPLE DIFFERENT** plaintiffs (each of whom were victimized in their own lawsuit(s)). Each lawsuit/dispute has their own cause of action that differed from other disputes' own cause of action. Res judicata demand that it be so. These are all **DIFFERENT EPISODES**.

70. As is shown by Kevin Hermansen's involvement in the current UD case 26PDUD00798 after the plaintiff SHING LUNG LAU acquired an interest in the property only on **October 8, 2025.**

71. There is also **infintely more victims** as even after the plaintiff would have sold the property to others, the defendant Kevin Hermansen would have continued to use attorney deceit to win cases against the new owners ad infinitum as the lease agreement that would be inherited by the new owner has an **uncapped** attorney's fee clause and Kevin Hermansen can make a lot of money by using attorney deceit/wire fraud to win.

72. SHING LUNG LAU is a NEW victim of the defendant Kevin Hermansen **continued involvement** and his continuing attorney deceit.

18

73.    The plaintiff is also aware of **OTHER VICTIMS** of the defendants Kevin Hermansen and Behnam Gharagozli's propensity to commit attorney deceit and wire fraud. One of which the plaintiff has spoken to, a gentleman by the name of John Metri.

74.    If the court requires that **OTHER VICTIMS** be provided to prove that there is a **pattern of racketeering activity**, then the plaintiff can readily do so after discovery begins.

**75.    Open Ended Continuity Can Also Be Established by Showing Defendant Commits Predicate Acts As "Regular Way of Doing Business",** the numerous fraudulent misrepresentations and attorney deceit the defendants Kevin Hermansen and Behnam Gharagozli committed from 2023 to 2026 establishes that.

76.    The defendants' own records in other lawsuits would also prove such **"Regular Way of Doing Business".**

### Claim that Plaintiff Failed to Plead Distinct Enterprises

77.    On page 20 of their MTD Memorandum, Mark and Thomas stated to the effect that the plaintiff failed to plead a distinct Enterprises with distinct structure

78.    This is false.

79.    The complaint alleged 4 distinct association-in-factt enterprises that are distinct from the persons involved. The structure is association-in-fact.

80.    *Baumer v. Pachl*, 8 F.3d 1341, 9th Cir. 1993 is a landmark U.S. federal appellate case that established limits on attorney liability under the Racketeer Influenced and Corrupt Organizations Act (RICO).

81.    Baumer *v. Pachl* is **NOT** applicable to this case as the attorneys in *Baumer v. Pachls* did nothing more than routine legal work for their clients. Whereas in this case, the Association-in-fact Enterprise of the partnership of Kevin Hermansen and Behnam Gharagozli are the true **MASTERMINDs** of the various attorney deceit and wire fraud schemes alleged in the complaint.

19

**Claim that Plaintiff Failed to Plead A Common Purpose**

82.    From page 20 to page 21 of their MTD Memorandum, Mark and Thomas stated to the effect that the plaintiff failed to plead a common purpose beyond self-interest.

83.    The is false.

84.    The complaint alleged more than just simple **Economic enrichment.** All the enterprises alleged share the common purpose of engaging in illegal activity to win cases.

85.    The attorney defendants especially, have partnered together in many cases in the past and will continue to do so, for the common purpose of engaging in illegal activity to win cases.

86.    The defendants Christopher Lopez and Cynthia Carter are married and form an enterprise because of that.

87.    If this is not apparent in the FAC, the court should allow the complaint to be amended.

**Claim that "Misrepresentations of the law are not actionable as fraud"**

88.    On page 22 line 11 to line 18, Mark and Thomas stated to the effect that the plaintiff failed to plead predicate acts because "Misrepresentations of the law are not actionable as fraud"

89.    This may be true, but those allegations are only a small subset of the numerous fraudulent misrepresentations and attorney deceit the defendants committed.

90.    Those can be removed from the complaint and there would still be a lot other misrerepsentations.

**Claim that Emails are Not Wire Fraud**

91.    On page 22 line 19 to page 23 line 10, Mark and Thomas stated to the effect that emails are not wire fraud.

92.    This is false.

20

93.    Emails are wire fraud when used to faciliate a wire fraud scheme.

**Claim that Fraudulent Litigation Activities Cannot Constitute as RICO Predicate**

94.    On page 22 line 19 to page 23 line 10, Mark and Thomas stated to the effect that *Kim v Kimm.*, 884 F.3d 98 (2018) says "that allegations of frivolous, fraudulent, or baseless litigation activities—**without more**—cannot constitute a RICO predicate act."

