FILED

2026 JUN -3 AM 10: 05

DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY___

SHING LUNG LAU,
SIU FAN TSANG,
HOI KAN LAU
6726 Salter ave, Arcadia, CA 91007
Plaintiffs In Pro Se

## United States District Court for the Central District of California

### Western Division

| | |
|---|---|
| SHING LUNG LAU, ) | CASE NO. : |
| HOI KAN LAU, ) | **2:26-CV-00305-MWF-AGRx** |
| SIU FAN TSANG ) | |
| ) | Judge: Hon. Michael W. Fitzgerald |
| ) | |
| Plaintiffs, ) | **OPPOSITION TO DEFENDANTS'** |
| ) | **ANTI-SLAPP MOTIONS;** |
| v. ) | **MEMORANDUM OF POINTS AND** |
| ) | **AUTHORITIES;** |
| KEVIN HERMANSEN, ) | **DECLARATION;** |
| individually and as agent of ) | **EXHIBITS;** |
| Cynthia Carter and Christopher ) | |
| Lopez; BEHNAM ) | |
| GHARAGOZLI, individually ) | Date: June 24, 2026 |
| and as agent of Cynthia Carter ) | Time: 10 A.M. |
| and Christopher Lopez; ) | Place: First Street U.S. Courthouse, Los Angeles |
| CYNTHIA CARTER, ) | Courtroom 5A, 5th Floor |
| individually and as principal ) | |
| of Kevin Hermansen and ) | |
| Behnam Gharagozli; ) | |
| CHRISTOPHER LOPEZ, ) | |
| individually and as principal of ) | |
| Kevin Hermansen and ) | |
| Behnam Gharagozli; ) | |
| LAW OFFICE OF KEVIN P. ) | |
| HERMANSEN, P.C.; ) | |
| LAW OFFICES OF ) | |
| BEN GHARAGOZLI ) | |
| _____ ) | |

1

## OPPOSITION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT the plaintiff do hereby opposes the defendants' anti-slapp motions based on this opposition, the attached Memorandum of Points and Authorities, the existing record in this matter, and any other such additional authority and argument as may be requested.

The basic arguments are thus :

The defendants' anti-slapp motions should be dismissed because of

1. The **FLATLEY ILLEGALITY EXCEPTION** that says that speech that is illegal as a **matter of law** are **not afforded** the protection of the anti-slapp statute.

2. **MOOTNESS**, as the plaintiff will petititon the court for leave to amend the complaint to remove all causes of action subject to anti-slapp; the plaintiff had failed to remove the contract causes of action in the FAC simply because the plaintiff did not know that contract law is state law.

3. The Rooker-Feldman Doctrine is not applicable here because the plaintiff is not seeking the federal court to review nor to modify state court judgments.

More details can be found on the attached Memorandum of Points and Authorities.

May the court dismiss the defendants' anti-slapp motions in the interest of justice.

Amen.

Date: June 1, 2026

_Shing Lung Lau_
Shing Lung Lau, plaintiff in pro se

2

## Table of Contents

**FLATLEY ILLEGALITY EXCEPTION**...................................................................6

**CONCLUSIVE EVIDENCE OF ILLEGALITY**.......................................................9

**Example Criminal Activity # 1**........................................................................10

**Example Criminal Activity # 2**........................................................................12

**Example Criminal Activity # 3**........................................................................13

**MOOTNESS**.......................................................................................................16

**Rooker Feldman Doctrine has Very Narrow Scope and Does Not Apply to This Case**.......................................................................................................................18

**Litigation Privilege Does Not Bar Breach of Contract Claims**........................20

**Table of Authorities**

**Case Laws:**

*1-800 Contracts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 584.................................8

*Benavidez*, 993 F.3d at 1140–41.....................................................................................19

*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1089–1090, 114 Cal.Rptr.2d 825......7, 8

**Flatley v. Mauro**, 39 Cal. 4th 299, 139 P.3d 2, 46 Cal. Rptr. 3d 606 (Cal. 2006).......6, 8, 9

*Fox Searchlight Pictures, Inc. v. Paladino* (**2001**) 89 Cal. App. 4th 294, 305 [106 Cal.

Rptr. 2d 906]...................................................................................................................7, 8

*Kougasian*, 359 F.3d at 1139–41....................................................................................19

*Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 296 (1985).................................................18

**Miroth v. County of Trinity**, No. 23-15759 (9th Cir. 2025)..............................18, 19, 20

*Navellier v. Sletten* (2002) 29 Cal.4th 82......................................................................20

*Noel*, 341 F.3d at 1152–53.............................................................................................19

*Okorie v. Los Angeles Unified School District* (2017) 14 Cal.App.5th 574 [222

Cal.Rptr.3d 475]..................................................................................................................7

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)................17

*Paul*, supra, 85 Cal.App.4th at p. 1365........................................................................6, 9

Rooker-Feldman Doctrine ( *Rooker v. Fidelity Trust Co.*, 261 U.S. 114 (1923) and

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L.

Ed. 2d 206 (1983) )................................................................................................18, 19, 20

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974).....20

*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212, 215, 266 Cal.Rptr. 638, 786 P.2d

365....................................................................................................................................20

*Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081 (9th Cir. 2004)...17

**Statutes:**

18 U.S.C. § 1001....................................................................................................18

18 U.S.C. § 1343 Federal Wire Fraud.....................................................................10

18 U.S.C. § 1957 Monetary Transactions of Funds Derived from Unlawful Acts............10

18 U.S.C. § 1962 RICO..........................................................................................10

California Business and Professions Code - BPC § 6128 Attorney Deceit...............9, 12

California Penal Code Section 118 - Perjury..........................................................10, 13, 16

California Penal Code Section 127 - Subornation of Perjury.................................10, 14, 16

California Penal Code Section 182 - Conspiracy to Commit Crime...............................10

Litigation Privilege (Civil Code section 47(b))......................................................20

Los Angeles County's Eviction Moratorium.........................................................15, 16

## MEMORANDUM OF POINTS AND AUTHORITIES

### FLATLEY ILLEGALITY EXCEPTION
#### (the plaintiff's burden to prove)

1. *Flatley v. Mauro*, 39 Cal. 4th 299, 139 P.3d 2, 46 Cal. Rptr. 3d 606 (Cal. 2006) is a landmark case that everybody knows about in which the Supreme Court of California ruled that speech that is **illegal as a matter of law** is **not protected** under California's anti-SLAPP statute.

2. The **FLATLEY ILLEGALITY EXCEPTION** says that speech that is **illegal** as a matter of law is **constitutionally unprotected** and **cannot** be protected by anti-SLAPP statute.

3. "We agree with Paul [[*Paul*, supra, 85 Cal.App.4th at p. 1365.] that section 425.16 **cannot be invoked** by a defendant whose assertedly protected activity is **illegal as a matter of law** and, for that reason, not protected by constitutional guarantees of free speech and petition" *Flatley v. Mauro*, 39 Cal. 4th 299, 139 P.3d 2, 46 Cal. Rptr. 3d 606 (Cal. 2006)

4. "But if it can be verified '**as a matter of law**' that the defendant's speech or conduct is not protected, for example it is **illegal**, then the burden does **not** shift to the plaintiff to make the minimal merits showing." *Flatley v. Mauro*, 39 Cal. 4th 299, 139 P.3d 2, 46 Cal. Rptr. 3d 606 (Cal. 2006)

5. "We conclude that, consistent with the legislative intent underlying the anti SLAPP statute as revealed by the statutory language, and consistent with our existing anti-SLAPP jurisprudence, a defendant whose assertedly protected speech or petitioning activity was **illegal as a matter of law**, and therefore **unprotected by constitutional guarantees of free speech and petition, cannot** use the anti-SLAPP statute to strike the plaintiff's complaint." *Flatley v. Mauro*, 39 Cal. 4th 299, 139 P.3d 2, 46 Cal. Rptr. 3d 606 (Cal. 2006)

6.    Prong One (Defendant's Burden): The defendant **usually** must make a prima facie showing that the plaintiff's lawsuit arises from a protected activity (e.g., a pre-litigation settlement communication). The **Illegality Exception**: **However**, under Flatley, if the defendant's underlying activity—such as an extortionate threat demanding a monetary payout in exchange for silence—is **illegal** and **constitutionally unprotected** as a matter of law, the defendant **cannot** meet the initial prima facie burden required to invoke the anti-SLAPP statute.

7.    While it is **TRUE** that **GENERALLY**, the moving party in an anti-SLAPP special motion does NOT need to show that their speech is constitutionally protected under the First Amendment as a matter of law:

"The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish [his or] her actions are constitutionally protected under the First Amendment as a matter of law." (*Fox Searchlight Pictures, Inc. v. Paladino* (**2001**) 89 Cal. App. 4th 294, 305 [106 Cal. Rptr. 2d 906].)

"Instead, under the statutory scheme, a court must **generally** presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary. [Citation.] Otherwise, the second step would become superfluous in almost every case, resulting in an improper shifting of the burdens." (*Chavez v. Mendoza* (**2001**) 94 Cal.App.4th 1083, 1089–1090, 114 Cal.Rptr.2d 825.)

The two above citations were also cited in *Okorie v. Los Angeles Unified School District* (2017) 14 Cal.App.5th 574 [222 Cal.Rptr.3d 475] in 2017

8.    Note the word "**generally**" in the *Chavez v. Mendoza* citation.

9.    These are the **GENERAL RULES** in anti-SLAPP cases.

10.    The **FLATLEY ILLEGALITY EXCEPTION (2006)** is not actually in conflict with the above case laws as the **FLATLEY ILLEGALITY EXCEPTION** is a narrow **exception** that is the plaintiff's burden to prove to the court while *Fox Searchlight*

7

*Pictures, Inc. v. Paladino* (2001) and *Chavez v. Mendoza* (2001) talked about the defendants' burden in regards to prong one in **GENERAL**.

11.   These **2001** case laws were also **overridden** by the **2006 FLATLEY ILLEGALITY EXCEPTION** case (*Flatley v. Mauro*, 39 Cal. 4th 299, 139 P.3d 2, 46 Cal. Rptr. 3d 606 (Cal. **2006**) that says when it can be proven (plaintiff's burden) that the defendants' speech were **illegal as a matter of law,** then the first prong **fails** and "the burden does **not** shift to the plaintiff to make the minimal merits showing" *Flatley v. Mauro*, 39 Cal. 4th 299, 139 P.3d 2, 46 Cal. Rptr. 3d 606 (Cal. 2006) and the anti-SLAPP statute does not apply.

12.   "The court held that to meet its burden "the defendant does **not** have to 'establish its actions are constitutionally protected under the First Amendment as a matter of law.  If this were so the **second clause of subdivision (b) of section 425.16 would be superfluous** because by definition the plaintiff **could not prevail** on its claim.'" *Flatley v. Mauro*, 39 Cal. 4th 299, 139 P.3d 2, 46 Cal. Rptr. 3d 606 (Cal. 2006)

13.   *Flatley* (2006) specifically **overrode** the *Fox Searchlight Pictures, Inc. v. Paladino* (2001) and *Chavez v. Mendoza* (2001) conclusions that the defendant does **not** have to establish that their speech is **protected** as WRONG conclusions since that by definition, then the plaintiff **could not prevail** ever.

14.   *Flatley* (2006) established that the defendant indeed does **have to** establish that their speech is **protected** speech, especially when the plaintiff states that the defendants' speech was **illegal as a matter of law**.

15.   "If a defendant concedes or the evidence conclusively establishes the conduct complained of was **illegal, as a matter of law** the defendant **cannot** make a prima facie showing the action arises from protected activity within the meaning of section 425.16"]; *1-800 Contracts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 584

As cited in *Flatley v. Mauro*, 39 Cal. 4th 299, 139 P.3d 2, 46 Cal. Rptr. 3d 606 (Cal. 2006)

8

16. "Applying the statutory procedure thus described to the case before it, the Paul [*Paul*, supra, 85 Cal.App.4th at p. 1365.] court held that "we need not address the second step of section 425.16's two step motion to strike process because we hold, as **a matter of law,** that defendants **cannot meet their burden** on the first step" *Flatley v. Mauro*, 39 Cal. 4th 299, 139 P.3d 2, 46 Cal. Rptr. 3d 606 (Cal. 2006)

17. "But if it can be verified 'as a matter of law' that the defendant's speech or conduct is not protected, for example it is illegal, then the burden does **not** shift to the plaintiff to make the minimal merits showing." *Flatley v. Mauro*, 39 Cal. 4th 299, 139 P.3d 2, 46 Cal. Rptr. 3d 606 (Cal. 2006)

18. The meaning of **EXCEPTION** in a legal sense is that it **OVERRIDES** the **GENERAL RULE** in specific cases. As such, the general rule that the defendants need not prove that their speech is protected speech DOES NOT APPLY.

19. When the plaintiff invokes the **FLATLEY ILLEGALITY EXCEPTION** and then successful conclusively proves that the defendants' speech was illegal as a matter or law, the **FLATLEY ILLEGALITY EXCEPTION <u>OVERRIDES</u>** the **GENERAL RULE** (that the defendants need not prove that their speech is protected speech) and prong one fails.

20. The **FLATLEY ILLEGALITY EXCEPTION** says that speech that is illegal as a matter of law can NOT be protected by anti-SLAPP statute and this exception overrides all other conflicting rulings and statutes that apply to anti-SLAPP cases in **GENERAL**; as it has always been that an exception overrides the general rule.

## CONCLUSIVE EVIDENCE OF ILLEGALITY

21. In the plaintiff's complaint, the plaintiff has provided a lot of evidence that conclusively proves that the defendants' various fraudulent misrepresentations, deceits, wire fraud schemes are illegal as a matter of law because they are multiple counts of violations of criminal statutes such as

1. California Business and Professions Code - BPC § 6128 Attorney Deceit

9

2. California Penal Code Section 118 - Perjury

3. California Penal Code Section 127 - Subornation of Perjury

4. California Penal Code Section 182 - Conspiracy to Commit Crime

5. 18 U.S.C. § 1343 Federal Wire Fraud

6. 18 U.S.C. § 1957 Monetary Transactions of Funds Derived from Unlawful Acts

7. 18 U.S.C. § 1962(a)(b)(c)(d) RICO ACT

22. California Business and Professions Code - BPC § 6128 (subsection b and c omitted because it is not relevant) is as follows:

Every attorney is guilty of a misdemeanor who either:

(a) Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party.

Any violation of the provisions of this section is punishable by **imprisonment** in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both.

23. The statute explicitly outlaws any attorney deceit in the State of California and states that any such violation is a misdemeanor CRIME punishable by imprisonment.

**Example Criminal Activity # 1**

24. In violation of California Business and Professions Code - BPC § 6128 and other statutes, the defendants Kevin Hermansen and Behnam Gharagozli deceived the court that they were **NEVER** notified of the plaintiff's discontinuance of Charles Pok:

25. On January 9th , 2024, in California, County of Los Angeles, in the court document titled "OPPOSITION TO MOTION TO SET ASIDE JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES"; **on page 2 line 9**, the defendants Kevin Hermansen and Behnam Gharagozli fraudulent misrepresented that "However, Defendants were **never** notified of Plaintiff's alleged discontinuance of Mr. Pok." See **Exhibit #3**

10

26. The defendant Kevin Hermansen also said so in person in court to that effect.

27. This specific fraudulent misrepresentation was fraudulent and illegal as a matter of law because evidence shows that the defendants Cynthia Carter and Christopher Lopez were mailed the notice about Charles Pok via certified mail on 10/5/2023 and Behnam Gharagozli was emailed the same on 10/9/2023. See **Exhibit #1** and **Exhibit #2**

28. **Exhibit # 1** and **Exhibit #2** include a copy of the letter mailed to the defendants Christopher Lopez and Cynthia Carter via certified mail on 10/5/2023 clearly telling that Charles Pok was no longer the plaintiff's attorney. Also included are the certified mail receipt and a proof of service dated 10/5/2024.

29. Also included are the **10/9/2023** email of the 10/5/2023 letter (informing the defendants Christopher Lopez and Cynthia Carter of the plaintiffs' discontinuance of Charles Pok) to the defendant Behnam Gharagozli's email address lobgattorney@gmail.com

30. As the defendants Christopher Lopez and Cynthia Carter's legal representative on October 2023, Behnam Gharagozli's receipt of the letter via email on 10/9/2023 (informing the defendants Christopher Lopez and Cynthia Carter of the plaintiffs' discontinuance of Charles Pok) show that he clearly knew that the defendants were indeed "notified of Plaintiff's alleged discontinuance of Mr. Pok." and thus "However, Defendants were never notified of Plaintiff's alleged discontinuance of Mr. Pok." is an act of attorney deceit committed by the attorney duo of Behnam Gharagozli and Kevin Hermansen.

31. Behnam Gharagozli was even called on 10/10/2023 at 11:09 AM to confirm if he had received the letter (informing the defendants Christopher Lopez and Cynthia Carter of the plaintiffs' discontinuance of Charles Pok) and Behnam Gharagozli did confirm receipt of the letter. See **phone records** and **affidavit** in last 2 pages of **Exhibit #1**.

11

32.    Evidence conclusively proves that the defendants' statement of "However, Defendants were never notified of Plaintiff's alleged discontinuance of Mr. Pok." in court document as well as in person in court is indeed fraudulent and an act of attorney deceit in violation of criminal statute BPC § 6128.

### Example Criminal Activity # 2

33.    In violation of California Business and Professions Code - BPC § 6128 and other statutes, the defendant Kevin Hermansen deceived the court that the plaintiff Hoi Kan Lau **"don't visit"** and **"doesn't go there"** 6726 Salter ave., Arcadia, CA 91007 and as a result, all of the defendants won substantial monies and other ill gotten gains from the plaintiffs:

34.    On August 1st, 2024, in California, County of Los Angeles, in courtroom Dept. R of the Pasadena Courthouse, the defendant Kevin Hermansen fraudulent misrepresented that "Kevin Hermansen: ...They [Hoi Kan Lau and Siu Fan Tsang] **don't visit** him [Shing Lung Lau] because of the conflict with his [Shing Lung Lau] wife". See **page 30 line 5** of the August 1st, 2024 transcript in **Exhibit #4**

35.    On **page 33, line 18** of the August 1st, 2024 transcript (**Exhibit #4**):

Kevin Hermansen: And Mr. Hoi Kan Lau **doesn't go there** [6726 Salter ave].

36.    This is attorney deceit as Hoi Kan Lau did visit and did go there; 6726 Salter ave.

37.    On **page 31, line 25** of the August 1st, 2024 transcript (**Exhibit #4**):

Judge William Dodson: ...we're taking it with evidence. And the witness says that this gentleman [Hoi Kan Lau] **never ever goes** there because he can't drive. That's the evidence.

38.    It is apparent that the court (Judge William Dodson) was deceived by the defendant Kevin Hermansen into thinking that the Hoi Kan Lau **"never ever goes"** to

6726 Salter ave when in fact Hoi Kan Lau went there on multiple occasions; driven there by his son.

39.    The plaintiff Shing Lung Lau provides as evidence the attached declaration that the plaintiff Shing Lung Lau had driven the plaintiff Hoi Kan Lau to 6726 Salter ave., Arcadia, CA 91007 (where his own business is located and where his son lives) on multiple occasions.

40.    Judge William Dodson's statement "**never ever goes there**" was false and he made that statement after being deceived by Kevin Hermansen's attorney deceit committed on August 1st, 2024 at Dept R of the Pasadena Courthouse.

### Example Criminal Activity # 3

41.    California Penal Code Section 118 - Perjury (subsection b omitted as it is irrelevant) is as follows:

(a) Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she **knows to be false,** and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she **knows to be false**, is **guilty of perjury.** This subdivision is applicable whether the statement, or the testimony, declaration, deposition, or certification is made or subscribed within or without the State of California.

42.    In three separate unlawful detainer cases, LASC Case No. 24PDUD01782, LASC Case No. 24PDUD04392, LASC Case No. 26PDUD00798, the defendants have filed answers that are filled with perjuries in violations of

California Penal Code Section 118 - Perjury

13

California Penal Code Section 127 - Subornation of Perjury

See **Exhibit #5, 6, 7**

43.    Let's examine one of the defendants' fraudulent document, titled FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT, dated 7/11/2024, wherein the defendants Christopher Lopez and Cynthia Carter declared under penalty of perjury that the statements in the document were true and correct.

See **Exhibit #5** for the defendants' document.