95.    This is **misleading**.

96.    United States Court of Appeals, Second Circuit Judge Sack, **CLARIFIED** at the **very end** of the *Kim v Kimm.* published opinion, that:

"We **decline** to reach the issue of whether all RICO actions based on litigation activity are categorically meritless. We conclude **only** that where, as here, a plaintiff alleges that a defendant engaged in **a single frivolous, fraudulent, or baseless lawsuit,** such litigation activity **alone** cannot constitute a viable RICO predicate act."

97.    The *Kim v Kimm* case only held that "**a <u>single</u> frivolous, fraudulent, or baseless lawsuit**" "**<u>alone</u>** cannot constitute a viable RICO predicate act." This is not applicable to this case as there is more than a single lawsuit involved.

**Fraudulent Claim that Plaintiffs Proved that the Defendants Had No Intent to Defraud**

98.    On page 23 line 11, Mark and Thomas stated "Plaintiff's Allegations Prove Defendants Had No Intent to Defraud" and then went on to say that the plaintiff had not **relied** on the fraudulent misrepresentations as proof that there was "No Intent to Defraud"

99.    This is a conman's trick.

100.   They conflate lack of plaintiff's "reliance" with lack of "intent to defraud" and then tried to **trick the court** into thinking that there was no "intent to defraud" by proving that there was no reliance.

101.   Their statement "Plaintiff's Allegations Prove Defendants Had No Intent to Defraud" is **FRAUDULENT**.

21

102. No reasonable person would think that the attorney defendants had no intent to defraud when they committed all the attorney deceit listed in the complaint and then unlawfully demanded and gained money from the crimes.

103. Mark and Thomas just committed the crime of making false statements in federal court in violation of 18 U.S.C. § 1001.

## Fraudulent Claim that the Plaintiff Had Contested the Misrepresentations in Real Time

104. On page 23 line 19, Mark and Thomas stated "Plaintiffs were not deceived by any of the alleged misrepresentations— they contested each one in real time before the California court."

105. This is simply not true. In most cases, the misrepresentations were not at all, or they were not contested in real time, only in documents filed by the plaintiff.

106. In the case of the misrepresentations / attorney deceit committed by Kevin Hermansen in person in court on August 1, 2024, the plaintiffs **were not even aware** of the misrepresentations until many months later when a transcript was made of the court recordings.

107. The attorney defendants also made sure that there was no contest in the court by kicking out the interpreter Nathan Huang with a false accusation to deprive Hoi Kan Lau of competent interpretation.

108. Mark and Thomas just committed the crime of making false statements in federal court in violation of 18 U.S.C. § 1001.

---

109. On page 23 line 25 to page 24 line 6, Mark and Thomas stated that "The § 1957 Money Laundering Predicates Fail as a Matter of Law" and that "This theory is fatally circular and legally untenable."

22

110.   This is false. There was no circularity.

111.   The attorney defendants did UNLAWFULLY gained (and then transferred) funds from committing attorney deceits (in violation of BPC § 6128 and federal Wire Fraud statute)

112.   As such, they did commit money Money Laundering in violation of 18 U.S. Code § 1957; the statute applies even when the unlawful act committed to gain the funds is state law.

113.   There is no circularity. It is very straight forward and very simple.

_____

114.   From page 24 line 19 to page 25 line 5, Mark and Thomas stated to the effect that the funds the attorney defendants gained from the plaintiffs by committing attorney deceit and wire fraud are **NOT** "profits derived from unlawful activity"

115.   This is false.

116.   All reasonable persons can see that the funds the attorney defendants gained from the plaintiffs by committing attorney deceit and wire fraud are **INDEED** "profits derived from unlawful activity"

_____

117.   On page 24 line 23, Mark and Thomas stated "Because a valid state court judgment serves as an intervening legal cause, the funds collected are not 'criminally derived property' and cannot form the basis of a money laundering predicate."

118.   This is false. The state court judgments were entirely foreseeable and were a direct result of the attorney defendants' crimes of attorney deceit and wire frauds.

119.   Mark and Thomas also failed to provide any statute or case law or anything at all as support.

120.   The court should disregard their illogical and **unsupported** statement.

23

121. On page 25 line 2, Mark and Thomas stated "As **demonstrated** above, no fraud occurred. The § 1957 allegations thus depend entirely on the viability of the wire fraud allegations, which fail for all the reasons set forth above."