44.    On **page 4, from line 5 to line 18**, of the defendants' answer date 7/11/2024 (**Exhibit #5**), the defendants stated under penalty of perjury that:

45.    Plaintiff is seeking to evict for refusal to execute a new lease which does not have similar provisions and/or includes terms in violation of law.

46.    Plaintiff is seeking to evict based on alleged intent to occupy the property by the owner or their spouse, domestic partner, children, grandchildren, parents, or grandparents without a provision of the lease permitting termination of tenancy on this basis.

47.    Plaintiff is seeking to evict based on alleged intent to "substantially remodel," but the work allegedly being conducted do not meet the definition of "substantially remodel" as provided in the Tenant Protection Act of 2019.

48.    The entire eviction is not enforceable because Plaintiff is proceeding to evict under a no fault cause of action and has failed to provide relocation assistance by either notifying the tenant in writing that the Plaintiff intends to waive one month rent or informing the tenant the right to relocation within 15 calendar days from service of notice. Code of Civil Procedure §§ 1946.2(d)(2) and 1946.2(d)(4).

49.    The above 4 statements were **perjuries** because the defendants Christopher Lopez and Cynthia Carter KNEW those statements to be false as they KNEW that the real reason the eviction case LASC Case No. 24PDUD01782 was filed was because Christopher Lopez and Cynthia Carter had not paid any rent since July of 2023; that they failed to paid the rent demanded for in the pay rent or quit notice in **Exhibit #8**

14

50.     Evidence of these perjuries can be found in the rent demand notices that were served to initiate unlawful detainer LASC Case No. 24PDUD01782, wherein it is clearly stated that the unpaid rent in the amount of $11,728.80, for the period of: 01/01/2024 through 04/30/2024 needed to be paid or legal proceedings will be filed.

See **Exhibit #8** for the rent demand notice.

51.     Even more ridiculous is the following perjuries:

52.     On **page 5, from line 2 to page 5 line 22**, of the defendants' answer date 7/11/2024 (**Exhibit #5**), the defendants stated under penalty of perjury that:

53.     Plaintiff is attempting to evict the defendant based on nonpayment or rent, late charges, interest, or any other fees accrued due to Financial Impacts Related to COVID-19 in violation of the County's **Eviction Moratorium**.

54.     Plaintiff is attempting to evict a tenant for denying entry to the landlord in violation of the County's **Eviction Moratorium**.

55.     Plaintiff is attempting to evict defendant based on non-payment of rent due to financial hardship related to COVID-19 and failure to repay by the end of the applicable repayment period in violation of the County's **Eviction Moratorium**.

56.     Plaintiff is attempting to evict defendant based on failure to pay back unpaid rent under the terms of a payment plan in violation of the County's **Eviction Moratorium**.

57.     Plaintiff is attempting to evict defendant based on the tenant's failure to comply with the terms of a payment plan that is void as contrary to public policy. Plaintiff is attempting to evict defendant based on a "No-Fault Termination of Tenancy" in violation of the County's **Eviction Moratorium**.

58.     Plaintiff filed this action in violation of the County's **Eviction Moratorium**.

59.     The above statements are **perjuries** as the eviction case LASC Case No. 24PDUD01782 was filed because the defendants Christopher Lopez and Cynthia Carter

15

had not paid any rent since July of 2023. The case 24PDUD01782 specifically was for the unpaid rent of $11,728.80, for the period of: 01/01/2024 through 04/30/2024

See **Exhibit #8** for the rent demand notice.

and Los Angeles County's Eviction Moratorium ended **March 31, 2023** and the unpaid rent of $11,728.80, for the period of: 01/01/2024 through 04/30/2024, demanded for in the **Exhibit #8** notice had NOTHING to do Los Angeles County's Eviction Moratorium.

60.    The defendants made these statements under the penalty of perjury in July of 2024 when it was widely known by the public that the Los Angeles County's Eviction Moratorium had already ended on March 31, 2023.

61.    The defendants Kevin Hermansen and Behnam Gharagozli are both attorneys that specializes in eviction cases, they would surely have known that the Los Angeles County's Eviction Moratorium ended on March 31, 2023.

62.    The defendants CLEARLY knew that they committing the crimes of

California Penal Code Section 118 - Perjury

California Penal Code Section 127 - Subornation of Perjury

63.    The defendants' speech was ILLEGAL as a matter of law has been CONCLUSIVELY proven. If the court does not think so, the court can look through the provided document in Exhibit #8 for more perjuries, these are easy to find.

64.    There is also a lot more evidence in the complaint or the plaintiff can provide more.

## MOOTNESS

### (due to the plaintiff's future amendment of the complaint)

65.    The defendants' anti-SLAPP motions should be moot. As it is no secret that the plaintiff had always intended to remove all state causes of action subject to anti-SLAPP even before the plaintiff filed his FAC on 4/24/2026.

16

66. The plaintiff made the mistake of not removing the CONTRACT causes of action from the FAC simply because the plaintiff **did not realize** that contract law causes of action are state law causes subject to anti-SLAPP.

67. This is a common mistake as the contract provisions were in the lease agreement and breach of contract or breach of the implied covenant of good faith and fair do **not invoke any state statutes** and a lay person such the plaintiff would not know that contract law is state law.

68. The plaintiff should be allowed to rectify his mistake of not removing the causes of action in the complaint subject to anti-SLAPP motions.

69. The plaintiff is allowed to amend his complaint even after the defendants have filed anti-SLAPP motions.

70. In the landmark case *Verizon Delaware, Inc. v. Covad Communications Co.,* 377 F.3d 1081 (9th Cir. 2004), the Ninth Circuit ruled that in federal court, plaintiffs must be granted leave to amend their complaints under Federal Rule of Civil Procedure 15(a) **before** a court can grant a defendant's anti-SLAPP motion to strike.

71. "As Vess implicitly suggests, granting a defendant's anti-SLAPP motion to strike a plaintiff's [...] complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring **liberal amendment.**" *Verizon Delaware, Inc. v. Covad Communications Co.,* 377 F.3d 1081 (9th Cir. 2004)

72. "Moreover, the purpose of the anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs **eliminated** the offending claims from their [...] complaint" *Verizon Delaware, Inc. v. Covad Communications Co.,* 377 F.3d 1081 (9th Cir. 2004)

73. The court held that prohibiting a plaintiff from amending would collide directly with the federal policy favoring **liberal** amendment.

74. The Ninth Circuit requires that this policy favoring amendment be applied with "**extreme liberality**." *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir. 2001).

17

75. "There is a strong policy in favor of **liberal** allowance of amendments." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 296 (1985)

76. As such, this court should grant the plaintiff leave to amend the complaint to remove all causes of action subject to anti-SLAPP motions. The plaintiff want to do this to avoid having to deal with any appeal of such either before or after trial; the juice isn't worth the squeeze.

**Rooker-Feldman Doctrine has Very Narrow Scope and Does Not Apply to This Case**

77. The Rooker-Feldman Doctrine is not applicable here because the plaintiff is not seeking the federal court to review nor to modify state court judgments.

78. Mark Kleiman and Thomas Harvery's statement "Plaintiffs should not be permitted to relitigate in a Federal Court the California **causes of action** that have **already been adjudicated** in California Court." is false.

79. This is false as the causes of action #5 and #6 in the FAC has NEVER been adjudicated in any California Court; what was adjudicated were the breaches of contract for unpaid rent. Whereas causes of action #5 and #6 in the FAC were for violation of provision #17 and unfairness due to the defendants' attorney deceits.

79. 18 U.S. Code § 1001(2) states that "whoever" "makes any materially false, fictitious, or fraudulent statement or representation" "shall be fined under this title, imprisoned not more than 5 years..."

80. This is also WIRE FRAUD as their anti-slapp motion were served to the plaintiff as well as filed to the court system through the use of the internet.

81. In *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. 2025), the Ninth Circuit Court of Appeals held that the Rooker-Feldman doctrine does **not** bar federal lawsuits seeking money damages for alleged misconduct, such as fabricating evidence, **even** if that misconduct contributed to a prior state court judgment.

18

82. "The Rooker-Feldman applies only when the federal plaintiff both asserts as her injury **legal error** or errors by the **state court and** seeks as her remedy **relief from the state court judgment**. Here, plaintiffs' claims in their operative second complaint did not seek relief from or reversal of the state court's order" *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. 2025)

83. "a plaintiff alleging fraud by another party in litigation is not alleging a legal error by the state court. See *Benavidez*, 993 F.3d at 1143; *Kougasian*, 359 F.3d at 1139–41." *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. 2025)

84. For Rooker-Feldman to apply, the plaintiff must allege that the state court committed errors. This did not happen in this case, as the allegations of fraud by a party other than the court is not alleging a legal error by the state court.

85. For Rooker-Feldman to apply, the plaintiff must seek relief from the state court judgment. This did not happen in this case.

86. "seek[ing] relief from a state court judgment," Noel, 341 F.3d at 1164, which can implicate Rooker-Feldman, is **not the same thing** as seeking relief that would ameliorate the effects of an adverse state court judgment. In past cases, plaintiffs sought such **offsetting relief in the wake of an unfavorable state court judgment**—and yet we **held Rooker-Feldman did not apply**. See, e.g., Benavidez, 993 F.3d at 1140–41; Kougasian, 359 F.3d at 1137–38; Noel, 341 F.3d at 1152–53." *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. 2025)

87. Thus, the Ninth Circuit Court of Appeals "held Rooker-Feldman did not apply" to lawsuits seeking "offsetting relief in the wake of an unfavorable state court judgment"

88. "As we reasoned in one case, "[a]lthough Plaintiffs sought relief designed to remedy injuries suffered from a state court judgment, they did not allege before the court that the state court committed legal error, nor did they seek relief from the state court judgment itself." *Bell*, 709 F.3d at 897. Thus, **Rooker-Feldman did not preclude jurisdiction**." *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. 2025)

89. It is clear from the **2025** *Miroth v. County of Trinity* case that Ninth Circuit Court of Appeals would not held that Rooker-Feldman would apply to THIS CASE as THIS CASE did **not** allege that the state court committed an legal error, **nor** did this case seek relief from the state court judgment itself and "seeking relief that would ameliorate the effects of an adverse state court judgment" is **NOT** the same as seeking relief from the state court judgment.

90. Newer case laws takes precedent over older case laws.

91. *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. **2025**), being very new, would override all older case laws that may say that Rooker-Feldman would apply to THIS CASE.

### Litigation Privilege Does Not Bar Breach of Contract Claims

92. The litigation privilege immunizes litigants from liability for torts, other than malicious prosecution, which arise from communications in judicial proceedings. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212, 215, 266 Cal.Rptr. 638, 786 P.2d 365.)

93. "Consequently, we will assume that the litigation privilege does not bar plaintiffs' breach of contract cause of action." *Navellier v. Sletten* (2002) 29 Cal.4th 82

94. The Supreme Court of California itself assumed that litigation privilege **does not bar** breach of contract causes of action.

95. This court should also assume that litigation privilege **does not bar** breach of contract causes of action.

96. Further, the complaint should be **liberally construed** and the allegations in the complaint should be considered in the **light most favorable to plaintiffs**. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974)

Dated: June 1, 2026

_____
Shing Lung Lau, plaintiff in pro se

20

## <u>CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)</u>

The undersigned, Shing Lung Lau, plaintiff in pro se, certifies that the above Memorandum of Points and Authorities (not including the application itself nor the declaration of Shing Lung Lau, nor the exhibits) contains 4,648 words, which complies with the word limit of 7,000 words as provided for in L.R. 11-6.1

Date: June 1, 2026

_Shing Lung Lau_

Shing Lung Lau, plaintiff in pro se

21

**Declaration of Shing Lung Lau**

I, Shing Lung Lau, do declare the following:

1.    I have on many occasions drove my parents Hoi Kan Lau and Siu Fan Tsang to 6726 Salter ave., Arcadia, CA 91007.

2.    It is absolutely fraudulent when Kevin Hermansen said (On August 1st, 2024 in court) that Hoi Kan Lau and Siu Fan Tsang "don't visit" and "doesn't go there". This is attorney deceit.

3.    I declare that Kevin Hermansen's statement on August 1st, 2024 "They [Hoi Kan Lau and Siu Fan Tsang] **don't visit** him [Shing Lung Lau] because of the conflict with his [Shing Lung Lau] wife" was fraudulent and an act of attorney deceit.

4.    I declare that Kevin Hermansen's statement on August 1st, 2024 "And Mr. Hoi Kan Lau **doesn't go there** [6726 Salter ave]." was fraudulent and an act of attorney deceit.

5.    I declare that Judge William Dodson's statement on August 1st, 2024 "...we're taking it with evidence. And the witness says that this gentleman [Hoi Kan Lau] **never ever goes** there because he can't drive." was false and Judge William Dodson was deceived by Kevin Hermansen into thinking that "this gentleman [Hoi Kan Lau] **never ever goes** there" when he made that statement.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 1st, 2026 at Arcadia, California

_____
Shing Lung Lau
Plaintiff in pro se

22

# EXHIBIT #1

9705                                                                                              10/5/23

**Notice**

To: Christopher Lopez and Cynthia Carter

Property Address: 9705 Ardendale Ave. Arcadia, CA 91007

Hello, I am the owner of the property at 9705 Ardendale Ave. Arcadia, CA 91007. On Monday October 2nd, 2023, I have already instructed my ex-attorney Charles Pok to dismiss the case. The case was successfully dismissed.

I was made aware today that Charles Pok recently sent a Notice of Rent Demand; that was a result of miscommunication, please **disregard** that notice.

Charles Pok is now no longer my attorney and does not represent me. All communications, notices, etc. should now be send via text message at 718-300-6010, or email at siufantsang@gmail.com

Also, as there is now no court case anymore. Please send me the rent from July 2023 to October 2023 as I do need the money to pay for interests and taxes. As this is rather a large sum, please message me at 718-300-6010 to arrange for pickup in case payment gets lost in the mail. Please do so before the end of the month of October 2023; this is ample time for payment.

I was also recently told that there's rodents on the property, please allow me and someone else to go onto the property and see how that can be remedied. Just message me at 718-300-6010 with the date and time when this is possible. This notice will be dropped in your mailbox and a copy mailed to you via certified mail to you. Please get in touch with me as soon as possible. Thank you

Sincerely, the owner

Siu Fan Tsang,

October 5th, 2023

24

10/5/23

**Notice**

To: Christopher Lopez and Cynthia Carter

Property Address: 9705 Ardendale Ave. Arcadia, CA 91007

Hello, I am the owner of the property at 9705 Ardendale Ave. Arcadia, CA 91007. On Monday October 2nd, 2023, I have already instructed my ex-attorney Charles Pok to dismiss the case. The case was successfully dismissed.

I was made aware today that Charles Pok recently sent a Notice of Rent Demand; that was a result of miscommunication, please **disregard** that notice.

Charles Pok is now no longer my attorney and does not represent me. All communications, notices, etc. should now be send via text message at 718-300-6010, or email at siufantsang@gmail.com

Also, as there is now no court case anymore. Please send me the rent from July 2023 to October 2023 as I do need the money to pay for interests and taxes. As this is rather a large sum, please message ... up in case payment gets lost in the mail. Please do so before the ample time for payment.

...dents on the property, please allow me and someone else ...be remedied. Just message me at 718-300-6010 with the ...ce will be dropped in your mailbox and a copy mailed to ...ich with me as soon as possible. Thank you

Sincerely, the owner

Siu Fan Tsang,

October 5th, 2023

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

Arcadia, CA 91007

OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee $4.35 | | 0815 |
| $ $0.00 | | 08 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) $ $0.00 | | |
| ☐ Return Receipt (electronic) $ $0.00 | | |
| ☐ Certified Mail Restricted Delivery $ $0.00 | | |
| ☐ Adult Signature Required $ $0.00 | | |
| ☐ Adult Signature Restricted Delivery $ | | |
| Postage $0.66 | | |
| $ | | |
| Total Postage and Fees $5.01 | | |

OCT - 5 2023 Postmark Here

10/05/2023

Sent To Christopher Lopez and Cynthia Carter
Street and Apt. No., or PO Box No. 9705 Ardendale Ave
City, State, ZIP+4® Arcadia, CA 91007

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

Grand Total:

Credit Card Remit                    $5.01
  Card Name: VISA               $5.01
  Account #: XXXXXXXXXXXXX6158
  Approval #: 02393C
  Transaction #: 577
  AID: A0000000031010
  AL: VISA CREDIT    Contactless
  CHASE VISA

10/5/23

# Proof Of Service

I, the undersigned, being at least 18 years of age, declare under penalty of perjury that I served the NOTICE, of which a true copy appears on the reverse side of this Proof of Service, by one of the methods indicated below on the following named

Resident(s): __Christopher Lopez__ , __Cynthia Carter__

☐ 1. **BY PERSONALLY DELIVERING** a copy of the Notice to the Resident(s) named above at the following address:

_____

☑ 2. **BY LEAVING** a copy of the Notice for the Resident(s) named above with a person of suitable age and discretion at the residence or usual place of business of the Resident(s), said Resident(s) being absent therefrom. Said residence or usual place of business being at the following address:

__9705  Ardendale Ave,  Arcadia,  CA  91007__

**AND MAILING** an individual copy to each Resident by depositing said copies in the United States Mail, in a sealed envelope with first class postage prepaid and addressed to the Resident(s) named above at their usual place of

residence which is at the following address: __9705  Ardendale  Ave,  Arcadia, CA  91007__.

☐ 3. **BY POSTING** a copy of said Notice for each of the Resident(s) named above in a conspicuous place, there being no person of suitable age or discretion to be found at any known place of residence or known usual place of business of the Resident(s). Said notice was posted at their usual place of residence which is at the following address:

_____

**AND MAILING** an individual copy to each Resident by depositing said copies in the United States Mail, in a sealed envelope with first class postage prepaid and addressed to the Resident(s) named above at their usual place of

residence which is at the following address: _____

_____

Subject notice was served on __10/5/23__ , 20____.
I declare under penalty of perjury that the foregoing is true and correct.

Executed this __5th__ day of __October__ , 20____ in the city of __Arcadia__
County of __Los Angeles__ , State of California.

Signature of Server: __Shing lungton__

Print Name of Server: __Shing Lung Lau__

| **Fill out "Proof of Service" On Owner's Copies Only** |



AOA Form No. 103 (Rev 10/22) - Copyright 2005 - Apartment Owners Association of California, Inc. - www.aoausa.com
San Fernando Valley (818) 988-9200 • Los Angeles (323) 937-8811 • Long Beach (562) 597-2422 • Garden Grove (714) 539-6000 • San Diego (619) 280-7007 • Northern California (510) 769-7521

 Gmail

SiuFan Tsang <siufantsang@gmail.com>

---

## Letter to your client last week
1 message

**SiuFan Tsang** <siufantsang@gmail.com>                                      Mon, Oct 9, 2023 at 3:31 PM
To: lobgattomey@gmail.com

Re: 9705 Ardendale ave, Arcadia

I forgot to attach this to the last email

This is the letter dropped off to your client's last week

We didn't send you a copy because we didn't know how to reach you or whether you are still representing Cythina Carter and Christopher Lopez

Please acknowledge receipt
Thank you                                    ← Notice to Ben Gharagozli

📎 **9705 Oct 5 letter.pdf**
   514K

## +1 661-607-4665

10/10/23

Add note ✏

  

Show your voicemails?

**Show**

November 8

📞↗ **1:25 PM**
Outgoing call, 0 mins 41 sec

October 17

📞↗ **3:11 PM**
Outgoing call, 0 mins 36 sec

(October 10)

📞↗ **11:09 AM**
Outgoing call, 2 mins 8 sec

← When opposing counsel
Ben Gharagozli
CONFIRMED receipt of
emails with notice telling
him Charles Pok was no longer
the plaintiff's legal
representative.

📞↙ **11:09 AM**
Incoming call

📞↗ **11:06 AM**
Outgoing call, 0 mins 34 sec

\+  <        ⋮

## Server's Affidavit

I am Shing Lung Lau, I served the notices informing the parties of Cynthia Carter and Christopher Lopez and their counsel Ben Gharagozli of the plaintiff's change in legal representation. I am not a party to the lawsuit and I am a private individual over 18 years old that lives in the State of California.

Cynthia Carter and Christopher Lopez were given the notice at their place of dwelling on October 5th, 2023 by leaving a copy at the premise and a copy was mailed to them via certified mail that same day.