122. This is false.

123. Attorney deceit, Fraud on the court, and wire fraud did indeed occurred; all **faciliated** by the use of the internet.

124. Mark and Thomas did **NOT** "demonstrate" that no wire fraud occurred. They only said that the the plaintiff did not rely on the misrepresentations as support that no fraud occurred. However, reliance is not an element required in Wire Fraud.

125. They also cited *Kim v Kimm.* to support their argument that fraudulent litigation activity is not allowed to be a RICO predicate. But the last paragraph of the *Kim v Kimm.* publish court opinion clarified that the court only meant that **one** single fraudulent lawsuit is not enough to be used as RICO predicate. As such, *Kim v Kimm.* is not applicable to this.

126. Also, their statement that "the § 1957 allegations thus depend entirely on the viability of the wire fraud allegations" is untrue.

127. The § 1957 allegations also depend on violations of California BPC § 6128 Attorney Deceit Statute. The attorney defendants are demonstrably guilty of criminal Attorney Deceit.

128. § 1957 applies even when the crime is state crime.

129. On page 25 line 7, Mark and Thomas stated "Plaintiffs' Arguments are Impermissibly Circular Moreover, the § 1957 predicates are alleged in an impermissibly circular fashion: the money laundering is predicated on the wire fraud, and the wire fraud

24

is alleged to be part of the RICO pattern that the money laundering is meant to bolster. This failed bootstrapping attempt does not satisfy RICO's requirements."

130. This is false.

131. There is no **circularity**.

132. The wire fraud is part of RICO.

133. The money laundering is predicated on attorney deceit (in violation of California BPC § 6128) as well as wire fraud.

134. The money laundering is also part of RICO.

135. There is nothing "circular" about the above.

136. Mark Kleiman and Thomas Harvery also failed to provide any statute or case law or anything to support that this "does not satisfy RICO's requirements."

_____

137. From page 25 line 13 to page 26 line 12, Mark and Thomas stated to the effect that there was no proximate cause to the plaintiffs' economic injuries suffered as a result of the attorney defendants' Wire Fraud schemes.

138. This is false.

139. **Foreseeability** is the primary test used to **establish** proximate cause. It asks whether a reasonable person in the defendant's situation could have predicted that their actions might lead to the harm that ultimately occurred.

140. And here in this case, it is obvious that the economic injuries the plaintiffs suffered were all **FORESEEABLE** as a result of the attorney defendants' attorney deceit and wire fraud schemes. The court judgments were FORESEEABLE and entirely predictable and was actively **SOUGHT AFTER** by the attorney defendants.

141. Defendants are liable for all foreseeable damages.

142. If this is not shown in the FAC, then this can be corrected.

25

143. On page 26 line 2, Mark and Thomas stated "their alleged damages are the direct result of the adverse judgments entered by the state court, not any "fraud" by Defendants."

144. This is not true.

145. The ENTIRELY FORESEEABLE adverse judgments were a direct result of the attorney defendants' attorney deceit and wire fraud crimes. This makes the plaintiffs' damages a **direct result** of the attorney defendants' attorney deceit and wire fraud crimes.

146. There **EXISTS a CLEAR and UNBROKEN line** connecting the defendants' illegal conducts (the predicate acts) to the harm suffered.

147. For example, a shooter who kills a pregnant woman is also **directly responsible** for the death of the unborn child, as not only is the result entirely **foreseeable**, there is also a **CLEAR and UNBROKEN line** connecting the illegal conduct (shooting the woman) to the harm suffered by the unborn child.

**Rooker Feldman Doctrine has Very Narrow Scope and Does Not Apply**

148. On page 26 line 6, Mark and Thomas stated "Under the Rooker Feldman doctrine and principles of causation, a plaintiff cannot establish RICO standing by claiming that a state court judgment was procured by fraud. *Reusser v. Wachovia Bank,* N.A., 525 F.3d 855, 859 (9th Cir. 2008) (federal courts lack jurisdiction to review state court judgments)."

149. This is FRAUDULENT and FALSE.

150. In the *Reusser v. Wachovia Bank* case, the Reussers had sought relief from their state court judgment in state court before seeking relief in federal court. And it is this that barred their seeking of relief from state court judgment in federal court.

26

151. No such thing happened in this case, as the plaintiff's federal causes of actions were never heard in state court.

152. In *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. 2025), the Ninth Circuit Court of Appeals held that the Rooker-Feldman doctrine does **not** bar federal lawsuits seeking money damages for alleged misconduct, such as fabricating evidence, **even** if that misconduct contributed to a prior state court judgment.