An attempt to mail Ben Gharagozli a paper copy of the notice was unsuccessful as his address is a Post Office Box and certified mail cannot be sent to him. An online search for Ben Gharagozli's office address was also unsuccessful.

Ben Gharagozli was emailed the notice informing him of the plaintiff's change in legal representation on October 9th, 2023

On October 10th, 2023, I called Ben Gharagozli at the phone number 661-607-4665 to confirm if he had received the email with notice. During a phone call on October 10th, 2023 at 11:09 AM, Ben Gharagozli confirmed that he had in fact received the email and notice telling him that Charles Pok was dismissed after the case was dismissed and was no longer Siu Fan Tsang's legal represenative. In addition to confirming that he received the emails, Ben Gharagozli said he was in court and the call ended after 2 minutes and 8 seconds. A print out of the call log is attached.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Date: December 26th, 2023                          _Shing Lung Lau_

                                                   Shing Lung Lau

29

# EXHIBIT #2

 Gmail

**SiuFan Tsang <siufantsang@gmail.com>**

---

## Letter to your client last week
1 message

---

**SiuFan Tsang** <siufantsang@gmail.com>                                      Mon, Oct 9, 2023 at 3:31 PM
To: lobgattorney@gmail.com

Re: 9705 Ardendale ave, Arcadia

I forgot to attach this to the last email

This is the letter dropped off to your client's last week

We didn't send you a copy because we didn't know how to reach you or whether you are still representing Cythina Carter and Christopher Lopez

Please acknowledge receipt
Thank you



**9705 Oct 5 letter.pdf**
514K

# EXHIBIT #3

BEN GHARAGOZLI (S.B.N 272302)
**LAW OFFICES OF BEN GHARAGOZLI**
200 S. BARRINGTON AVENUE, #491488
LOS ANGELES, CA 90049
TELEPHONE: (310) 272-9211
FACSIMILE: (855) 628-5517
EMAIL: lobgattorney@gmail.com

Attorney for Defendants, Christopher Lopez, Cynthia Carter and Margarita Alvarez

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| HOI KAN LAU; SIU FAN TSANG, <br><br> Plaintiff, <br><br> v. <br><br> CHRISTOPHER LOPEZ; CYNTHIA CARTER, <br><br> Defendants. | LASC Case No. 23PDUD01863 <br><br> **OPPOSITION TO MOTION TO SET ASIDE JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **DATE:** January 26, 2024 <br> **TIME:** 1:30 p.m. <br> **PLACE:** Department R <br> 300 East Walnut Street <br> Pasadena, CA 91101 |

### MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff moves to set aside the order granting the Defendants' Motion for Attorney Fees. Defendant's motion was filed on October 16, 2023. It was originally set for hearing on November 15, 2023. On November 13, 2023, Plaintiffs filed their opposition to the motion for attorney fees where they opposed the fee motion on the merits. Specifically, they made arguments about the motion being untimely, lacking standing, and that the lawyer's fees were excessive and unreasonable. The court continued the hearing on the motion for attorney fees to November 29, 2023. Plaintiffs filed additional declarations and points and authorities and Defendants filed a reply. The motion was heard on November 29, 2023 and granted. Plaintiffs appeared both times to argue the motion.

1

MEMORANDUM OF POINTS AND AUTHORITIES

Now, Plaintiffs repeat many of the same arguments in their motion to set aside as they did in their opposition to Defendants' fee motion, and Plaintiffs have not complied with Code Civ. Proc. § 1008 in seeking reconsideration. As such, the motion to set aside the order should be denied.

**Plaintiffs did not Properly Substitute Out Their Attorney Until November 8, Weeks After the Fee Motion was Filed**

Plaintiffs appear to argue service of the fee motion was defective because it was served on their attorney of the record, notwithstanding their unsupported claim that they were no longer using that attorney. However, Defendants were never notified of Plaintiff's alleged discontinuance of Mr. Pok and were anyways statutory obligated to recognize Mr. Pok as the attorney of record. An attorney of record may only be changed by consent of both filed with the clerk or entered in the minutes, or upon order of the court after application and notice. Code Civ. Proc. § 284.

"When an attorney is changed, as provided in the last section, written notice of the change and of the substitution of a new attorney, or of the appearance of the party in person, must be given to the adverse party. Until then he must recognize the former attorney."

Code Civ. Proc. § 285.

"The attorney of record has the exclusive right to appear in court for his client and neither the party himself nor another attorney should be recognized by the court in the conduct or disposition of the case." Epley v. Califro (1958) 49 Cal.2d 849, 85. Here, the fee motion was served on October 16, 2023. Mr. Pok was still the attorney of record until November 8, 2023. Service on Mr. Pok was proper.

**Opposition on the Merits Cures Defective Service**

Although service was proper, Plaintiffs were not prejudiced in any way and in fact filed an opposition that was heard on the merits.

"It is well settled that the appearance of a party at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of the motion. [Citations.] This rule applies even when no notice was given at all. [Citations.]

2

MEMORANDUM OF POINTS AND AUTHORITIES

Accordingly, a party who appears and contests a motion in the court below cannot object on appeal or by seeking extraordinary relief in the appellate court that he had no notice of the **motion** or that the notice was insufficient or defective." Reedy v. Bussell (2007) 148 Cal.App.4th 1272, 1288-1289; See also, Pacific Std. Life Ins. Co. v. Tower Industries, Inc. (1992) 9 Cal.App.4th 1881, 1888 ["Tower has waived its right to complain of insufficient notice of the motion for **judgment** [because it] did not object to the motion on the ground of lack of notice."].)

In Carlton v. Quint (2000) 77 Cal.App.4th 690, the court concluded that even when the opposing party does expressly object to the inadequate notice in its opposition papers, it may not be sufficient to preserve the issue for appeal. Instead, if the party appears at the appropriate hearing and opposes the motion on the merits—but without making any request for a continuance or demonstrating *prejudice* from the defective notice, the issue is waived: "[D]espite his claim of inadequate service and notice in his opposition to the motion and at the summary judgment hearing, Carlton *did* file an opposition to the motion, appeared and argued at the hearing, never requested a continuance of the hearing and never claimed prejudice by reason of insufficient notice or service. *Under these circumstances, we conclude Carlton waived any claim of inadequate service or notice assuming, without deciding, that claim had any merit.*" Id. at p. 697, italics added.)

### Plaintiffs are Improperly Seeking Reconsideration

As a secondary matter, Plaintiffs already raised these same arguments in their opposition and supplemental reply to the attorney fee motion. Specifically, Plaintiff's opposition filed on November 13, 2023 argued in detail why they believed the service on their attorney of record was improper, their belief that the fee motion was untimely, the argument that there was no prevailing party, the argument against Defendant's Alvarez's standing, and the attorney fees were excessive and unreasonable.

After hearing oral argument, the Court took the matter under submission and later issued its minute order, stating "The plaintiff did not present relevant, admissible evidence in support of any viable legal theory that she does not owe legal fees."

3

MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' motion to set aside essentially uses the same arguments that it used in its prior opposition. It also fails to provide any new facts or law or provide the requisite declaration. The legislature has codified the procedure for renewing a motion previously denied:

> "When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order. The party making the application shall state by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown."

Code Civ. Proc. § 1008(a).

A violation of this section (i.e., simply requesting the same order again) is punishable by contempt and sanctions. Code Civ. Proc. § 1008(d). Code Civ. Proc. § 1008(e) states that the court is without jurisdiction to hear such a motion, because "No application to reconsider any order ... may be considered by any judge or court unless made according to this section." The purpose of the statute is to stop parties from making *seriatim* requests for the same relief. California Corr. Peace Officers Ass'n v. Virga (2010) 181 Cal. App. 4th 30, 45.

Although Plaintiffs have styled this new motion a "Motion to Set Aside Judgment", it still makes the same arguments and thus runs afoul of Code Civ. Proc. § 1008. The Court of Appeal agrees: "Section 1008 governs reconsideration of court orders whether initiated by a party or the court itself. 'It is the exclusive means for modifying, amending or revoking an order. That limitation is expressly jurisdictional." Garcia v. Hejmadi (1997) 58 Cal.App.4th 674, 685–686. In Garcia, the trial court granted Garcia's motion for reconsideration after an adverse ruling. Garcia reasoned that any facts not previously "presented" to a court now qualified as "different" (if not "new") facts or circumstances justifying reconsideration. Id. at 688. The Court of Appeal rejected this argument in favor of strict compliance with Code Civ. Proc. § 1008 and reversed the trial court's grant of the

4

MEMORANDUM OF POINTS AND AUTHORITIES

motion for reconsideration. Id.

Likewise, Plaintiffs cannot argue that they are entitled to relief from the order on attorney fees because of a mistake or error, because they still had to comply with Code Civ. Proc. § 1008. "To hold...that the general relief mechanism provided in section 473 could be used to circumvent the jurisdictional requirements for reconsideration found in section 1008 would undermine the intent of the Legislature as specifically expressed in section 1008, subdivision (e): "No application to reconsider any order ... may be considered by any judge or court unless made according to this section." Id. at 1501. A court may not consider evidence as "new" simply because Plaintiff made an error in failing to present it earlier, because "[h]aving concluded that section 1008 was the exclusive avenue for the relief requested and that respondent did not meet the jurisdictional prerequisites for relief under that statute, we find that the trial court acted in excess of its jurisdiction by granting the motion for reconsideration." Id. at 1502.

Finally, the claim that trial court misinterpreted the law in its initial decision does not establish that the motion to reconsider was based upon new or different facts, circumstances, or law as statutorily required. Gilberd v. AC Transit, 32 Cal. App. 4th 1494, 1500 (1995). A court's ruling that was based on "multiple errors of law and a failure or refusal to consider the evidence presented in opposition to the motion[s]" does not constitute a new fact or circumstance supporting reconsideration. Jones v. P.S. Dev. Co., 166 Cal. App. 4th 707, 724 (2008).

**CONCLUSION.**

In light of the foregoing, the motion to set aside should be denied.

DATED: January 9, 2024                    Law Offices of Ben Gharagozli

                                          By:  
                                               Ben Gharagozli
                                               Attorney for Defendants

5
MEMORANDUM OF POINTS AND AUTHORITIES

PROOF OF SERVICE
LASC Case # 23PDUD01863

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 13654 Victory Boulevard, Suite 111, Van Nuys, CA 91401.

On January 9, 2024, I served the foregoing document(s) described as:

**OPPOSITION TO MOTION TO SET ASIDE JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

Siu Fan Tsang
Hoi Kan Lau
6726 Salter Avenue
Arcadia, CA 91007

☒    (BY MAIL)  I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service.  This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our office's address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☒    (BY ELECTRONIC MAIL): I caused such document to be transmitted electronically as follows:

SiuFan Tsang <siufantsang@gmail.com>

Executed on January 9, 2024.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Kevin Hermansen

6
MEMORANDUM OF POINTS AND AUTHORITIES

# EXHIBIT #4

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT R          HON. WILLIAM D. DODSON, COMMISSIONER

HOI KAN LAU,                        )
                                    )
            PLAINTIFF,              )
      VS.                           )
                                    )  CASE NO.:
CYNTHIA CARTER, ET AL.,             )
                                    )  24PDUD01782
            DEFENDANT.              )
_____     )

-oOo-

TRANSCRIPT OF PROCEEDINGS

AUGUST 1, 2024

APPEARANCES:

FOR THE PLAINTIFF:   CALIFORNIA PROPERTY LAW GROUP
                     BY:  KENNY LIM, ESQ.
                     930 SOUTH LA BREA AVENUE
                     SUITE 204
                     LOS ANGELES, CA 90036

FOR THE DEFENDANT:   LAW OFFICE OF KEVIN P. HERMANSEN, P.C.
                     BY:  KEVIN PAUL HERMANSEN, ESQ.
                     13654 VICTORY BOULEVARD
                     SUITE 111
                     VAN NUYS, CA 91401

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
TRANSCRIPT PRODUCED BY LAURA GRIFFIN, CET-1709



HUNTINGTON COURT REPORTERS AND TRANSCRIPTION, INC.
PASADENA AND NATCHITOCHES, LA
HCR

2

M A S T E R   I N D E X

AUGUST 1, 2024

SESSIONS

THURSDAY, AUGUST 1, 2024                                    PAGE
    A.M. SESSION                                             5


            CHRONOLOGICAL INDEX OF WITNESSES

                                                           PAGE

LAU, SHING LUNG, CALLED BY PLAINTIFF
    DIRECT EXAMINATION BY MR. LIM                            12
    CROSS-EXAMINATION BY MR. HERMANSEN                       19
    REDIRECT EXAMINATION BY MR. LIM                          24

LAU, HOI KAN, CALLED BY PLAINTIFF
    DIRECT EXAMINATION BY MR. LIM                            27
    CROSS-EXAMINATION BY MR. HERMANSEN                       28


HUNTINGTON COURT REPORTERS AND TRANSCRIPTION, INC.
PASADENA, CA AND NATCHITOCHES, LA
HCR

3

M A S T E R   I N D E X

AUGUST 1, 2024


SESSIONS


THURSDAY, AUGUST 1, 2024                                    PAGE
     A.M. SESSION                                            5


              ALPHABETICAL INDEX OF WITNESSES


                                                           PAGE
LAU, HOI KAN, CALLED BY PLAINTIFF
    DIRECT EXAMINATION BY MR. LIM                            27
    CROSS-EXAMINATION BY MR. HERMANSEN                       28

LAU, SHING LUNG, CALLED BY PLAINTIFF
    DIRECT EXAMINATION BY MR. LIM                            12
    CROSS-EXAMINATION BY MR. HERMANSEN                       19
    REDIRECT EXAMINATION BY MR. LIM                          24


HUNTINGTON COURT REPORTERS AND TRANSCRIPTION, INC.
PASADENA 42 AND NATCHITOCHES, LA
HCR

MASTER INDEX

AUGUST 1, 2024

EXHIBITS

| PLAINTIFF'S EXHIBITS | DESCRIPTION | FOR I.D. | IN EVID. | WITHDRAWN/ REJECTED |
|---|---|---|---|---|
| 1 | LEASE | 13 | 16 | |
| 2 | 5-DAY NOTICE | 15 | 16 | |
| 3 | PROOF OF SERVICE | 16 | 16 | |
| 4 | 3-DAY NOTICE | 17 | 18 | |
| 5 | PROOF OF SERVICE | 17 | 18 | |
| 106 | NOTICE | 25 | 26 | |

| DEFENSE'S EXHIBITS | DESCRIPTION | FOR I.D. | IN EVID. | WITHDRAWN/ REJECTED |
|---|---|---|---|---|

NONE



5

CASE NUMBER:          24PDUD01782

CASE NAME:            HOI KAN LAU VS. CYNTHIA CARTER, ET AL.

PASADENA, CA          THURSDAY, AUGUST 1, 2024

DEPARTMENT R          HON. WILLIAM D. DODSON, COMMISSIONER

TRANSCRIBER:          LAURA GRIFFIN, CET-1709

TIME:                 9:26 A.M.

APPEARANCES:  DEFENDANT CYNTHIA CARTER, ET AL., IS PRESENT WITH COUNSEL, KEVIN PAUL HERMANSEN, PRIVATE COUNSEL; KENNY LIM, PRIVATE COUNSEL, REPRESENTING HOI KAN LAU.

THE COURT:  GOOD MORNING.  READY FOR TRIAL?

UNIDENTIFIED SPEAKER:  YES, YOUR HONOR.

THE COURT:  LAU VERSUS CARTER AND LOPEZ.

OKAY.  VERY GOOD.  SO APPEARANCES FOR THE RECORD.

MR. LIM:  GOOD MORNING, YOUR HONOR.  KENNY LIM ON BEHALF OF THE PLAINTIFF.

THE COURT:  GOOD MORNING.

MR. HERMANSEN:  GOOD MORNING, YOUR HONOR.  KEVIN HERMANSEN FOR THE DEFENDANTS.

THE COURT:  GOOD MORNING.

AND WE'RE GOING TO HAVE A CANTONESE INTERPRETER WHEN WE GET THERE.

MR. HERMANSEN:  THAT'S CORRECT, YOUR HONOR.  WE HAVE A CANTONESE INTERPRETER.

THE COURT:  VERY GOOD.

THE INTERPRETER:  GOOD MORNING, YOUR HONOR.  THIS IS THE PLAINTIFF (INDISCERNIBLE) COURT-CERTIFIED CANTONESE



6

LANGUAGE INTERPRETER MING TAO WONG (PHONETIC), AND MY (INDISCERNIBLE).  BADGE NUMBER IS 301783.  OATH ON FILE.

THE CLERK:  YOUR HONOR, I'M SORRY.  BUT HE'S NOT THE COURT-APPOINTED INTERPRETER.  I WAS NOT SECURED THROUGH THE COORDINATOR'S OFFICE, BUT I WAS, YESTERDAY, RETAINED BY THE PARTY.

(SHEILA CHAU, INTERPRETING FOR THE
PLAINTIFF'S WITNESS FROM ENGLISH INTO
CANTONESE AND CANTONESE INTO ENGLISH.)

THE INTERPRETER:  I'M SET BY THE COURT.  CERTIFIED INTERPRETER SHEILA CHAU.

THE COURT:  OKAY.

THE INTERPRETER:  CERTIFICATION NUMBER 300159.  OATH ON FILE.

THE COURT:  AND YOU'RE A CERTIFIED INTERPRETER?

THE INTERPRETER:  YES.

THE COURT:  OKAY.

THE INTERPRETER:  I USED TO WORK IT FULL TIME.

THE CLERK:  BUT NOT THROUGH THE CLERK?

THE INTERPRETER:  NOT IN THIS CASE I WAS NOT (INDISCERNIBLE).

THE CLERK:  SO, YOUR HONOR, WE HAVE TWO COURT-COORDINATED CANTONESE INTERPRETERS HERE.  THAT'S THIS MADAM INTERPRETER AND THIS MADAM INTERPRETER.

THE COURT:  ALL RIGHT.  THEN I'LL HAVE TO USE THE COURT-APPOINTED.



7

THE CLERK: AND WE HAVE A PRIVATELY RETAINED INTERPRETER.

MR. HERMANSEN: YOUR HONOR, WE'VE RETAINED A SEPARATE INTERPRETER. MY CLIENT FEELS MORE COMFORTABLE WITH THIS INTERPRETER TO INTERPRET FOR HIM IN THIS. --

THE COURT: YEAH, BUT THE COURT FEELS MORE COMFORTABLE WITH THE COURT EMPLOYEE; SO, OBVIOUSLY, THERE'S THE POTENTIAL FOR BIAS AND CHANGING THE TESTIMONY. SO WE'LL USE OUR INTERPRETERS. WHATEVER OBJECTION THAT WAS, IT'S OVERRULED.

THE INTERPRETER: JUST ONE POINT, YOUR HONOR. I WAS HIRED BY THE OPPOSING SIDE FOR THE DEPOSITION AS WELL. SO JUST ONE POINT.

THE COURT: AND I'M SURE YOU WOULD TESTIFY (INDISCERNIBLE) PERSONALLY.

THE INTERPRETER: YEAH.

THE COURT: I'M JUST TALKING ABOUT IT IN GENERAL.

THE INTERPRETER: I UNDERSTAND.

THE COURT: NO, I'M NOT DISCOURAGING YOU OR YOUR WORK OR YOUR TALENT, AND IT'S A VALUABLE TALENT. I UNDERSTAND, BUT WE'RE SUPPOSED TO USE OUR EMPLOYEES.

DID I GET THE APPEARANCES OF COUNSEL YET?

MR. HERMANSEN: YES.

THE COURT: I DID, I DID.

AND I DID NOT GET THE APPEARANCE OF THE SECOND CANTONESE INTERPRETER.


HUNTINGTON COURT REPORTERS AND TRANSCRIPTION, INC.
PASADENA, CA AND NATCHITOCHES, LA
HCR

8

(YUAN NING ZHENG, INTERPRETING FOR THE PLAINTIFF'S WITNESS FROM ENGLISH INTO CANTONESE AND CANTONESE INTO ENGLISH.)

THE INTERPRETER:  GOOD MORNING, YOUR HONOR.  YUAN NING ZHENG, COURT-CERTIFIED CANTONESE INTERPRETER, CERTIFICATION NUMBER 301942.  OATH ON FILE.

THE COURT:  VERY GOOD.  THANK YOU.