153. "The Rooker-Feldman applies only when the federal plaintiff both asserts as her injury **legal error** or errors by the **state court and** seeks as her remedy **relief from the state court judgment**. Here, plaintiffs' claims in their operative second complaint did not seek relief from or reversal of the state court's order" *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. 2025)

154. "a plaintiff alleging fraud by another party in litigation is not alleging a legal error by the state court. See *Benavidez*, 993 F.3d at 1143; *Kougasian*, 359 F.3d at 1139–41." *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. 2025)

155. For Rooker-Feldman to apply, the plaintiff must allege that the state court committed errors. This did not happen in this case, as the allegations of fraud by a party other than the court is not alleging a legal error by the state court.

156. For Rooker-Feldman to apply, the plaintiff must seek relief from the state court judgment. This did not happen in this case.

157. "seek[ing] relief from a state court judgment," Noel, 341 F.3d at 1164, which can implicate Rooker-Feldman, is **not the same thing** as seeking relief that would ameliorate the effects of an adverse state court judgment. In past cases, plaintiffs sought such **offsetting relief in the wake of an unfavorable state court judgment**—and yet we **held Rooker-Feldman did not apply**. See, e.g., Benavidez, 993 F.3d at 1140–41; Kougasian, 359 F.3d at 1137–38; Noel, 341 F.3d at 1152–53." *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. 2025)

158. Thus, the Ninth Circuit Court of Appeals "held Rooker-Feldman did not apply" to lawsuits seeking "offsetting relief in the wake of an unfavorable state court judgment"

159. "As we reasoned in one case, "[a]lthough Plaintiffs sought relief designed to remedy injuries suffered from a state court judgment, they did not allege before the court that the state court committed legal error, nor did they seek relief from the state court judgment itself." *Bell*, 709 F.3d at 897. Thus, **Rooker-Feldman did not preclude jurisdiction.**" *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. 2025)

160. It is clear from the **2025** *Miroth v. County of Trinity* case that Ninth Circuit Court of Appeals would not held that Rooker-Feldman would apply to THIS CASE as THIS CASE did **not** allege that the state court committed an legal error, **nor** did this case seek relief from the state court judgment itself and "seeking relief that would ameliorate the effects of an adverse state court judgment" is **NOT** the same as seeking relief from the state court judgment.

161. Newer case laws takes precedent over older case laws.

162. *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. **2025**), being very new, would override all older case laws that may say that Rooker-Feldman would apply to THIS CASE.

---

163. On page 26 line 16, Mark and Thomas stated "Moreover, Plaintiffs' own allegations confirm they were not deceived by any of the alleged misrepresentations, as they contested **each one in real time**. Where the alleged victim is fully aware of the supposed fraud and actively opposes it in court, there is no causal connection between the alleged fraud and the resulting injury."

164. This is false.

165. In most cases, the misrepresentations were not contested in **real time** at all.

28

166. In the case of the misrepresentations / attorney deceit committed **by Kevin** Hermansen in person in court on August 1, 2024, the plaintiffs **were not even aware** of the misrepresentations until many months later when a transcript was made of the court recordings.

167. "there is no causal connection between the alleged fraud and the resulting injury." is so obviously **FALSE**. The defendants' attorney deceit and wire fraud directly **caused** the plaintiffs' economic losses.

---

168. On page 26 line 23 of their MTD Memorandum, Mark and Thomas stated "Plaintiffs also seek damages for emotional distress. RICO allows recovery only for injury to 'business or property"

169. This is yet more fraudulent misrepresentation from Mark Kleiman and Thomas Harvey.

170. The FAC states that the plaintiffs only seek to recover **economic damages** under RICO. See page 64 of the FAC, item #293.

---

171. On page 27 line 6 of their MTD Memorandum,, Mark and Thomas stated "Plaintiffs' RICO conspiracy claim under 18 U.S.C. § 1962(d) must be dismissed because it is entirely derivative of the failed substantive claim under § 1962(c)."

172. This is false. The claim under 1962(c) did not fail.

---

29

173. On page 27 line 9 of their MTD Memorandum,, Mark and Thomas stated "A conspiracy claim under § 1962(d) requires an **agreement** to violate one of RICO's substantive provisions"

174. This can be fixed.

_____

175. From page 27 line 18 to page 29 line 22 of their MTD Memorandum, Mark and Thomas stated to the effect that the contract causes of action fails.