SO READY TO PROCEED?

MR. LIM:  YES, YOUR HONOR.

THE COURT:  OKAY.  SO THE WAY I DO EXHIBITS IS I'M NOT GOING TO USE A BINDER.  YOU ALL MAY USE BINDERS, BUT I WANT TO SEE THE DOCUMENT THAT'S BEEN BEFORE THE WITNESS THAT AUTHENTICATES IT OUTSIDE OF A BINDER, AND THEN I'LL KEEP TRACK OF NUMBERS, LETTERS, WHATEVER WE NEED.

THE COURT:  I CAN'T PUT THE WITNESS ON THE STAND.  HE HAS TO STAY IN THE CHAIR.

MR. LIM:  YES, YOUR HONOR.  HE'S NOT ABLE TO LEAVE HIS WHEELCHAIR.

THE COURT:  OKAY.

MR. LIM:  WE DO HAVE WE HAVE THREE WITNESSES THAT WE MAY END UP CALLING.

THE COURT:  OKAY.  THAT'S FINE.  OTHER WITNESSES WE'LL HAVE UP IN THE WITNESS BOX, BUT THAT'S FINE FOR THE PLAINTIFF WITNESS TO TESTIFY FROM THERE.

MR. LIM:  AS A PRE-TRIAL MATTER, THE DEFENDANTS' COUNSEL AND I HAVE HAD A DISCUSSION.  THE DEFENSE COUNSEL HAS ALREADY STIPULATED TO THE FACT THAT ALL OF THE NOTICES



9

THAT WERE REQUIRED TO BE SERVED UNDER 1161.2 HAS BEEN PROPERLY SERVED FOR THIS CASE.

MR. HERMANSEN:  AS I MENTIONED YESTERDAY, THE PROOFS OF SERVICE ARE ACCURATE, AND WE DO NOT CONTEST THEM AT ALL. THE NOTICE WAS SERVED AS IT SAID THEY DID.

THE COURT:  OKAY.

ALL RIGHT.  FORGIVE ME, I CAN'T REMEMBER.  ARE WE TALKING ABOUT 1 OR 2 NOTICES?  HOW MANY NOTICES?

MR. LIM:  BOTH NOTICES --

MR. HERMANSEN:  TWO NOTICES --

THE COURT:  TWO NOTICES.  THAT'S WHAT I THOUGHT. OKAY.  ALL RIGHT.  GREAT.

ANYTHING ELSE BEFORE WE START?

MR. LIM:  NO, YOUR HONOR.

THE COURT:  SWEAR WITNESSES?

MR. LIM:  YOUR HONOR, OUR POTENTIAL WITNESS IS OUTSIDE IN THE HALL.  CAN I BRING HER IN TO BE SWORN IN?

THE COURT:  PLEASE.


(PAUSE.)


THE COURT:  GOOD MORNING.

READY TO BE SWORN?

MR. LIM:  WELL, THE THIRD ONE IS ALSO NEEDS TO BE --

THE CLERK:  OKAY.  CAN WE DO ONE AT A TIME SO -- BECAUSE SOMEBODY HAS TO STAY OUT THERE WITH THE BABY.

THE COURT:  OKAY.  WE'LL JUST DO IT THIS WAY THEN.

LET'S SWEAR TO THE PEOPLE WE CAN.



10

THE CLERK:  ALL RIGHT.

THE COURT:  YOU MAY REMAIN SEATED, OBVIOUSLY, IN THE WHEELCHAIR.

THE CLERK:  OKAY.  IF I COULD -- DOES SHE NEED AN INTERPRETER?

MR. LIM:  YES, SHE ALSO NEEDS AN INTERPRETER.

(PAUSE.)

THE CLERK:  IF I COULD HAVE EVERYONE PLEASE RAISE THEIR RIGHT HANDS TO BE SWORN.

DO YOU AND EACH OF YOU SOLEMNLY STATE THAT THE TESTIMONY YOU MAY GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, SO HELP YOU GOD?

(THE WITNESSES ANSWER IN THE
AFFIRMATIVE.)

THE CLERK:  THANK YOU.

STARTING WITH YOU, SIR, IF YOU COULD PLEASE STATE AND SPELL YOUR FIRST AND LAST NAME.

THE WITNESS:  H-O-I, K-A-N, L-A-U.

THE CLERK:  THANK YOU.

AND, MA'AM?

THE WITNESS:  S-I-U, S-A-N; LAST NAME:  T-S-A-N-G.

THE CLERK:  THANK YOU.

AND, MA'AM?



THE COURT: THANK YOU.

THE WITNESS: CYNTHIA CARTER, C-Y-N-T-H-I-A, C-A-R-T-E-R.

THE CLERK: THANK YOU.

THE COURT: THANK YOU.

MR. LIM: YOUR HONOR, AND IF WE MAY SWEAR IN THE OTHER WITNESS WHO'S STANDING OUTSIDE? HIS NAME IS SHING LUNG LAU. HE'S GOING TO BE THE FIRST WITNESS THAT WE DO CALL.

THE COURT: OKAY.

(PAUSE.)

THE COURT: YOU MAY PROCEED.

MR. LIM: MR. LAU, SHING LUNG, HE'S GOING TO BE THE FIRST WITNESS THAT WE'RE GOING TO CALL. HE'S OUTSIDE AND WE NEED TO SWEAR HIM IN FIRST.

THE COURT: OH, ALL RIGHT.

NOW WE HAVE ANOTHER WITNESS TO SWEAR IN.

MR. LIM: HE DOES NOT NEED A TRANSLATOR.

THE CLERK: OKAY.

AND WOULD YOU LIKE HIM AT THE WITNESS STAND, YOUR HONOR?

THE COURT: HUH?

THE CLERK: AT THE WITNESS STAND?

THE COURT: YEAH, PLEASE. OVER HERE.

(PAUSE.)



12

THE CLERK:  IF I COULD HAVE YOU PLEASE RAISE YOUR RIGHT HAND.

THE COURT:  FACE THE CLERK IF YOU WILL?

THE WITNESS:  YES.

THE CLERK:  DO YOU SOLEMNLY STATE THAT THE TESTIMONY YOU MAY GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, SO HELP YOU GOD?

THE WITNESS:  YES, I DO.

THE CLERK:  THANK YOU.

PLEASE HAVE A SEAT.  AND FOR THE RECORD, SIR, IF YOU COULD PLEASE STATE AND SPELL YOUR FIRST AND LAST NAME.

THE WITNESS:  MY NAME IS SHING LUNG LAU, S-H-I-N-G, L-U-N-G, L-A-U.

THE CLERK:  THANK YOU.

SHING LUNG LAU,

CALLED AS A WITNESS BY THE PLAINTIFF, WAS SWORN AND TESTIFIED AS FOLLOWS:

THE COURT:  YOU MAY INQUIRE?

MR. LIM:  THANK YOU, YOUR HONOR.

DIRECT EXAMINATION

BY MR. LIM:

Q    GOOD MORNING, MR. LAU.  CAN YOU STATE WHAT YOUR RELATION IS TO THE PROPERTY LOCATED AT 9705 ARDENDALE



13

AVENUE, ARCADIA, CALIFORNIA 91007?

A    I'M THE AUTHORIZED PROPERTY MANAGER.

Q    AND I'M GOING TO DIRECT YOUR ATTENTION TO PLAINTIFF'S MARKED EXHIBIT NUMBER 1.  CAN YOU DESCRIBE FOR THE COURT WHAT THIS IS?

(MARKED FOR IDENTIFICATION:

EXHIBIT 1, LEASE.)

A    THIS IS THE LEASE BETWEEN THE PREVIOUS OWNER OF THE PROPERTY AND THE CURRENT TENANTS.

Q    AND IS THE CURRENT TENANTS CYNTHIA CARTER AS WELL AS CHRISTOPHER LOPEZ?

A    YES.

Q    AND WAS THE PROPERTY RENTED TO THEM?

A    YES.

Q    AND UNDER THIS LEASE AGREEMENT, WAS THE RENTAL AMOUNT $2,950?

A    THAT'S WHAT THE LEASE SAYS, BUT THEY HAVE ALWAYS ONLY PAID $2,932.20.

Q    SO THEY OWED AT LEAST FOR EACH MONTH, $2,932.50.

A    TWENTY CENTS, YES.

Q    AND DO YOU KNOW IF THE LEASE AGREEMENTS ALLOW FOR ATTORNEY'S FEES?

THE COURT:  SORRY, I HAVE TO INTERRUPT YOU.

YOU GOTTA PUT THAT AWAY.  PUT THE PAPER AWAY, PLEASE.  NO NEWSPAPERS.



14

GO AHEAD, COUNSEL, IF YOU'D ASK IT AGAIN. I'M SORRY.

BY MR. LIM:

Q    DO YOU KNOW IF THE LEASE AGREEMENTS ALLOW FOR ATTORNEYS' FEES TO THE PREVAILING PARTY?

A    I UNDERSTAND THAT THE OWNER SENT A NOTICE IN DECEMBER OF 2023, THAT THERE WILL BE NO ATTORNEY'S FEE.

MR. HERMANSEN:  MOTION TO STRIKE.  LACKS FOUNDATION.

THE COURT:  MAY I HAVE A QUESTION AGAIN?  I MISSED SOMETHING IN THERE.

MR. LIM:  DO YOU KNOW IF THE LEASE AGREEMENTS ALLOWS FOR ATTORNEYS' FEES FOR THE PREVAILING PARTY IN LITIGATION?

THE COURT:  WHY IS IT IMPORTANT THAT HE KNOWS THAT? IS IT NOT COMING INTO EVIDENCE?

MR. LIM:  THERE MAY BE A MOTION FOR -- OR THERE MAY BE COSTS ASSOCIATED WITH THIS FOR THE PREVAILING PARTY FOR ATTORNEYS' FEES.

THE COURT:  THERE MIGHT BE WHAT?

MR. LIM:  THERE MAY BE ATTORNEYS' FEES THAT ARE ASKED FOR BY EITHER PARTY IN THE EVENT OF EITHER PARTY PREVAILING IN THIS CASE.

THE COURT:  AND THE OBJECTION AGAIN.

MR. HERMANSEN:  THE OBJECTION WAS HE ASKED SOMETHING ABOUT THE FEES, AND HE SAID SOMEBODY ELSE WENT AND SERVED SOME NOTICE.  SO THE MOTION TO STRIKE WAS LACKS FOUNDATION.

THE COURT:  OKAY.  GRANTED.

BY MR. LIM:

Q    DID YOU CAUSE TO BE SERVED A 5-DAY PAY OR QUIT



15

NOTICE?

A    YES.

Q    DIRECTING YOUR ATTENTION TO PLAINTIFF'S MARKED EXHIBIT NUMBER 2.  IS THIS A TRUE AND CORRECT COPY OF THAT NOTICE?


(MARKED FOR IDENTIFICATION:

EXHIBIT 2, 5-DAY NOTICE.)


THE WITNESS:  YES.

BY MR. LIM:

Q    AND CAN YOU TELL FOR THE COURT HOW MUCH THE RENT WAS DEMANDED ON THIS NOTICE?

A    IT'S $11,728.80.

Q    AND DID THE TENANTS COMPLY WITH THIS 5-DAY NOTICE?

A    NO, THEY DID NOT.

Q    DID THEY EVER PAY YOU ANY OF THE RENT THAT WAS DEMANDED?

A    NO.

Q    DO YOU KNOW IF YOUR PARENTS HAD EVER RECEIVED THE MONEY?

A    THEY DID NOT.

Q    AND CAN YOU TELL FOR THE COURT WHAT PERIOD THIS RENT WAS DEMANDED FOR?

A    THE PERIOD IS FOR JANUARY OF THIS YEAR TO APRIL OF THIS YEAR.

Q    AND TURNING YOUR ATTENTION TO PLAINTIFF'S



16

MARKED EXHIBIT NUMBER 3.  CAN YOU DESCRIBE FOR THE COURT WHAT THIS IS?

(MARKED FOR IDENTIFICATION:

EXHIBIT 3, PROOF OF SERVICE.)

THE WITNESS:  THIS IS THE SERVICE OF NOTICE.

BY MR. LIM:

Q    AND THIS WAS SERVED BY A REGISTERED PROCESS SERVER?

A    YES.

MR. LIM:  YOUR HONOR, AT THIS TIME, PLAINTIFF WOULD LIKE TO MOVE INTO EVIDENCE PLAINTIFF'S MARKED EXHIBIT NUMBER 1, NUMBER 2, AND NUMBER 3.

THE COURT:  ONE IS THE LEASE, 2 IS THE 5-DAY NOTICE TO PAY OR QUIT, 3 IS THE PROOF OF SERVICE BY REGISTERED PROCESS SERVER?

MR. LIM:  YES, YOUR HONOR.

MR. HERMANSEN:  NO OBJECTION.

THE COURT:  ALL RIGHT.

ONE, 2, AND 3 IN EVIDENCE.

(RECEIVED IN EVIDENCE:

EXHIBITS 1 - 3)

MR. LIM:  THANK YOU, YOUR HONOR.

BY MR. LIM:

Q    DIRECTING YOUR ATTENTION TO PLAINTIFF'S MARKED



17

EXHIBIT NUMBER 4.  CAN YOU DESCRIBE FOR THE COURT WHAT THIS IS?

(MARKED FOR IDENTIFICATION:

EXHIBIT 4, 3-DAY NOTICE.)

THE WITNESS:  THIS IS A 3-DAY NOTICE TO QUIT.

BY MR. LIM:

Q     AND WAS THIS SERVED ONTO THE TENANT AS WELL?

A     YES.

Q     AND CAN YOU DESCRIBE FOR THE COURT WHAT THIS SAYS ON THIS DOCUMENT RIGHT HERE STARTING FROM "ON APRIL 19TH"?

A     "ON APRIL 19, 2024, THE TENANTS WERE SERVED WITH A 5-DAY NOTICE TO PAY OR QUIT.

"ON APRIL 29, 2024, THE PERIOD OF THAT NOTICE EXPIRED AT THE END OF THE DAY, AND THE TENANTS FAILED TO COMPLY WITH THAT 5 DAYS TO PAY OR QUIT NOTICE.  SO THEIR TENANCY WILL BE TERMINATED AT THE EXPIRATION OF THIS NOTICE."

Q     THANK YOU.

AND DIRECTING YOUR ATTENTION TO PLAINTIFF'S MARKET EXHIBIT NUMBER 5.  CAN YOU DESCRIBE FOR THE COURT WHAT THIS DOCUMENT IS?

(MARKED FOR IDENTIFICATION:

EXHIBIT 5, PROOF OF SERVICE.)

THE WITNESS:  THIS IS A DECLARATION OF SERVICE OF



18

NOTICE TO THE TENANTS.

BY MR. LIM:

Q    AND THIS IS IN RELATION TO WHICH DOCUMENT?

A    THE 3-DAY NOTICE TO QUIT.

Q    AND WAS THIS ALSO SERVED BY A REGISTERED PROCESS SERVER?

A    YES.

Q    THANK YOU.

MR. LIM:  YOUR HONOR, PLAINTIFF WOULD LIKE TO MOVE INTO EVIDENCE PLAINTIFF'S MARKED EXHIBIT NUMBER 4, AS WELL AS NUMBER 5.

MR. HERMANSEN:  NO OBJECTION.

THE COURT:  ALL RIGHT.  THEY'RE IN.

(RECEIVED IN EVIDENCE:

EXHIBITS 4 - 5.)

THE COURT:  YOU DON'T HAVE TO STAND UP.  RELAX.

MR. LIM:  THANK YOU, YOUR HONOR.

BY MR. LIM:

Q    ARE THE TENANTS STILL IN POSSESSION OF THE UNIT?

A    YES.

Q    AND YOU'VE NEVER RECEIVED ANY OF THE RENT DEMANDED IN THE NOTE; CORRECT?

A    YEAH, WE HAVEN'T.

Q    ARE YOU ALSO REQUESTING POSSESSION OF THE UNIT BACK, AS WELL AS A FORFEITURE OF THE LEASE AGREEMENT?



19

A    YES.

Q    ARE YOU ALSO ASKING FOR HOLDOVER DAMAGES AS PART OF THE JUDGMENT ALONG WITH THE RENT?

A    YES.

Q    DOES THAT RENT AMOUNT COME OUT AS LISTED UNDER PLAINTIFF'S MARKED EXHIBIT NUMBER 3 -- OR I'M SORRY -- NUMBER 2 AS $11,728.80, PLUS HOLDOVER DAMAGES WITH 80 DAYS AT A RATE OF $97.74, TOTALING $2,932.20 IN HOLDOVER.

A    YES.

MR. LIM:  THANK YOU, YOUR HONOR.  NO FURTHER QUESTIONS FOR THIS WITNESS.

THE COURT:  CROSS?

MR. HERMANSEN:  THANK YOU.

(PAUSE.)

THE COURT:  SIR, WHERE ARE YOU GOING?  YOU'RE STILL BEING EXAMINED.

THE WITNESS:  OKAY.  YES.

CROSS-EXAMINATION

BY MR. HERMANSEN:

Q    MR. LAU, AS THE AUTHORIZED PROPERTY MANAGER, WHAT ARE YOUR JOB DUTIES?

A    COMMUNICATE WITH THE TENANTS AND FIX WHATEVER ISSUES THAT THEY MAY HAVE AND OTHER THINGS.

Q    DO YOU DEAL WITH THE RENT AS WELL?

A    YES.



20

Q       AND HAVE YOU EVER HAD OCCASION TO MAKE REPAIRS AT MS. CARTER'S RESIDENCE?

A       YES.  SEVERAL TIMES.

Q       AND YOU YOURSELF DID IT.

A       IT DEPENDS ON WHAT THE REPAIRS.  LIKE FOR EXAMPLE, A GARAGE STORE, THAT, I HIRE SOMEBODY ELSE. SOMETIMES SOME OF THE IF -- LIKE, THE CHECKING THE SMOKE DETECTORS, I DID THAT MYSELF.

Q       THE DAY THAT YOU FIXED THE SMOKE DETECTORS, YOU SENT A TEXT MESSAGE TO MS. CARTER TO LET HER KNOW THAT YOU WERE COMING?

A       I SENT A 24-HOUR NOTICE.

Q       IN ADDITION TO THAT THOUGH, DID YOU ALSO TEXT MESSAGE WITH MS. CARTER?

A       I DON'T REMEMBER.  I MAY HAVE.  I SHOULD HAVE.

Q       HOW DID YOU GET MS. CARTER'S PHONE NUMBER?

A       THE OWNERS GAVE IT TO ME.

Q       THE OWNERS BEING YOUR FATHER.

A       YES.

Q       DID YOU --

A       I THINK, ACTUALLY, MY MOTHER GAVE IT TO ME.  I DON'T REMEMBER.

Q       ASIDE FROM TESTING ABOUT THE SMOKE DETECTORS, HAVE YOU HAD OTHER TEXT MESSAGES WITH MS. CARTER?

A       YES.

Q       AND IS YOUR PHONE NUMBER (718) 300-6010?

A       YES.

Q       IS THAT YOUR CELL PHONE?



21

A    YES.

(PAUSE.)

BY MR. HERMANSEN:

Q    YOUR PARENTS, THEY LIVE AT 221 SOUTH CURTIS AVENUE IN ALHAMBRA?

MR. LIM:  OBJECTION, YOUR HONOR.  RELEVANCE.

THE COURT:  I DIDN'T HEAR THE QUESTION.

MR. HERMANSEN:  I SAID, "YOUR PARENTS LIVE AT 221 SOUTH CURTIS AVENUE IN ALHAMBRA."

THE COURT:  THAT'S GOING TO BE RELEVANT?

MR. HERMANSEN:  YES, I PROMISE.

THE COURT:  ARE YOU GOING TO EXPLAIN IT, OR DO I HAVE TO WAIT?

MR. HERMANSEN:  WAIT.

THE COURT:  ALL RIGHT.  I'LL GIVE YOU SOME LATITUDE THERE.  GO AHEAD.

MR. LIM:  PLAINTIFF WOULD LIKE AN OFFER OF PROOF AS TO WHY THIS IS RELEVANT.

THE COURT:  OVERRULED.

GO AHEAD.

THE WITNESS:  I DON'T KNOW IF I'M AT LIBERTY TO SAY BECAUSE I DON'T LIVE THERE.  I MEAN, AM I AT LIBERTY TO SAY THAT?