176. This is **moot** as the plaintiff had always wanted to remove all causes of action subject to state law and anti-slapp from the complaint.

177. The court should grant the plaintiff leave to amend.

_____

**Fraudulent Claim of Fundamental Defect**

178. On page 30 line 1 of their MTD Memorandum,, Mark and Thomas stated "Counts III and IV (RICO § 1962(c) and § 1962(d)) should be dismissed with prejudice. Plaintiffs have failed to plead a cognizable RICO claim, and the conduct complained of is protected litigation activity. Because every alleged predicate act is protected litigation activity, no amendment can cure the fundamental defect."

179. This is false.

180. There is no uncurable "fundamental defect".

181. Cases such *CSX Transportation, Inc. v. Robert Gilkison*, No. 09-2135 (4th Cir. 2010), *Drummond Co. v. Collingsworth* 2:15-CV-506-RDP , 2 (Dec 10, 2024), *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992), *Sykes v. Mel Harris & Assocs.*, LLC, 757 F.Supp.2d 413, 418 (S.D.N.Y. 2010) did **allow illegal litigation activities** to be used as RICO predicates.

182. A reasonable jury, would and could, find, by clear and convincing evidence, that the attorney defendants committed attorney deceit, wire fraud and other wrongs.

30

183.  Speech that is illegal as a matter of law (in violation of criminal statute California BPC § 6128 as well as 18 U.S. Code § 1343 Wire Fraud) is NOT protected from a RICO claim as illegal speech is not protected speech in the first place.

184.  Mark Kleiman and Thomas Harvery are also mistaken that *Kim v Kimm.* bars illegal litigation activities to be used as RICO predicates. *Kim v Kimm.* merely held that **ONE single** fraudulent lawsuit, "without more", is **not enough** to be used as a RICO predictate.

185.  "We **decline** to reach the issue of whether all RICO actions based on litigation activity are categorically meritless. We conclude only that where, as here, a plaintiff alleges that a defendant engaged in a **single** frivolous, fraudulent, or baseless **lawsuit**, such litigation activity **alone** cannot constitute a viable RICO predicate act"

186.  Note the words **"single" "lawsuit" "alone"**.

187.  Here in this case, there is more than one single lawsuit. This case alleges more than a dozen fraudulent misrepresenations the defendants committed in four different lawsuits, over a span of years.

188.  *Kim v Kimm.* is not applicable to this case.

---

189.  On page 30 line 5 of their MTD Memorandum,, Mark and Thomas stated "The Noerr-Pennington doctrine categorically bars RICO liability for the litigation conduct alleged here. This is not a pleading deficiency that amendment can cure— it is a categorical bar. No amendment can transform protected petitioning activity into racketeering."

190.  Mark Kleiman and Thomas Harvey's fraudulent claim has been expounded upon back in Mark Kleiman's Falsehoods and Fallacies Part 1.

**191.  The Noerr-Pennington doctrine protects people who filed petitions/lawsuits in good faith.**

31

192.    The defendants are not defending their filing of a petition/lawsuit in this case. The Noerr-Pennington doctrine simply does not apply to this case as this case is NOT the plaintiff suing the defendants because the defendants had previously filed a petition/lawsuit.

---

### § 1985(3) Should Not be Dismissed with Prejudice

193.    On page 30 line 12 of their MTD Memorandum, Mark and Thomas stated "Count II (§ 1985(3)) should be dismissed with prejudice because... it requires state actor involvement and Defendants are private parties. **This deficiency is inherent and cannot be cured by amendment.**"

194.    This is false, as well as fraudulent.

195.    As expounded upon in detail back in **Mark Kleiman's Falsehoods and Fallacies Part 7.** Mark Kleiman and Thomas Harvery attempted to **defraud this court with fraudulent omission of Justice White's words after** "An alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy" *(Carpenters v. Scott*, 463 U.S. 825 (1983)) in order to **mislead** this court into thinking that the *Scott* decision barred § 1985(3) in this case.

196.    The **missing words** are **"or the aim of the conspiracy is to influence the activity of the State.**" *Carpenters v. Scott*, 463 U.S. 825 (1983)

197.    Justice White in effect said that **42 U.S.C. § 1985(3) applies if "the aim of the conspiracy is to influence"** the court.

198.    This court should not be **defrauded** by the likes of Mark Kleiman and Thomas Harvery.

32

## § 1985(2) Should Not be Dismissed with Prejudice

199. On page 30 line 18 of their MTD Memorandum,, Mark and Thomas stated "Count I (§ 1985(2)) should be dismissed with prejudice...to the extent it relies on the second clause, it should be dismissed with prejudice for the same reason the § 1985(3) claim fails—**absence** of class-based discriminatory animus."