THE COURT:  COULD YOU ANSWER THE QUESTION?  YOU'RE HERE TO ANSWER THE QUESTION.

THE WITNESS:  WELL, I DON'T KNOW IF I HAVE THE RIGHT



TO SAY IT, TO ANSWER THE QUESTION.

THE COURT:  I'M INSTRUCTING YOU TO ANSWER THE QUESTION.

THE WITNESS:  BUT I DON'T KNOW IF I HAVE THE RIGHT TO DO THAT.

THE COURT:  I'M TELLING YOU WHAT YOUR RIGHTS ARE RIGHT NOW.  YOU'RE IN MY COURTROOM.  ANSWER THE QUESTION OR REFUSE.  IF YOU WANT TO REFUSE, YOU CAN DO THAT TOO.

MR. LIM:  YOUR HONOR, AGAIN, PLAINTIFF WOULD RENEW THEIR OBJECTION.  I BELIEVE THAT THIS IS GOING TOWARDS SOMETHING THAT THE DEFENSE COUNSEL IS SEEKING OUTSIDE OF THIS CAUSE OF ACTION.  AGAIN, PLAINTIFF IS RENEWING THEIR OBJECTION TO ASK FOR AN OFFER OF PROOF BECAUSE THIS IS CLEARLY SEEKING SOMETHING OUTSIDE OF THE BOUNDS OF AN (INDISCERNIBLE) --

THE WITNESS:  THE DEFENDANTS ARE SQUATTERS WHO HAVE REFUSED TO PAY RENT FOR OVER A YEAR.  MY PARENTS ARE VERY SCARED OF THEM, AND MY PARENTS DO NOT -- WELL, THEY'RE SCARED.  YOU KNOW HOW PEOPLE ARE, YOU KNOW.  TENANTS, THEY MURDER THE LANDLORDS, SET FIRES TO THEIR HOUSES.

THE COURT:  OH, HAVE ANY OF THESE TENANTS DONE THAT?

THE WITNESS:  WELL, THEY ARE VERY -- WHAT'S THE WORD -- "NOT RIGHT IN THE HEAD."

THE COURT:  ALL RIGHT.  I'LL SUSTAIN THE OBJECTION.

GO AHEAD.  WE MAY REVISIT THAT.

THE WITNESS:  (INDISCERNIBLE).

THE COURT:  OKAY.  HANG ON.  YOU GOT ANOTHER QUESTION COMING.



23

BY MR. HERMANSEN:

Q    AND YOU YOURSELF, SIR, YOU LIVE AT 6726 SALTER AVENUE IN ARCADIA?

A    YES.

MR. LIM:  OBJECTION, YOUR HONOR.  SAME.

MR. HERMANSEN:  I WILL SHOW THE RELEVANCE IN JUST A MOMENT.

THE COURT:  GO AHEAD.

BY MR. HERMANSEN:

Q    AND YOU LIVE THERE WITH YOUR WIFE AND CHILDREN; CORRECT?

A    YES.

Q    AND IS IT CORRECT THAT YOUR MOTHER HAS A CONFLICT WITH YOUR WIFE AND DOESN'T VISIT YOU MUCH?

MR. LIM:  OBJECTION, YOUR HONOR.  RELEVANCE.

MR. HERMANSEN:  I PROMISE IT'S RELEVANT.

THE COURT:  OVERRULED.

THE WITNESS:  YES.  MY WIFE DOES NOT LIKE MY MOTHER. THEY HAVE ISSUES THAT THEY -- THEY JUST DON'T LIKE EACH OTHER.

BY MR. HERMANSEN:

Q    SO AS A RESULT, YOUR PARENTS DON'T OFTEN GO TO YOUR HOUSE?

A    YES, THEY DON'T.  THEY CAN'T EVEN DRIVE.  HOW (INDISCERNIBLE) ME?

Q    WHEN YOU COMMUNICATE WITH YOUR PARENTS, HOW DO YOU USUALLY DO THAT IF THEY'RE NOT THERE?  DO YOU DO IT BY PHONE?



24

A    IF THEY'RE NOT THERE, YES, I USE MY PHONE.

Q    AND YOUR PARENTS HAVE THEIR OWN CELL PHONES?

A    YES.

Q    WITH A SEPARATE NUMBER THAN YOURS?

A    YES.

Q    HAVE YOU EVER SERVED ANY DOCUMENTS TO MS. CARTER?

A    YES.

Q    WHAT DOCUMENTS HAVE YOU SERVED TO HER?

A    I HAVE PERSONALLY SERVED SOME NOTICES, LIKE, THE 24-HOUR NOTICE TO ENTER THE PREMISE FOR INSPECTION AND REPAIRS, AND SOME OTHER NOTICE ABOUT BRINGING POTENTIAL BUYERS INTO THE PROPERTY, AND SOME NOTICES ABOUT -- WELL, THEY NEED TO PAY THE RENT.

Q    ANYTHING ELSE THAT YOU CAN REMEMBER?

A    I THINK THAT'S ABOUT IT.  I MAY HAVE SERVED SOME OTHER NOTICES.  I DON'T REMEMBER, BUT THOSE ARE THE MAIN THINGS.

MR. HERMANSEN:  THANK YOU.  I HAVE NO FURTHER QUESTIONS.

THE COURT:  THANK YOU.

REDIRECT?

MR. LIM:  YES, YOUR HONOR.


REDIRECT EXAMINATION

BY MR. LIM:

Q    MR. LAU, I'M GOING TO DIRECT YOUR ATTENTION TO DEFENDANT'S MARKED EXHIBIT NUMBER 106.  ARE YOU FAMILIAR



25

WITH THIS DOCUMENT?

(MARKED FOR IDENTIFICATION:

EXHIBIT 106, NOTICE.)

THE WITNESS:  YES, I AM FAMILIAR WITH IT.

BY MR. LIM:

Q    EARLIER YOU TESTIFIED THAT YOU HAD SERVED MULTIPLE NOTICES TO THE DEFENDANT; IS THAT CORRECT?

A    YES.

Q    AND ARE THESE ONE OF THOSE NOTICES THAT YOU ALSO SERVED?

A    I DID NOT PERSONALLY SERVE THIS NOTICE, BUT I KNOW THAT THIS NOTICE WAS SERVED.

Q    BUT YOU HAD CAUSE TO BE SERVED --

A    YES, YES.

MR. HERMANSEN:  OBJECTION.  MOTION TO STRIKE. FOUNDATION.

THE COURT:  WHAT'S WRONG WITH THE FOUNDATION?

MR. HERMANSEN:  HE DIDN'T PERSONALLY SERVE IT OR SEE IT SERVED, BUT HE HAS SOME UNSTATED BELIEF THAT IT WAS SERVED OUTSIDE OF HIS PRESENCE.

THE COURT:  OH, I'M SORRY.  I MISUNDERSTOOD.

MR. LIM:  YOUR HONOR, THE WITNESS HAS TESTIFIED THAT HE'S AWARE OF THIS DOCUMENT, THAT HE KNOWS WHAT THIS DOCUMENT IS.  HE HAD SOMEONE SERVE THE DOCUMENT. FOUNDATION GOES TOWARDS WHETHER OR NOT THE WITNESS CAN AUTHENTICATE AND VALIDATE THE ACTUAL DOCUMENT ITSELF.  THE



26

WITNESS HAS TESTIFIED TO THAT.

THE WITNESS HAS ALSO TESTIFIED TO A SEPARATE MATTER AS TO WHETHER OR NOT HE PERSONALLY HAS SERVED THE NOTICE OR HE HAD HIRED SOMEONE TO SERVE THE NOTICE.  HE TESTIFIED THAT HE HAD HIRED SOMEONE TO SERVE THE NOTICE.

THE COURT:  SO WHAT'S THE CURRENT QUESTION?

MR. LIM:  DID YOU CAUSE TO BE SERVED THIS NOTICE ON THE DEFENDANTS?

THE WITNESS:  YES.

THE COURT:  OKAY.  FOR WHATEVER THAT'S WORTH, GO AHEAD.

MR. LIM:  THANK YOU, YOUR HONOR.

PLAINTIFF WOULD LIKE TO MOVE INTO EVIDENCE DEFENDANT'S MARKED EXHIBIT 106 INTO EVIDENCE.

MR. HERMANSEN:  NO OBJECTION.

THE COURT:  ALL RIGHT.


(RECEIVED IN EVIDENCE:

EXHIBIT 106, NOTICE.)


MR. LIM:  NO FURTHER QUESTIONS FOR THIS WITNESS, YOUR HONOR.

THE COURT:  RECROSS?

MR. HERMANSEN:  NO.  THANK YOU.

THE COURT:  ALL RIGHT.  NEXT WITNESS?

YOU MAY STEP DOWN, SIR.

THE WITNESS:  OKAY.  YES.  THANK YOU, YOUR HONOR.

THE COURT:  THANK YOU.



MR. LIM: YES, YOUR HONOR. PLAINTIFF WOULD LIKE TO CALL TO THE STAND MR. HOI KAN LAU. UNFORTUNATELY, HE CAN'T GO TO THE STAND IF IT'S OKAY FOR HIM TO TESTIFY AT --

THE COURT: FROM COUNSEL TABLE, YES.

MR. HERMANSEN: DEFENSE MAKES A MOTION TO EXCLUDE NON-PARTY WITNESSES.

THE COURT: OH, WE REALLY SHOULD HAVE DONE THAT AT THE BEGINNING, BUT OKAY. LET'S EXCLUDE NON-PARTY WITNESSES.

MR. HERMANSEN: IT'S JUST THE ONE NOW BECAUSE THE MOTHER HAD STEPPED OUTSIDE.

THE COURT: OKAY.

MR. LIM: NO OBJECTION, YOUR HONOR.


(PAUSE.)


HOI KAN LAU,
CALLED AS A WITNESS BY THE PLAINTIFF, WAS SWORN AND TESTIFIED THROUGH THE INTERPRETER AS FOLLOWS:

THE COURT: GO AHEAD.

MR. LIM: THANK YOU, YOUR HONOR.


DIRECT EXAMINATION
BY MR. LIM:

Q    GOOD MORNING, MR. LAU.

WHAT IS YOUR RELATIONSHIP TO THE PROPERTY LOCATED AT 9705 ARDENDALE AVENUE, ARCADIA, CALIFORNIA 91007?



28

A    I AM THE PROPERTY OWNER.

MR. LIM:  NO FURTHER QUESTIONS FOR THIS WITNESS, YOUR HONOR.

THE COURT:  NO FURTHER QUESTIONS?

MR. LIM:  YES, YOUR HONOR.


CROSS-EXAMINATION

BY MR. HERMANSEN:

Q    MR. LAU, DO YOU LIVE --

MR. LIM:  YOUR HONOR, OBJECTION.  THIS HAS BEEN ALREADY ASKED BEFORE.

THE COURT:  WHAT?

MR. LIM:  HE'S BEEN PRYING FOR -- TO TRY TO OBTAIN THE ADDRESS OF MR. LAU.  THE COURT HAS SUSTAINED THE PREVIOUS OBJECTION AS TO RELEVANCE FOR THIS CASE.

THE COURT:  IT EXCEEDS DIRECT ALSO.

MR. HERMANSEN:  IT GOES TO THE PAYMENT ON THE 3-DAY NOTICE.

THE COURT:  IT GOES TO?

MR. HERMANSEN:  THE ADDRESS FOR PAYMENT ON THE 3-DAY NOTICE.

THE COURT:  AH, HANG ON.


(PAUSE.)


MR. HERMANSEN:  I'M SORRY, 5-DAY NOTICE.

MR. LIM:  IT'S EXHIBIT 2, YOUR HONOR.

THE COURT:  I DON'T KNOW YOUR EXHIBIT NUMBERS.



BUT ANYWAY, THE 3-DAY NOTICE, MAY 10, 2024; IS THAT WHAT WE'RE TALKING ABOUT?

MR. HERMANSEN:  NO, YOUR HONOR.  IT'S ACTUALLY THE 5-DAY NOTICE.

THE COURT:  FIVE-DAY NOTICE.  OKAY.  I'M SORRY.

MR. HERMANSEN:  APRIL 17TH.

THE COURT:  FIVE-DAY NOTICE, WHICH IS HERE SOMEWHERE.

AH, YES.  FIVE-DAY NOTICE.

(PAUSE.)

THE COURT:  IT STILL EXCEEDS DIRECT, SO I'LL LET YOU ASK THAT IN YOUR CASE BUT NOT NOW.

MR. HERMANSEN:  OKAY.  THANK YOU.

THE COURT:  YOU CAN CALL A WITNESS.  I WON'T LET HIM GO.

MR. LIM:  PLAINTIFF RESTS, YOUR HONOR.

THE COURT:  OKAY.

WE'VE ALREADY ORDERED THE EXHIBITS INTO EVIDENCE.

SO NOW IT IS YOUR CASE?

MR. HERMANSEN:  THANK YOU.

DEFENSE WOULD LIKE TO MAKE A MOTION FOR NON-SUIT OR MOTION FOR JUDGMENT IN THIS CASE.  THE BASIS FOR THE MOTION IS THAT THE 5-DAY NOTICE TO PAY RENT OR QUIT SAYS "PAYMENT SHALL BE MADE BY MAIL OR DIRECTLY IN THE FOLLOWING MANNER:

PERSON TO PAY, HOI KAN LAU, ADDRESS TO PAY



30

6726 SALTER AVENUE IN ARCADIA, AND PHONE NUMBER (718) 300-6010.

THE TESTIMONY OF MR. LAU'S SON WAS THAT HE ACTUALLY LIVES AT 6726 SALTER AVENUE WITH HIS FAMILY. HIS PARENTS DO NOT LIVE THERE. THEY DON'T VISIT HIM BECAUSE OF THE CONFLICT WITH HIS WIFE. AND THE PHONE NUMBER HERE IS NOT THE PHONE NUMBER OF THE PERSON TO PAY; IT IS THE PHONE NUMBER OF THE SON.

THE CCP 1161.2 SAYS THE NOTICE HAS TO STATE THE NAME, ADDRESS, AND TELEPHONE NUMBER OF THE PERSON TO PAY, AND THIS IS NOT THE ADDRESS AND PHONE NUMBER OF THE PERSON TO PAY.

IF THEY WANTED TO MAKE THE PERSON TO PAY SHING LAU, THEY COULD HAVE DONE THAT, BUT HERE, THE NOTICE SAYS TO PAY -- THE PERSON TO GIVE IT TO IS HOI KAN LAU, AND THAT IS NOT HIS PHONE NUMBER OR HIS ADDRESS, AND HE WASN'T THERE.

MR. LIM: YOUR HONOR, THE STATUTE IS VERY CLEAR THAT YOU HAVE TO LIST OUT WHO IS THE PAYMENT TO BE MADE OUT TO, THE PHONE NUMBER, THE ADDRESS. THAT'S EXACTLY WHAT THE NOTICE DOES. THERE'S BEEN NO TESTIMONY AS FAR AS ANY KIND OF REBUTTAL EVIDENCE OR ANYTHING INDICATING THAT MR. HOI KAN LAU WASN'T PRESENT AT THE PROPERTY.

THE ISSUE IN QUESTION REALLY IS, DID WE, AS THE PLAINTIFF, SATISFY 1161.2? DOES THE NOTICE, ON ITS FACE, FAIL TO STATE AN ADDRESS THAT MR. HOI KAN LAU CAN BE FOUND AT, AND CAN THAT NUMBER REACH MR. HOI KAN LAU? THERE'S BEEN TESTIMONY THAT THEY ARE FAMILY, THERE'S BEEN TESTIMONY



31

THAT HE IS THE AUTHORIZED PROPERTY MANAGER -- MR. SHING LUNG LAU IS THE PROPERTY MANAGER.

ESSENTIALLY, IF THE PHONE CALL WAS TO BE MADE TO THAT INDIVIDUAL, MR. HOI KAN LAU COULD HAVE BEEN REACHED.  THERE'S BEEN NO INDICATION THAT PHONE CALLS HAVE BEEN MADE TO THAT NUMBER, AND THAT MR. HOI KAN LAU WAS UNABLE TO BE REACHED, OR THAT SOMEBODY WENT TO THE PROPERTY AND MR. HOI KAN LAU WASN'T PRESENT AT THE PROPERTY.

ESSENTIALLY, YOUR HONOR, IF WE TAKE THE 5-DAY NOTICE ON ITS FACE, WE ASK THE QUESTION OF DOES IT SATISFY 1161.2?  AND ON ITS FACE, IT CLEARLY DOES.

AND, AGAIN, THERE'S BEEN EVIDENCE GIVEN BY A PERCIPIENT WITNESS WHO HAD TESTIFIED THAT THEY ARE THE AUTHORIZED PROPERTY MANAGER OF THE UNIT ITSELF, AND THAT IS THE NUMBER TO REACH THAT INDIVIDUAL, AND IF THERE HAVE BEEN PHONE CALLS MADE TO THAT NUMBER, MR. HOI KAN LAU COULD HAVE BEEN REACHED.  THE PROPERTY ADDRESS AS WELL, IF THE DEFENDANT WANTED TO PROCEED TO THAT ADDRESS, MR. HOI KAN LAU COULD HAVE BEEN FOUND AT THAT ADDRESS AS WELL.

SO THE NOTICE ITSELF, ON ITS FACE, ABSOLUTELY SATISFIES 1161.2.  ALSO, IF YOU TAKE INTO CONSIDERATION AGAIN, THE WITNESS'S -- MR. LAU'S TESTIMONY, THAT ALSO SUPPLEMENTS THE VALIDITY OF THIS NOTICE.

THE COURT:  YOU KEEP SAYING "ON ITS FACE," WE'RE NOT TAKING IT ON ITS FACE, WE'RE TAKING IT WITH EVIDENCE.  AND THE WITNESS SAYS THAT THIS GENTLEMAN NEVER EVER GOES THERE BECAUSE HE CAN'T DRIVE.  THAT'S THE EVIDENCE.

MR. LIM:  YOUR HONOR, THE EVIDENCE DOES SHOW THAT



32

THERE MAY HAVE BEEN A STRAINED RELATIONSHIP BETWEEN MR. SHING LUNG LAU AND HOI KAN LAU, BUT THERE'S BEEN -- THAT DOESN'T -- ISN'T REQUIRED TO BE SHOWN.  WHAT'S REQUIRED TO BE SHOWN UNDER THE STATUE IS WHETHER OR NOT, ON THE NOTICE ITSELF, THERE IS A PERSON TO PAY THAT CAN BE FOUND AT THE ADDRESS LISTED.  AND THERE'S BEEN NO EVIDENCE THAT MR. HOI KAN LAU COULDN'T BE FOUND AT THE ADDRESS.  IF THE DEFENDANT HAD WENT TO THE PROPERTY ADDRESS, MR. HOI KAN LAU COULD HAVE BEEN FOUND, AS WELL AS CALLING THAT NUMBER, MR. HOI KAN LAU COULD HAVE BEEN REACHED.  THE NUMBER ITSELF DICTATES WHETHER OR NOT SOMEBODY CAN REACH THE PERSON TO BE PAID.

YOU CAN KIND OF EQUIVALENT TO PROPERTY MANAGEMENT COMPANIES.  IF THERE WAS A PERSON TO BE PAID LISTED ON A NOTICE, AND THE NUMBER WAS DIRECTED TOWARDS THE PROPERTY MANAGEMENT COMPANY'S MAIN PHONE LINE NUMBER, DOES THAT INVALIDATE THE NOTICE?  OF COURSE NOT, BECAUSE THE RECEPTIONIST OR SOMEONE ELSE WOULD PICK UP THE PHONE AND THEN SAY, "WHO ARE YOU LOOKING TO SPEAK TO?"

OH, MR. SHIN? MR. LIM? MR. LEE?  PERFECT.  I'LL GO TO DIRECT YOU TO THAT PERSON."

THAT COULD HAVE OCCURRED HERE, AND THAT'S WHAT WOULD HAVE OCCURRED HERE IF THE DEFENDANT CALLED THAT NUMBER.  THERE'S BEEN TESTIMONY THAT MR. LAU'S NUMBER IS THAT NUMBER, THERE'S TESTIMONY THAT HE'S THE AUTHORIZED PROPERTY MANAGEMENT AGENT OF THE UNIT ITSELF.  THAT NUMBER WOULD HAVE GOTTEN THE DEFENDANT TO CONNECT TO MR. LAU IF THE DEFENDANT WANTED TO.