200. The plaintiff agrees that there was an absence of allegation of class-based discrimination in the FAC. But this can be fixed and is not fatal and the cause of action should not be dismissed with prejudice.

201. The attorney deceit and fraud on the court the defendants committed in August 1, 2026 were clearly class-based discriminaton and ill-will towards Hoi Kan Lau's lack of language proficiency, national origin, race, and mental impairment (due to years of low heart blood flow). Under the Civil Rights Act of 1964, federal courts recognize that discrimination based on an individual's language proficiency, fluency, or native tongue is closely intertwined with **national origin discrimination**; because language is an inherent characteristic of national origin. The defendants' ill-will (animus) is class-based because they will do the same to all people with a similar lack of language proficiency, just to win, even if there is no additional finanical incentive.

202. The jury acts as finder of facts and it should be the jury's job to find if there has been class-based discriminatory ill-will (animus) in the defendants' discrimination.

203. The court, in deciding a motion to dismiss, the allegations of the complaint **must be accepted as true**. *Dwyer v. Regan*, 777 F.2d 825, 828-29 (2d Cir. 1985).

204. The court should, in the interest of justice, grant the plaintiff leave to amend.

_____

205. From page 30 line 15 to page 31 line 2 of their MTD Memorandum,, Mark and Thomas stated to the effect that the contract causes of action should be dismissed because the alleged "breaches" are **privileged** litigation conduct.

33

206. The attorney defendants' various and numerous attorney deceits and wire frauds are **CRIMINAL** in nature and are not privileged nor protected in **federal court.**

207. "Consequently, we will assume that the litigation privilege does **not** bar plaintiffs' breach of contract cause of action." *Navellier v. Sletten* (2002) 29 Cal.4th 82

208. In *Navellier*, the **Supreme Court of California** itself assumed that litigation privilege **does not bar** breach of contract causes of action.

209. But the plaintiff had always wanted to remove all causes of action that would be subject to anti-slapp appeal anyways.

210. The court should grant the plaintiff leave to amend.

---

### FRAUDULENT MISREPRESENTATION AT THE END

211. On page 31 line 8 of their MTD Memorandum, Mark and Thomas stated "Every allegation of 'racketeering' in the FAC describes routine litigation conduct"

**212. CRIMINAL CONDUCT** has **NEVER** been "routine litigation conduct".

Dated: June 1, 2026

_____
Shing Lung Lau, plaintiff in pro se

34

**CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)**

The undersigned, Shing Lung Lau, plaintiff in pro se, certifies that the above Memorandum of Points and Authorities (not including the application itself nor the declaration of Shing Lung Lau, nor the exhibits) contains 6989 words, which complies with the word limit of 7,000 words as provided for in L.R. 11-6.1

Date: June 1, 2026                                    _Shing Lung Lau_
                                                      Shing Lung Lau, plaintiff in pro se

35

# EXHIBIT # 1

**CALIFORNIA PROPERTY LAW GROUP, APC**
A Professional Law Corporation
930 S. La Brea Ave. Suite 204
Los Angeles, CA 90036
Info@capropertylawgroup.com
(323) 282-7969

## 5 DAY NOTICE TO PAY RENT OR QUIT

## TO:  CYNTHIA CARTER and CHRISTOPHER LOPEZ

## AND TO ALL OTHERS IN POSSESSION OF:

## 9705 ARDENDALE AVE., ARCADIA, CA 91007

YOU ARE HEREBY NOTIFIED that pursuant to the lease or rental agreement under which you hold possession of the hereinafter described premises there is now due, unpaid, and delinquent rent in the total sum of **$11,728.80**, for the period of: 01/01/2024 through 04/30/2024.

YOU ARE FURTHER NOTIFIED that within five (5) days after service of this Notice on you, EXCLUDING SATURDAYS, SUNDAYS, AND OTHER JUDICIAL HOLIDAYS, you must pay the amount of said rent in full or quit said premises and deliver up possession of the same to the landlord/agent, as named below, or legal proceedings for unlawful detainer will be filed against you to recover possession of said premises, to declare said lease or rental agreement forfeited and to recover all delinquent rent demanded herein, court costs and attorneys' fees as permitted by law, and possible statutory damages in accordance with California Code of Civil Procedure Section 1174(b).