33

AND, AGAIN, ALSO, IF THE DEFENDANT WENT TO THE PROPERTY ADDRESS LISTED HERE, WHO WOULD THEY HAVE FOUND? THEY WOULD HAVE FOUND MR. HOI KAN LAU (SIC), AND WHO ELSE COULD THEY HAVE FOUND THERE AS WELL IF THEY HAD ASKED, THEY WOULD HAVE FOUND MR. HOI KAN LAU AS WELL.

SO, YOUR HONOR, AGAIN, THERE'S BEEN NO SHOWING THAT THIS FAILS ON ITS FACE, AS WELL AS WITH THE SUPPLEMENTAL TESTIMONY OF MR. SHING LUNG LAU.

MR. HERMANSEN:  THE STATUTE SAYS "STATING THE AMOUNT THAT IS DUE, THE NAME, TELEPHONE NUMBER, AND ADDRESS OF THE PERSON TO WHOM THE RENT PAYMENT SHALL BE MADE."

THE FOSTER VERSUS WILLIAMS CASE SAYS YOU REALLY HAVE TO INTERPRET THAT EXACTLY AS IT'S SAID.  IT'S NOT AMBIGUOUS.  THESE THINGS HAVE TO MATCH THAT PERSON, AND THEY DON'T MATCH THAT PERSON.  THE PHONE NUMBER BELONGS TO SHING LAU.  HIS PARENTS HAVE A SEPARATE PHONE NUMBER.  THEY DON'T SHARE THE SAME PHONE NUMBER, AND HE LIVES THERE WITH HIS OWN FAMILY.  AND MR. HOI KAN LAU DOESN'T GO THERE, HE WASN'T THERE TO ACCEPT THE PAYMENT.

THE COURT:  THE DEFENSE IS CORRECT.  JUDGMENT FOR DEFENDANT.

WE'LL SEND YOU THAT IN THE MAIL.  THANK YOU.

(PROCEEDINGS CONCLUDED AT 10:01 A.M.)



34

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT R              HON. WILLIAM D. DODSON, COMMISSIONER

HOI KAN LAU,                            )
                                        )
              PLAINTIFF,                )
         VS.                            )
                                        )  CASE NO.:
CYNTHIA CARTER, ET AL.,                 )
                                        )  24PDUD01782
              DEFENDANT.                )
_____ )

         I, LAURA GRIFFIN, TRANSCRIPTIONIST, DO HEREBY

CERTIFY THAT THE FOREGOING PAGES, 1 - 34, INCLUSIVE,

CONSTITUTE A FULL, TRUE, AND ACCURATE TRANSCRIPT, FROM

ELECTRONIC RECORDING, TRANSCRIBED BY ME, OF THE PROCEEDINGS

HELD IN THE FOREGOING MATTER, HOI KAN LAU V. CYNTHIA

CARTER, ET AL., CASE NO. 24PDUD01782, ON THE DOCKET OF THE

SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE COUNTY

OF LOS ANGELES, A COURT OF RECORD, HELD ON AUGUST 1, 2024,

AND ALL PREPARED TO THE BEST OF MY SKILL AND ABILITY.



_____
LAURA GRIFFIN, CET-1709
ELECTRONIC COURT TRANSCRIBER

DATED AND SIGNED THIS 17TH DAY OF MARCH, 2025.



# EXHIBIT #5

BEN GHARAGOZLI (S.B.N 272302)
**LAW OFFICES OF BEN GHARAGOZLI**
200 S. BARRINGTON AVENUE, #491488
LOS ANGELES, CA 90049
TELEPHONE: (310) 272-9211
FACSIMILE: (855) 628-5517
EMAIL: lobgattorney@gmail.com

Attorney for Defendants, Christopher Lopez, Cynthia Carter

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| HOI KAN LAU <br><br> Plaintiff, <br> v. <br><br> CHRISTOPHER LOPEZ, CYNTHIA CARTER, and DOES 1 to 10; <br><br> Defendants | LASC Case No. 24PDUD01782 <br><br> **FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT** <br><br> **[JURY TRIAL DEMANDED]** |

## ANSWER

### I.   GENERAL DENIAL

Pursuant to Section 431.30 of the Code of Civil Procedure, Defendants, Christopher Lopez, Cynthia Carter (hereinafter collectively "Defendants") deny generally and specifically each allegation in the Complaint (hereinafter, "Complaint") and that Plaintiff has been damaged in the sum or sums alleged, in any sum, or at all, or is entitled to any of the relief requested therein, including without limitation, possession, general, equitable, and other damages.

### II.   JURY DEMAND

The above-captioned Defendant demand a jury trial in the above-captioned action.

1

FIRST AMENDED ANSWER

## III.    SEPARATE AFFIRMATIVE DEFENSES

### BREACH OF THE WARRANTY OF HABITABILITY

The amount of rent or holdover damages demanded by Plaintiff is not in fact due because Plaintiff breached the warranty of habitability.  The dwelling at issue and/or common areas of the Subject Property where Defendant resides suffers from defects that render it untenantable and those defects include, but are not limited to, the following:

☒      Ineffective waterproofing and weather protection of roof, exterior walls, broken windows, or doors;

☒      Plumbing is not in good working order, including a water supply that produces hot and cold running water.

☐      Lack of properly functioning heating unit;

☒      Defective electrical wiring or exposed wiring;

☒      Rodents and/or other vermin (e.g., ants, bedbugs, cockroaches, fleas, spiders, or termites);

☒      Floors, stairways, or railings  in disrepair;

☒      Exterior door does not have a functioning lock;

☐      Window(s) reasonably accessible to the public do not have a  functioning lock;

☒      Missing or damaged window screens;

☒      Holes in the walls and/or ceilings;

☐      A Substandard Order was issued by a government agency demonstrating health and safety defects;

☒      Missing or broken smoke detector or carbon monoxide detector;

☒      Common areas are unclean;

☒      Inadequate number of receptacles for garbage;

2

FIRST AMENDED ANSWER

☐ Other: _____

☒ The property is substandard as defined by Sec. 17920.3 of the Health and Safety Code.

## REPAIR AND DEDUCT

☐ Defendant performed repairs and deducted the cost for repairs which Plaintiff knew were needed and failed to provide within a reasonable time.

☐ Defendant made a payment to a utility and therefore was allowed to deduct such payment from the rent. Public Utilities Code §§10009-10009.1, §§12822-12822.1, §§16481-16481.1; Civil Code §1942.2

## CALIFORNIA TENANT PROTECTION ACT OF 2019 (AB 1482)

The Defendant is a tenant who has continuously and lawfully occupied the premises at issue for 12 months or more, or one or more of the tenants has continuously and lawfully occupied the premises for 24 months of more. As such, premises at issue is subject to the provisions of Civil

☒ The Plaintiff is not proceeding in good faith in recovering possession.

☒ Rental agreement was commenced or renewed on or after July 1, 2020 and did not contain the required language in the rental agreement as per required by the Tenant Protection Act of 2019.

☒ The notice is defective because there is no Just Cause to evict under the Tenant Protection Act of 2019.

☒ Plaintiff has failed to state a cause for the eviction.

☒ Landlord is proceeding to use at-fault eviction without stating a permissible at-fault reason complaint with Code of Civil Procedure § 1946.2(b)(1)(A)-(K).

☒ Plaintiff is proceeding to use no-fault eviction without stating a permissible no-fault reason complaint with Code of Civil Procedure §1946.2(b)(2)(A)-(D).

3

FIRST AMENDED ANSWER

77



☒ Plaintiff failed to give notice and opportunity to cure a curable lease violation.

☒ Plaintiff seeks to evict for breach of an immaterial term of the lease and/or failed to issue a written notice to correct the alleged violation.

☒ Plaintiff is seeking to evict for refusal to execute a new lease which does not have similar provisions and/or includes terms in violation of law.

☒ Plaintiff is seeking to evict based on alleged intent to occupy the property by the owner or their spouse, domestic partner, children, grandchildren, parents, or grandparents without a provision of the lease permitting termination of tenancy on this basis.

☒ Plaintiff is seeking to evict based on alleged intent to "substantially remodel," but the work allegedly being conducted do not meet the definition of "substantially remodel" as provided in the Tenant Protection Act of 2019.

☒ The entire eviction is not enforceable because Plaintiff is proceeding to evict under a no-fault cause of action and has failed to provide relocation assistance by either notifying the tenant in writing that the Plaintiff intends to waive one month rent or informing the tenant the right to relocation within 15 calendar days from service of notice. Code of Civil Procedure §§ 1946.2(d)(2) and 1946.2(d)(4).

☒ The entire eviction is not enforceable because Plaintiff failed to notify Defendant(s) of the right to relocation assistance or rent waiver.

☒ Plaintiff is evicting for alleged nonpayment of rent, rent which was increased in excess of the amount permitted under the Tenant Protection Act of 2019.

☒ Plaintiff is evicting for alleged nonpayment of rent, rent which was increased in excess of the amount permitted under the Tenant Protection Act of 2019 after March 15, 2019, and has not been decreased after January 1, 2020, as required by the Tenant Protection Act of 2019.

**COUNTY'S EVICTION MORATORIUM (LOS ANGELES)**

The property at issue is located in the County of Los Angeles and thus is subject to the

4

FIRST AMENDED ANSWER

protections of the County's Eviction Moratorium.

☒    Plaintiff is attempting to evict the defendant based on nonpayment or rent, late charges, interest, or any other fees accrued due to Financial Impacts Related to COVID-19 in violation of the County's Eviction Moratorium.

☒    Plaintiff is attempting to evict a tenant for denying entry to the landlord in violation of the County's Eviction Moratorium.

☒    Plaintiff is attempting to evict defendant based on non-payment of rent due to financial hardship related to COVID-19 and failure to repay by the end of the applicable repayment period in violation of the County's Eviction Moratorium.

☒    Plaintiff is attempting to evict defendant based on failure to pay back unpaid rent under the terms of a payment plan in violation of the County's Eviction Moratorium.

☒    Plaintiff is attempting to evict defendant based on the tenant's failure to comply with the terms of a payment plan that is void as contrary to public policy.

☒    Plaintiff is attempting to evict defendant based on a "No-Fault Termination of Tenancy" in violation of the County's Eviction Moratorium.

☐    Plaintiff is attempting to evict defendant due to Nuisance or Unauthorized Occupants or Pets in violation of the County's Eviction Moratorium.

☒    Plaintiff filed this action in violation of the County's Eviction Moratorium.

### LOS ANGELES COUNTY RENT STABILIZATION ORDINANCE

The premises at issue is a Covered Rental Unit subject to the L.A. County Rent Stabilization Ordinance, and at the time Plaintiff served the relevant Notice:

☒    The Plaintiff failed to comply with the L.A. County Rent Stabilization Ordinance.

☒    The Plaintiff failed to serve a Notice of Termination on the Tenant, via certified mail, return receipt requested.

5

FIRST AMENDED ANSWER

☒    Plaintiff did not have a permitted cause for eviction.

☒    The Plaintiff did not submit a true and accurate copy of the Notice of **Termination** and proof of service of that Notice of Termination on the tenant, via certified mail, **return receipt** requested, to the Department of Consumer and Business Affairs of the County of Los Angeles (DCBA), within 5 days of the service of the Notice of Termination on the tenant.

☒    The Plaintiff failed to maintain proof of service proving compliance with **the L.A.** County Prohibition on Rent Increases.

☒    The Plaintiff failed to comply with the L.A. County  Rent Stabilization **Ordinance's** posting requirements.

☒    The Plaintiff demanded rent which exceeded the legal amount which **could be** demanded.

☒    Defendant is entitled to an offset based on previous payments of unlawful late fees that caused tenant's rent to exceed the maximum allowable rent, pursuant to the applicable rent stabilization statute.

☒    Any habitability defects also constitute reductions in housing services and, therefore, illegal rent increases.

☒    The rent demanded exceeded the legal amount which could be demanded because Plaintiff reduced housing services without granting a corresponding decrease in the money charged as rent.

☒    The Notice does not "permit a determination of the date, place, witnesses and circumstances concerning the reason" for the eviction.

☒    Plaintiff failed to give 10 days from the date of the service of the notice to cure violation of material rental agreement term, to cure the alleged violation of a material rental agreement term.

6

FIRST AMENDED ANSWER

☒    Plaintiff seeks to enforce a rental agreement term that is not material as defined under the L.A. County Rent Stabilization Ordinance.

☐    The acts alleged in the notice do not constitute nuisance under the L.A. County Rent Stabilization Ordinance

☒    Plaintiff has not complied with Government Code §§ 7060-7060.7 for removal of the rental unit from the rental market.

☒    Plaintiff is pursuing this action in violation of the prohibition on retaliation and harassment pursuant to Los Angeles County Municipal Code § 8.52.130.

☒    Plaintiff is not seeking to recover possession of the rental unit for use and occupancy as a primary residence by the Plaintiff or Plaintiff's spouse, registered domestic partner, children, grandchildren, parents, or grandparents in good faith.

☒    Plaintiff failed to disclose to the Department the name of the eligible individual who will occupy the unit and their relationship to the landlord 60 days prior to the final date of the tenancy.

☒    The Plaintiffs are not similarly situated as the Defendants and their household as defined by the County RSO.

☒    The Plaintiffs did not comply with the requirements of the Ordinance regarding a relocation specialist.

☒    The Plaintiffs did not submit the required owner move-in documents to the County RSO Department.

## ESTOPPEL, WAIVER, OR BAD FAITH

Plaintiff is estopped from pursuing this eviction or has waived the right to prosecute an unlawful detainer because:

☒    Plaintiff accepted a rent payment from Defendant after service of the Notice to quit

7

FIRST AMENDED ANSWER

thereby renewing the tenancy.

☒ Plaintiff accepted a rent payment from Defendant with full knowledge of the alleged breach of the rental agreement thereby waiving the right to declare a forfeiture by reason of the breach and renewing the tenancy.

☒ Plaintiff retained a check or money order without negotiating it for an unreasonably long time, thereby accepting payment and renewing the tenancy.

☒ Plaintiff refused to accept the tender of rent payment – either prior to service of the Notice to quit or during the notice period.

☒ In bad faith Plaintiff prevented the payment of rent payment – either prior to service of the Notice to quit or during the notice period.

☒ Defendant is permitted to tender late rent payments if paying a late charge or within a grace period, so Defendant was not in default of the payment of rent.

☒ Plaintiff and Defendant made other payment arrangements after service of the Notice to quit, upon which Defendant detrimentally relied. Therefore payment was not delinquent.

☒ The deposit may be used to off-set any rent default, tenant has a deposit, so the rent is not delinquent.

## NO BREACH OF COVENANT

☐ Defendant's obligation to pay rent has been extinguished by Defendant's performance in the manner directed by Plaintiff.

☒ Plaintiff has demanded compliance with a term of the lease or rental agreement that is not legally enforceable.

☐ The alleged breach(es) of the rental agreement are trivial.

☒ Defendant denies the allegations stated in the notice.

☐ Plaintiff did not serve a proper notice to enter under Section 1954 of the Civil Code.

8

FIRST AMENDED ANSWER

Therefore, Defendant was under no obligation to permit Plaintiff to enter.

☐    Plaintiff did not serve a proper notice to use pesticides under governing **municipal** and state law. Therefore, Defendant was under no obligation to permit Plaintiff to enter.

## DEFECTIVE NOTICE

The notice is defective and/or inapplicable because:

☒    The amount of rent demanded in the Notice is more than the "amount due."

☒    The amount of rent demanded in the Notice is more than the "amount due" because Defendant is entitled to a set off.

☒    Defendant is entitled to an offset in rent because the Notice includes rent fees, a rental surcharge, or liquidated damages in violation of Civil Code § 1671(c)(2) and § 1951.5.

☒    The Notice did not adequately identify a person/address where the rent is to be paid.

☒    The person identified on Notice was not actually available at the time and place stated in the Notice.

☒    Plaintiff did not serve the Notice either (1) in person, or (2) by both posting the Notice on the door and mailing said Notice.

☒    Plaintiff failed to serve the Notice at all.

☒    The Property is covered by the federal CARES ACT and the Plaintiff did not provide 30 days' notice to vacate.

☒    The notice failed to state the fair market rent and/or number of bedrooms.

☒    The Notice was superseded by a later-served notice.

## MISCELLANEOUS

☒    Plaintiff lacks standing and/or capacity to bring this action.

☒    Defendant is entitled to an offset based on previous payments of unlawful late fees that caused tenant's rent to exceed the maximum allowable rent, pursuant to the applicable rent

9

FIRST AMENDED ANSWER

stabilization statute.

☒    Plaintiff served the Notice to quit, filed the present unlawful detainer, or imposed a rent increase to retaliate against Defendant for invoking their right to complain to a governmental agency, to Plaintiff or to Plaintiff's agent concerning an issue of habitability, a nuisance being perpetrated on the premises, or for Defendant's peaceful and lawful exercise of other rights.

☒    Plaintiff's unlawful detainer action is the product of arbitrarily discrimination against Defendant based on race, national origin, sexual orientation, family composition, disability, sex, age, religion, or the presence of children in the household.

☒    The notice was not served in compliance with the parties' lease agreement.

☒    Plaintiff is neither the owner of the premises at issue nor the management company authorized to act on Plaintiff's behalf by filing a lawsuit.

☒    Plaintiff is a new owner/manager who did not provide Defendant with proper notice of the change in ownership or management required by Civil Code Sections 1111 and 1962(c).

☒    Plaintiff filed the Complaint before the expiration of the Notice.

☒    The notice fails to comply with Civil Code 1946.1.

## IV.    RELIEF REQUESTED

WHEREFORE, Defendant prays as follows:

1.    That the Complaint be dismissed with prejudice and/or judgment entered in favor of Defendant;

2.    For the costs of suit incurred herein, including reasonable attorneys' fees to the extent permissible by law, contract, or otherwise determined by the Court;

3.    For statutory damages as permitted by law; and

4.    For such other and further relief as the Court deems just and proper, including (if applicable) an order to repair the relevant dwelling and adjust the monthly rent accordingly.

10

FIRST AMENDED ANSWER

DATED:  July 11, 2024

**Law Offices of Ben Gharagozli**

By: _____/s/_____

Ben Gharagozli
Attorney for Defendants, Christopher Lopez, Cynthia Carter

11
FIRST AMENDED ANSWER

**VERIFICATION**

I am a defendant in this action, and I have either read this Amended Answer or had it read to me. I declare under penalty of perjury pursuant to the laws of the State of California that, based upon information and belief, the foregoing is true and correct.

DATED:        July 11, 2024                    By:_____
                                              Defendant, Christopher Lopez

**VERIFICATION**

I am a defendant in this action, and I have either read this Amended Answer or had it read to me. I declare under penalty of perjury pursuant to the laws of the State of California that, based upon information and belief, the foregoing is true and correct.

DATED:        July 11, 2024                    By:_____
                                              Defendant, Cynthia Carter

12
FIRST AMENDED ANSWER

**PROOF OF SERVICE**
LASC Case # 24PDUD01782

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 13654 Victory Blvd. Ste. 111, Van Nuys, CA 91401.

On July 11, 2024, I served the foregoing document(s) described as:

**FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT**

**[JURY TRIAL DEMANDED]**

as follows:

☒          (BY ELECTRONIC MAIL): I caused such document to be transmitted electronically as follows:

info@capropertylawgroup.com

Executed on July 11, 2024.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Kevin Hermansen

# EXHIBIT #6



BEN GHARAGOZLI (S.B.N 272302)
**LAW OFFICES OF BEN GHARAGOZLI**
200 S. BARRINGTON AVENUE, #491488
LOS ANGELES, CA 90049
TELEPHONE: (310) 272-9211
FACSIMILE: (855) 628-5517
EMAIL: lobgattorney@gmail.com

Attorney for Defendants, Christopher Lopez, Cynthia Carter

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| SIU FAN TSANG<br><br>      Plaintiff,<br><br>      v.<br><br>CHRISTOPHER LOPEZ, CYNTHIA CARTER, MARGARITA ALVAREZ, and DOES 1 to 10;<br><br>      Defendants | LASC Case No. 24PDUD04392<br><br>**ANSWER TO PLAINTIFF'S COMPLAINT**<br><br>**[JURY TRIAL DEMANDED]** |

**ANSWER**

**I.    GENERAL DENIAL**

Pursuant to Section 431.30 of the Code of Civil Procedure, Defendants, Christopher Lopez, Cynthia Carter, and Margarita Alvarez (hereinafter collectively "Defendants") deny generally and specifically each allegation in the Complaint (hereinafter, "Complaint") and that Plaintiff has been damaged in the sum or sums alleged, in any sum, or at all, or is entitled to any of the relief requested therein, including without limitation, possession, general, equitable, and other damages.