YOU ARE FURTHER NOTIFIED that by this notice the landlord/agent elects to and does declare a forfeiture of said lease or rental agreement if said rent is not paid in full within the five (5) day period, EXCLUDING SATURDAYS, SUNDAYS, AND OTHER JUDICIAL HOLIDAYS. The premises herein referred to is located at the following location:

9705 ARDENDALE AVE., ARCADIA, CA 91007

**Hoi Kan Lau**
LANDLORD/AGENT

Payment may be made by mail or directly in the following manner:

| | |
|---|---|
| Person to Pay: | **Hoi Kan Lau** |
| Address to Pay: | **6726 Salter Ave.** **Arcadia, CA 91007** |
| Hours: | 9:00 A.M. to 5:00 P.M., Monday through Friday |
| Phone Number: | **7183006010** |

At this time, we have not been informed that your unit is in need of any repairs. If you believe that items need to be corrected, please address those issues in writing and we will immediately inspect and make necessary repairs. If we do not receive any written repair requests, we will assume that there are no items that need to be corrected at this time.

## CALIFORNIA PROPERTY LAW GROUP, APC

A Professional Law Corporation
930 S. La Brea Ave. Suite 204
Los Angeles, CA 90036
Info@capropertylawgroup.com
(323) 282-7969

YOU ARE FURTHER NOTIFIED that California Property Law Group is a debt collector. We are trying to collect a debt that you owe to **Hoi Kan Lau**. We will use any information you give us to help collect the debt.

This debt will be assumed to be valid unless you notify us within 30 days of receipt of this notice that you dispute all or part of the debt. If you notify us in writing within this same 30-day period, we will send you verification of this debt. Upon written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

Date: April 17, 2024

# EXHIBIT # 2

# 5 DAY NOTICE TO PAY RENT OR QUIT

TO:  **CYNTHIA CARTER and CHRISTOPHER LOPEZ
AND TO ALL OTHERS IN POSSESSION OF:
9705 ARDENDALE AVE., ARCADIA, CA 91007**

YOU ARE HEREBY NOTIFIED that pursuant to the lease or rental agreement under which you hold possession of the hereinafter described premises there is now due, unpaid, and delinquent rent in the total sum of **$2638.98**, for the period of: 27 days from 11/04/2024 through 11/30/2024. *Any Money received will be applied to earliest unpaid rent first.*

YOU ARE FURTHER NOTIFIED that within five (5) days after service of this Notice on you, EXCLUDING SATURDAYS, SUNDAYS, AND OTHER JUDICIAL HOLIDAYS, you must pay the amount of said rent in full or quit said premises and deliver up possession of the same to the landlord/agent, as named below, or legal proceedings for unlawful detainer will be filed against you to recover possession of said premises, to declare said lease or rental agreement forfeited and to recover all delinquent rent demanded herein, court costs and attorneys' fees as permitted by law, and possible statutory damages in accordance with California Code of Civil Procedure Section 1174(b).

YOU ARE FURTHER NOTIFIED that by this notice the landlord/agent elects to and does declare a forfeiture of said lease or rental agreement if said rent is not paid in full within the five (5) day period, EXCLUDING SATURDAYS, SUNDAYS, AND OTHER JUDICIAL HOLIDAYS. The premises herein referred to is located at the following location:

9705 ARDENDALE AVE., ARCADIA, CA 91007 (House with 3 bedrooms)

Siu Fan Tsang
LANDLORD

Due to the high amount, payment must be in the form of cashier's check
Payment may be made by mail or directly in the following manner:

| | |
|---|---|
| Person to Pay: | Siu Fan Tsang |
| Address to Pay in Person: | 221 S Curtis Ave, Apt A, Alhambra, CA 91801 |
| Address to Pay by Mail: | 221 S Curtis Ave, Apt A, Alhambra, CA 91801 |
| Hours: | 9:00 A.M. to 5:00 P.M., Monday through Friday |
| Phone Number of Owner: | 415-794-7635 (Cantonese only) |
| | (For English, please contact property manager at 718-300-6010) |

At this time, we have not been informed that your unit is in need of any repairs. If you believe that items need to be corrected, please address those issues in writing and we will immediately inspect and make necessary repairs. If we do not receive any written repair requests, we will assume that there are no items that need to be corrected at this time.
Written repair requests may be send to the property manager at:
Shing Lau, 6726 Salter Ave, Arcadia, CA 91007

*Siu Fan Tsang*
Date: November 5th, 2024

40

# EXHIBIT # 3

# 5 DAY NOTICE TO PAY RENT OR QUIT

TO:    CYNTHIA CARTER and CHRISTOPHER LOPEZ
       AND TO ALL OTHERS IN POSSESSION OF:
       9705 ARDENDALE AVE., ARCADIA, CA 91007

**YOU ARE HEREBY NOTIFIED** that you are to disregard the previous 5 Day Notice to Pay Rent or Quit Demanding 3 months of unpaid rent in the sum of $8,796.60 (that you have failed to pay within the allotted 5 Days) and take notice of this new and updated 5 Day Notice to Pay Rent or Quit demanding 4 months of unpaid rent.