**II.    JURY DEMAND**

The above-captioned Defendant demand a jury trial in the above-captioned action.

1
ANSWER

## III.    SEPARATE AFFIRMATIVE DEFENSES

### BREACH OF THE WARRANTY OF HABITABILITY

The amount of rent or holdover damages demanded by Plaintiff is not in fact due because Plaintiff breached the warranty of habitability.  The dwelling at issue and/or common areas of the Subject Property where Defendant resides suffers from defects that render it untenantable and those defects include, but are not limited to, the following:

☒    Ineffective waterproofing and weather protection of roof, exterior walls, broken windows, or doors;

☒    Plumbing is not in good working order, including a water supply that produces hot and cold running water.

☒    Lack of properly functioning heating unit;

☒    Defective electrical wiring or exposed wiring;

☒    Rodents and/or other vermin (e.g., ants, bedbugs, cockroaches, fleas, spiders, or termites);

☒    Floors, stairways, or railings in disrepair;

☒    Exterior door does not have a functioning lock;

☐    Window(s) reasonably accessible to the public do not have a functioning lock;

☒    Missing or damaged window screens;

☒    Holes in the walls and/or ceilings;

☐    A Substandard Order was issued by a government agency demonstrating health and safety defects;

☒    Missing or broken smoke detector or carbon monoxide detector;

☒    Common areas are unclean;

☒    Inadequate number of receptacles for garbage;

2

ANSWER

90

☐    Other: _____

☒    The property is substandard as defined by Sec. 17920.3 of the Health and Safety Code.

### REPAIR AND DEDUCT

☐    Defendant performed repairs and deducted the cost for repairs which Plaintiff knew were needed and failed to provide within a reasonable time.

☐    Defendant made a payment to a utility and therefore was allowed to deduct such payment from the rent. Public Utilities Code §§10009-10009.1, §§12822-12822.1, §§16481-16481.1; Civil Code §1942.2

### CALIFORNIA TENANT PROTECTION ACT OF 2019 (AB 1482)

The Defendant is a tenant who has continuously and lawfully occupied the premises at issue for 12 months or more, or one or more of the tenants has continuously and lawfully occupied the premises for 24 months of more. As such, premises at issue is subject to the provisions of Civil Code §1946.2

☒    The Plaintiff is not proceeding in good faith in recovering possession.

☒    Rental agreement was commenced or renewed on or after July 1, 2020 and did not contain the required language in the rental agreement as per required by the Tenant Protection Act of 2019.

☒    The notice is defective because there is no Just Cause to evict under the Tenant Protection Act of 2019.

☒    Plaintiff has failed to state a cause for the eviction.

☒    Landlord is proceeding to use at-fault eviction without stating a permissible at-fault reason complaint with Code of Civil Procedure § 1946.2(b)(1)(A)-(K).

☒    Plaintiff is proceeding to use no-fault eviction without stating a permissible no-fault reason complaint with Code of Civil Procedure §1946.2(b)(2)(A)-(D).

3

ANSWER

91

☒    Plaintiff failed to give notice and opportunity to cure a curable lease violation.

☒    Plaintiff seeks to evict for breach of an immaterial term of the lease **and/or** failed to issue a written notice to correct the alleged violation.

☒    Plaintiff is seeking to evict for refusal to execute a new lease which does not have similar provisions and/or includes terms in violation of law.

☒    Plaintiff is seeking to evict based on alleged intent to occupy the property by the owner or their spouse, domestic partner, children, grandchildren, parents, or grandparents without a provision of the lease permitting termination of tenancy on this basis.

☒    Plaintiff is seeking to evict based on alleged intent to "substantially remodel," but the work allegedly being conducted do not meet the definition of "substantially remodel" as provided in the Tenant Protection Act of 2019.

☒    The entire eviction is not enforceable because Plaintiff is proceeding to evict under a no-fault cause of action and has failed to provide relocation assistance by either notifying the tenant in writing that the Plaintiff intends to waive one month rent or informing the tenant the right to relocation within 15 calendar days from service of notice. Code of Civil Procedure §§ 1946.2(d)(2) and 1946.2(d)(4).

☒    The entire eviction is not enforceable because Plaintiff failed to notify Defendant(s) of the right to relocation assistance or rent waiver.

☒    Plaintiff is evicting for alleged nonpayment of rent, rent which was increased in excess of the amount permitted under the Tenant Protection Act of 2019.

☒    Plaintiff is evicting for alleged nonpayment of rent, rent which was increased in excess of the amount permitted under the Tenant Protection Act of 2019 after March 15, 2019, and has not been decreased after January 1, 2020, as required by the Tenant Protection Act of 2019.

**COUNTY'S EVICTION MORATORIUM (LOS ANGELES)**

The property at issue is located in the County of Los Angeles and thus is subject to the

4

ANSWER

protections of the County's Eviction Moratorium.

☒ Plaintiff is attempting to evict the defendant based on nonpayment or rent, late charges, interest, or any other fees accrued due to Financial Impacts Related to COVID-19 in violation of the County's Eviction Moratorium.

☒ Plaintiff is attempting to evict a tenant for denying entry to the landlord in violation of the County's Eviction Moratorium.

☒ Plaintiff is attempting to evict defendant based on non-payment of rent due to financial hardship related to COVID-19 and failure to repay by the end of the applicable repayment period in violation of the County's Eviction Moratorium.

☒ Plaintiff is attempting to evict defendant based on failure to pay back unpaid rent under the terms of a payment plan in violation of the County's Eviction Moratorium.

☒ Plaintiff is attempting to evict defendant based on the tenant's failure to comply with the terms of a payment plan that is void as contrary to public policy.

☒ Plaintiff is attempting to evict defendant based on a "No-Fault Termination of Tenancy" in violation of the County's Eviction Moratorium.

☐ Plaintiff is attempting to evict defendant due to Nuisance or Unauthorized Occupants or Pets in violation of the County's Eviction Moratorium.

☒ Plaintiff filed this action in violation of the County's Eviction Moratorium.

### LOS ANGELES COUNTY RENT STABILIZATION ORDINANCE

The premises at issue is a Covered Rental Unit subject to the L.A. County Rent Stabilization Ordinance, and at the time Plaintiff served the relevant Notice:

☒ The Plaintiff failed to comply with the L.A. County Rent Stabilization Ordinance.

☒ The Plaintiff failed to serve a Notice of Termination on the Tenant, via certified mail, return receipt requested.

5
ANSWER

93



☒    Plaintiff did not have a permitted cause for eviction.

☒    The Plaintiff did not submit a true and accurate copy of the Notice of Termination and proof of service of that Notice of Termination on the tenant, via certified mail, return receipt requested, to the Department of Consumer and Business Affairs of the County of Los Angeles (DCBA), within 5 days of the service of the Notice of Termination on the tenant.

☒    The Plaintiff failed to maintain proof of service proving compliance with the L.A. County Prohibition on Rent Increases.

☒    The Plaintiff failed to comply with the L.A. County Rent Stabilization Ordinance's posting requirements.

☒    The Plaintiff demanded rent which exceeded the legal amount which could be demanded.

☒    The Plaintiff did not qualify the termination as at-fault or no-fault.

☒    The notice to cure did not provide sufficient notice pursuant to the L.A. County Rent Stabilization Ordinance.

☒    Defendant is entitled to an offset based on previous payments of unlawful late fees that caused tenant's rent to exceed the maximum allowable rent, pursuant to the applicable rent stabilization statute.

☒    Any habitability defects also constitute reductions in housing services and, therefore, illegal rent increases.

☒    The rent demanded exceeded the legal amount which could be demanded because Plaintiff reduced housing services without granting a corresponding decrease in the money charged as rent.

☒    The Notice does not "permit a determination of the date, place, witnesses and circumstances concerning the reason" for the eviction.

6

ANSWER

☒    Plaintiff failed to give 10 days from the date of the service of the notice to cure violation of material rental agreement term, to cure the alleged violation of a material rental agreement term.

☒    Plaintiff seeks to enforce a rental agreement term that is not material as defined under the L.A. County Rent Stabilization Ordinance.

☐    The acts alleged in the notice do not constitute nuisance under the L.A. County Rent Stabilization Ordinance

☒    Plaintiff has not complied with Government Code §§ 7060-7060.7 for removal of the rental unit from the rental market.

☒    Plaintiff is pursuing this action in violation of the prohibition on retaliation and harassment pursuant to Los Angeles County Municipal Code § 8.52.130.

☒    Plaintiff is not seeking to recover possession of the rental unit for use and occupancy as a primary residence by the Plaintiff or Plaintiff's spouse, registered domestic partner, children, grandchildren, parents, or grandparents in good faith.

☒    Plaintiff failed to disclose to the Department the name of the eligible individual who will occupy the unit and their relationship to the landlord 60 days prior to the final date of the tenancy.

☒    The Plaintiffs are not similarly situated as the Defendants and their household as defined by the County RSO.

☒    The Plaintiffs did not comply with the requirements of the Ordinance regarding a relocation specialist.

☒    The Defendant Margarita Alvarez is not on the rental agreement and thus not contractually obligated to pay rent.

**ESTOPPEL, WAIVER, OR BAD FAITH**

7

ANSWER

95

Plaintiff is estopped from pursuing this eviction or has waived the right to prosecute an unlawful detainer because:

☒        Plaintiff accepted a rent payment from Defendant after service of the Notice to quit thereby renewing the tenancy.

☒        Plaintiff accepted a rent payment from Defendant with full knowledge of the alleged breach of the rental agreement thereby waiving the right to declare a forfeiture by reason of the breach and renewing the tenancy.

☒        Plaintiff retained a check or money order without negotiating it for an unreasonably long time, thereby accepting payment and renewing the tenancy.

☒        Plaintiff refused to accept the tender of rent payment – either prior to service of the Notice to quit or during the notice period.

☒        In bad faith Plaintiff prevented the payment of rent payment – either prior to service of the Notice to quit or during the notice period.

☒        Defendant is permitted to tender late rent payments if paying a late charge or within a grace period, so Defendant was not in default of the payment of rent.

☒        Plaintiff and Defendant made other payment arrangements after service of the Notice to quit,  upon which Defendant detrimentally relied.  Therefore  payment was not delinquent.

☒        The deposit may be used to off-set any rent default, tenant has a deposit, so the rent is not delinquent.

### **NO BREACH OF COVENANT**

☐        Defendant's obligation to pay rent has been extinguished by Defendant's performance in the manner directed by Plaintiff.

☒        Plaintiff has demanded compliance with a term of the lease or rental agreement that is not legally enforceable.

8

ANSWER

☐    The alleged breach(es) of the rental agreement are trivial.

☒    Defendant denies the allegations stated in the notice.

☐    Plaintiff did not serve a proper notice to enter under Section 1954 of the Civil Code. Therefore, Defendant was under no obligation to permit Plaintiff to enter.

☒    Plaintiff did not serve a proper notice to use pesticides under governing municipal and state law.  Therefore, Defendant was under no obligation to permit Plaintiff to enter.

### DEFECTIVE NOTICE

The notice is defective and/or inapplicable because:

☒    The amount of rent demanded in the Notice is more than the "amount due."

☒    The amount of rent demanded in the Notice is more than the "amount due" because Defendant is entitled to a set off.

☒    Defendant is entitled to an offset in rent because the Notice includes rent fees, a rental surcharge, or liquidated damages in violation of Civil Code § 1671(c)(2) and § 1951.5.

☒    The Notice did not adequately identify a person/address where the rent is to be paid.

☒    The person identified on Notice was not actually available at the time and place stated in the Notice.

☒    Plaintiff did not serve the Notice either (1) in person, or (2) by both posting the Notice on the door and mailing said Notice.

☒    Plaintiff failed to serve the Notice at all.

☒    The Property is covered by the federal CARES ACT and the Plaintiff did not provide 30 days' notice to vacate.

☒    The notice failed to state the fair market rent and/or number of bedrooms.

☒    The Notice was superseded by a later-served notice.

9
ANSWER

## MISCELLANEOUS

☒    Plaintiff lacks standing and/or capacity to bring this action.

☒    Defendant is entitled to an offset based on previous payments of unlawful late fees that caused tenant's rent to exceed the maximum allowable rent, pursuant to the applicable rent stabilization statute.

☒    Plaintiff served the Notice to quit, filed the present unlawful detainer, or imposed a rent increase to retaliate against Defendant for invoking their right to complain to a governmental agency, to Plaintiff or to Plaintiff's agent concerning an issue of habitability, a nuisance being perpetrated on the premises, or for Defendant's peaceful and lawful exercise of other rights.

☒    Plaintiff's notice to pay rent or quit is overstated because it requests payment for months previously litigated in Hoi Kan Lau v. Cynthia Carter, Christopher Lopez, LASC Case No. 24PDUD01782. The issue for those months of rent is now res judicata/collateral estoppel.

☒    Plaintiff's unlawful detainer action is the product of arbitrarily discrimination against Defendant based on race, national origin, sexual orientation, family composition, disability, sex, age, religion, or the presence of children in the household.

☒    The notice was not served in compliance with the parties' lease agreement.

☒    Plaintiff is neither the owner of the premises at issue nor the management company authorized to act on Plaintiff's behalf by filing a lawsuit.

☒    Plaintiff is a new owner/manager who did not provide Defendant with proper notice of the change in ownership or management required by Civil Code Sections 1111 and 1962(c).

☒    Plaintiff filed the Complaint before the expiration of the Notice.

☒    The notice fails to comply with Civil Code 1946.1.

IV.    **RELIEF REQUESTED**

WHEREFORE, Defendant prays as follows:

10

ANSWER

1.      That the Complaint be dismissed with prejudice and/or judgment entered in favor of Defendant;

2.      For the costs of suit incurred herein, including reasonable attorneys' fees to the extent permissible by law, contract, or otherwise determined by the Court;

3.      For statutory damages as permitted by law; and

4.      For such other and further relief as the Court deems just and proper, including (if applicable) an order to repair the relevant dwelling and adjust the monthly rent accordingly.

DATED:  February 20, 2025                         **Law Offices of Ben Gharagozli**

By:  _____/s/_____
Ben Gharagozli
Attorney for Defendants, Christopher
Lopez, Cynthia Carter, Margarita Alvarez

11
ANSWER

99

**VERIFICATION**

I am a defendant in this action, and I have either read this Answer or had it read to me. I declare under penalty of perjury pursuant to the laws of the State of California that, based upon information and belief, the foregoing is true and correct.

DATED:        February 20, 2025        By:_____
                                       Defendant, Christopher Lopez

**VERIFICATION**

I am a defendant in this action, and I have either read this Answer or had it read to me. I declare under penalty of perjury pursuant to the laws of the State of California that, based upon information and belief, the foregoing is true and correct.

DATED:        February 20, 2025        By:_____
                                       Defendant, Cynthia Carter

**VERIFICATION**

I am a defendant in this action, and I have either read this Answer or had it read to me. I declare under penalty of perjury pursuant to the laws of the State of California that, based upon information and belief, the foregoing is true and correct.

DATED:        February 20, 2025        By:_____
                                       Defendant, Margarita Alvarez

12
ANSWER

100

**PROOF OF SERVICE**

LASC Case # 24PDUD04392

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 13654 Victory Boulevard, Suite 111, Van Nuys, CA 91401.

On February 20, 2025, I served the foregoing document(s) described as:

**ANSWER TO PLAINTIFF'S COMPLAINT**

**[JURY TRIAL DEMANDED]**

as follows:

Kelvin J. Lo
Brendant T. Molloy

kelvin@lolollp.com
brendan@lolollp.com

☐    (BY MAIL)  I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service.  This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our office's address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐    (BY OVERNIGHT DELIVERY SERVICE)  I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows.  I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided.

☒    (BY ELECTRONIC SERVICE) I served the foregoing document electronically at the above mentioned email address.

Executed on February 20, 2025.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Kevin Hermansen

# EXHIBIT #7

Kevin Hermansen, State Bar No. 266254
*Law Office of Kevin P. Hermansen, P.C.*
13654 Victory Boulevard, Suite 111
Van Nuys, California 91401
Telephone: (818) 971-9992
Email: kevin@kphlegal.com

**Electronically FILED by**
**Superior Court of California,**
**County of Los Angeles**
5/15/2026 9:44 AM
David W. Slayton,
**Executive Officer/Clerk of Court,**
By D. Ludwig, Deputy Clerk

Attorney for Defendants, Christopher Lopez, Cynthia Carter

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| SHING LUNG LAU,<br><br>    Plaintiff,<br><br>    v.<br><br>CHRISTOPHER LOPEZ, CYNTHIA CARTER;<br><br>    Defendants | LASC Case No. 26PDUD00798<br><br>**ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**[JURY TRIAL DEMANDED]** |

### ANSWER

### I.    GENERAL DENIAL

Pursuant to Section 431.30 of the Code of Civil Procedure, Defendants, Christopher Lopez, Cynthia Carter, and Margarita Alvarez (hereinafter collectively "Defendants") deny generally and specifically each allegation in the Complaint (hereinafter, "Complaint") and that Plaintiff has been damaged in the sum or sums alleged, in any sum, or at all, or is entitled to any of the relief requested therein, including without limitation, possession, general, equitable, and other damages.

### II.    JURY DEMAND

The above-captioned Defendant demand a jury trial in the above-captioned action.

1

ANSWER

## III. SEPARATE AFFIRMATIVE DEFENSES

### BREACH OF THE WARRANTY OF HABITABILITY

The amount of rent or holdover damages demanded by Plaintiff is not in fact due because Plaintiff breached the warranty of habitability. The dwelling at issue and/or common areas of the Subject Property where Defendant resides suffers from defects that render it untenantable and those defects include, but are not limited to, the following:

☒ Ineffective waterproofing and weather protection of roof, exterior walls, broken windows, or doors;

☒ Plumbing is not in good working order, including a water supply that produces hot and cold running water.

☒ Lack of properly functioning heating unit;

☒ Defective electrical wiring or exposed wiring;

☒ Rodents and/or other vermin (e.g., ants, bedbugs, cockroaches, fleas, spiders, or termites);

☒ Floors, stairways, or railings in disrepair;

☒ Exterior door does not have a functioning lock;

☐ Window(s) reasonably accessible to the public do not have a functioning lock;

☒ Missing or damaged window screens;

☒ Holes in the walls and/or ceilings;

☐ A Substandard Order was issued by a government agency demonstrating health and safety defects;

☒ Missing or broken smoke detector or carbon monoxide detector;

☒ Common areas are unclean;

☒ Inadequate number of receptacles for garbage;

2
ANSWER

☐   Other: _____

☒   The property is substandard as defined by Sec. 17920.3 of the Health and Safety Code.

**REPAIR AND DEDUCT**

☐   Defendant performed repairs and deducted the cost for repairs which Plaintiff knew were needed and failed to provide within a reasonable time.

☐   Defendant made a payment to a utility and therefore was allowed to deduct such payment from the rent. Public Utilities Code §§10009-10009.1, §§12822-12822.1, §§16481-16481.1; Civil Code §1942.2

**CALIFORNIA TENANT PROTECTION ACT OF 2019 (AB 1482)**

The Defendant is a tenant who has continuously and lawfully occupied the premises at issue for 12 months or more, or one or more of the tenants has continuously and lawfully occupied the premises for 24 months of more. As such, premises at issue is subject to the provisions of Civil Code §1946.2

☒   The Plaintiff is not proceeding in good faith in recovering possession.

☒   Rental agreement was commenced or renewed on or after July 1, 2020 and did not contain the required language in the rental agreement as per required by the Tenant Protection Act of 2019.

☒   The notice is defective because there is no Just Cause to evict under the Tenant Protection Act of 2019.

☒   Plaintiff has failed to state a cause for the eviction.

☒   Landlord is proceeding to use at-fault eviction without stating a permissible at-fault reason complaint with Code of Civil Procedure § 1946.2(b)(1)(A)-(K).

☒   Plaintiff is proceeding to use no-fault eviction without stating a permissible no-fault reason complaint with Code of Civil Procedure §1946.2(b)(2)(A)-(D).

3
ANSWER



☒ Plaintiff failed to give notice and opportunity to cure a curable lease violation.