**YOU ARE HEREBY NOTIFIED** that pursuant to the lease or rental agreement under which you hold possession of the hereinafter described premises there is now due, unpaid, and delinquent rent in the total sum of **$11,728.80**, for the period of: from **11/1/2025 through 2/28/2026**.

**YOU ARE FURTHER NOTIFIED** that within five (5) days after service of this Notice on you, EXCLUDING SATURDAYS, SUNDAYS, AND OTHER JUDICIAL HOLIDAYS, you must pay the amount of said rent of **$11,728.80** in full or quit said premises and deliver up possession of the same to the landlord/agent, as named below, or legal proceedings for unlawful detainer will be filed against you to recover possession of said premises, to declare said lease or rental agreement forfeited and to recover all delinquent rent demanded herein, court costs and attorneys' fees as permitted by law, and possible statutory damages in accordance with California Code of Civil Procedure Section 1174(b).

**YOU ARE FURTHER NOTIFIED** that by this notice the landlord/agent elects to and does declare a forfeiture of said lease or rental agreement if said rent is not paid in full within the five (5) day period, EXCLUDING SATURDAYS, SUNDAYS, AND OTHER JUDICIAL HOLIDAYS. The premises herein referred to is located at the following location:

9705 ARDENDALE AVE., ARCADIA, CA 91007 (House with 3 bedrooms and 2 bathrooms)

**YOU ARE FURTHER NOTIFIED** that this notice is not to be read together with any previous notice regarding demand for rent.

**YOU ARE FURTHER NOTIFIED** if you are unclear about anything in this or any other notice(s), or if you or your attorney think this notice is invalid for ANY reason at all (including service), you need to contact the owner Shing Lau at 718-300-6010 (cellphone) immediately; otherwise it shall be considered that this notice was properly served upon and that you understood everything on this notice clearly and that you and your attorney consider this notice to be valid.

      -Shing Lung Lau, the owner and property manager for the property

Due to the high amount of unpaid rent, payment must be in the form of cashier's check
Payment may be made by mail or directly in the following manner:

Person to Pay:         Shing Lung Lau
Address to Pay:       6726 Salter ave., Arcadia, CA 91007
Hours:       9:00 A.M. to 5:00 P.M., Monday through Friday **Must make appointment**
Phone Number of Owner:   718-300-6010 **Must call or message to make appointment**

Due to your previous treatment of trapping Shing Lau on the roof and barring him from making repairs, repairs cannot be conducted at this time. If you believe that items need to be corrected, please send written list of issues, as well as written permission for Shing Lau to enter and make repairs in writing, and we will immediately inspect and make necessary repairs. If we do not receive any written repair requests and written permission, we will assume that there are no items that need to be corrected at this time. Written repair requests may be send to the property owner and property manager at: Shing Lau, 6726 Salter Ave, Arcadia, CA 91007

Date: February 2nd, 2026                _Shing Lung Lau_
                                   Shing Lung Lau, Owner of the property

## PROOF OF SERVICE

I am over the age of 18.

I am a resident of or employed in the county where the mailing occurred; my residence address is : 6726 Salter ave., Arcadia, CA 91007

On 6/3/2026, I emailed the foregoing document(s) described as:

OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES;
EXHIBITS;

Onto the following person(s):
Mark Kleiman, attorney for Kevin Hermansen and his law office and Ben Gharagozli and his law office, mark@krlaw.us
Ramsey Judah, ramsey@judahlawgroup.com
Thomas Harvey, tbh1910@gmail.com
Kevin Hermansen and his law office, kevin@kphlegal.com
Ben Gharagozli and his law office, lobgattorney@gmail.com
Cynthia Carter and Christopher Lopez, cynthia.carter.engr@gmail.com

[X] By Electronic Transmission
    I emailed the defendants the documents.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Date: June 3, 2026

_____
Signature
Shing Lung Lau