☒ Plaintiff seeks to evict for breach of an immaterial term of the lease and/or failed to issue a written notice to correct the alleged violation.

☒ Plaintiff is seeking to evict for refusal to execute a new lease which does not have similar provisions and/or includes terms in violation of law.

☒ Plaintiff is seeking to evict based on alleged intent to occupy the property by the owner or their spouse, domestic partner, children, grandchildren, parents, or grandparents without a provision of the lease permitting termination of tenancy on this basis.

☒ Plaintiff is seeking to evict based on alleged intent to "substantially remodel," but the work allegedly being conducted do not meet the definition of "substantially remodel" as provided in the Tenant Protection Act of 2019.

☒ The entire eviction is not enforceable because Plaintiff is proceeding to evict under a no-fault cause of action and has failed to provide relocation assistance by either notifying the tenant in writing that the Plaintiff intends to waive one month rent or informing the tenant the right to relocation within 15 calendar days from service of notice. Code of Civil Procedure §§ 1946.2(d)(2) and 1946.2(d)(4).

☒ The entire eviction is not enforceable because Plaintiff failed to notify Defendant(s) of the right to relocation assistance or rent waiver.

☒ Plaintiff is evicting for alleged nonpayment of rent, rent which was increased in excess of the amount permitted under the Tenant Protection Act of 2019.

☒ Plaintiff is evicting for alleged nonpayment of rent, rent which was increased in excess of the amount permitted under the Tenant Protection Act of 2019 after March 15, 2019, and has not been decreased after January 1, 2020, as required by the Tenant Protection Act of 2019.

**COUNTY'S EVICTION MORATORIUM (LOS ANGELES)**

The property at issue is located in the County of Los Angeles and thus is subject to the

4

ANSWER



protections of the County's Eviction Moratorium.

☒ Plaintiff is attempting to evict the defendant based on nonpayment or rent, late charges, interest, or any other fees accrued due to Financial Impacts Related to COVID-19 in violation of the County's Eviction Moratorium.

☒ Plaintiff is attempting to evict a tenant for denying entry to the landlord in violation of the County's Eviction Moratorium.

☒ Plaintiff is attempting to evict defendant based on non-payment of rent due to financial hardship related to COVID-19 and failure to repay by the end of the applicable repayment period in violation of the County's Eviction Moratorium.

☒ Plaintiff is attempting to evict defendant based on failure to pay back unpaid rent under the terms of a payment plan in violation of the County's Eviction Moratorium.

☒ Plaintiff is attempting to evict defendant based on the tenant's failure to comply with the terms of a payment plan that is void as contrary to public policy.

☒ Plaintiff is attempting to evict defendant based on a "No-Fault Termination of Tenancy" in violation of the County's Eviction Moratorium.

☐ Plaintiff is attempting to evict defendant due to Nuisance or Unauthorized Occupants or Pets in violation of the County's Eviction Moratorium.

☒ Plaintiff filed this action in violation of the County's Eviction Moratorium.

### LOS ANGELES COUNTY RENT STABILIZATION ORDINANCE

The premises at issue is a Covered Rental Unit subject to the L.A. County Rent Stabilization Ordinance, and at the time Plaintiff served the relevant Notice:

☒ The Plaintiff failed to comply with the L.A. County Rent Stabilization Ordinance.

☒ The Plaintiff failed to serve a Notice of Termination on the Tenant, via certified mail, return receipt requested.

5

ANSWER

☒ Plaintiff did not have a permitted cause for eviction.

☒ The Plaintiff did not submit a true and accurate copy of the Notice of Termination and proof of service of that Notice of Termination on the tenant, via certified mail, return receipt requested, to the Department of Consumer and Business Affairs of the County of Los Angeles (DCBA), within 5 days of the service of the Notice of Termination on the tenant.

☒ The Plaintiff failed to maintain proof of service proving compliance with the L.A. County Prohibition on Rent Increases.

☒ The Plaintiff failed to comply with the L.A. County Rent Stabilization Ordinance's posting requirements.

☒ The Plaintiff demanded rent which exceeded the legal amount which could be demanded.

☒ The Plaintiff did not qualify the termination as at-fault or no-fault.

☒ The notice to cure did not provide sufficient notice pursuant to the L.A. County Rent Stabilization Ordinance.

☒ Defendant is entitled to an offset based on previous payments of unlawful late fees that caused tenant's rent to exceed the maximum allowable rent, pursuant to the applicable rent stabilization statute.

☒ Any habitability defects also constitute reductions in housing services and, therefore, illegal rent increases.

☒ The rent demanded exceeded the legal amount which could be demanded because Plaintiff reduced housing services without granting a corresponding decrease in the money charged as rent.

☒ The Notice does not "permit a determination of the date, place, witnesses and circumstances concerning the reason" for the eviction.

6

ANSWER

108



☒ Plaintiff failed to give 10 days from the date of the service of the notice to cure violation of material rental agreement term, to cure the alleged violation of a material rental agreement term.

☒ Plaintiff seeks to enforce a rental agreement term that is not material as defined under the L.A. County Rent Stabilization Ordinance.

☐ The acts alleged in the notice do not constitute nuisance under the L.A. County Rent Stabilization Ordinance

☒ Plaintiff has not complied with Government Code §§ 7060-7060.7 for removal of the rental unit from the rental market.

☒ Plaintiff is pursuing this action in violation of the prohibition on retaliation and harassment pursuant to Los Angeles County Municipal Code § 8.52.130.

☒ Plaintiff is not seeking to recover possession of the rental unit for use and occupancy as a primary residence by the Plaintiff or Plaintiff's spouse, registered domestic partner, children, grandchildren, parents, or grandparents in good faith.

☒ Plaintiff failed to disclose to the Department the name of the eligible individual who will occupy the unit and their relationship to the landlord 60 days prior to the final date of the tenancy.

☒ The rent demanded does not exceed the HUD Fair Market Rent threshold for nonpayment.

☒ The Plaintiffs are not similarly situated as the Defendants and their household as defined by the County RSO.

☒ The Plaintiffs is attempting to evict for new terms that were not consented to in writing by the tenant.

☒ The Plaintiffs did not comply with the requirements of the Tenants Right to Counsel

7

ANSWER

109

Ordinance Los Angeles County Municipal Code § 8.60.050.

☒ The Plaintiffs did not comply with the requirements of the Ordinance regarding a relocation specialist.

☒ Plaintiff accepted rent or other consideration in return for the continued use of the rental unit beyond the term of the terminated tenancy in violation of Los Angeles County Municipal Code § 8.52.090(B)(2).

☒ Plaintiff failed to register the rental unit and/or pay the annual rental registration fee required by Los Angeles County Municipal Code §§ 8.52.080 and 8.65.030.

☒ Plaintiff demanded, accepted, or retained a security deposit in excess of the amount permitted under Los Angeles County Municipal Code § 8.52.055.

☒ Plaintiff is endeavoring to recover possession based upon facts Plaintiff has no reasonable cause to believe to be true or upon a legal theory untenable under the facts known to Plaintiff in violation of Los Angeles County Municipal Code § 8.52.130(A)(7).

☒ Plaintiff provided false information regarding tenant protections and/or mischaracterized the nature or effect of a notice to quit or other eviction notice in violation of Los Angeles County Municipal Code § 8.52.130(A)(9).

☒ Plaintiff refused to acknowledge or accept Defendant's lawful rent payment, refused to cash or process a check or other acceptable form of payment for over thirty days after tender, and/or failed to maintain a current address for delivery of rent payments, in violation of Los Angeles County Municipal Code § 8.52.130.

☒ Any provision of the rental agreement purporting to waive the protections of the Los Angeles County Rent Stabilization and Tenant Protections Ordinance is void pursuant to Los Angeles County Municipal Code § 8.52.190.

8
ANSWER

☒ The Plaintiffs did not submit the required owner move-in documents to the County RSO Department.

### ESTOPPEL, WAIVER, OR BAD FAITH

Plaintiff is estopped from pursuing this eviction or has waived the right to prosecute an unlawful detainer because:

☒ Plaintiff accepted a rent payment from Defendant after service of the Notice to quit thereby renewing the tenancy.

☒ Plaintiff accepted a rent payment from Defendant with full knowledge of the alleged breach of the rental agreement thereby waiving the right to declare a forfeiture by reason of the breach and renewing the tenancy.

☒ Plaintiff retained a check or money order without negotiating it for an unreasonably long time, thereby accepting payment and renewing the tenancy.

☒ Plaintiff refused to accept the tender of rent payment – either prior to service of the Notice to quit or during the notice period.

☒ In bad faith Plaintiff prevented the payment of rent payment – either prior to service of the Notice to quit or during the notice period.

☒ Defendant is permitted to tender late rent payments if paying a late charge or within a grace period, so Defendant was not in default of the payment of rent.

☒ Plaintiff and Defendant made other payment arrangements after service of the Notice to quit, upon which Defendant detrimentally relied. Therefore payment was not delinquent.

☒ The deposit may be used to off-set any rent default, tenant has a deposit, so the rent is not delinquent.

### NO BREACH OF COVENANT

☐ Defendant's obligation to pay rent has been extinguished by Defendant's performance

in the manner directed by Plaintiff.

☒ Plaintiff has demanded compliance with a term of the lease or rental agreement that is not legally enforceable.

☐ The alleged breach(es) of the rental agreement are trivial.

☒ Defendant denies the allegations stated in the notice.

☐ Plaintiff did not serve a proper notice to enter under Section 1954 of the Civil Code. Therefore, Defendant was under no obligation to permit Plaintiff to enter.

☒ Plaintiff did not serve a proper notice to use pesticides under governing municipal and state law. Therefore, Defendant was under no obligation to permit Plaintiff to enter.

### DEFECTIVE NOTICE

The notice is defective and/or inapplicable because:

☒ The amount of rent demanded in the Notice is more than the "amount due."

☒ The amount of rent demanded in the Notice is more than the "amount due" because Defendant is entitled to a set off.

☒ Defendant is entitled to an offset in rent because the Notice includes rent fees, a rental surcharge, or liquidated damages in violation of Civil Code § 1671(c)(2) and § 1951.5.

☒ The Notice did not adequately identify a person/address where the rent is to be paid.

☒ The person identified on Notice was not actually available at the time and place stated in the Notice.

☒ Plaintiff did not serve the Notice either (1) in person, or (2) by both posting the Notice on the door and mailing said Notice.

☒ Plaintiff failed to serve the Notice at all.

☒ The Property is covered by the federal CARES ACT and the Plaintiff did not provide 30 days' notice to vacate.

10

ANSWER

112

☒ The notice failed to state the fair market rent and/or number of bedrooms.

☒ The Notice was superseded by a later-served notice.

**MISCELLANEOUS**

☒ Plaintiff lacks standing and/or capacity to bring this action.

☒ Defendant is entitled to an offset based on previous payments of unlawful late fees that caused tenant's rent to exceed the maximum allowable rent, pursuant to the applicable rent stabilization statute.

☒ Plaintiff served the Notice to quit, filed the present unlawful detainer, or imposed a rent increase to retaliate against Defendant for invoking their right to complain to a governmental agency, to Plaintiff or to Plaintiff's agent concerning an issue of habitability, a nuisance being perpetrated on the premises, or for Defendant's peaceful and lawful exercise of other rights.

☒ Plaintiff's notice to pay rent or quit is overstated because it requests payment for months previously litigated in Hoi Kan Lau v. Cynthia Carter, Christopher Lopez, LASC Case No. 24PDUD01782. The issue for those months of rent is now res judicata/collateral estoppel.

☒ Plaintiff's unlawful detainer action is the product of arbitrarily discrimination against Defendant based on race, national origin, sexual orientation, family composition, disability, sex, age, religion, or the presence of children in the household.

☒ The notice was not served in compliance with the parties' lease agreement.

☒ Plaintiff is neither the owner of the premises at issue nor the management company authorized to act on Plaintiff's behalf by filing a lawsuit.

☒ Plaintiff is a new owner/manager who did not provide Defendant with proper notice of the change in ownership or management required by Civil Code Sections 1111 and 1962(c).

☒ Plaintiff filed the Complaint before the expiration of the Notice.

11
ANSWER

113

☒    The notice fails to comply with Civil Code 1946.1.

**IV.    RELIEF REQUESTED**

WHEREFORE, Defendant prays as follows:

1.    That the Complaint be dismissed with prejudice and/or judgment entered in favor of Defendant;

2.    For the costs of suit incurred herein, including reasonable attorneys' fees to the extent permissible by law, contract, or otherwise determined by the Court;

3.    For statutory damages as permitted by law; and

4.    For such other and further relief as the Court deems just and proper, including (if applicable) an order to repair the relevant dwelling and adjust the monthly rent accordingly.

DATED: May 15, 2026                    Law Office of Kevin P. Hermansen, P.C.

By:_____
Kevin Hermansen
Attorney for Defendants CYNTHIA CARTER and
CHRISTOPHER LOPEZ

12
ANSWER

**VERIFICATION**

I am a defendant in this action, and I have either read this Answer or had it read to me. I declare under penalty of perjury pursuant to the laws of the State of California that, based upon information and belief, the foregoing is true and correct.

DATED:    May 15, 2026                 By:_____
                                           Defendant, Christopher Lopez

**VERIFICATION**

I am a defendant in this action, and I have either read this Answer or had it read to me. I declare under penalty of perjury pursuant to the laws of the State of California that, based upon information and belief, the foregoing is true and correct.

DATED:    May 15, 2026                 By:_____
                                           Defendant, Cynthia Carter

13
ANSWER

## PROOF OF SERVICE

LASC Case # 26PDUD00798

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 13654 Victory Boulevard, Suite 111, Van Nuys, CA 91401.

On May 15, 2026, I served the foregoing document(s) described as:

**ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

**[JURY TRIAL DEMANDED]**

as follows:

Shing Lung Lau
6726 Salter Ave.
Arcadia, CA 91007

☒        (BY MAIL)  I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service.  This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our office's address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐        (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows.  I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided.

☐        (BY ELECTRONIC SERVICE) I served the foregoing document electronically at the above mentioned email address.

Executed on May 15, 2026.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Kevin Hermansen

# EXHIBIT #8

**CALIFORNIA PROPERTY LAW GROUP, APC**
A Professional Law Corporation
930 S. La Brea Ave. Suite 204
Los Angeles, CA 90036
Info@capropertylawgroup.com
(323) 282-7969

# 5 DAY NOTICE TO PAY RENT OR QUIT

## TO:  CYNTHIA CARTER and CHRISTOPHER LOPEZ

## AND TO ALL OTHERS IN POSSESSION OF:

## 9705 ARDENDALE AVE., ARCADIA, CA 91007

YOU ARE HEREBY NOTIFIED that pursuant to the lease or rental agreement under which you hold possession of the hereinafter described premises there is now due, unpaid, and delinquent rent in the total sum of **$11,728.80**, for the period of: 01/01/2024 through 04/30/2024.

YOU ARE FURTHER NOTIFIED that within five (5) days after service of this Notice on you, EXCLUDING SATURDAYS, SUNDAYS, AND OTHER JUDICIAL HOLIDAYS, you must pay the amount of said rent in full or quit said premises and deliver up possession of the same to the landlord/agent, as named below, or legal proceedings for unlawful detainer will be filed against you to recover possession of said premises, to declare said lease or rental agreement forfeited and to recover all delinquent rent demanded herein, court costs and attorneys' fees as permitted by law, and possible statutory damages in accordance with California Code of Civil Procedure Section 1174(b).

YOU ARE FURTHER NOTIFIED that by this notice the landlord/agent elects to and does declare a forfeiture of said lease or rental agreement if said rent is not paid in full within the five (5) day period, EXCLUDING SATURDAYS, SUNDAYS, AND OTHER JUDICIAL HOLIDAYS. The premises herein referred to is located at the following location:

9705 ARDENDALE AVE., ARCADIA, CA 91007

**Hoi Kan Lau**
LANDLORD/AGENT

Payment may be made by mail or directly in the following manner:

| | |
|---|---|
| Person to Pay: | **Hoi Kan Lau** |
| Address to Pay: | **6726 Salter Ave.** **Arcadia, CA 91007** |
| Hours: | 9:00 A.M. to 5:00 P.M., Monday through Friday |
| Phone Number: | **7183006010** |

At this time, we have not been informed that your unit is in need of any repairs. If you believe that items need to be corrected, please address those issues in writing and we will immediately inspect and make necessary repairs. If we do not receive any written repair requests, we will assume that there are no items that need to be corrected at this time.

**CA PROPERTY LAW GROUP**
Page **1** of **2**

**CALIFORNIA PROPERTY LAW GROUP, APC**
A Professional Law Corporation
930 S. La Brea Ave. Suite 204
Los Angeles, CA 90036
Info@capropertylawgroup.com
(323) 282-7969

YOU ARE FURTHER NOTIFIED that California Property Law Group is a debt collector. We are trying to collect a debt that you owe to **Hoi Kan Lau**. We will use any information you give us to help collect the debt.

This debt will be assumed to be valid unless you notify us within 30 days of receipt of this notice that you dispute all or part of the debt. If you notify us in writing within this same 30-day period, we will send you verification of this debt. Upon written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

Date: April 17, 2024

# EXHIBIT #9

**CALIFORNIA PROPERTY LAW GROUP, APC**

A Professional Law Corporation
930 S. La Brea Ave. Suite 204
Los Angeles, CA 90036
Info@capropertylawgroup.com
(323) 282-7969

# THREE DAY NOTICE TO QUIT PREMISES

**TO:  CYNTHIA CARTER; CHRISTOPHER LOPEZ;**

**AND TO ALL OTHERS IN POSSESSION OF:**

**9705 ARDENDALE AVE., ARCADIA, CA 91007**

YOU ARE HEREBY NOTIFIED that pursuant to the lease or rental agreement under which you hold the possession of the hereinafter described premises, your right to possession will be terminated pursuant to your lease agreement at the expiration of this notice.

On April 19, 2024, you were served with a 5 Day Notice to Pay Rent or Quit. On April 29, 2024, the period stated in that notice expired at the end of the day. You failed to comply with the requirements of the 5 Day Notice to Pay Rent or Quit by that date. Pursuant to your lease agreement, your tenancy will be terminated at the expiration of this notice.

YOU ARE HEREBY REQUIRED to quit and deliver up possession of the hereinafter described premises to the Landlord/Agent who is authorized to receive possession of the same on the expiration of the said Three (3) Day Period.

YOU ARE FURTHER NOTIFIED that by this notice the landlord/agent elects to and does declare a forfeiture of said lease or rental agreement at the expiration of this notice, and that if at the expiration of said period you fail to quit said premises and deliver up possession of the same, legal proceedings will be instituted for unlawful detainer against you to recover possession of the premises, declare said tenancy forfeited, and to recover actual and punitive damages for the unlawful detention of said premises.

The premises herein referred to is located at the following location:

9705 ARDENDALE AVE., ARCADIA, CA 91007

**Hoi Kan Lau**
LANDLORD/AGENT
Date: May 10, 2024

"State law permits former tenants to reclaim abandoned personal property left at the former address of the tenant, subject to certain conditions. You may or may not be able to reclaim property without incurring additional costs, depending on the cost of storing the property and the length of time before it is reclaimed. In general, these costs will be lower the sooner you contact your former landlord after being notified that property belonging to you was left behind after you moved out."

## PROOF OF SERVICE

I am over the age of 18.

I am a resident of or employed in the county where the mailing occurred; my residence address is : 6726 Salter ave., Arcadia, CA 91007

On 6/3/2026, I emailed the foregoing document(s) described as:

OPPOSITION TO DEFENDANTS' ANTI-SLAPP MOTIONS;
MEMORANDUM OF POINTS AND AUTHORITIES;
DECLARATIONS; EXHIBITS;

Onto the following person(s):
Mark Kleiman, attorney for Kevin Hermansen and his law office and Ben Gharagozli and his law office, mark@krlaw.us
Ramsey Judah, ramsey@judahlawgroup.com
Thomas Harvey, tbh1910@gmail.com
Kevin Hermansen and his law office, kevin@kphlegal.com
Ben Gharagozli and his law office, lobgattorney@gmail.com
Cynthia Carter and Christopher Lopez, cynthia.carter.engr@gmail.com

[X] By Electronic Transmission
        I emailed the defendants the documents.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Date: June 3, 2026 _____
                                    Signature
                                    Shing Lung Lau