FILED

2026 JUL 29   AM 10: 59

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____ *my*_____

SHING LUNG LAU,
SIU FAN TSANG,
HOI KAN LAU
6726 Salter ave, Arcadia, CA 91007
Plaintiffs In Pro Se

# United States District Court for the Central District of California

## Western Division

SHING LUNG LAU,                    )
HOI KAN LAU,                       )
SIU FAN TSANG                      )
                                   )
                                   )
                                   )
                  Plaintiffs,      )
                                   )
         v.                        )
                                   )
KEVIN HERMANSEN,                   )
individually and as agent of       )
Cynthia Carter and Christopher     )
Lopez; BEHNAM                      )
GHARAGOZLI, individually           )
and as agent of Cynthia Carter     )
and Christopher Lopez;             )
CYNTHIA CARTER,                    )
individually and as principal      )
of Kevin Hermansen and             )
Behnam Gharagozli;                 )
CHRISTOPHER LOPEZ,                 )
individually and as principal of   )
Kevin Hermansen and                )
Behnam Gharagozli;                 )
LAW OFFICE OF KEVIN P.             )
HERMANSEN, P.C.;                   )
LAW OFFICES OF                     )
BEN GHARAGOZLI                     )
                                   )
_____  )

CASE NO. :
**2:26-CV-00305-MWF-CTSx**

Judge: Hon. Michael W. Fitzgerald

**PLAINTIFF'S RESPONSE TO
ORDER TO SHOW CAUSE RE STANDING;
DECLARATION;
EXHIBITS;**

1

# RESPONSE TO ORDER TO SHOW CAUSE RE STANDING OF PLAINTIFF SHING LUNG LAU

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT the plaintiff do hereby expound upon the standing of the plaintiff Shing Lung Lau, detailing how the plaintiff Shing Lung Lau was injured by the defendants Kevin Hermansen et. al.

**Background:**

**Purchase of 9705 Ardendale ave. (March 2023):**

The elderly plaintiffs Siu Fan Tsang (**68 years old**) and Hoi Kan Lau (**75 years old** in 3 weeks on 8/17/2026) are the parents of the plaintiff Shing Lung Lau. In late 2022, Hoi Kan Lau, after surviving deliberating strokes and becoming infirm and Siu Fan Tsang having to close her store to take care of her husband; the plaintiffs Siu Fan Tsang and Hoi Kan Lau expressed a desire to move close to plaintiff Shing Lung Lau (whom lives at 6726 Salter ave., Arcadia, CA 91007).

Upon a realtor's insistence that the elderly plaintiffs could compensate the existing tenants and do a owner move-in, the elderly plaintiffs proceeded to sell their house in Daly City and to purchase the property 9705 Ardendale ave., Arcadia, CA 91007 (which is a few blocks away from 6726 Salter ave., Arcadia, CA 9100 where the elderly plaintiff's son Shing Lung Lau lives). With plan to transfer the low property tax base from the Daly City property (Exhibit #1) to the new property pursuant to Proposition 19.

The purchase of the property 9705 Ardendale ave., Arcadia, CA 91007 was finalized on March 8, 2026

2

**Wire Fraud Scheme #1  (November 2023 to April 2024)**

From March 2023 to October 2023, the attorney Charles Pok handled the owner move-in case LASC 23PDUD01863 for the plaintiffs Siu Fan Tsang.

By October 2023, Charles Pok expressed to the effect that the opposing attorneys Behnam Gharagozli and Kevin Hermansen were very difficult to deal with and that he could not win a case against them. Charles Pok recommended the plaintiffs fire him and proceed with a nonpayment eviction case instead. This was done.

But from November 2023 to March 2024, Behnam Gharagozli and Kevin Hermansen committed a multitute of crimes of criminal attorney deceit and wire fraud to unlawfully gain the amount of $46,901.97 from the elderly plaintiffs on April 11, 2024. This is detailed in the plaintiff's Second Amended Complaint as **Wire Fraud Scheme #1**

**Wire Fraud Scheme #2 (April 2024 to October 2024)**

On or around April of 2024, the elderly plaintiffs retained the services of CA Property Law Group to file an Unlawful Detainer (LASC 24PDUD01782) to regain possession of the property since the defendants Christopher Lopez and Cynthia Carter had not paid any rent at all since July of 2023.

In this case, Kevin Hermansen and Behnam Gharagozli conspired to commit various crimes that constitute as **Wire Fraud Scheme #2** as detailed in the plaintiff's Second Amended Complaint and then unlawfully gained $32,385.54 (See Exhibit #2) from the plaintiff (from August to October 2024).

The gist of Kevin Hermansen's Wire Fraud Scheme is as follows:

Kevin Hermansen et al. conspired to commit attorney deceit in court on August 1, 2024 to **corruptly influence** Judge William Dodson.

3

Kevin Hermansen made **many fraudulent misrepresentations** about the plaintiff Hoi Kan Lau in court, the most **material** of which were to the effect that Hoi Kan Lau **NEVER** goes to the address of his rental business (6726 Salter ave., Arcadia, CA 91007, where his son lives):

"They [Hoi Kan Lau and Siu Fan Tsang] **don't** visit him [their son Shing Lung Lau]" (Exhibit #3 page 30 line 5, the transcript of the court hearing on August 1, 2024)

"And Mr. Hoi Kan Lau **doesn't** go there [6726 Salter ave. Arcadia]" (Exhibit #3 page 30 line 18, the transcript of the court hearing on August 1, 2024

Judge William Dodson **believed** Kevin Hermansen's **MATERIAL** fraudulent misrepresentations and ruled that since the plaintiff Hoi Kan Lau **NEVER EVER** goes to 6726 Salter ave., Arcadia, CA 91007, where his son lives and where the place of his rental business is, the notice was defective and as such the defendants won the UD case based on Kevin Hermansen's fraudulent misrepresentations.

This is fraudulent because the plaintiff Hoi Kan Lau's son, plaintiff Shing Lung Lau, had drove Hoi Kan Lau to 6726 Salter ave., Arcadia on many occasions, through not frequent enough to be deemed "often" (several times a week)

In preparation to making his **many fraudulent misrepresentations** in court on August 1, 2024, Kevin Hermansen, being the **brilliant scam artist** that he is, also did these things in dishonesty to help **faciliate** his making fraudulent misrepresentations in court and not get caught:

**1. Kevin Hermansen Fraudulently Deprived the plaintiff Hoi Kan Lau of competent intepreting service on August 1, 2024**

Back in the course of Wire Fraud Scheme #1 in LASC case 23PDUD01863, Kevin Hermansen learnt that the plaintiff Siu Fan Tsang complained about the incompetency of

the court provided intepreter. In LASC 24PDUD01782, the plaintiff Hoi Kan Lau hired his own court certified intepreter Nathan Huang. Before trial even started, Kevin Hermansen RECKLESSLY and FRAUDULENTLY MISREPRESENTED to the Court to the effect that the competent intepreter Nathan Huang would engage in courtroom deceit and **change witness testimony.**

This was a crime in violation of the attorney deceit statute California Code, Business and Professions Code - BPC § 6128.

Nathan Huang was subsequently kicked out of the courtroom based on Kevin Hermansen's RECKLESS and FRAUDULENT MISREPRESENTATION.

Nathan Huang remarked at the time that in all his years as an intepreter he had never seen something like this.

Hoi Kan Lau, subsequently, was not aware that Kevin Hermansen was making fraudulent misrepresentations against him in court.

Kevin Hermansen's motivation to commit this RECKLESS and FRAUDULENT MISREPRESENTATION was to **deprive** Hoi Kan Lau of competent intepreting service from Nathan Huang so that when Kevin Hermansen made his various fraudulent misrepresentations in court, he would not be caught. This is a crime in violation of California Code, Business and Professions Code - BPC § 6128. This is also a Deprivation of the plaintiff Hoi Kan Lau's Civil Rights to make sure that Hoi Kan Lau could not defend himself in court.

Furthermore, the defendant Kevin Hermansen only sought to remove the competent interpreter Nathan Huang on the court date of August 1st, 2024. There after, on numerous other occasions in court in LASC case 24PDUD04392, such on 6/16/25, 6/18/25, 6/25/25, 7/8/25, 7/9/25 in court; the defendants Kevin Hermansen and Behnam Gharagozli never complained about Nathan Huang again and Nathan Huang provided services without problem on those dates.

5

**2. Kevin Hermansen Fraudulently changed witness testimony on August 1, 2024**

Through the use of the word "**OFTEN**" and "**MUCH**". Kevin Hermansen elicited an expected response from the Shing Lung Lau that which Kevin Hermansen would later twist (changed witness testimony) to suit his purpose to **corruptly influence** the court.

From the court transcript of the August 1, 2024 hearing:

(Exhibit #3 page 23 line 13):

Kevin Hermansen:  AND IS IT CORRECT THAT YOUR MOTHER HAS A CONFLICT WITH YOUR WIFE AND DOESN'T VISIT YOU **MUCH**?

Shing Lung Lau:  YES.  MY WIFE DOES NOT LIKE MY MOTHER. THEY HAVE ISSUES THAT THEY -- THEY JUST DON'T LIKE EACH OTHER.

Kevin Hermansen: SO AS A RESULT, YOUR PARENTS DON'T **OFTEN** GO TO YOUR HOUSE?

Shing Lung Lau:  YES, THEY DON'T.  THEY CAN'T EVEN DRIVE.

[Here the witness Shing Lung Lau was merely answering the question that had the qualifier **OFTEN**, stating that his parents did NOT visit him **OFTEN, as in several times a week** per the witness's own personal definition;

in reality, although the elderly plaintiffs no longer drove, the witness Shing Lung Lau drove his parents to 6726 Salter ave., Arcadia, CA 91007 at least 2 to 3 times a month since the elderly plaintiffs go to Arcadia for doctors visit, for haircuts, for family meals at 6726 Salter ave., for family meals at restaurants at Arcadia, for picking fruit at 6726 Salter ave., for dealing with business and legal documents, etc.]

6

Kevin Hermansen then proceeded to change the witness's testimony as follows:

Kevin Hermansen: THE TESTIMONY OF MR. LAU'S SON [Shing Lung Lau] WAS THAT... THEY[Hoi Kan Lau and Siu Fan Tsang] **DON'T VISIT HIM** BECAUSE OF THE CONFLICT WITH HIS WIFE. (Exhibit #3 page 30 line 3)

[Notice here that Kevin Hermansen did **NOT** use the word **OFTEN** here,

When Kevin Hermansen questioned the witness, Kevin Hermansen made sure to use the word **OFTEN** to **make sure the witness would reply to the effect that Hoi Kan Lau does not OFTEN visit his son**

Almost everyone would **reply to the effect that their parent does NOT OFTEN visit them.**

WIth the DELIBERATE OMISSION of the word **OFTEN** in paraphasing the witness testimony.

Kevin Hermansen in effect **CHANGED WITNESS testimony**

In effect, changed "**OFTEN**" to "**NEVER**"

the witness Shing Lung Lau only answered to the effect that the elderly plaintiffs did not visit **OFTEN**

this is a crime in violation of the attorney deceit statute California Code, Business and Professions Code - BPC § 6128, as well as a host of other laws as well

]

[

Projection.

Kevin Hermansen was the one who **CHANGED WITNESS testimony,**

not Nathan Huang, whom Kevin Hermansen kicked out of court by accusing Nathan Huang of going to CHANGE witness testimony,

this is what is called **projection**, wherein someone falsely accuses another of what the accuser is himself **guilty** of]

Changing witness testimony from in effect "don't visit **often**" to in effect "never **visit**" is a very brilliant fraudulent scheme that nobody caught at the time.

Which Kevin Hermansen made sure of by kicking out both the competent intepreter Nathan Huand and the witness Shing Lung Lau.

The fraud was very subtle and hard to detect. It was only much later when the witness Shing Lung Lau had a chance to review the transcript (Exhibit #3) that Kevin Hermansen's brilliant fraudulent scheme was discovered.

Just brilliant.

Kevin Hermansen's FRAUDULENT MISREPRESENTATIONS were **very effective** at **corruptly influencing the court** as Judge William Dodson himself stated: "THE WITNESS SAYS THAT THIS GENTLEMAN NEVER EVER GOES THERE" (Exhibit#3 page 31 line 26)

When in reality the witness Shing Lung Lau never said to the effect that Hoi Kan Lau **never** ever goes to 6726 Salter ave; only answered that Hoi Kan Lau did not visit **often**.

Kevin Hermansen deceitly used the word **OFTEN** when questiong the witness and then deceitly dropped the word **OFTEN** when he paraphased and repeated the witness's testimony to the Judge to corruptly influence the Judge with CHANGED WITNESS TESTIMONY.

A very SUBTLE (and brillant) fraudulent scheme it was indeed.

Should be taught in law school.

8

**3. Kevin Hermansen, under false pretenses, Made sure that the Witness Shing Lung Lau was not in court when Kevin Hermansen committed his crimes of attorney deceit and changing witness testimony**

On August 1, 2024, Kevin Hermansen asked the court to excuse the witness Shing Lung Lau from court by telling the court that the witness Shing Lung Lau would intefere with witness testimony.

Shing Lung Lau was kicked out of court and not let in until the case was concluded.

Kevin Hermansen's **REAL PURPOSE** was to make sure that the witness Shing Lung Lau was not available to catch onto Kevin Hermansen's Fraudulent Misrepresentaions and to alert the attorney Kenny Lim to the fraudulent misrepresentations Kevin Hermansen made in court (including the changing of witness testimony).

Afterwards, in LASC case 24PDUD04392, on numerous occasions, neither Kevin Hermansen nor Behnam Gharagozli had the court kick Shing Lung Lau out of court even when the elderly plaintiffs were on the witness stand.

While the actual criminal fraud mainly happened in court on August 1, 2024 and is mainly perpetrated by the defendant Kevin Hermansen. As co-counsel, Behnam Gharagozli had to have known about Kevin Hermansen's fraudulent scheme and is guilty of conspiracy as well as of the actual fraud itself. The defendants Christopher Lopez and Cynthia Cynthia, as the ones who hired Kevin Hermansen and Behnam Gharagozli, are vicariously liable for the crimes Kevin Hermansen and Behnam Gharagozli committed.

And because Kevin Hermansen and Behnam Gharagozli made use of the internet to faciliate the commission of the crime and to unlawfully demand and collect the criminal proceeds, Kevin Hermansen and Behnam Gharagozli committed WIRE FRAUD; as well as violated RICO.

9

**Property Swap between elderly plaintiffs and plaintiff Shing Lung Lau:**

Sometime after the elderly plaintiff's purchase of the property 9705 Ardendale ave., Arcadia, the plaintiff Shing Lung Lau noticed that an ADU could be built in the backyard of said property. Subsequently, a verbal agreement was made between the elderly plaintiffs and their son plaintiff Shing Lung Lau that they would swap the ownership of the properties 6726 Salter ave. and 9705 Ardendale ave. So that an ADU would be built on 9705 Ardendale. and that the plaintiff Shing Lung Lau could collect the rent from the ADU while the plaintiff Shing Lung Lau lived on the premise in the main house.

**Proposition 19** and low property tax base transfer:

California's Proposition 19, passed in 2020, allows homeowners aged 55+, the severely disabled, or wildfire victims to **transfer** their primary residence's **low property tax base** to a new home anywhere in the state. It also allowed transfer of their primary residence's low property tax base to their children provided that the elderly homeowner was living at the property at the transfer and the child would live at the property as their primary residence.

The property the elderly plaintiffs sold in Daly City was paying a low property tax of **$7,403.80** in the property tax year 2022-2023 (See Exhibit #1)

This property tax base would have been transferred to 9705 Ardendale ave. because of Proposition 19 since the elderly plaintiffs was replacing their primary residence with a new one in the same state. This low property tax base would also have transferred to the plaintiff Shing Lung Lau in a subsequent transfer from parents to son.

As part of execution of the property swap, Shing Lung Lau transferred the property 6726 Salter ave. to the elderly plaintiffs on January 18th, 2024 (See Exhibit #4 for deed)

Due to Proposition 19, the elderly plaintiffs **must regain** 9705 Ardendale ave to **use as primary residence <u>before</u>** transferring the property to plaintiff Shing Lung Lau

10

for Shing Lung Lau to inherit the low property tax base (around **$7,403.80**, Exhibit #1) and to continue to pay this low property tax base and to allow Shing Lung Lau's children to **also inherit** this low property tax base in the future.

So the property 9705 Ardendale ave. was NOT transferred to Shing Lung Lau yet in January of 2024.

Also due to concerns that the court may see this transfer of the property to plaintiff Shing Lung Lau as some sort of sham

It was only on or about **October 2025, after** the plaintiffs (plaintiff Siu Fan Tsang) lost yet another case (LASC case 24PDUD04392) and have to pay the defendants Kevin Hermansen and Behnam Gharagozli **$116,405.16** in legal fees (this would not have occured had Kevin Hermansen **not** committed **WIRE FRAUD SCHEME #2** August 2024 as expounded upon above and in the SAC) that the elderly plaintiffs gave up on recovering the premises 9705 Ardendale ave. as the elderly plaintiffs could no longer afford to hire an attorney in attempt to regain possession (having to pay ~$195,691.16 to Kevin Hermansen and Behnam Gharagozli, as well as expending over $130,000 in legal expenses already)

But the plaintiff Shing Lung Lau insisted that he would try one last time to regain possession of the property since the property was "his to begin with" because of the property swap deal agreed to back in 2023.

Because of concerns that the court may see this transfer of the property to plaintiff Shing Lung Lau as some sort of sham, which would affect recovery of the property, only 50% interest was transferred to the plaintiff Shing Lung Lau.

This was done on October 8, 2025 (See **Exhibit #5** for deed)

This concern was justified, as Kevin Hermansen, as expected by the plaintiffs, did indeed told the court that "The Complaint Is a **Sham** Pleading" in LASC case 26PDUD00798 in his demurrer on March 27, 2026.

11

"The Complaint Is a **<u>Sham</u>** Pleading Because the Substitution of Shing Lung Lau as Plaintiff Is Designed to Circumvent the Adverse Results of Three Prior Actions" (**Exhibit #6** page 6 line 10)

"This is precisely the abuse the **<u>sham</u>** pleading doctrine is designed to prevent. (Hendy, supra, 54 Cal.3d at pp. 742 743; Owens, supra, 198 Cal.App.3d at pp. 383–384.)" (**Exhibit #6** page 7 line 12)

Luckily, the Honorable Judge Jerry Marshak in the case did not buy that frivolous argument whereas Honorable Judge William Dodson would 100% have believed Kevin Hermansen's frivolous and false statements.

**Likely Imminent Sale of the Property (2026) :**

After THREE WHOLE YEARS of legal battles, to this very day July 28, 2026, the defendants Christopher Lopez and Cynthia Carter remain in possession of 9705 Ardendale ave. despite not having pay rent for THIRTY-SEVEN months ($108,491.40 in **unpaid** rent).

After three years, the plaintiffs are deeply traumatized and could now no longer afford to hire any attorney to regain possession of the property.

Every attorney who crossed path with the attorney defendants Kevin Hermansen and Behnam Gharagozli are scared of them due to their willingness to commit crimes to win cases.

Another victim of Kevin Hermansen the plaintiff have spoke to, namely Mr Metri in case *Nashat Metri v. Yadira Del Carmen Quinonez*, LASC Case No. 25PDUD00226, also says that Kevin Hermansen commit attorney deceit in court to win cases.

During all the lawsuits, it had became very apparent that the defendants Christopher Lopez and Cynthia Carter (and one Margarita Alvarez) would all perjure

12

themselves on the witness stand and say that the property was unfit to live in and that they were injured by having to live on such a property unfit for human habitation.

Many attorneys recommend selling the property as it is nigh impossible to win against people who would lie and cheat in court.

And the attorney defendants are very good liars, just see WIRE FRAUD SCHEME #2 as evidence, Kevin Hermansen's attention to detail to make sure his fraudulent scheme succeed was amazing.

The most recent attempt to recover the property by plaintiff Shing Lung Lau in LASC case 26PDUD00798 had to be abandoned, case dismissed (June 10, 2026), due to the plaintiffs not being able to afford to hire an attorney and the plaintiff Shing Lung Lau having no time at all to prepare for trial as the plaintiff had to work on the Motion for Leave to File Second Amended Complaint in this very case (which was filed on June 23, 2026).

This is due to the plaintiff Shing Lung Lau's excusable neglect of not knowing that contract law is state law and neglected to remove the contract causes of action subject to anti-SLAPP in the First Amended Complaint.

Dismissal of the LASC case 26PDUD00798 was the right choice as right afterwards on June 10, 2026 around 10pm, Mark Kleiman served the plaintiffs with a a court paper that is part of **WIRE FRAUD SCHEME #5** as detailed in the SAC.

Mark Kleimand, Thomas Harvery, Ramsey Judah (the attorneys in this case) and all the defendants had **conspired** together to manufacture **FALSE DECLARATIONS** in violation of numerous federal statutes in an attempt to manufacture "controversy" to defeat the *Flatley* exception to win their anti-slapp motion and to unlawfully defraud the plaintiffs of **an unknown large sum of money** (the amounts demanded of in the defendants' two proposed orders filed along with their latest anti-slapp motions, which is not privy to the plaintiff).

13

They committed this FRAUDULENT SCHEME because Mark Kleiman expected that the plaintiffs were going to defeat his anti-slapp motion by the use of the *Flatley* exception. But the *Flatley* except requires **uncontroverted** evidence.

Mark Kleiman and all the defendants conspired to manufacture FALSE declaration to **CONTROVERT** the plaintiffs' evidence.

With no way to tell the court of this, especially as the plaintiffs were banned from ever filing any ex parte papers, the plaintiff's only recourse was to, **AS SOON AS POSSIBLE**, file a Motion for Leave to File Second Amended Complaint to REMOVE the contract causes of action in order to ESCAPE from Mark Kleiman and the defendants' WIRE FRAUD SCHEME.

Currently, it is unknown if this escape attempt is successfully.

May this Court grant the plaintiffs' Motion for Leave to File Second Amended Complaint so that the plaintiffs would not **fall PREY** to these criminals again.

Anyways, it is very probable that the plaintiffs, on so many failed attempts to regain the property, in order to minimize any more losses, have to sell the property very soon. The best offer currently is around $850,000 (**Exhibt # 7**) because potential buyers all ask and the realtor had to inform the potential buyers that the defendants Christopher Lopez and Cynthia Lopez are still occupying the property and had not been paying rent for 37 months.

If **NOT** for Kevin Hermansen et al.'s **CRIMES**.

The property could have been sold for $1,250,000 or more instead of merely $850,000 (which is the best offer the plaintiffs can get due to Kevin Hermanse et al.'s crimes, see **Exhibit #7**)

This is a **direct loss to the plaintiff Shing Lung Lau** as he is supposed to be the full owner of the property if not for Kevin Hermansen et. al. and in fact, he does currently owns 50% interest.

14

**List of Injuries to the plaintiff Shing Lung Lau as Consequences of Kevin Hermansen et. al. 's crimes:**

1.

Loss of lowered property tax base

At least **$247,618**

If **NOT** for Kevin Hermansen et al.'s **CRIMES**, especially the ones that prevented recovery of 9705 Ardendale on August 1, 2024.

The elderly plaintiffs would have regained possession of the premises known as 9705 Ardendale ave. to use as a primary residence (on or about August 2024) before transferring the property to their son Shing Lung Lau for him to inherit the low property tax base (around $7,400, See Exhibit # 1)

Shing Lung Lau would now be the owner of 9705 Ardendale ave. with a **very low property tax base** and the property tax bill would only be about $7,400 a year (See **Exhibit #8** wherein it shows that property tax was $7395.36 for year 2025 due to Proposition 19 property tax base transfer) (This property tax base transfer was undone as the government was told over the phone that the plaintiffs had failed to recovery the premises and could not move into the premises)

Loss to Shing Lung Lau is estimated to be **at least $247,618**, calculated as follows:

$12,347.72 (**Exhibit #9**, updated 2025 property tax bill after the government undid the low property tax base transfer) - $7395.36 (**Exhibit #8**, property tax amount before property tax base transfer was undone at the behest of the plaintiffs) = **$4,952.36** yearly loss

$4,952.36 yearly loss x 50 years

15

This is a LOW estimate as the transfer from the elderly plaintiffs to plaintiff Shing Lung Lau on October 8, 2025 also triggered a future property increase. (See **Exhibit #10** for notice)

2.

Lost rental income from ADU

$96,000

If **NOT** for Kevin Hermansen et al.'s **CRIMES**, especially the ones that prevented recovery of 9705 Ardendale on August 1, 2024.

The property 9705 Ardendale ave. would already have an ADU built and already rented out and producing rental income for the plaintiff Shing Lung Lau.

This is not made up. There are even plans already drawn of the ADU. (See **Exhibit #11**)

Estimated loss to plaintiff Shing Lung Lau is calculated as follows:

August 1, 2024 to July 28, 2026 today = Almost 24 months of DELAY

24 months of DELAY x $4,000 estimated monthly rental income = $96,000

3.

Lost rental income from renting out 9705 Ardendale ave. main house to tenants who would have paid rent

$32,400

The plaintiff Shing Lung Lau acquired 50% interest in the property 9705 Ardendale on October 8, 2025 with the understanding that all income would belong to the plaintiff Shing Lung Lau and that when it should be prundent to do so, that the rest of the 50% interest would be transferred to the plaintiff Shing Lung Lau as well.

On transferring the interest to plaintiff Shing Lung Lau, the elderly plaintiff Siu Fan Tsang had also expressed that she no longer wished to live at either 9705 Ardendale ave. nor 6726 Salter ave. as she was deeply traumatized by Kevin Hermansen et. al. and that living in close proximity to 9705 Ardendale ave. would **drive her insane.**

If **NOT** for Kevin Hermansen et al.'s **CRIMES**, especially the ones that prevented recovery of 9705 Ardendale on August 1, 2024.

The plaintiff Shing Lung Lau would have rented the 9705 Ardendale ave. main house to tenants that would actually pay rent and would have actually received rental income from the 9705 Ardendale ave. main house.

Loss to the plaintiff Shing Lung Lau is calculated as follows:

November 2025 to July 2026 = 9 months

9 months x estimated monthly rental income of $3,600 = $32,400

If **NOT** for Kevin Hermansen et al.'s **CRIMES**, especially the ones that prevented recovery of 9705 Ardendale on August 1, 2024.

The defendants Christopher Lopez and Cynthia Carter would not currently owe the plaintiff Shing Lung Lau 9 months (November 2025 to July of 2026) of unpaid rent in the amount of **$26,389.80**

As well as for the unpaid rent itselt, there are current and future legal costs related to the above unpaid rent:

4.

Loss of legal costs in LASC case 26PDUD00798

~$1,290

If **NOT** for Kevin Hermansen et al.'s **CRIMES**, especially the ones that prevented recovery of 9705 Ardendale on August 1, 2024.

The plaintiff Shing Lung Lau would **not** have had to file LASC case 26PDUD00798 in an attempt to regain the property and lost/spent ~$1,290 in the case ($240 initial filing fees plus several $60 motion filing fees, **Exhibit #12**, plus $750 paid to Kevin Hermansen)

5.

Loss of legal costs to be paid to Kevin Hermansen

$2,208.84

If **NOT** for Kevin Hermansen et al.'s **CRIMES**, especially the ones that prevented recovery of 9705 Ardendale ave. on August 1, 2024.

The plaintiff Shing Lung Lau would **not** have had to file LASC case 26PDUD00798 in an attempt to regain the property and have to pay Kevin Hermansen approximately $2,208.84 in costs. (See **Exhibit #13** for the memorandum of costs filed by Kevin Hermansen on June 25, 2026)

6.

Loss of legal fees to be paid to Kevin Hermansen

$29,890

If **NOT** for Kevin Hermansen et al.'s **CRIMES**, especially the ones that prevented recovery of 9705 Ardendale on August 1, 2024.

The plaintiff Shing Lung Lau would **not** have had to file LASC case 26PDUD00798 in an attempt to regain the property and have to potentially pay Kevin Hermansen $29,890 in attorney's fees (See **Exhibit #14** for the frivolous motion that Kevin Hermansen filed on July 13, 2026)

Kevin Hermansen et. al. (without Behnam Gharagozli) is **currently** executing a WIRE FRAUD SCHEME to defraud the plaintiff Shing Lung Lau out of $29,890

18

The gist of the scheme is the Kevin Hermansen filed a Motion for Sanctions (**Exhibit #14**) Against Plaintiff Shing Lung Lau Pursuant to Code of Civil Procedure § 128.5 on July 13, 2026, wherein Kevin Hermansen **FRAUDULENTLY** stated that the plaintiff's warnings to Honorable Judge B. Jerry Marshak that Kevin Hermansen was a criminal and a fraud and that his fraudulent misrepresentations in the case could not be trusted amounted to:

"use of abusive, **false**, and harassing accusations" (Exhibit #14, page 2, line 6)

"**false** accusations" (Exhibit #14, page 6, line 24)

"they were **false**. A '**misrepresentation** of material fact is **subject to sanction under section 128.5**.' " (Exhibit #14, page 6, line 26)

"Making knowingly **false** accusations of criminal conduct against opposing counsel, to harass him, is sanctionable bad faith." (Exhibit #14, page 7, line 2)

There is a mountain of evidence that conclusively proves that Kevin Hermansen **had INDEED** violated numerous state and federal statutes.

It is a **FACT** that he is a criminal and a fraudster.

The plaintiff had not falsely accused nor misrepresented Kevin Hermansen.

Kevin Hermansen's **FRAUDULENT** statements (in violation of BPC § 6128, 18 U.S.C. § 1343, and RICO) in his Motion for Sanctions Against Plaintiff Shing Lnug Lau Pursuant to Code of Civil Procedure § 128.5 that the plaintiff **made false accusations** against Kevin Hermansen for harassment purposes is itself a WIRE FRAUD SCHEME designed to defraud the plaintiff out of $29,890.

19

7.

Loss of legal fees and costs to recover the property 9705 Ardendale in the future $????

If **NOT** for Kevin Hermansen et al.'s **CRIMES**, especially the ones that prevented recovery of 9705 Ardendale on August 1, 2024.

The plaintiff would not have to expand money to try to recover the property 9705 Ardendale in the future.

8.

Loss of market value of property 9705 Ardendale ave. Arcadia $380,000 to $400,000 (This loss in value **ALREADY HAPPENED**)

After so much loss (all the attorrneys fees detailed in the FAC and SAC) and **future losses** (wire fraud schemes committed by the defendants to unlawfully gain unknown large amount in the anti-slapp motion in this very case, the wire fraud scheme in LASC case 26PDUD00798 currently being executed by Kevin Hermansen $29,890).

The plaintiffs seem to have no choice but to cut loss and to sell the property 9705 Ardendale ave. Arcadia as the plaintiffs' attorneys have adviced.

Few people would want to buy a house already occupied by tenants **who have not pay any rent at all for 37 months.** It signifies **A LOT OF TROUBLE.**

**That is a FACT.**

If **NOT** for Kevin Hermansen et al.'s **CRIMES**, especially the ones that prevented recovery of 9705 Ardendale on August 1, 2024.

9705 Ardendale ave. Arcadia would **NOT** be now still be occupied by tenants who have **not pay any rent at all for 37 months** (defendants Christopher Lopez and Cynthia Carter)

This FACT **drastically lowered the property value of the plaintiff's property.**

The plaintiff could have sold 9705 Ardendale ave. Arcadia for **at least $1,230,000.**

See **Exhibit #15** for google map screenshot of the two closeby properties of **9705 Ardendale ave., Arcadia** and **9656 Ardendale ave., Arcadia;** which shows that the two properties are almost just across the street from each other.

See **Exhibit #16** for evidence that the property 9656 Ardendale ave., Arcadia was recently sold for **$1,230,000** on May 29, 2026.

9705 Ardendale ave., Arcadia could probably be sold for **more than $1,230,000** as **Exhibit #15** shows that 9705 Ardendale ave. Arcadia has what looks like is a bigger backyard and thus can build a bigger ADU.

As it stands now, because of Kevin Hermansen et al.'s **CRIMES**, the best offer that the plaintiffs could get is only **$850,000** (See **Exhibit #7**)

This means that there is a **loss of $380,000 to $400,000 in value <u>due</u>** to Kevin Hermansen et al.'s **CRIMES** that prevented the plaintiffs from recovering possession of the property.

**Take Note** that this Loss of Value has **<u>ALREADY happened</u>**. Regardless of whether the plaintiffs eventually go through with the sale or not. The plaintiff Shing Lung Lau is especially loath to lose **MORE MONEY ($380,000)** because of the defendants.

The defendants Christopher Lopez and Cynthia Carter has already stayed in possession of the property for 37 months without paying rent. In all likelihood they can stay there indefinitely. This Loss of Value ($380,000 to $400,000) has **ALREADY happened and will <u>only INCREASE</u> the longer** the defendants stay in possession.

Remember that 9705 Ardendale ave. was supposed to be **entirely** the plaintiff Shing Lung Lau's due to the property swap agreement between the elderly plaintiffs and plaintiff Shing Lung Lau

The entire **$380,000 to $400,000** loss in value should be attributed to be **injury to the plaintiff Shing Lung Lau.**

Even if the court only attributes 50% of the loss to the plaintiff Shing Lung Lau, that is still **$190,000 to $200,000 in injury to the plaintiff Shing Lung Lau.**

21

9.

Potential LOSS of money (suffered by all the plaintiffs **including plaintiff Shing Lung Lau**) due to defendants' winning anti-SLAPP motions through **committing crimes** in this very case itself

The amound requested by Mark Kleiman and Thomas Harvey in their proposed orders filed concurrently with their two anti-slapp motions

As touched upon previously, Mark Kleiman, Thomas Harvery, Ramsey Judah, and all of the defendants are now currently **conspiring with each other and executing a WIRE FRAUD SCHEME in this very case itself.**

This WIRE FRAUD SCHEME is expounded upon as **WIRE FRAUD SCHEME # 5** in the SAC.

The gist of this current WIRE FRAUD SCHEME in this very case itself comprises of all the fraudulent misrepresentations Mark Kleiman, Thomas Harvey, and Ramsey Judah and the defendants made in all the **court papers filed related to the anti-slapp motions** as well as in all **the court papers filed related in opposition to the plaintiff's Motion for Leave to File Second Amended Complaint.**

They all committed crimes in order so that they may unlawfully gain money from the plaintiff Shing Lung Lau with their anti-slapp motions.

Some of the **crimes** and fraudulent mispresentations they committed in the execution of their WIRE FRAUD SCHEME in this very Case in this very Court are:

A.

FALSE DECLARATIONS by all of the defendants (**Exhibit #17**)

This is perfect proof that there is a **RICO ENTERPRISE** that all the defendants **STILL** participate in by the way.

22

The defendants all knew they committed crimes (as Evidenced by all the Exhibits provided in the FAC and SAC), but they still all made false declarations (**Exhibit #17**) and **PERJURIES** right here in this FEDERAL CASE to the effect that they never committed any unlawful conduct on June 9, 2026 in order to **CORRUPTLY INFLUENCE this very Court itself.**

Mark Kleiman and Ramsey Judah attached these **FALSE DECLARATIONS and PERJURIES (which they knew to be fraudulent as they can see from the plaintiffs' evidence that their clients lied)** to their replies filed on June 10, 2026

Their goal is to manufacture the need "controversy" need to defeat the *Flatley* exception (which on reading the court rulings, seem to require "uncontroverted" evidence of criminal conduct) that the plaintiff raised as a defense against their anti-slapp claims.

These knowing false declarations are in violation of statutes such as

18 U.S.C. § 1343 Wire Fraud

18 U.S.C. § 1503 Obstruction of Justice

18 U.S.C. § 1512(c)(2) Obstruction of Justice

18 U.S.C. § 1512(k) Conspiracy to Commit Obstruction of Justice

Which makes them **RICO predicate acts** themselves and are evidence of **a pattern of RICO acitivities**, these crimes are included in the SAC and shall be part of this Civil RICO case itself.

And the potential injuries and damages to the plaintiffs (including the plaintiff Shing Lung Lau) due to the defendants UNLAWFULLY winning their anti-slapp motion shall also be a part of this Civil RICO case.

These false declarations additionally violated these statutes

18 U.S.C. § 1962 (RICO)

18 U.S. Code § 1623 (false declarations)

B.

Mark Kleiman's false statement:

"Plaintiff's motion offers two **mutually exclusive** explanations for why the contract claims were not removed earlier" (docket 113, DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT [Fed. R. Civ. P. 15(a)(2)] filed on July 7, 2026, page 14, line 15)

and went on to claim that the TWO statements:

"It was no secret that the plaintiff had always intended to remove all state claims subject to anti-SLAPP"

and

"[i]t was by the plaintiff's ignorance and mistake that those claims were not removed in the FAC in the first place"

are self contradictory and cannot both be true at the same time and is evidence that the plaintiff's motion for leave to file amended complaint was filed in BAD FAITH and should NOT be granted

The two statements from the plaintiff are NOT **mutually exclusive** at all. No reasonable person would think that these two statements are **mutually exclusive nor contraduct with each other.**

Mark Kleiman's false statement as well as other false statements (such as "Both averments cannot be true.") to the effect that the plaintiff's statements were inconsistent, contradictory, **mutually exclusive, etc.** are all **fraudulent** misrepresentations in violations of federal laws.

C.

Mark Kleiman also made this fraudulent statement:

"Defendants' motions further establish that Plaintiffs' claims ask this Court to sit in **review of final judgments** already entered against them in three state court unlawful detainer actions," (docket 113, DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT [Fed. R. Civ. P. 15(a)(2)] filed on July 7, page 11, line 21 to line 23)

The plaintiffs have **never** asked this Court to "sit in review of final judgments" in this case.

The plaintiffs have only ever **listed the crimes the defendants have committed** and have **never** asked this Court to review any final judgment at all.

This is a fraudulent misrepresentation that Mark Kleiman has commiteed to corruptly influence this Court (in violations of 18 U.S.C. § 1503 and 18 U.S.C. § 1512 federal obstruction of justice, 18 U.S.C. § 1343 Wire fraud, 18 U.S. Code § 1962 RICO

D.

In the sur-reply Mark Kleiman filed **WITHOUT leave of the court** on July 21, 2026,

titled "DEFENDANT HERMANSEN'S AND GHARAGOZLI'S OBJECTION TO PLAINTIFFS' REPLY TO OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT",

Mark Kleiman also falsely stated to the effect that the plaintiff **"falsely certified"** to the word limit in the reply (PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT) the plaintiff filed on July 17, 2026:

25

"Exceeding the limit by one-thousand words cannot possibly be a mistake, and **falsely certifying** to compliance cannot possibly be innocent error.  **The reply brief should be struck.**"

(Mark Kleiman, in "DEFENDANT HERMANSEN'S AND GHARAGOZLI'S OBJECTION TO  PLAINTIFFS' REPLY TO OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT", page 2 line 8)

This is a **FRAUDULENT** accusation from Mark Kleiman in an attempt to **corruptly influence** this Court to **struck the plaintiff's reply** so that this Court would not allow the Plaintiff to File the Second Amended Complaint and remove the contract causes of action subject to the anti-slapp motion in order to **escape** from Mark Kleiman, Thomas Harvey, Ramsey Judah, and all the defendants' **WIRE FRAUD SCHEME #5** (as expounded in SAC) to unlawfully gain money from the plaintiffs (inclduing plaintiff Shing Lung Lau) by winning their anti-slapp motions via corruptly influencing this Court via various criminal fraudulent misrepresentations.

Mark Kleiman's conduct is **fraudulent**.

Mark Kleiman fraudulently created a document which he termed "**reply brief**" and included all the words **BEFORE** the title "MEMORANDUM OF POINTS AND AUTHORITIES" and then tells the court that the plaintiff's "reply brief" is 8,071 words long and thus the plaintiff  "**falsely certified**" to the word limit in the reply and that the plaintiff's "**reply brief should be struck.**"

First of all, L.R. 11-6.1 limits the following to 7,000 words:

    1. memorandum of points and authorities

    2. pretrial brief

    3. trial brief

4.posttrial brief

A "**reply brief**" is not among them. And a "reply brief" and "pretrial brief" are definitely two different things.

Second of all, everybody, **including Mark Kleiman himself, does NOT** include the words **BEFORE** the title "MEMORANDUM OF POINTS AND AUTHORITIES" when counting word count limit subject to L.R. 11-6.1

The plaintiffs checked several of Mark Kleiman's court papers and **Mark Kleiman himself** only counted the words **AFTER** (and including) the title "MEMORANDUM OF POINTS AND AUTHORITIES" in certifying to the word limit.

The plaintiff selected all the words from the beginning of "MEMORANDUM OF POINTS AND AUTHORITIES" and onward all the way to just before the signature block, which the document editor indicated was 7,119 words and then subtracted 123 (the numbers used to number the points as numbers are not words) to arrive at 6,996.

The plaintiff certified that the plaintiff's Memorandum of Points and Authorities contained 6,996 words.

The plaintiff did NOT "**falsely certified**" at all.

Mark Kleiman himself NEVER counted the words BEFORE the title "MEMORANDUM OF POINTS AND AUTHORITIES"

The plaintiff was just following Mark Kleiman's lead.

Yet he MADE UP a document he termed "reply brief" and then falsely accused the plaintiff of **falsely certifing**.

This is a **dishonest** attempt to falsely accuse the plaintff and to **Corruptly Influence** this Court to dissallow the plaintiff to File the Second Amended Complaint to remove the causes of action subject to the defendants' anti-slapp motion.

27

In conjunction with the **FALSE DECLARATIONS** and many other false statements made in all of the related court papers, this constitutes as **WIRE FRAUD SCHEME #5** as described in the plaintiff's SAC.

The plaintiff Shing Lung Lau WILL definitely be injured by the defendants' criminal WIRE FRAUD SCHEME #5 if their criminal scheme was allowed to be successfully executed by this very Court.

In addition, because the finances (especially cash) of the elderly plaintiffs are comingled with the plaintiff Shing Lung Lau's, all money paid to any of the attorneys, Kevin Hermansen, Behnam Gharagozli, Kenny Lim (CA Property Law), Kelvin Lo (Lo & Lo) should be considered be to paid for by plaintiff Shing Lung Lau also. And any money recovered to compensate the plaintiffs would be considered the comingled funds of all of the plaintiffs.

**Conclusion:**

Due to all of the above.

No reasonable person in the world would say that the plaintiff had **NOT** or would not have been injured by the defendants Kevin Hermansen et. al.

It is a **fact** that the plaintiff has been injured (and will be injured) by Kevin Hermansen et al.'s **CRIMES** as expounded upon here and in the FAC and SAC.

The **chain of causation is unbroken** and is easy to see.

Were it not for Kevin Hermansen et al.'s **CRIMES**, the plaintiff Shing Lung Lau would not have suffered (or will suffer) the above stated injuries #1 to #9.

28

Were it not for Kevin Hermansen et al.'s **CRIMES**, the plaintiff Shing Lung Lau would already right now be living at the main house at 9705 Ardendale ave., with **a very low property tax base**, saving MANY THOUSANDS every year, and this savings can even be passed down to the plaintiff's children to create generational wealth

The plaintiff Shing Lung Lau would already be collecting rental income from the already built ADU right this day.

These **Injuries to the plaintiff Shing Lung Lau** are backed up with **CONCRETE evidence** (Exhibits here and in the FAC and SAC)

These are **NOT made up** injuries.

There are **REAL** injuries to the plaintiff Shing Lung Lau.

And it is the plaintiff Shing Lung Lau's intent to recover all or most of the above economic injuries in this federal RICO case.

Due to all of the above, it is clear that the plaintiff Shing Lung Lau has met the three elements of standing.

In the interest of JUSTICE, this very Court should **help** the plaintiff recover from these propounded injuries and **not help the defendants** in any way at all to inflict these injuries onto the plaintiff.

Amen.

Respectably,

Date: July 29, 2026

Shing Lung Lau, plaintiff in pro se

29

## **Declaration of Shing Lung Lau**

I, Shing Lung Lau, do declare the following:

1. I declare that the above response to the order to show cause is true to the best of my knowledge and belief

2. I declare that all of the exhibits attached are true to the best of my knowledge and belief

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 29, 2026 at Arcadia, California

Respectfully,

Shing Lung Lau

Plaintiff in pro se

30

# EXHIBIT #1

# 2022-2023 SAN MATEO COUNTY SECURED TAX BILL 2022-2023
### FOR FISCAL YEAR BEGINNING JULY 1, 2022 AND ENDING JUNE 30, 2023

| PARCEL NUMBER | TAX RATE AREA | BILL NUMBER |
|---|---|---|
| 005-116-330 | 005061 | 2022-208272 |

**LEGAL DESCRIPTION**
LOT 43 BLOCK 13 SCHWERIN ADD VISITACION



SITUS: 212 ACCACIA ST DALY CITY
TE21004C 7000038885 02.0064.0042 36269/1

LAU HOI KAN TR
LAU HOI KAN TRUST
212 ACCACIA ST
DALY CITY CA 94014-1507

* For Home Banking - Use the Account Number 005-116-330 as the Home Banking Account Number.
* Pay online at https://tax.smcgov.org OR by scanning below.
* When mailing, please do not fold, staple, tape or mutilate the attached coupons.
* 65 or older may qualify for a school parcel tax exemption on a primary residence in next fiscal year. Contact the District Office at
* 800-676-7516.
* 65 or older may qualify for a school parcel tax exemption on a primary residence in next fiscal year. Contact the District Office at 415-467-5443.

### ASSESSMENT INFORMATION

| | VALUES |
|---|---|
| Land | $287,058 |
| Improvements | $287,058 |
| Fixtures | $0 |
| Personal Property | $0 |
| Taxable Value | $574,116 |
| Exemption | $0 |
| Value after Exemption | $574,116 |
| Tax Saved Due To Exemption | $0.00 |

| TAXING AGENCY | RATE | AMOUNT |
|---|---|---|
| Countywide Tax (Secured) | 1.0000000% | $5,741.16 |
| Bayshore ESD Bond | 0.0361000% | $207.25 |
| Jefferson UHSD Bond | 0.0589000% | $338.15 |
| SMCCD Bond | 0.0193000% | $110.80 |
| General Tax Total | 1.1309000% | $6,397.36 |
| FEDCA&NPDES STORM FEE | (650)363-4100 | $7.60 |
| BAYSHORE SANI DIST | (510)469-3156 | $708.20 |
| SMC MOSQ ABATEMNT ASSMNT | (800)273-5167 | $19.80 |
| JEFFERSON UHSD PRCEL TX | (800)676-7516 | $60.00 |
| BAYSHORE ESD MEAS K | (415)467-5443 | $123.54 |
| SFBRA MEASURE AA | (800)676-7516 | $12.00 |
| JUHSD MEASURE Y TAX | (800)676-7516 | $58.00 |
| JEFFERSON UHSD MAINT | (800)273-5167 | $7.50 |
| CA STORM FEE-LOCAL | (650)991-8084 | $9.80 |

| TAX PAYABLE | | $7,403.80 |
|---|---|---|



| 1 DUE NOVEMBER 1, 2022 AFTER DECEMBER 12, 2022 ADD 10% PENALTY TO YOUR PAYMENT $ 3,701.90 | 2 DUE FEBRUARY 1, 2023 AFTER APRIL 10, 2023 ADD 10% PENALTY + $40.00 COST TO YOUR PAYMENT $ 3,701.90 |
|---|---|

---

Detach this stub and return with your payment

**WRITE YOUR PARCEL NUMBER ON YOUR CHECK AND USE AN ENCLOSED ENVELOPE**

| PARCEL NUMBER |
|---|
| 005-116-330 |
| 10/19/2022 |

IF PROPERTY HAS BEEN SOLD PLEASE FORWARD THIS BILL TO THE NEW OWNER

PAYABLE IN U.S. FUNDS ONLY

SECOND INSTALLMENT PAYMENT CANNOT BE ACCEPTED UNLESS FIRST INSTALLMENT IS PAID

**MARK YOUR CALENDAR -**
**NO REMINDER NOTICES WILL BE MAILED!**

ASSESSED TO:
LAU HOI KAN TR
LAU HOI KAN TRUST
212 ACCACIA ST
DALY CITY CA 94014-1507



**CORRECTED BILL**



AFTER APR 10, 2023 ADD
10% PENALTY
AND $40.00 COST
TO YOUR PAYMENT

TOTAL DELINQUENT
INSTALLMENT DUE

MAKE CHECKS PAYABLE TO: **SANDIE ARNOTT,**
**SAN MATEO COUNTY TAX COLLECTOR**
MAIL TO: **P.O. BOX 45878**
**SAN FRANCISCO, CA 94145-0878**

S2005-116-33000000000002022-2082722304110000037019000000004112090

---

Detach this stub and return with your payment

**BEFORE PAYING THIS BILL MAKE SURE IT IS FOR YOUR PROPERTY**

| PARCEL NUMBER |
|---|
| 005-116-330 |
| 10/19/2022 |

| IF PAYING TOTAL TAX OF |
|---|
| **$ 7,403.80** |
| INCLUDE BOTH PAYMENT STUBS |
| .. AND PAY BY **12/12/2022** |
| USE AN ENCLOSED ENVELOPE |

PAYABLE IN U.S. FUNDS ONLY

ASSESSED TO:
LAU HOI KAN TR
LAU HOI KAN TRUST
212 ACCACIA ST
DALY CITY CA 94014-1507



**CORRECTED BILL**

**DUE NOV 1, 2022**
**$ 3,701.90**

AFTER DEC 12, 2022 ADD
10% PENALTY
TO YOUR PAYMENT

TOTAL DELINQUENT
INSTALLMENT DUE

MAKE CHECKS PAYABLE TO: **SANDIE ARNOTT,**
**SAN MATEO COUNTY TAX COLLECTOR**
MAIL TO: **P.O. BOX 45878**
**SAN FRANCISCO, CA 94145-0878**

S1005-116-33000000000002022-2082722121300000037019000000004072098



# EXHIBIT #2

Total $32,385.54

## EAST WEST BANK

**CASHIER'S CHECK**

NOTICE TO CUSTOMERS: The purchase of an indemnity bond will be required before any cashier's check issued by this bank will be replaced or refunded in the event it is lost, stolen or destroyed for a period of 90 days from issuance date.

**837017721**

Member FDIC
135 N. LOS ROBLES AVE., PASADENA, CA 91101

August 27, 2024

16-7038/3220

PAY TO THE ORDER OF   *Law Offices Of Ben Gharagozli*

*********4,437.54

FOUR THOUSAND FOUR HUNDRED THIRTY SEVEN DOLLARS AND FIFTY FOUR CENTS

EAST WEST BANK
VOID AFTER 90 DAYS

**CASHIER'S CHECK**

NON-NEGOTIABLE

OVER 100 000 REQUIRES TWO SIGNATURE

⑈837017721⑈ ⑆322070381⑆ 459340005⑈

## EAST WEST BANK

**CASHIER'S CHECK**

NOTICE TO CUSTOMERS: The purchase of an indemnity bond will be required before any cashier's check issued by this bank will be replaced or refunded in the event it is lost, stolen or destroyed for a period of 90 days from issuance date.

**837017814**

Member FDIC
135 N. LOS ROBLES AVE., PASADENA, CA 91101

October 04, 2024

16-7038/3220

PAY TO THE ORDER OF   *LAW OFFICES OF BEN GHARAGOZLI*

********26,148.00

TWENTY SIX THOUSAND ONE HUNDRED FORTY EIGHT DOLLARS AND  ZERO  CENTS

EAST WEST BANK
VOID AFTER 90 DAYS

**CASHIER'S CHECK**

NON-NEGOTIABLE

OVER 100 000 REQUIRES TWO SIGNATURE

⑈837017814⑈ ⑆322070381⑆ 459340015⑈

## EAST WEST BANK

**CASHIER'S CHECK**

NOTICE TO CUSTOMERS: The purchase of an indemnity bond will be required before any cashier's check issued by this bank will be replaced or refunded in the event it is lost, stolen or destroyed for a period of 90 days from issuance date.

**837017864**

Member FDIC
135 N. LOS ROBLES AVE., PASADENA, CA 91101

October 21, 2024

16-7038/3220

PAY TO THE ORDER OF   *LAW OFFICES OF BEN GHARAGOZLI*

********1,800.00

ONE THOUSAND EIGHT HUNDRED  DOLLARS AND  ZERO  CENTS

EAST WEST BANK
VOID AFTER 90 DAYS

**CASHIER'S CHECK**

34

NON-NEGOTIABLE

# EXHIBIT #3

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT R                 HON. WILLIAM D. DODSON, COMMISSIONER

HOI KAN LAU,                                        )
                                                    )
               PLAINTIFF,                           )
                                                    )
          VS.                                       )
                                                    ) CASE NO.:
                                                    )
CYNTHIA CARTER, ET AL.,                             ) 24PDUD01782
                                                    )
               DEFENDANT.                           )
_____            )

-oOo-

TRANSCRIPT OF PROCEEDINGS

AUGUST 1, 2024

APPEARANCES:

FOR THE PLAINTIFF:    CALIFORNIA PROPERTY LAW GROUP
                      BY:  KENNY LIM, ESQ.
                      930 SOUTH LA BREA AVENUE
                      SUITE 204
                      LOS ANGELES, CA 90036

FOR THE DEFENDANT:    LAW OFFICE OF KEVIN P. HERMANSEN, P.C.
                      BY:  KEVIN PAUL HERMANSEN, ESQ.
                      13654 VICTORY BOULEVARD
                      SUITE 111
                      VAN NUYS, CA 91401

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
TRANSCRIPT PRODUCED BY LAURA GRIFFIN, CET-1709

 HUNTINGTON COURT REPORTERS AND TRANSCRIPTION, INC.
PASADENA AND NATCHITOCHES, LA

2

MASTER INDEX

AUGUST 1, 2024

SESSIONS

THURSDAY, AUGUST 1, 2024                                    PAGE
     A.M. SESSION                                           5


CHRONOLOGICAL INDEX OF WITNESSES

                                                           PAGE

LAU, SHING LUNG, CALLED BY PLAINTIFF
   DIRECT EXAMINATION BY MR. LIM                            12
   CROSS-EXAMINATION BY MR. HERMANSEN                       19
   REDIRECT EXAMINATION BY MR. LIM                          24

LAU, HOI KAN, CALLED BY PLAINTIFF
   DIRECT EXAMINATION BY MR. LIM                            27
   CROSS-EXAMINATION BY MR. HERMANSEN                       28



3

M A S T E R   I N D E X

AUGUST 1, 2024


SESSIONS


THURSDAY, AUGUST 1, 2024                                    PAGE
        A.M. SESSION                                         5


ALPHABETICAL INDEX OF WITNESSES

                                                            PAGE

LAU, HOI KAN, CALLED BY PLAINTIFF
    DIRECT EXAMINATION BY MR. LIM                            27
    CROSS-EXAMINATION BY MR. HERMANSEN                       28

LAU, SHING LUNG, CALLED BY PLAINTIFF
    DIRECT EXAMINATION BY MR. LIM                            12
    CROSS-EXAMINATION BY MR. HERMANSEN                       19
    REDIRECT EXAMINATION BY MR. LIM                          24

HUNTINGTON COURT REPORTERS AND TRANSCRIPTION, INC.
PASADENA, 38 AND NATCHITOCHES, LA
HCR

4

M A S T E R   I N D E X

AUGUST 1, 2024

EXHIBITS

| PLAINTIFF'S EXHIBITS | DESCRIPTION | FOR I.D. | IN EVID. | WITHDRAWN/ REJECTED |
|---|---|---|---|---|
| 1 | LEASE | 13 | 16 | |
| 2 | 5-DAY NOTICE | 15 | 16 | |
| 3 | PROOF OF SERVICE | 16 | 16 | |
| 4 | 3-DAY NOTICE | 17 | 18 | |
| 5 | PROOF OF SERVICE | 17 | 18 | |
| 106 | NOTICE | 25 | 26 | |

| DEFENSE'S EXHIBITS | DESCRIPTION | FOR I.D. | IN EVID. | WITHDRAWN/ REJECTED |
|---|---|---|---|---|

NONE



CASE NUMBER:          24PDUD01782

CASE NAME:            HOI KAN LAU VS. CYNTHIA CARTER, ET AL.

PASADENA, CA          THURSDAY, AUGUST 1, 2024

DEPARTMENT R          HON. WILLIAM D. DODSON, COMMISSIONER

TRANSCRIBER:          LAURA GRIFFIN, CET-1709

TIME:                 9:26 A.M.

APPEARANCES:  DEFENDANT CYNTHIA CARTER, ET AL., IS PRESENT WITH COUNSEL, KEVIN PAUL HERMANSEN, PRIVATE COUNSEL; KENNY LIM, PRIVATE COUNSEL, REPRESENTING HOI KAN LAU.

THE COURT:  GOOD MORNING.  READY FOR TRIAL?

UNIDENTIFIED SPEAKER:  YES, YOUR HONOR.

THE COURT:  LAU VERSUS CARTER AND LOPEZ.

OKAY.  VERY GOOD.  SO APPEARANCES FOR THE RECORD.

MR. LIM:  GOOD MORNING, YOUR HONOR.  KENNY LIM ON BEHALF OF THE PLAINTIFF.

THE COURT:  GOOD MORNING.

MR. HERMANSEN:  GOOD MORNING, YOUR HONOR.  KEVIN HERMANSEN FOR THE DEFENDANTS.

THE COURT:  GOOD MORNING.

AND WE'RE GOING TO HAVE A CANTONESE INTERPRETER WHEN WE GET THERE.

MR. HERMANSEN:  THAT'S CORRECT, YOUR HONOR.  WE HAVE A CANTONESE INTERPRETER.

THE COURT:  VERY GOOD.

THE INTERPRETER:  GOOD MORNING, YOUR HONOR.  THIS IS THE PLAINTIFF (INDISCERNIBLE) COURT-CERTIFIED CANTONESE



LANGUAGE INTERPRETER MING TAO WONG (PHONETIC), AND MY (INDISCERNIBLE). BADGE NUMBER IS 301783. OATH ON FILE.

THE CLERK: YOUR HONOR, I'M SORRY. BUT HE'S NOT THE COURT-APPOINTED INTERPRETER. I WAS NOT SECURED THROUGH THE COORDINATOR'S OFFICE, BUT I WAS, YESTERDAY, RETAINED BY THE PARTY.

(SHEILA CHAU, INTERPRETING FOR THE PLAINTIFF'S WITNESS FROM ENGLISH INTO CANTONESE AND CANTONESE INTO ENGLISH.)

THE INTERPRETER: I'M SET BY THE COURT. CERTIFIED INTERPRETER SHEILA CHAU.

THE COURT: OKAY.

THE INTERPRETER: CERTIFICATION NUMBER 300159. OATH ON FILE.

THE COURT: AND YOU'RE A CERTIFIED INTERPRETER?

THE INTERPRETER: YES.

THE COURT: OKAY.

THE INTERPRETER: I USED TO WORK IT FULL TIME.

THE CLERK: BUT NOT THROUGH THE CLERK?

THE INTERPRETER: NOT IN THIS CASE I WAS NOT (INDISCERNIBLE).

THE CLERK: SO, YOUR HONOR, WE HAVE TWO COURT-COORDINATED CANTONESE INTERPRETERS HERE. THAT'S THIS MADAM INTERPRETER AND THIS MADAM INTERPRETER.

THE COURT: ALL RIGHT. THEN I'LL HAVE TO USE THE COURT-APPOINTED.



7

THE CLERK:  AND WE HAVE A PRIVATELY RETAINED INTERPRETER.

MR. HERMANSEN:  YOUR HONOR, WE'VE RETAINED A SEPARATE INTERPRETER.  MY CLIENT FEELS MORE COMFORTABLE WITH THIS INTERPRETER TO INTERPRET FOR HIM IN THIS.  --

THE COURT:  YEAH, BUT THE COURT FEELS MORE COMFORTABLE WITH THE COURT EMPLOYEE; SO, OBVIOUSLY, THERE'S THE POTENTIAL FOR BIAS AND CHANGING THE TESTIMONY.  SO WE'LL USE OUR INTERPRETERS.  WHATEVER OBJECTION THAT WAS, IT'S OVERRULED.

THE INTERPRETER:  JUST ONE POINT, YOUR HONOR.  I WAS HIRED BY THE OPPOSING SIDE FOR THE DEPOSITION AS WELL.  SO JUST ONE POINT.

THE COURT:  AND I'M SURE YOU WOULD TESTIFY (INDISCERNIBLE) PERSONALLY.

THE INTERPRETER:  YEAH.

THE COURT:  I'M JUST TALKING ABOUT IT IN GENERAL.

THE INTERPRETER:  I UNDERSTAND.

THE COURT:  NO, I'M NOT DISCOURAGING YOU OR YOUR WORK OR YOUR TALENT, AND IT'S A VALUABLE TALENT.  I UNDERSTAND, BUT WE'RE SUPPOSED TO USE OUR EMPLOYEES.

DID I GET THE APPEARANCES OF COUNSEL YET?

MR. HERMANSEN:  YES.

THE COURT:  I DID, I DID.

AND I DID NOT GET THE APPEARANCE OF THE SECOND CANTONESE INTERPRETER.



HUNTINGTON COURT REPORTERS AND TRANSCRIPTION, INC.
PASADENA, CA AND NATCHITOCHES, LA

8

(YUAN NING ZHENG, INTERPRETING FOR THE PLAINTIFF'S WITNESS FROM ENGLISH INTO CANTONESE AND CANTONESE INTO ENGLISH.)

THE INTERPRETER:  GOOD MORNING, YOUR HONOR.  YUAN NING ZHENG, COURT-CERTIFIED CANTONESE INTERPRETER, CERTIFICATION NUMBER 301942.  OATH ON FILE.

THE COURT:  VERY GOOD.  THANK YOU.

SO READY TO PROCEED?

MR. LIM:  YES, YOUR HONOR.

THE COURT:  OKAY.  SO THE WAY I DO EXHIBITS IS I'M NOT GOING TO USE A BINDER.  YOU ALL MAY USE BINDERS, BUT I WANT TO SEE THE DOCUMENT THAT'S BEEN BEFORE THE WITNESS THAT AUTHENTICATES IT OUTSIDE OF A BINDER, AND THEN I'LL KEEP TRACK OF NUMBERS, LETTERS, WHATEVER WE NEED.

THE COURT:  I CAN'T PUT THE WITNESS ON THE STAND.  HE HAS TO STAY IN THE CHAIR.

MR. LIM:  YES, YOUR HONOR.  HE'S NOT ABLE TO LEAVE HIS WHEELCHAIR.

THE COURT:  OKAY.

MR. LIM:  WE DO HAVE WE HAVE THREE WITNESSES THAT WE MAY END UP CALLING.

THE COURT:  OKAY.  THAT'S FINE.  OTHER WITNESSES WE'LL HAVE UP IN THE WITNESS BOX, BUT THAT'S FINE FOR THE PLAINTIFF WITNESS TO TESTIFY FROM THERE.

MR. LIM:  AS A PRE-TRIAL MATTER, THE DEFENDANTS' COUNSEL AND I HAVE HAD A DISCUSSION.  THE DEFENSE COUNSEL HAS ALREADY STIPULATED TO THE FACT THAT ALL OF THE NOTICES



THAT WERE REQUIRED TO BE SERVED UNDER 1161.2 HAS BEEN PROPERLY SERVED FOR THIS CASE.

MR. HERMANSEN:  AS I MENTIONED YESTERDAY, THE PROOFS OF SERVICE ARE ACCURATE, AND WE DO NOT CONTEST THEM AT ALL. THE NOTICE WAS SERVED AS IT SAID THEY DID.

THE COURT:  OKAY.

ALL RIGHT.  FORGIVE ME, I CAN'T REMEMBER.  ARE WE TALKING ABOUT 1 OR 2 NOTICES?  HOW MANY NOTICES?

MR. LIM:  BOTH NOTICES --

MR. HERMANSEN:  TWO NOTICES --

THE COURT:  TWO NOTICES.  THAT'S WHAT I THOUGHT. OKAY.  ALL RIGHT.  GREAT.

ANYTHING ELSE BEFORE WE START?

MR. LIM:  NO, YOUR HONOR.

THE COURT:  SWEAR WITNESSES?

MR. LIM:  YOUR HONOR, OUR POTENTIAL WITNESS IS OUTSIDE IN THE HALL.  CAN I BRING HER IN TO BE SWORN IN?

THE COURT:  PLEASE.

(PAUSE.)

THE COURT:  GOOD MORNING.

READY TO BE SWORN?

MR. LIM:  WELL, THE THIRD ONE IS ALSO NEEDS TO BE --

THE CLERK:  OKAY.  CAN WE DO ONE AT A TIME SO -- BECAUSE SOMEBODY HAS TO STAY OUT THERE WITH THE BABY.

THE COURT:  OKAY.  WE'LL JUST DO IT THIS WAY THEN.

LET'S SWEAR TO THE PEOPLE WE CAN.



10

THE CLERK:  ALL RIGHT.

THE COURT:  YOU MAY REMAIN SEATED, OBVIOUSLY, IN THE WHEELCHAIR.

THE CLERK:  OKAY.  IF I COULD -- DOES SHE NEED AN INTERPRETER?

MR. LIM:  YES, SHE ALSO NEEDS AN INTERPRETER.

        (PAUSE.)


THE CLERK:  IF I COULD HAVE EVERYONE PLEASE RAISE THEIR RIGHT HANDS TO BE SWORN.

        DO YOU AND EACH OF YOU SOLEMNLY STATE THAT THE TESTIMONY YOU MAY GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, SO HELP YOU GOD?

        (THE WITNESSES ANSWER IN THE
         AFFIRMATIVE.)

THE CLERK:  THANK YOU.

        STARTING WITH YOU, SIR, IF YOU COULD PLEASE STATE AND SPELL YOUR FIRST AND LAST NAME.

THE WITNESS:  H-O-I, K-A-N, L-A-U.

THE CLERK:  THANK YOU.

        AND, MA'AM?

THE WITNESS:  S-I-U, S-A-N; LAST NAME:  T-S-A-N-G.

THE CLERK:  THANK YOU.

        AND, MA'AM?



HUNTINGTON COURT REPORTERS AND TRANSCRIPTION, INC.
PASADENA, CA AND NATCHITOCHES, LA

THE COURT:  THANK YOU.

THE WITNESS:  CYNTHIA CARTER, C-Y-N-T-H-I-A, C-A-R-T-E-R.

THE CLERK:  THANK YOU.

THE COURT:  THANK YOU.

MR. LIM:  YOUR HONOR, AND IF WE MAY SWEAR IN THE OTHER WITNESS WHO'S STANDING OUTSIDE?  HIS NAME IS SHING LUNG LAU.  HE'S GOING TO BE THE FIRST WITNESS THAT WE DO CALL.

THE COURT:  OKAY.


(PAUSE.)


THE COURT:  YOU MAY PROCEED.

MR. LIM:  MR. LAU, SHING LUNG, HE'S GOING TO BE THE FIRST WITNESS THAT WE'RE GOING TO CALL.  HE'S OUTSIDE AND WE NEED TO SWEAR HIM IN FIRST.

THE COURT:  OH, ALL RIGHT.

NOW WE HAVE ANOTHER WITNESS TO SWEAR IN.

MR. LIM:  HE DOES NOT NEED A TRANSLATOR.

THE CLERK:  OKAY.

AND WOULD YOU LIKE HIM AT THE WITNESS STAND, YOUR HONOR?

THE COURT:  HUH?

THE CLERK:  AT THE WITNESS STAND?

THE COURT:  YEAH, PLEASE.  OVER HERE.


(PAUSE.)



HUNTINGTON COURT REPORTERS AND TRANSCRIPTION, INC.
PASADENA, CA AND NATCHITOCHES, LA

12

THE CLERK:  IF I COULD HAVE YOU PLEASE RAISE YOUR RIGHT HAND.

THE COURT:  FACE THE CLERK IF YOU WILL?

THE WITNESS:  YES.

THE CLERK:  DO YOU SOLEMNLY STATE THAT THE TESTIMONY YOU MAY GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, SO HELP YOU GOD?

THE WITNESS:  YES, I DO.

THE CLERK:  THANK YOU.

PLEASE HAVE A SEAT.  AND FOR THE RECORD, SIR, IF YOU COULD PLEASE STATE AND SPELL YOUR FIRST AND LAST NAME.

THE WITNESS:  MY NAME IS SHING LUNG LAU, S-H-I-N-G, L-U-N-G, L-A-U.

THE CLERK:  THANK YOU.

SHING LUNG LAU,
CALLED AS A WITNESS BY THE PLAINTIFF, WAS SWORN AND TESTIFIED AS FOLLOWS:

THE COURT:  YOU MAY INQUIRE?

MR. LIM:  THANK YOU, YOUR HONOR.

DIRECT EXAMINATION
BY MR. LIM:

Q    GOOD MORNING, MR. LAU.  CAN YOU STATE WHAT YOUR RELATION IS TO THE PROPERTY LOCATED AT 9705 ARDENDALE



13

AVENUE, ARCADIA, CALIFORNIA 91007?

A    I'M THE AUTHORIZED PROPERTY MANAGER.

Q    AND I'M GOING TO DIRECT YOUR ATTENTION TO PLAINTIFF'S MARKED EXHIBIT NUMBER 1.  CAN YOU DESCRIBE FOR THE COURT WHAT THIS IS?

(MARKED FOR IDENTIFICATION:
EXHIBIT 1, LEASE.)

A    THIS IS THE LEASE BETWEEN THE PREVIOUS OWNER OF THE PROPERTY AND THE CURRENT TENANTS.

Q    AND IS THE CURRENT TENANTS CYNTHIA CARTER AS WELL AS CHRISTOPHER LOPEZ?

A    YES.

Q    AND WAS THE PROPERTY RENTED TO THEM?

A    YES.

Q    AND UNDER THIS LEASE AGREEMENT, WAS THE RENTAL AMOUNT $2,950?

A    THAT'S WHAT THE LEASE SAYS, BUT THEY HAVE ALWAYS ONLY PAID $2,932.20.

Q    SO THEY OWED AT LEAST FOR EACH MONTH, $2,932.50.

A    TWENTY CENTS, YES.

Q    AND DO YOU KNOW IF THE LEASE AGREEMENTS ALLOW FOR ATTORNEY'S FEES?

THE COURT:  SORRY, I HAVE TO INTERRUPT YOU.

YOU GOTTA PUT THAT AWAY.  PUT THE PAPER AWAY, PLEASE.  NO NEWSPAPERS.



14

GO AHEAD, COUNSEL, IF YOU'D ASK IT AGAIN.  I'M SORRY.

BY MR. LIM:

Q     DO YOU KNOW IF THE LEASE AGREEMENTS ALLOW FOR ATTORNEYS' FEES TO THE PREVAILING PARTY?

A     I UNDERSTAND THAT THE OWNER SENT A NOTICE IN DECEMBER OF 2023, THAT THERE WILL BE NO ATTORNEY'S FEE.

MR. HERMANSEN:  MOTION TO STRIKE.  LACKS FOUNDATION.

THE COURT:  MAY I HAVE A QUESTION AGAIN?  I MISSED SOMETHING IN THERE.

MR. LIM:  DO YOU KNOW IF THE LEASE AGREEMENTS ALLOWS FOR ATTORNEYS' FEES FOR THE PREVAILING PARTY IN LITIGATION?

THE COURT:  WHY IS IT IMPORTANT THAT HE KNOWS THAT?  IS IT NOT COMING INTO EVIDENCE?

MR. LIM:  THERE MAY BE A MOTION FOR -- OR THERE MAY BE COSTS ASSOCIATED WITH THIS FOR THE PREVAILING PARTY FOR ATTORNEYS' FEES.

THE COURT:  THERE MIGHT BE WHAT?

MR. LIM:  THERE MAY BE ATTORNEYS' FEES THAT ARE ASKED FOR BY EITHER PARTY IN THE EVENT OF EITHER PARTY PREVAILING IN THIS CASE.

THE COURT:  AND THE OBJECTION AGAIN.

MR. HERMANSEN:  THE OBJECTION WAS HE ASKED SOMETHING ABOUT THE FEES, AND HE SAID SOMEBODY ELSE WENT AND SERVED SOME NOTICE.  SO THE MOTION TO STRIKE WAS LACKS FOUNDATION.

THE COURT:  OKAY.  GRANTED.

BY MR. LIM:

Q     DID YOU CAUSE TO BE SERVED A 5-DAY PAY OR QUIT



NOTICE?

A     YES.

Q     DIRECTING YOUR ATTENTION TO PLAINTIFF'S MARKED EXHIBIT NUMBER 2.  IS THIS A TRUE AND CORRECT COPY OF THAT NOTICE?

(MARKED FOR IDENTIFICATION:

EXHIBIT 2, 5-DAY NOTICE.)

THE WITNESS:  YES.

BY MR. LIM:

Q     AND CAN YOU TELL FOR THE COURT HOW MUCH THE RENT WAS DEMANDED ON THIS NOTICE?

A     IT'S $11,728.80.

Q     AND DID THE TENANTS COMPLY WITH THIS 5-DAY NOTICE?

A     NO, THEY DID NOT.

Q     DID THEY EVER PAY YOU ANY OF THE RENT THAT WAS DEMANDED?

A     NO.

Q     DO YOU KNOW IF YOUR PARENTS HAD EVER RECEIVED THE MONEY?

A     THEY DID NOT.

Q     AND CAN YOU TELL FOR THE COURT WHAT PERIOD THIS RENT WAS DEMANDED FOR?

A     THE PERIOD IS FOR JANUARY OF THIS YEAR TO APRIL OF THIS YEAR.

Q     AND TURNING YOUR ATTENTION TO PLAINTIFF'S



16

MARKED EXHIBIT NUMBER 3.  CAN YOU DESCRIBE FOR THE COURT WHAT THIS IS?

(MARKED FOR IDENTIFICATION:

EXHIBIT 3, PROOF OF SERVICE.)

THE WITNESS:  THIS IS THE SERVICE OF NOTICE.

BY MR. LIM:

Q     AND THIS WAS SERVED BY A REGISTERED PROCESS SERVER?

A     YES.

MR. LIM:  YOUR HONOR, AT THIS TIME, PLAINTIFF WOULD LIKE TO MOVE INTO EVIDENCE PLAINTIFF'S MARKED EXHIBIT NUMBER 1, NUMBER 2, AND NUMBER 3.

THE COURT:  ONE IS THE LEASE, 2 IS THE 5-DAY NOTICE TO PAY OR QUIT, 3 IS THE PROOF OF SERVICE BY REGISTERED PROCESS SERVER?

MR. LIM:  YES, YOUR HONOR.

MR. HERMANSEN:  NO OBJECTION.

THE COURT:  ALL RIGHT.

ONE, 2, AND 3 IN EVIDENCE.

(RECEIVED IN EVIDENCE:

EXHIBITS 1 - 3)

MR. LIM:  THANK YOU, YOUR HONOR.

BY MR. LIM:

Q     DIRECTING YOUR ATTENTION TO PLAINTIFF'S MARKED



EXHIBIT NUMBER 4.  CAN YOU DESCRIBE FOR THE COURT WHAT THIS IS?

(MARKED FOR IDENTIFICATION:

EXHIBIT 4, 3-DAY NOTICE.)


THE WITNESS:  THIS IS A 3-DAY NOTICE TO QUIT.

BY MR. LIM:

Q    AND WAS THIS SERVED ONTO THE TENANT AS WELL?

A    YES.

Q    AND CAN YOU DESCRIBE FOR THE COURT WHAT THIS SAYS ON THIS DOCUMENT RIGHT HERE STARTING FROM "ON APRIL 19TH"?

A    "ON APRIL 19, 2024, THE TENANTS WERE SERVED WITH A 5-DAY NOTICE TO PAY OR QUIT.

"ON APRIL 29, 2024, THE PERIOD OF THAT NOTICE EXPIRED AT THE END OF THE DAY, AND THE TENANTS FAILED TO COMPLY WITH THAT 5 DAYS TO PAY OR QUIT NOTICE.  SO THEIR TENANCY WILL BE TERMINATED AT THE EXPIRATION OF THIS NOTICE."

Q    THANK YOU.

AND DIRECTING YOUR ATTENTION TO PLAINTIFF'S MARKET EXHIBIT NUMBER 5.  CAN YOU DESCRIBE FOR THE COURT WHAT THIS DOCUMENT IS?


(MARKED FOR IDENTIFICATION:

EXHIBIT 5, PROOF OF SERVICE.)


THE WITNESS:  THIS IS A DECLARATION OF SERVICE OF



18

NOTICE TO THE TENANTS.

BY MR. LIM:

Q    AND THIS IS IN RELATION TO WHICH DOCUMENT?

A    THE 3-DAY NOTICE TO QUIT.

Q    AND WAS THIS ALSO SERVED BY A REGISTERED PROCESS SERVER?

A    YES.

Q    THANK YOU.

MR. LIM:  YOUR HONOR, PLAINTIFF WOULD LIKE TO MOVE INTO EVIDENCE PLAINTIFF'S MARKED EXHIBIT NUMBER 4, AS WELL AS NUMBER 5.

MR. HERMANSEN:  NO OBJECTION.

THE COURT:  ALL RIGHT.  THEY'RE IN.

(RECEIVED IN EVIDENCE:

EXHIBITS 4 - 5.)

THE COURT:  YOU DON'T HAVE TO STAND UP.  RELAX.

MR. LIM:  THANK YOU, YOUR HONOR.

BY MR. LIM:

Q    ARE THE TENANTS STILL IN POSSESSION OF THE UNIT?

A    YES.

Q    AND YOU'VE NEVER RECEIVED ANY OF THE RENT DEMANDED IN THE NOTE; CORRECT?

A    YEAH, WE HAVEN'T.

Q    ARE YOU ALSO REQUESTING POSSESSION OF THE UNIT BACK, AS WELL AS A FORFEITURE OF THE LEASE AGREEMENT?



19

A    YES.

Q    ARE YOU ALSO ASKING FOR HOLDOVER DAMAGES AS PART OF THE JUDGMENT ALONG WITH THE RENT?

A    YES.

Q    DOES THAT RENT AMOUNT COME OUT AS LISTED UNDER PLAINTIFF'S MARKED EXHIBIT NUMBER 3 -- OR I'M SORRY -- NUMBER 2 AS $11,728.80, PLUS HOLDOVER DAMAGES WITH 80 DAYS AT A RATE OF $97.74, TOTALING $2,932.20 IN HOLDOVER.

A    YES.

MR. LIM:  THANK YOU, YOUR HONOR.  NO FURTHER QUESTIONS FOR THIS WITNESS.

THE COURT:  CROSS?

MR. HERMANSEN:  THANK YOU.


(PAUSE.)


THE COURT:  SIR, WHERE ARE YOU GOING?  YOU'RE STILL BEING EXAMINED.

THE WITNESS:  OKAY.  YES.


CROSS-EXAMINATION

BY MR. HERMANSEN:

Q    MR. LAU, AS THE AUTHORIZED PROPERTY MANAGER, WHAT ARE YOUR JOB DUTIES?

A    COMMUNICATE WITH THE TENANTS AND FIX WHATEVER ISSUES THAT THEY MAY HAVE AND OTHER THINGS.

Q    DO YOU DEAL WITH THE RENT AS WELL?

A    YES.



20

Q    AND HAVE YOU EVER HAD OCCASION TO MAKE REPAIRS AT MS. CARTER'S RESIDENCE?

A    YES.  SEVERAL TIMES.

Q    AND YOU YOURSELF DID IT.

A    IT DEPENDS ON WHAT THE REPAIRS.  LIKE FOR EXAMPLE, A GARAGE STORE, THAT, I HIRE SOMEBODY ELSE. SOMETIMES SOME OF THE IF -- LIKE, THE CHECKING THE SMOKE DETECTORS, I DID THAT MYSELF.

Q    THE DAY THAT YOU FIXED THE SMOKE DETECTORS, YOU SENT A TEXT MESSAGE TO MS. CARTER TO LET HER KNOW THAT YOU WERE COMING?

A    I SENT A 24-HOUR NOTICE.

Q    IN ADDITION TO THAT THOUGH, DID YOU ALSO TEXT MESSAGE WITH MS. CARTER?

A    I DON'T REMEMBER.  I MAY HAVE.  I SHOULD HAVE.

Q    HOW DID YOU GET MS. CARTER'S PHONE NUMBER?

A    THE OWNERS GAVE IT TO ME.

Q    THE OWNERS BEING YOUR FATHER.

A    YES.

Q    DID YOU --

A    I THINK, ACTUALLY, MY MOTHER GAVE IT TO ME.  I DON'T REMEMBER.

Q    ASIDE FROM TESTING ABOUT THE SMOKE DETECTORS, HAVE YOU HAD OTHER TEXT MESSAGES WITH MS. CARTER?

A    YES.

Q    AND IS YOUR PHONE NUMBER (718) 300-6010?

A    YES.

Q    IS THAT YOUR CELL PHONE?



21

A    YES.

(PAUSE.)

BY MR. HERMANSEN:

Q    YOUR PARENTS, THEY LIVE AT 221 SOUTH CURTIS AVENUE IN ALHAMBRA?

MR. LIM:  OBJECTION, YOUR HONOR.  RELEVANCE.

THE COURT:  I DIDN'T HEAR THE QUESTION.

MR. HERMANSEN:  I SAID, "YOUR PARENTS LIVE AT 221 SOUTH CURTIS AVENUE IN ALHAMBRA."

THE COURT:  THAT'S GOING TO BE RELEVANT?

MR. HERMANSEN:  YES, I PROMISE.

THE COURT:  ARE YOU GOING TO EXPLAIN IT, OR DO I HAVE TO WAIT?

MR. HERMANSEN:  WAIT.

THE COURT:  ALL RIGHT.  I'LL GIVE YOU SOME LATITUDE THERE.  GO AHEAD.

MR. LIM:  PLAINTIFF WOULD LIKE AN OFFER OF PROOF AS TO WHY THIS IS RELEVANT.

THE COURT:  OVERRULED.

GO AHEAD.

THE WITNESS:  I DON'T KNOW IF I'M AT LIBERTY TO SAY BECAUSE I DON'T LIVE THERE.  I MEAN, AM I AT LIBERTY TO SAY THAT?

THE COURT:  COULD YOU ANSWER THE QUESTION?  YOU'RE HERE TO ANSWER THE QUESTION.

THE WITNESS:  WELL, I DON'T KNOW IF I HAVE THE RIGHT



22

TO SAY IT, TO ANSWER THE QUESTION.

THE COURT:  I'M INSTRUCTING YOU TO ANSWER THE QUESTION.

THE WITNESS:  BUT I DON'T KNOW IF I HAVE THE RIGHT TO DO THAT.

THE COURT:  I'M TELLING YOU WHAT YOUR RIGHTS ARE RIGHT NOW.  YOU'RE IN MY COURTROOM.  ANSWER THE QUESTION OR REFUSE.  IF YOU WANT TO REFUSE, YOU CAN DO THAT TOO.

MR. LIM:  YOUR HONOR, AGAIN, PLAINTIFF WOULD RENEW THEIR OBJECTION.  I BELIEVE THAT THIS IS GOING TOWARDS SOMETHING THAT THE DEFENSE COUNSEL IS SEEKING OUTSIDE OF THIS CAUSE OF ACTION.  AGAIN, PLAINTIFF IS RENEWING THEIR OBJECTION TO ASK FOR AN OFFER OF PROOF BECAUSE THIS IS CLEARLY SEEKING SOMETHING OUTSIDE OF THE BOUNDS OF AN (INDISCERNIBLE) --

THE WITNESS:  THE DEFENDANTS ARE SQUATTERS WHO HAVE REFUSED TO PAY RENT FOR OVER A YEAR.  MY PARENTS ARE VERY SCARED OF THEM, AND MY PARENTS DO NOT -- WELL, THEY'RE SCARED.  YOU KNOW HOW PEOPLE ARE, YOU KNOW.  TENANTS, THEY MURDER THE LANDLORDS, SET FIRES TO THEIR HOUSES.

THE COURT:  OH, HAVE ANY OF THESE TENANTS DONE THAT?

THE WITNESS:  WELL, THEY ARE VERY -- WHAT'S THE WORD -- "NOT RIGHT IN THE HEAD."

THE COURT:  ALL RIGHT.  I'LL SUSTAIN THE OBJECTION.

GO AHEAD.  WE MAY REVISIT THAT.

THE WITNESS:  (INDISCERNIBLE).

THE COURT:  OKAY.  HANG ON.  YOU GOT ANOTHER QUESTION COMING.



23

BY MR. HERMANSEN:

Q     AND YOU YOURSELF, SIR, YOU LIVE AT 6726 SALTER AVENUE IN ARCADIA?

A     YES.

MR. LIM: OBJECTION, YOUR HONOR.   SAME.

MR. HERMANSEN:   I WILL SHOW THE RELEVANCE IN JUST A MOMENT.

THE COURT:   GO AHEAD.

BY MR. HERMANSEN:

Q     AND YOU LIVE THERE WITH YOUR WIFE AND CHILDREN; CORRECT?

A     YES.

Q     AND IS IT CORRECT THAT YOUR MOTHER HAS A CONFLICT WITH YOUR WIFE AND DOESN'T VISIT YOU MUCH?

MR. LIM: OBJECTION, YOUR HONOR.  RELEVANCE.

MR. HERMANSEN:   I PROMISE IT'S RELEVANT.

THE COURT:   OVERRULED.

THE WITNESS:   YES.   MY WIFE DOES NOT LIKE MY MOTHER. THEY HAVE ISSUES THAT THEY -- THEY JUST DON'T LIKE EACH OTHER.

BY MR. HERMANSEN:

Q     SO AS A RESULT, YOUR PARENTS DON'T OFTEN GO TO YOUR HOUSE?

A     YES, THEY DON'T.   THEY CAN'T EVEN DRIVE.   HOW (INDISCERNIBLE) ME?

Q     WHEN YOU COMMUNICATE WITH YOUR PARENTS, HOW DO YOU USUALLY DO THAT IF THEY'RE NOT THERE?   DO YOU DO IT BY PHONE?



24

A    IF THEY'RE NOT THERE, YES, I USE MY PHONE.

Q    AND YOUR PARENTS HAVE THEIR OWN CELL PHONES?

A    YES.

Q    WITH A SEPARATE NUMBER THAN YOURS?

A    YES.

Q    HAVE YOU EVER SERVED ANY DOCUMENTS TO MS. CARTER?

A    YES.

Q    WHAT DOCUMENTS HAVE YOU SERVED TO HER?

A    I HAVE PERSONALLY SERVED SOME NOTICES, LIKE, THE 24-HOUR NOTICE TO ENTER THE PREMISE FOR INSPECTION AND REPAIRS, AND SOME OTHER NOTICE ABOUT BRINGING POTENTIAL BUYERS INTO THE PROPERTY, AND SOME NOTICES ABOUT -- WELL, THEY NEED TO PAY THE RENT.

Q    ANYTHING ELSE THAT YOU CAN REMEMBER?

A    I THINK THAT'S ABOUT IT.  I MAY HAVE SERVED SOME OTHER NOTICES.  I DON'T REMEMBER, BUT THOSE ARE THE MAIN THINGS.

MR. HERMANSEN:  THANK YOU.  I HAVE NO FURTHER QUESTIONS.

THE COURT:  THANK YOU.

REDIRECT?

MR. LIM:  YES, YOUR HONOR.


REDIRECT EXAMINATION

BY MR. LIM:

Q    MR. LAU, I'M GOING TO DIRECT YOUR ATTENTION TO DEFENDANT'S MARKED EXHIBIT NUMBER 106.  ARE YOU FAMILIAR



25

WITH THIS DOCUMENT?

(MARKED FOR IDENTIFICATION:

EXHIBIT 106, NOTICE.)

THE WITNESS:  YES, I AM FAMILIAR WITH IT.

BY MR. LIM:

Q    EARLIER YOU TESTIFIED THAT YOU HAD SERVED MULTIPLE NOTICES TO THE DEFENDANT; IS THAT CORRECT?

A    YES.

Q    AND ARE THESE ONE OF THOSE NOTICES THAT YOU ALSO SERVED?

A    I DID NOT PERSONALLY SERVE THIS NOTICE, BUT I KNOW THAT THIS NOTICE WAS SERVED.

Q    BUT YOU HAD CAUSE TO BE SERVED --

A    YES, YES.

MR. HERMANSEN:  OBJECTION.  MOTION TO STRIKE.  FOUNDATION.

THE COURT:  WHAT'S WRONG WITH THE FOUNDATION?

MR. HERMANSEN:  HE DIDN'T PERSONALLY SERVE IT OR SEE IT SERVED, BUT HE HAS SOME UNSTATED BELIEF THAT IT WAS SERVED OUTSIDE OF HIS PRESENCE.

THE COURT:  OH, I'M SORRY.  I MISUNDERSTOOD.

MR. LIM:  YOUR HONOR, THE WITNESS HAS TESTIFIED THAT HE'S AWARE OF THIS DOCUMENT, THAT HE KNOWS WHAT THIS DOCUMENT IS.  HE HAD SOMEONE SERVE THE DOCUMENT.  FOUNDATION GOES TOWARDS WHETHER OR NOT THE WITNESS CAN AUTHENTICATE AND VALIDATE THE ACTUAL DOCUMENT ITSELF.  THE



26

WITNESS HAS TESTIFIED TO THAT.

THE WITNESS HAS ALSO TESTIFIED TO A SEPARATE MATTER AS TO WHETHER OR NOT HE PERSONALLY HAS SERVED THE NOTICE OR HE HAD HIRED SOMEONE TO SERVE THE NOTICE.  HE TESTIFIED THAT HE HAD HIRED SOMEONE TO SERVE THE NOTICE.

THE COURT:  SO WHAT'S THE CURRENT QUESTION?

MR. LIM:  DID YOU CAUSE TO BE SERVED THIS NOTICE ON THE DEFENDANTS?

THE WITNESS:  YES.

THE COURT:  OKAY.  FOR WHATEVER THAT'S WORTH, GO AHEAD.

MR. LIM:  THANK YOU, YOUR HONOR.

PLAINTIFF WOULD LIKE TO MOVE INTO EVIDENCE DEFENDANT'S MARKED EXHIBIT 106 INTO EVIDENCE.

MR. HERMANSEN:  NO OBJECTION.

THE COURT:  ALL RIGHT.


(RECEIVED IN EVIDENCE:

EXHIBIT 106, NOTICE.)


MR. LIM:  NO FURTHER QUESTIONS FOR THIS WITNESS, YOUR HONOR.

THE COURT:  RECROSS?

MR. HERMANSEN:  NO.  THANK YOU.

THE COURT:  ALL RIGHT.  NEXT WITNESS?

YOU MAY STEP DOWN, SIR.

THE WITNESS:  OKAY.  YES.  THANK YOU, YOUR HONOR.

THE COURT:  THANK YOU.



27

MR. LIM: YES, YOUR HONOR. PLAINTIFF WOULD LIKE TO CALL TO THE STAND MR. HOI KAN LAU. UNFORTUNATELY, HE CAN'T GO TO THE STAND IF IT'S OKAY FOR HIM TO TESTIFY AT --

THE COURT: FROM COUNSEL TABLE, YES.

MR. HERMANSEN: DEFENSE MAKES A MOTION TO EXCLUDE NON-PARTY WITNESSES.

THE COURT: OH, WE REALLY SHOULD HAVE DONE THAT AT THE BEGINNING, BUT OKAY. LET'S EXCLUDE NON-PARTY WITNESSES.

MR. HERMANSEN: IT'S JUST THE ONE NOW BECAUSE THE MOTHER HAD STEPPED OUTSIDE.

THE COURT: OKAY.

MR. LIM: NO OBJECTION, YOUR HONOR.


(PAUSE.)


HOI KAN LAU,

CALLED AS A WITNESS BY THE PLAINTIFF, WAS SWORN AND TESTIFIED THROUGH THE INTERPRETER AS FOLLOWS:

THE COURT: GO AHEAD.

MR. LIM: THANK YOU, YOUR HONOR.


DIRECT EXAMINATION

BY MR. LIM:

Q    GOOD MORNING, MR. LAU.

WHAT IS YOUR RELATIONSHIP TO THE PROPERTY LOCATED AT 9705 ARDENDALE AVENUE, ARCADIA, CALIFORNIA 91007?



28

A    I AM THE PROPERTY OWNER.

MR. LIM:  NO FURTHER QUESTIONS FOR THIS WITNESS, YOUR HONOR.

THE COURT:  NO FURTHER QUESTIONS?

MR. LIM:  YES, YOUR HONOR.


CROSS-EXAMINATION

BY MR. HERMANSEN:

Q    MR. LAU, DO YOU LIVE --

MR. LIM:  YOUR HONOR, OBJECTION.  THIS HAS BEEN ALREADY ASKED BEFORE.

THE COURT:  WHAT?

MR. LIM:  HE'S BEEN PRYING FOR -- TO TRY TO OBTAIN THE ADDRESS OF MR. LAU.  THE COURT HAS SUSTAINED THE PREVIOUS OBJECTION AS TO RELEVANCE FOR THIS CASE.

THE COURT:  IT EXCEEDS DIRECT ALSO.

MR. HERMANSEN:  IT GOES TO THE PAYMENT ON THE 3-DAY NOTICE.

THE COURT:  IT GOES TO?

MR. HERMANSEN:  THE ADDRESS FOR PAYMENT ON THE 3-DAY NOTICE.

THE COURT:  AH, HANG ON.


(PAUSE.)


MR. HERMANSEN:  I'M SORRY, 5-DAY NOTICE.

MR. LIM:  IT'S EXHIBIT 2, YOUR HONOR.

THE COURT:  I DON'T KNOW YOUR EXHIBIT NUMBERS.



29

BUT ANYWAY, THE 3-DAY NOTICE, MAY 10, 2024; IS THAT WHAT WE'RE TALKING ABOUT?

MR. HERMANSEN: NO, YOUR HONOR. IT'S ACTUALLY THE 5-DAY NOTICE.

THE COURT: FIVE-DAY NOTICE. OKAY. I'M SORRY.

MR. HERMANSEN: APRIL 17TH.

THE COURT: FIVE-DAY NOTICE, WHICH IS HERE SOMEWHERE.

AH, YES. FIVE-DAY NOTICE.

(PAUSE.)

THE COURT: IT STILL EXCEEDS DIRECT, SO I'LL LET YOU ASK THAT IN YOUR CASE BUT NOT NOW.

MR. HERMANSEN: OKAY. THANK YOU.

THE COURT: YOU CAN CALL A WITNESS. I WON'T LET HIM GO.

MR. LIM: PLAINTIFF RESTS, YOUR HONOR.

THE COURT: OKAY.

WE'VE ALREADY ORDERED THE EXHIBITS INTO EVIDENCE.

SO NOW IT IS YOUR CASE?

MR. HERMANSEN: THANK YOU.

DEFENSE WOULD LIKE TO MAKE A MOTION FOR NON-SUIT OR MOTION FOR JUDGMENT IN THIS CASE. THE BASIS FOR THE MOTION IS THAT THE 5-DAY NOTICE TO PAY RENT OR QUIT SAYS "PAYMENT SHALL BE MADE BY MAIL OR DIRECTLY IN THE FOLLOWING MANNER:

PERSON TO PAY, HOI KAN LAU, ADDRESS TO PAY



30

6726 SALTER AVENUE IN ARCADIA, AND PHONE NUMBER (718) 300-6010.

THE TESTIMONY OF MR. LAU'S SON WAS THAT HE ACTUALLY LIVES AT 6726 SALTER AVENUE WITH HIS FAMILY.  HIS PARENTS DO NOT LIVE THERE.  THEY DON'T VISIT HIM BECAUSE OF THE CONFLICT WITH HIS WIFE.  AND THE PHONE NUMBER HERE IS NOT THE PHONE NUMBER OF THE PERSON TO PAY; IT IS THE PHONE NUMBER OF THE SON.

THE CCP 1161.2 SAYS THE NOTICE HAS TO STATE THE NAME, ADDRESS, AND TELEPHONE NUMBER OF THE PERSON TO PAY, AND THIS IS NOT THE ADDRESS AND PHONE NUMBER OF THE PERSON TO PAY.

IF THEY WANTED TO MAKE THE PERSON TO PAY SHING LAU, THEY COULD HAVE DONE THAT, BUT HERE, THE NOTICE SAYS TO PAY -- THE PERSON TO GIVE IT TO IS HOI KAN LAU, AND THAT IS NOT HIS PHONE NUMBER OR HIS ADDRESS, AND HE WASN'T THERE.

MR. LIM:  YOUR HONOR, THE STATUTE IS VERY CLEAR THAT YOU HAVE TO LIST OUT WHO IS THE PAYMENT TO BE MADE OUT TO, THE PHONE NUMBER, THE ADDRESS.  THAT'S EXACTLY WHAT THE NOTICE DOES.  THERE'S BEEN NO TESTIMONY AS FAR AS ANY KIND OF REBUTTAL EVIDENCE OR ANYTHING INDICATING THAT MR. HOI KAN LAU WASN'T PRESENT AT THE PROPERTY.

THE ISSUE IN QUESTION REALLY IS, DID WE, AS THE PLAINTIFF, SATISFY 1161.2?  DOES THE NOTICE, ON ITS FACE, FAIL TO STATE AN ADDRESS THAT MR. HOI KAN LAU CAN BE FOUND AT, AND CAN THAT NUMBER REACH MR. HOI KAN LAU?  THERE'S BEEN TESTIMONY THAT THEY ARE FAMILY, THERE'S BEEN TESTIMONY



31

THAT HE IS THE AUTHORIZED PROPERTY MANAGER -- MR. SHING LUNG LAU IS THE PROPERTY MANAGER.

ESSENTIALLY, IF THE PHONE CALL WAS TO BE MADE TO THAT INDIVIDUAL, MR. HOI KAN LAU COULD HAVE BEEN REACHED.  THERE'S BEEN NO INDICATION THAT PHONE CALLS HAVE BEEN MADE TO THAT NUMBER, AND THAT MR. HOI KAN LAU WAS UNABLE TO BE REACHED, OR THAT SOMEBODY WENT TO THE PROPERTY AND MR. HOI KAN LAU WASN'T PRESENT AT THE PROPERTY.

ESSENTIALLY, YOUR HONOR, IF WE TAKE THE 5-DAY NOTICE ON ITS FACE, WE ASK THE QUESTION OF DOES IT SATISFY 1161.2?  AND ON ITS FACE, IT CLEARLY DOES.

AND, AGAIN, THERE'S BEEN EVIDENCE GIVEN BY A PERCIPIENT WITNESS WHO HAD TESTIFIED THAT THEY ARE THE AUTHORIZED PROPERTY MANAGER OF THE UNIT ITSELF, AND THAT IS THE NUMBER TO REACH THAT INDIVIDUAL, AND IF THERE HAVE BEEN PHONE CALLS MADE TO THAT NUMBER, MR. HOI KAN LAU COULD HAVE BEEN REACHED.  THE PROPERTY ADDRESS AS WELL, IF THE DEFENDANT WANTED TO PROCEED TO THAT ADDRESS, MR. HOI KAN LAU COULD HAVE BEEN FOUND AT THAT ADDRESS AS WELL.

SO THE NOTICE ITSELF, ON ITS FACE, ABSOLUTELY SATISFIES 1161.2.  ALSO, IF YOU TAKE INTO CONSIDERATION AGAIN, THE WITNESS'S -- MR. LAU'S TESTIMONY, THAT ALSO SUPPLEMENTS THE VALIDITY OF THIS NOTICE.

THE COURT:  YOU KEEP SAYING "ON ITS FACE," WE'RE NOT TAKING IT ON ITS FACE, WE'RE TAKING IT WITH EVIDENCE.  AND THE WITNESS SAYS THAT THIS GENTLEMAN NEVER EVER GOES THERE BECAUSE HE CAN'T DRIVE.  THAT'S THE EVIDENCE.

MR. LIM:  YOUR HONOR, THE EVIDENCE DOES SHOW THAT



32

THERE MAY HAVE BEEN A STRAINED RELATIONSHIP BETWEEN MR. SHING LUNG LAU AND HOI KAN LAU, BUT THERE'S BEEN -- THAT DOESN'T -- ISN'T REQUIRED TO BE SHOWN.  WHAT'S REQUIRED TO BE SHOWN UNDER THE STATUE IS WHETHER OR NOT, ON THE NOTICE ITSELF, THERE IS A PERSON TO PAY THAT CAN BE FOUND AT THE ADDRESS LISTED.  AND THERE'S BEEN NO EVIDENCE THAT MR. HOI KAN LAU COULDN'T BE FOUND AT THE ADDRESS.  IF THE DEFENDANT HAD WENT TO THE PROPERTY ADDRESS, MR. HOI KAN LAU COULD HAVE BEEN FOUND, AS WELL AS CALLING THAT NUMBER, MR. HOI KAN LAU COULD HAVE BEEN REACHED.  THE NUMBER ITSELF DICTATES WHETHER OR NOT SOMEBODY CAN REACH THE PERSON TO BE PAID.

YOU CAN KIND OF EQUIVALENT TO PROPERTY MANAGEMENT COMPANIES.  IF THERE WAS A PERSON TO BE PAID LISTED ON A NOTICE, AND THE NUMBER WAS DIRECTED TOWARDS THE PROPERTY MANAGEMENT COMPANY'S MAIN PHONE LINE NUMBER, DOES THAT INVALIDATE THE NOTICE?  OF COURSE NOT, BECAUSE THE RECEPTIONIST OR SOMEONE ELSE WOULD PICK UP THE PHONE AND THEN SAY, "WHO ARE YOU LOOKING TO SPEAK TO?"

OH, MR. SHIN? MR. LIM? MR. LEE?  PERFECT.  I'LL GO TO DIRECT YOU TO THAT PERSON."

THAT COULD HAVE OCCURRED HERE, AND THAT'S WHAT WOULD HAVE OCCURRED HERE IF THE DEFENDANT CALLED THAT NUMBER.  THERE'S BEEN TESTIMONY THAT MR. LAU'S NUMBER IS THAT NUMBER, THERE'S TESTIMONY THAT HE'S THE AUTHORIZED PROPERTY MANAGEMENT AGENT OF THE UNIT ITSELF.  THAT NUMBER WOULD HAVE GOTTEN THE DEFENDANT TO CONNECT TO MR. LAU IF THE DEFENDANT WANTED TO.

HUNTINGTON COURT REPORTERS AND TRANSCRIPTION, INC.
PASADENA, CA AND NATCHITOCHES, LA
HCR

33

AND, AGAIN, ALSO, IF THE DEFENDANT WENT TO THE PROPERTY ADDRESS LISTED HERE, WHO WOULD THEY HAVE FOUND? THEY WOULD HAVE FOUND MR. HOI KAN LAU (SIC), AND WHO ELSE COULD THEY HAVE FOUND THERE AS WELL IF THEY HAD ASKED, THEY WOULD HAVE FOUND MR. HOI KAN LAU AS WELL.

SO, YOUR HONOR, AGAIN, THERE'S BEEN NO SHOWING THAT THIS FAILS ON ITS FACE, AS WELL AS WITH THE SUPPLEMENTAL TESTIMONY OF MR. SHING LUNG LAU.

MR. HERMANSEN: THE STATUTE SAYS "STATING THE AMOUNT THAT IS DUE, THE NAME, TELEPHONE NUMBER, AND ADDRESS OF THE PERSON TO WHOM THE RENT PAYMENT SHALL BE MADE."

THE FOSTER VERSUS WILLIAMS CASE SAYS YOU REALLY HAVE TO INTERPRET THAT EXACTLY AS IT'S SAID. IT'S NOT AMBIGUOUS. THESE THINGS HAVE TO MATCH THAT PERSON, AND THEY DON'T MATCH THAT PERSON. THE PHONE NUMBER BELONGS TO SHING LAU. HIS PARENTS HAVE A SEPARATE PHONE NUMBER. THEY DON'T SHARE THE SAME PHONE NUMBER, AND HE LIVES THERE WITH HIS OWN FAMILY. AND MR. HOI KAN LAU DOESN'T GO THERE, HE WASN'T THERE TO ACCEPT THE PAYMENT.

THE COURT: THE DEFENSE IS CORRECT. JUDGMENT FOR DEFENDANT.

WE'LL SEND YOU THAT IN THE MAIL. THANK YOU.

(PROCEEDINGS CONCLUDED AT 10:01 A.M.)



34

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT R                HON. WILLIAM D. DODSON, COMMISSIONER

HOI KAN LAU,                          )
                                      )
            PLAINTIFF,                )
     VS.                              )
                                      )  CASE NO.:
                                      )
CYNTHIA CARTER, ET AL.,               )  24PDUD01782
                                      )
            DEFENDANT.                )
                                      )
_____ )

          I, LAURA GRIFFIN, TRANSCRIPTIONIST, DO HEREBY

CERTIFY THAT THE FOREGOING PAGES, 1 - 34, INCLUSIVE,

CONSTITUTE A FULL, TRUE, AND ACCURATE TRANSCRIPT, FROM

ELECTRONIC RECORDING, TRANSCRIBED BY ME, OF THE PROCEEDINGS

HELD IN THE FOREGOING MATTER, HOI KAN LAU V. CYNTHIA

CARTER, ET AL., CASE NO. 24PDUD01782, ON THE DOCKET OF THE

SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE COUNTY

OF LOS ANGELES, A COURT OF RECORD, HELD ON AUGUST 1, 2024,

AND ALL PREPARED TO THE BEST OF MY SKILL AND ABILITY.



LAURA GRIFFIN, CET-1709
ELECTRONIC COURT TRANSCRIBER

DATED AND SIGNED THIS 17TH DAY OF MARCH, 2025.


HUNTINGTON COURT REPORTERS AND TRANSCRIPTION, INC.
PASADENA AND NATCHITOCHES, LA
HCR

# EXHIBIT #4

L726 shtg → sin/lw joint          1/18/24



**This page is part of your document - DO NOT DISCARD**



# 20240040631



**Pages: 0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/18/24 AT 02:17PM**

| | | |
|---|---|---|
| FEES: | | 22.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 22.00 |



**L E A D S H E E T**



202401183260025

00024149854



014494800

**SEQ:
01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E648114

71

RECORDING REQUESTED BY
CHARLES ZHANG/ CVS & ASSOCIATES/ SF COUNTY LDA #057
157 WAVERLY PLACE 3F, SAN FRANCISCO, CA 94108
AND WHEN RECORDED MAIL TO:

Name: HOI KAN LAU
Address: 6726 SALTER AVE
City & State: ARCADIA, CA
Zip: 91007
PROPERTY ADDRESS:
6726 SALTER AVE
ARCADIA, CA 91007

01/18/2024

*20240040631*

ASSESSORS PARCEL NO. 5383-033-022

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

The undersigned Grantor(s) declare(s) under penalty of perjury that the following is true and correct:
Documentary transfer tax is $   0.00        .*   Gift. R&T Code Sec. 11930.
☐ Computed on full value of property conveyed, or    ** Exempt from SB2 Fee. Owner Occupied Residential
☐ Computed on full value less value of liens and encumbrances remaining at time of sale.   Dwelling. Per Government Code 27388.1 (a)(2)
☒ Unincorporated area: ☐ City of                                        , and
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
SHING LUNG LAU, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

hereby GRANT(S) to
HOI KAN LAU AND SIU FANG TSANG, HUSBAND AND WIFE, AS JOINT TENANTS

the following described real property in the City of                        , County of **LOS ANGELES**   , State of California:
LOT 7 OF TRACT NO 26911, IN THE COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDER IN BOOK 689 PAGES 51 AND 52 OF MAPS,
IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Dated     1/18/24
          _Shing Lung Lau_
          SHING LUNG LAU

### ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of LoS Angeles                         )
                                              )
On    1/18/24           before me,  mimi Shin notary Public
                                    (HERE INSERT NAME AND TITLE OF THE OFFICER)
personally appeared  SHING LUNG LAU

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.
Signature _____

MIMI SHIN
Notary Public - California
Los Angeles County
Commission # 2331673
My Comm. Expires Aug 15, 2024

(SEAL)

Title Order No.                          Escrow, Loan, or Attorney File No.
MAIL TAX STATEMENTS TO:
HOI KAN LAU, 6726 SALTER AVE, ARCADIA, CA 91007
           NAME          ADDRESS                    CITY, STATE, ZIP

NONJC-010 Rev. 07/01/2015   CEB Essential Forms   ceb.com    GRANT DEED

72

# EXHIBIT #5



**This page is part of your document - DO NOT DISCARD**



# 20250700433



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**10/09/25 AT 01:27PM**

Pages:
0002

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 99.00 |



**L E A D S H E E T**



202510093310015

00025897820



015570624

**SEQ:
01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E002320

RECORDING REQUESTED BY

NG/ CVS & ASSOCIATES/ SF COUNTY LDA #057
Y PLACE 3F, SAN FRANCISCO, CA 94108
AND WHEN RECORDED MAIL TO:

```
Name: HOI KAN LAU
Address: 6726 SALTER AVENUE
City & State: ARCADIA, CA
        Zip: 91007
```

PROPERTY ADDRESS:
9705 ARDENDALE AVE
ARCADIA, CA 91007



10/09/2025

'20250700433'

ASSESSORS PARCEL NO. 5383-003-018                    *SPACE ABOVE THIS LINE FOR RECORDER'S USE*

# GRANT DEED

The undersigned Grantor(s) declare(s) under penalty of perjury that the following is true and correct:
Documentary transfer tax is $  0.00        . *  **Gift. R&T Code Sec. 11930.**
- [ ] Computed on full value of property conveyed, or
- [ ] Computed on full value less value of liens and encumbrances remaining at time of sale.
- [X] Unincorporated area: [ ] City of                                              , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
HOI KAN LAU AND SIU FAN TSANG, HUSBAND AND WIFE AS JOINT TENANTS

hereby GRANT(S) to      HOI KAN LAU, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, AS TO AN UNDIVIDED 25%
INTEREST, AND SIU FAN TSANG, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, AS TO AN UNDIVIDED 25%
INTEREST, AND SHING LUNG LAU, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY AS TO AN UNDIVIDED 50% INTEREST

the following described real property in the City of                              , County of **LOS ANGELES**   , State of California:
LOT 17 OF TRACT NO. 16897, IN THE COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 456, PAGES 3 AND 4 OF MAPS,
IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Dated 10/8/25          )Hoi Kan Lau                         Siu Fan Tsang
                       HOI KAN LAU                          SIU FAN TSANG

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
County of  Los Angeles                          )
On October 8, 2025      before me,  Henry Tang, Notary Public
                                             (HERE INSERT NAME AND TITLE OF THE OFFICER)
personally appeared  HOI KAN LAU AND SIU FAN TSANG

who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.
Signature _____                           (SEAL)

HENRY TANG
COMM. # 2418219
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Commission Expires
September 24, 2026

Title Order No.                          Escrow, Loan, or Attorney File No.

MAIL TAX STATEMENTS TO:
HOI KAN LAU, 6726 SALTER AVENUE, ARCADIA, CA 91007
NAME                              ADDRESS                    CITY, STATE, ZIP

NONJC-010 Rev. 07/01/2015            GRANT DEED

75

# EXHIBIT #6

Kevin Hermansen, State Bar No. 266254
*Law Office of Kevin P. Hermansen, P.C.*
13654 Victory Boulevard, Suite 111
Van Nuys, California 91401
Telephone: (818) 971-9992
Email: kevin@kphlegal.com

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/27/2026 7:14 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Jo-Fung, Deputy Clerk

Attorneys for Defendants CYNTHIA CARTER and CHRISTOPHER LOPEZ

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| SHING LUNG LAU, | Case No. 26PDUD00798 |
| Plaintiff, | **NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| CYNTHIA CARTER; CHRISTOPHER LOPEZ; ALL OTHERS IN POSSESSION, | |
| Defendants. | Hearing Date: April _8_, 2026<br>Hearing Time: 1:30 p.m.<br>Dept.: R |
| Defendants | 300 E. Walnut Street<br>Pasadena, CA 91101 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April _8_, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Department R of the above-entitled Court, located at 300 E. Walnut Street, Pasadena, CA 91101, Defendants Cynthia Carter and Christopher Lopez ('Defendants') will, and hereby do, demur to Plaintiff Shing Lung Lau's Complaint for Unlawful Detainer on the following grounds:

1. The Complaint fails to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).)

-1-

DEMURRER TO PLAINTIFF'S COMPLAINT

2. The Complaint is uncertain, ambiguous, and unintelligible. (Code Civ. Proc., § 430.10, subd. (f).)

3. There is a defect or misjoinder of parties. (Code Civ. Proc., § 430.10, subd. (d).)

This demurrer is made on the basis that Plaintiff Shing Lung Lau is not the record owner of the subject property and is the son and "property manager" of the actual title holders — Hoi Kan Lau and Siu Fan Tsang — who have already filed and lost three prior unlawful detainer actions against the same defendants at the same property. The recorded grant deed vests title in Hoi Kan Lau and Siu Fan Tsang as joint tenants. No recorded instrument transfers title to Plaintiff. Plaintiff's sudden appearance as the named plaintiff, just months after the most recent adverse judgment against his parents, is a transparent attempt to circumvent the prior adverse results by substituting a new family member as plaintiff.

The demurrer will be based upon this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the pleadings and records on file in this action, and on such oral argument as may be presented at the hearing.

DATED: March 27, 2026                    Law Office of Kevin P. Hermansen, P.C.

By:_____
Kevin Hermansen
Attorney for CYNTHIA CARTER and
CHRISTOPHER LOPEZ

-2-

DEMURRER TO PLAINTIFF'S COMPLAINT

78

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is the fourth unlawful detainer action targeting the same tenants at the same property: 9705 Ardendale Avenue, Arcadia, California 91007 ('the Property'). The first three were filed by Plaintiff's parents — Hoi Kan Lau and Siu Fan Tsang — who are the recorded title holders. All three failed. The first, Case No. 23PDUD01863 (filed June 2, 2023), was voluntarily dismissed. The second, Case No. 24PDUD01782 (filed May 17, 2024), was prosecuted by Hoi Kan Lau alone. The third, Case No. 24PDUD04392, was prosecuted by Siu Fan Tsang and resulted in a defense verdict after the court granted Defendants' motion for judgment, finding the notice defective and the lease never terminated. (RJN, Exs. D, E.) Defendants Cynthia Carter and Christopher Lopez were adjudged the prevailing parties.

Now, after judgment in the third action, a new plaintiff appears: Shing Lung Lau, the son and "property manager" of Hoi Kan Lau and Siu Fan Tsang. He claims to be 'the owner' of the Property. But the only recorded grant deed shows title vested in Hoi Kan Lau and Siu Fan Tsang as joint tenants. (RJN, Ex. F.) No deed, no recorded transfer, and no court order transferring title to Shing Lung Lau exists.

The Complaint relies on the same lease, targets the same tenants, and concerns the same property that has been the subject of three failed eviction attempts. The substitution of Shing Lung Lau as plaintiff is the latest maneuver in the Lau family's serial litigation campaign against these tenants. Having failed three times under their own names, the parents have installed their son and "property manager" as a stand-in plaintiff. The sham pleading doctrine, the requirement of standing, and basic principles of pleading sufficiency all bar this action.

### II.    FACTUAL SUMMARY

The following facts are drawn from the judicially noticeable court records in the prior actions, which are submitted concurrently with the Request for Judicial Notice filed herewith.

#### A. The Property and Its Ownership

-3-

The Property is located at 9705 Ardendale Avenue, Arcadia, California 91007. On February 28, 2023, A grant deed was recorded transferring title to 'Hoi Kan Lau and Siu Fan Tsang, Husband and Wife as Joint Tenants.' (RJN, Ex. F.) The deed was recorded on March 8, 2023, as Instrument No. 20230146883 in the Official Records of the Los Angeles County Recorder's Office. No subsequent deed transferring title to Shing Lung Lau has been recorded.

## B. The First Unlawful Detainer: Case No. 23PDUD01863

On June 2, 2023, Hoi Kan Lau and Siu Fan Tsang filed a verified unlawful detainer complaint against Christopher Lopez and Cynthia Carter at the Property. (RJN, Ex. A.) The complaint alleged that plaintiffs' interest was 'as owner' and that the written lease was made with 'plaintiff's predecessor in interest.' A request for dismissal was later filed, and the action was dismissed.

## C. The Second Unlawful Detainer: Case No. 24PDUD01782

On May 17, 2024, Hoi Kan Lau filed a verified unlawful detainer complaint against Cynthia Carter and Christopher Lopez at the same Property. (RJN, Ex. B.) The complaint alleged that Hoi Kan Lau's interest was 'as owner' and that the written lease agreement was made with 'plaintiff's agent.' The complaint was verified under penalty of perjury by Hoi Kan Lau on May 16, 2024.

## D. The Third Unlawful Detainer: Case No. 24PDUD04392

Siu Fan Tsang filed an unlawful detainer complaint against Cynthia Carter, Christopher Lopez, , and all unknown occupants at the same Property. The Complaint was filed on December, 2024. (RJN, Ex. C.) Siu Fan Tsang alleged her interest was 'as owner' and identified the lease as having been made with 'plaintiff's predecessor in interest.' The complaint was verified under penalty of perjury. A "5 Day Notice" exhibit attached to the Complaint at the bottom states "Written repair requests may be send to the property manager at: Shing Lau., 6726 Salter Ave, Arcadia, CA 91007". Mr. Lau's name also appears as the person who served the notices on the very next page, the proof of service.

-4-

DEMURRER TO PLAINTIFF'S COMPLAINT

On July 9, 2025, after a non-jury trial, Defendants prevailed. (RJN, Ex. D.) On July 31, 2025, the court entered judgment in favor of Defendants.. (RJN, Ex. E.)

### E. The Current Action: Case No. 26PDUD00798

On March 11, 2026, Shing Lung Lau — the son and "property manager" of Hoi Kan Lau and Siu Fan Tsang — filed the current action in pro per, alleging that he is the 'owner' of the Property. The Complaint relies on the same written lease and targets the same tenants. Plaintiff identifies his interest as 'owner' at Item 4, and at Item 6(b)(3) identifies the lease as having been made with 'plaintiff's predecessor in interest.' No facts are alleged explaining how or when Shing Lung Lau acquired an ownership interest in the Property.

### III.    ARGUMENT

#### A. Standard for a Demurrer

A demurrer tests the legal sufficiency of the factual allegations in a complaint. (Code Civ. Proc., § 430.10, subd. (e).) A demurrer may also be sustained where the pleading is uncertain (id., subd. (f)) or where there is a defect or misjoinder of parties (id., subd. (d)). While a court must ordinarily accept factual allegations as true on demurrer, that rule has important limitations. The court need not accept as true allegations that are contradicted by judicially noticeable facts. *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1474; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [same].

The plaintiff bears the burden of proving that an amendment can cure the defect. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

'However, an exception exists where a party files an amended complaint and seeks to avoid the defects of a prior complaint either by omitting the facts that rendered the complaint defective or by pleading facts inconsistent with the allegations of prior pleadings. In these circumstances, the policy against sham pleading permits the court to take judicial notice of the prior pleadings and requires that the pleader explain the inconsistency. If he fails to do so the court may disregard the inconsistent allegations and read into the amended complaint the

-5-

DEMURRER TO PLAINTIFF'S COMPLAINT

81

allegations of the superseded complaint.' *Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 383–384 [internal citations omitted].

This exception applies not only to an amended pleading filed in the same action, but also to the first pleading filed in a separate action: 'Both trial and appellate courts may properly take judicial notice of a party's earlier pleadings and positions as well as established facts from both the same case and other cases. [Citations.] The complaint should be read as containing the judicially noticeable facts, 'even when the pleading contains an express allegation to the contrary.' [Citation.]' *Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 344.

## B. The Complaint Is a Sham Pleading Because the Substitution of Shing Lung Lau as Plaintiff Is Designed to Circumvent the Adverse Results of Three Prior Actions

The sham pleading doctrine provides that a plaintiff may not avoid the effect of a prior pleading by simply omitting or contradicting its allegations in a subsequent complaint without explanation. *Hendy v. Losse* (1991) 54 Cal.3d 723, 742; *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425–426. The doctrine is designed to enable courts to prevent an abuse of process" and to prevent a plaintiff from "pleading around" established facts.

The doctrine applies with equal force to allegations made in prior, separate actions. Where a party has taken a verified position in one case, that position constitutes a judicial admission that may be used against the party in subsequent litigation. *Morton v. Loveman,* (1968) 267 Cal.App.2d 712, 717; *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877–878; *Avalon Painting Co. v. Alert Lumber Co.,* (1965) 234 Cal.App.2d 178, 184 ["the omission, substitution, or contradiction of an original allegation carries with it the onus of untruthfulness"]

Here, the Lau family's verified positions in three successive actions establish that Hoi Kan Lau and Siu Fan Tsang — not Shing Lung Lau — are the owners of the Property:

**Prior Position (23PDUD01863, filed 6/2/2023):** Hoi Kan Lau and Siu Fan Tsang filed as co-plaintiffs, claiming ownership 'as owner.' (RJN, Ex. A.)

-6-

DEMURRER TO PLAINTIFF'S COMPLAINT

**Prior Position (24PDUD01782, filed 5/17/2024):** Hoi Kan Lau filed as sole plaintiff, again claiming ownership 'as owner.' Verified under penalty of perjury. (RJN, Ex. B.)

**Prior Position (24PDUD04392, filed 12/20/2024):** Siu Fan Tsang filed as sole plaintiff, claiming ownership 'as owner.' Verified under penalty of perjury. (RJN, Ex. C.)

**Current Position (26PDUD00798, filed 3/11/2026):** Shing Lung Lau — the son of Hoi Kan Lau and Siu Fan Tsang — now claims he is the owner. In pro per. Same property, same lease, same tenants.

The transparent purpose of this maneuver is to circumvent the prior adverse results. After losing three unlawful detainer actions, the Lau family has simply swapped in a different family member as plaintiff. Rather than correcting the deficiencies that defeated the prior complaints, they have attempted to start fresh by changing the name on the caption. This is precisely the abuse the sham pleading doctrine is designed to prevent. (*Hendy, supra,* 54 Cal.3d at pp. 742–743; *Owens, supra,* 198 Cal.App.3d at pp. 383–384.)

Further, the doctrine of judicial estoppel prevents a party from taking inconsistent positions in litigation. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.) The Lau family's prior verified positions that Hoi Kan Lau and Siu Fan Tsang are the owners constitute judicial admissions that bind not only the parents but their privies — including their son, Shing Lung Lau.

## C. The Complaint Fails to State Facts Sufficient to Constitute a Cause of Action Because Plaintiff Lacks Standing

An unlawful detainer action may be maintained only by the landlord or the landlord's successor in interest. (Code Civ. Proc., § 1161.) Standing requires a plaintiff to demonstrate a beneficial interest in the controversy — here, a legal right to possession based on a landlord-tenant relationship. *Income Estate LLC v. Perez* (2025) 117 Cal.App.5th Supp. 1.

Plaintiff's standing fails because he is not the record owner of the Property. The only recorded grant deed shows title vested in Hoi Kan Lau and Siu Fan Tsang as joint tenants. (RJN, Ex. F.) No subsequent deed transferring title to Shing Lung Lau has been recorded. Under

-7-

DEMURRER TO PLAINTIFF'S COMPLAINT

California law, real property may be transferred only by operation of law or by a written instrument. (Civ. Code, § 1091.) The Complaint does not allege any deed, assignment, court order, or other instrument transferring title or any interest in the Property to Plaintiff.

A plaintiff who is not the record owner of the property and has pled no facts establishing any chain of title or succession of interest lacks standing to maintain an unlawful detainer action. The Complaint fails to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).)

### D. The Complaint Is Uncertain Because It Creates Irreconcilable Ambiguities About Ownership and Standing

A pleading is uncertain when it is 'ambiguous and unintelligible.' (Code Civ. Proc., § 430.10, subd. (f).) The standard is particularly strict in unlawful detainer, where the defendant faces expedited proceedings and severe consequences. (*Liebovich v. Shahrokhkhany* (1997) 56 Cal.App.4th 511, 513.) A complaint must state the essential facts with reasonable precision. (*Agustin v. Golden Empire Transit Dist.* (2025) 116 Cal.App.5th 426, 440.)

The Complaint creates irreconcilable ambiguities. Who is the owner? The Complaint says Shing Lung Lau. The recorded deed says Hoi Kan Lau and Siu Fan Tsang. Three prior verified complaints also identify Hoi Kan Lau and/or Siu Fan Tsang as the owners. How did Shing Lung Lau acquire an ownership interest? The Complaint is silent. What is the relationship between Shing Lung Lau and the prior plaintiffs? The Complaint does not say. These contradictions, visible on the face of the Complaint when read together with the judicially noticeable prior pleadings and public records, make it impossible for Defendants to determine the nature and extent of the claim against them.

### IV. CONCLUSION

The Complaint is the Lau family's fourth attempt to evict Defendants Cynthia Carter and Christopher Lopez from their home. Having failed three times under their own names, the parents have installed their son as a stand-in plaintiff. Shing Lung Lau is not the record owner of the Property and has pled no facts establishing standing.

-8-

DEMURRER TO PLAINTIFF'S COMPLAINT

Defendants respectfully request that the Court sustain the demurrer with leave to amend if Plaintiff makes an offer of proof as to how it can be amended.

DATED: March 27, 2026                Law Office of Kevin P. Hermansen, P.C.


By:_____
                Kevin Hermansen
                Attorney for Defendants CYNTHIA CARTER and
                CHRISTOPHER LOPEZ

-9-

DEMURRER TO PLAINTIFF'S COMPLAINT

## PROOF OF SERVICE
LASC Case # 26PDUD00798

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 13654 Victory Boulevard, Suite 111, Van Nuys, CA 91401.

On March 27, 2026, I served the foregoing document(s) described as:

**NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties to this action as follows:

Shing Lung Lau

☒      (BY ELECTRONIC MAIL): I caused such document to be transmitted electronically as follows: shing9@gmail.com

Executed on March 27, 2026.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Kevin Hermansen

-10-

DEMURRER TO PLAINTIFF'S COMPLAINT

# EXHIBIT #7

Authentisign ID: 403FB886-5F68-F111-8FCA-002248359474

## REAL ESTATE PURCHASE AND SALES AGREEMENT

_Siu Fan Tsang & Hoi K Lau & Shing Lung Lau__ (hereinafter **"Seller"**) agrees to sell to _Property Wise Solutions LLC___and or it's Assignee_(hereinafter **"Buyer"**), agrees to buy all that tract or parcel of land, with such improvements as are located thereon, described and known as: __9705 Ardendale Ave___ , situated in_Arcadia_(City), _Los Angeles _ (County), State of __CALIFORNIA___, __91007_ (Zip Code), with parcel APN: 5383003018, together with all fixtures, landscaping, improvements and appurtenances, all being hereinafter collectively by referred to as the **"Property"**. The full legal description of the Property is the same as is recorded with the recorder's office or clerk of the county in which the Property is located and is made a part of this Agreement by reference dated on _6/14/2026___.

**PURCHASE PRICE:** __$850,000.00__ U.S. Dollars (the **"Purchase Price"**).

1. **ERNEST MONEY DEPOSIT**: Buyer to wire __$25,000.00__(Earnest Money Deposit) to_Culture Escrow_ within 3 business days upon signing the purchase agreement. All deposits shall be made by wire transfer or check, payable to the escrow company conducting the closing.

2. **CLOSING COSTS AND EXPENSES:** Buyer will pay both sides customary closing costs and escrow fees, and title policy to ensure clearance of the title of the property.

3. **CLOSING DATE:** This transaction shall be closed on or before _June 30th, 2026_ or sooner after acceptance of offer at the closing agent selected by the Seller. If the contractual term expires before the fulfillment of obligations, both parties agree that the contract terms persist. An extension requires written consent from both parties, and the absence of a written extension by the expiration date does not release either party from their obligations. Seller reserves the right to extend the close of escrow without penalty and charge the buyer per diem penalty if buyer does not close the transaction on time.

4. **POSSESSION / PERSONAL PROPERTY:** Home will be delivered with current non-paying tenants residing in the house at the close of escrow; Buyer will be buying the house in it's sole as-is condition, and will take over the non-paying tenants. All personal properties in the house will be buyer's responsibility to dispose after close of escrow.

Seller Initial(s) _____ _____ Buyer Initial(s) _____ _____

Authentisign ID: 403FB886-5F68-F111-8FCA-002248359474

Page 2 of 5

5. **PROPERTY CONDITION, LOSS OR DAMAGE:** The Property is sold in AS-IS condition. Seller has no obligation to make any repairs to the Property. However, Seller shall deliver the Property in substantially the same condition as of the date of this agreement.

6. **GRANT DEED:** At closing Seller shall convey marketable, insurable, fee simple, clear title by GRANT DEED to the Buyer. Seller shall also execute and deliver any and all certifications, affidavits and statements necessary or desirable to complete the closing as may be reasonably required by the Buyer and the Buyer's closing agent and title insurer.

7. **PRORATIONS:** All property taxes shall be prorated as of the day of closing.

8. **ENTIRE AGREEMENT:** This agreement is the sole and entire agreement between the parties, and other agreements, oral or otherwise, are hereby merged and terminated into this agreement. This agreement may only be waived or modified in writing and signed by all parties hereto. This agreement shall be binding on all of the parties' heirs, successors and assigns.

9. **ASSIGNMENT FEE DISCLOSURE:** Buyer reserves every and all possible rights to market and assign the contract before the date of close. In the possible case of assignment, the assignment fee (if applicable) will be disclosed to seller at or before close of escrow. In the event of the assignment contract, seller shall fully cooperate with the buyer on executing the assignment.

10. **DISCLOSURE:** Buyer is a professional investor/homebuyer and buys property at or below market prices for profit. Neither the Buyer nor anyone associated with the Buyer is representing Buyer or Seller as an agent in this transaction (Unless otherwise specified in separate agency forms).

Seller Initial(s) _____ _____ Buyer Initial(s) _____ _____

Authentisign ID: 403FB886-5F68-F111-8FCA-002248359474

Page 3 of 5

11. **ACCESS:** Seller to provide the buyer with any existing keys after close of escrow (If applicable).

12. **INSPECTIONS:** Buyer shall have ____0__ days after acceptance to: complete all Buyer investigations and inspections which it may elect to conduct; approve all disclosures, reports and other applicable information which Buyer receives from Seller; and approve all other matters affecting the Property. Upon the expiration of the inspection period and mutual written confirmation of inspection contingency removal, the buyer shall be deemed to have removed all contingencies and Seller shall be entitled to retain the deposit.

13. **DISPUTES:** We do not expect any disputes between Buyer and Seller to arise but in the event of legal, arbitral or regulatory proceedings to resolve any such dispute the substantially prevailing party shall be reimbursed by the other party for its reasonable legal fees, costs and expenses.

14. **TITLE:** Once entered into contract the buyer has sole obligation to do his/her own due diligence on the title of the property upon providing the prelim report by the escrow company. Seller will disclose any and all info they are aware of the property to the buyer.

15. **ADDITIONAL TERMS:** __Buyer is purchasing the house in its as-is condition, no repair will be requested from seller; title of the home will be delivered as clear title; Buyer understands the property will be delivered with the current non-paying tenants residing in the property, buyer to take full responsibility after close of escrow. Seller has obligation to provide buyer a seller's disclosure based on their best knowledge of the property. Buyer to choose escrow and title company.

Authentisign ID: 403FB886-5F68-F111-8FCA-002248359474

Seller Initial(s) \_\_\_\_\_ \_\_\_\_\_ Buyer Initial(s) \_\_\_\_\_ \_\_\_\_\_

Page 4 of 5

16. **CANCELLATION CLAUSE:** The Buyer and Seller may terminate and cancel this Agreement at any time by mutual written consent. Upon such mutual written agreement to cancel (which may be documented via a separate cancellation addendum or mutual release form signed by both parties), this Agreement shall be null and void, and neither party shall have any further rights, obligations, or liabilities under this Agreement except as expressly provided herein. In the event of such mutual cancellation, the full amount of any Earnest Money Deposit ("EMD") or other good faith deposit paid by Buyer into escrow (or held by any third party) shall be promptly refunded to Buyer, without deduction, offset, or condition, and any interest accrued thereon (if applicable) shall follow the deposit.

This is a binding legal document. Each party should seek their own independent legal advice before signing. All parties acknowledge that by signing they have read, understood and agreed to this contract.

This is a binding legal document. Each party should seek their own independent legal advice before signing. All parties acknowledge that by signing they have read, understood and agreed to this contract.

Authentisign ID: 403FB886-5F68-F111-8FCA-002248359474

Page 5 of 5

17. **Acceptance**: The RPA has 5 pages. By signing below, both Seller and Buyer acknowledge that they have read, understand and are in full agreement to all terms and conditions that make up this agreement.

A)  Buyer signatures:

Buyer Signature:_____          Buyer Signature _____

Date: _____          Date: _____

Print Name: Property Wise Solutions LLC

Signor: Di Chen

B)  Seller signatures:

Seller Signature:_____          Seller Signature _____

Date: _____          Date: _____

Print Name: Siu Fan Tsang          Hoi K Lau

Seller Signature:_____

Date: _____

Print Name: Shing Lung Lau

# EXHIBIT #8

9705    $3697.68, $3697.68    12/6/25, 4/10/26

**2025**                                                              **2025**

# ANNUAL SECURED PROPERTY TAX BILL
## CITIES, COUNTY, SCHOOLS AND ALL OTHER TAXING AGENCIES IN LOS ANGELES COUNTY
### SECURED PROPERTY TAX FOR FISCAL YEAR JULY 1, 2025 TO JUNE 30, 2026
ELIZABETH BUENROSTRO GINSBERG, TREASURER AND TAX COLLECTOR
FOR ASSISTANCE, CALL 1(213) 974-2111 OR 1(888) 807-2111, ON THE WEB AT propertytax.lacounty.gov

**PROPERTY IDENTIFICATION**
ASSESSOR'S ID.NO.: 5383 003 018 25 000

OWNER OF RECORD AS OF JANUARY 1, 2025
SAME AS BELOW

**MAILING ADDRESS**    000020567 02 AV    0.59
0020567-0020567 SNGL  001 1234-- 827443

LAU,HOI KAN AND  TSANG,SIU FAN
6726 SALTER AVE
ARCADIA CA 91007-7858

**DETAIL OF TAXES DUE FOR**

| | ASSESSOR'S ID. NO. | YR SEQ | CK |
|---|---|---|---|
| | 5383 003 018 | 25 000 | 01 |

| AGENCY | AGENCY PHONE NO. | RATE | AMOUNT |
|---|---|---|---|
| GENERAL TAX LEVY | | | |
| ALL AGENCIES | | 1.000000  $ | 5,973.08 |
| VOTED INDEBTEDNESS | | | |
| METRO WATER DIST | | .007000  $ | 41.81 |
| COMMNTY COLLEGE | | .010704 | 63.93 |
| UNIFIED SCHOOLS | | .099978 | 597.18 |
| DIRECT ASSESSMENTS | | | |
| SAFE CLEAN WATER | (833) 275-7297 | $ | 93.76 |
| SOLID WASTE FEE | (626) 458-3517 | | 3.51 |
| LA COUNTY ST LT | (626) 300-4747 | | 5.00 |
| CONSLDATED SEWER | (626) 300-3340 | | 64.50 |
| FLOOD CONTROL | (626) 979-5498 | | 27.67 |
| SGV MOSQUITO&VCD | (800) 273-5167 | | 20.00 |
| COUNTY LIBRARY | (562) 940-8455 | | 35.23 |
| USGV MWD CHG | (866) 807-6864 | | 10.00 |
| CNTY SAN DIST 15 | (562) 908-4288 | | 179.00 |
| MEASURE E-COFIRE | (323) 881-6151 | | 81.60 |
| MWD STANDBY #15 | (866) 807-6864 | | 9.26 |
| LA CO FIRE DEPT | (213) 466-5596 | | 78.18 |
| RPOSD MEASURE A | (833) 265-2600 | | 25.97 |
| TRAUMA/EMERG SRV | (866) 587-2862 | | 85.68 |

**Save Money – Save Time – Pay Online**
ttc.lacounty.gov
**Electronic Payment Information**
**(Required for Online and Telephone Payments)**
ID#:19 5383 003 018 9 YEAR:25 SEQUENCE:000 1
**Personal Identification Number (PIN)**
PIN:   DA7HPN

**SPECIAL INFORMATION**

**PROPERTY LOCATION AND/OR PROPERTY DESCRIPTION**
9705 ARDENDALE AVE          ARCADIA CA
TRACT # 16897 LOT   17

**VALUATION INFORMATION**

| ROLL YEAR 25-26 | CURRENT ASSESSED VALUE | TAXABLE VALUE |
|---|---|---|
| LAND | 298,654 | 298,654 |
| IMPROVEMENTS | 298,654 | 298,654 |

**ASSESSOR'S REGIONAL OFFICE**
REGION #05 INDEX:
EAST DISTRICT OFFICE          TRA:09260
1190 DURFEE AVE.
SOUTH EL MONTE CA 91733
(626)258-6001

| | |
|---|---|
| TOTAL | 597,308 |
| LESS EXEMPTION: | |
| NET TAXABLE VALUE | 597,308 |

ACCT. NO.:    PRINT NO.: 740921 BILL ID.:

| 1ST | **$3,697.68** | 2ND | **$3,697.68** | 1ST + 2ND | **$7,395.36** |
|---|---|---|---|---|---|
| | DUE NOVEMBER 1, 2025 (After December 10, 2025, add 10% penalty) | | DUE FEBRUARY 1, 2026 (After April 10, 2026, add 10% penalty and $10 cost) | | IF PAYING BOTH BY DECEMBER 10, 2025 (include 1st & 2nd stubs if paying by mail) |

SEE REVERSE SIDE FOR MORE INFORMATION.

ANY RETURNED PAYMENT MAY BE SUBJECT TO A FEE UP TO $50.00.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DETACH AND MAIL WITH YOUR PAYMENT**
**SAVE MONEY! SAVE TIME! PAY ONLINE!**

**ANNUAL    2025**

LAU,HOI KAN AND  TSANG,SIU FAN
6726 SALTER AVE
ARCADIA CA 91007-7858

| ASSESSOR'S ID. NO. | YR SEQ | CK | PK |
|---|---|---|---|
| 5383 003 018 | 25 000 | 01 | 2 |

**FOR MAILING ADDRESS CHANGE**
PLEASE SEE REVERSE SIDE OF THIS
PAYMENT COUPON.

2ND Installment Taxes due Feb. 1 and must ----------------->
be received or USPS Postmarked by April 10
If received or postmarked after, include
10% penalty and $10 cost

2ND INSTALLMENT DUE          INDICATE AMOUNT PAID
**$3,697.68**

**MAKE PAYMENT PAYABLE TO:**
Please write the ASSESSOR'S ID. NO.
on the lower left corner of your payment.

41074

**LOS ANGELES COUNTY TAX COLLECTOR**
P.O. BOX 54018
LOS ANGELES, CA 90054-0018

2642500015383003018000036976800004077440742041O

94

**2ND**

# EXHIBIT #9

# 2025    ADJUSTED  SECURED PROPERTY TAX BILL    2025

## CITIES, COUNTY, SCHOOLS AND ALL OTHER TAXING AGENCIES IN LOS ANGELES COUNTY
## SECURED PROPERTY TAX FOR FISCAL YEAR JULY 1, 2025 TO JUNE 30, 2026
ELIZABETH BUENROSTRO GINSBERG, TREASURER AND TAX COLLECTOR
FOR ASSISTANCE, CALL 1(213) 974-2111 OR 1(888) 807-2111, ON THE WEB AT propertytax.lacounty.gov

**PROPERTY IDENTIFICATION**

OWNER OF RECORD AS OF JANUARY 1, 2025
ASSESSOR'S ID.NO.: 5383 003 018 25 000
REB

**MAILING ADDRESS**    000001830 01 AB    0.641
0001830-0001830  LTRR  123---   DEN001  918318 STJ725R

LAU, HOI KAN AND
  TSANG, SIU FAN AND
LAU, SHING LUNG
6726 SALTER AVE
ARCADIA CA 91007-7858

**ELECTRONIC FUND TRANSFER (EFT) NUMBER**
ID#: 19 5383 003 018 9 YEAR: 25 SEQUENCE: 000 1
PIN:    DA7HPN

**SPECIAL INFORMATION**

FOR THE FOLLOWING REASON:
CORRECTION TO A ROLL BILL

PENALTY DATE ON YOUR 2ND INSTALLMENT
PAYMENT IS CHANGED TO 04-30-26

**PROPERTY LOCATION AND/OR PROPERTY DESCRIPTION**

9705 ARDENDALE AVE          ARCADIA CA
TRACT # 16897 LOT    17

**ASSESSOR'S REGIONAL OFFICE**

REGION #05 INDEX:          TRA: 09260
EAST DISTRICT OFFICE
1190 DURFEE AVE.
SOUTH EL MONTE CA 91733
(626)258-6001

ACCT. NO.:        PRINT NO.:    1042
MAILED BY: 03-19-26 AUTH. NO.: 000001 NA

### DETAIL OF TAXES DUE FOR   5383 003 018 25 000 01

ASSESSOR'S ID. NO.  YR  SEQ   CK

| AGENCY | RATE | PRIOR AMT | CORRECTED AMT |
|---|---|---|---|
| GENERAL TAX LEVY | | | |
| ALL AGENCIES | | $   6,973.06 | $   10,404.00 |
| VOTED INDEBTEDNESS | | | |
| UNIFIED SCHOOLS | .099976 | $   597.18 | $   1,040.16 |
| COMMNTY COLLEGE | .010704 | 63.94 | 111.36 |
| METRO WATER DIST | .007000 | 41.82 | 72.82 |
| DIRECT ASSESSMENTS | | | |
| SAFE CLEAN WATER | ** | $   93.76 | $   93.76 |
| SOLID WASTE FEE | ** | 3.51 | 3.51 |
| LA COUNTY ST LT | ** | 5.00 | 5.00 |
| CONSLDATED SEWER | ** | 64.50 | 64.50 |
| FLOOD CONTROL | ** | 27.67 | 27.67 |
| SGV MOSQUITO&VCD | ** | 20.00 | 20.00 |
| COUNTY LIBRARY | ** | 35.23 | 35.23 |
| USGV MWD CHG | ** | 10.00 | 10.00 |
| CNTY SAN DIST 15 | ** | 179.00 | 179.00 |
| MEASURE E-COFIRE | ** | 51.60 | 51.60 |
| MWD STANDBY #15 | ** | 9.26 | 9.26 |
| LA CO FIRE DEPT | ** | 76.18 | 76.18 |
| RPOSD MEASURE A | ** | 25.97 | 25.97 |
| TRAUMA/EMERG SRV | ** | 85.68 | 85.68 |

| TOTAL TAXES DUE | $12,347.72 |
|---|---|
| LESS PAYMENTS | $3,697.68 |
| PLUS: PENALTIES PAID OR DUE | $.00 |
| REFUNDS ISSUED | $.00 |
| NET BALANCE DUE | $8,650.04 |
| FIRST INSTALLMENT TAX | $.00 |
| SECOND INSTALLMENT TAX | $8,650.04 |

### VALUATION INFORMATION

| | PRIOR ASSESSED VALUE | CURRENT ASSESSED VALUE |
|---|---|---|
| ROLL YEAR 25-26 | | |
| LAND | 298,654 | 832,320 |
| IMPROVEMENTS | 298,654 | 208,080 |
| TOTAL | 597,308 | 1,040,400 |
| LESS EXEMPTION: | | |
| NET TAXABLE VALUE | 597,308 | 1,040,400 |

ANY RETURNED PAYMENT MAY BE SUBJECT TO A FEE UP TO $50.00.

---

**DETACH AND MAIL WITH YOUR PAYMENT**
SAVE MONEY! SAVE TIME! PAY ONLINE!

## ADJUSTED    2025

ASSR CORREC    REB 000001 NA

ASSESSOR'S ID. NO.  YR SEQ   CK        PK
5383 003 018 25 000  01        2

LAU, HOI KAN AND
  TSANG, SIU FAN AND
LAU, SHING LUNG

INDICATE AMOUNT PAID

2ND INSTALLMENT DUE
$8,650.04

PAYMENT DUE    04/30/26
IF NOT RECEIVED OR POSTMARKED BY    04/30/26
REMIT AMOUNT OF        $9,525.04

04/30/26

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 60166
LOS ANGELES, CA 90060-0166

**MAKE PAYMENT PAYABLE TO:**
Please write the ASSESSOR'S ID. NO.
on the lower left corner of your payment.

01089

2602500015383003018000086500400009525040892O430

2ND

# EXHIBIT #10

9705

r 6/23/28



JEFFREY PRANG
ASSESSOR

# COUNTY OF LOS ANGELES • OFFICE OF THE ASSESSOR
SEE REVERSE SIDE OF THIS FORM FOR EXPLANATION
Si desea ayuda en Español, llame al número 213.974.3211.

MAILING DATE: JUNE 15, 2026

**NOT A TAX BILL
SEND NO MONEY**

LAU,HOI KAN AND TSANG,SIU FAN AND
LAU,SHING LUNG
6726 SALTER AVE
ARCADIA CA 91007-7858

ASSESSOR'S ID NO:5383-003-018
REGION: 05
CLUSTER:05142
SITUS ADDRESS:
9705 ARDENDALE AVE
ARCADIA CA 91007-7824

## NOTICE OF ASSESSED VALUE CHANGE

THIS CHANGE IS DUE TO A PARTIAL INTEREST TRANSFER OCCURRING OCT. 09, 2025
RESULTING IN:

SUPPLEMENTAL ASSESSMENT FOR ROLL YEAR 2025, SEQUENCE NUMBER 010

|  | NEW ASSESSED VALUE | PRIOR ASSESSED VALUE | NET SUPPLEMENTAL ASSESSMENT |
|---|---|---|---|
| Land: | $ 853,160 | $ 832,320 | $ 20,840 |
| Improvements: | $ 213,540 | $ 208,080 | $ 5,460 |
| Total Real Property: | $ 1,066,700 | $ 1,040,400 | $ 26,300 |
| Exemption: | $ 0 | $ 0 | $ 0 |
| Taxable Value: | $ 1,066,700 | $ 1,040,400 | $ 26,300 |

|  | NEW ASSESSED VALUE | PRIOR ASSESSED VALUE | NET SUPPLEMENTAL ASSESSMENT |
|---|---|---|---|
| Land: | $ | $ | $ |
| Improvements: | $ | $ | $ |
| Total Real Property: | $ | $ | $ |
| Exemption: | $ | $ | $ |
| Taxable Value: | $ | $ | $ |

The above change will cause escape assessment(s) as proposed below.

## NOTICE OF PROPOSED ESCAPE ASSESSMENT

The following escape assessments will be enrolled ten days after the date of this notice. You will be billed for additional taxes that you owe resulting from both the escape and supplemental assessments.

| TAX YEAR | NEW ASSESSED VALUE | PRIOR ASSESSED VALUE | NET ESCAPE AMOUNT |
|---|---|---|---|
|  | $ | $ | $ |
|  | $ | $ | $ |
|  | $ | $ | $ |
|  | $ | $ | $ |
|  | $ | $ | $ |
|  | $ | $ | $ |
|  | $ | $ | $ |
|  | $ | $ | $ |
|  | $ | $ | $ |
|  | $ | $ | $ |
|  | $ | $ | $ |
|  | $ | $ | $ |
|  | $ | $ | $ |

# EXHIBIT #11

Case 2:26-cv-00305-MWF-CTS    Document 117    Filed 07/29/26    Page 100 of 140    Page ID #:2866



# 9705 ARDENDALE AVE
# ARCADIA CA 91007
# DETACHED ADU

**2001**

SITE

0.5 MILES FROM THE NEAREST BUS STOP

APPLICABLE CODES:
2022 CALIFORNIA BUILDING CODE, VOLUMES 1 & 2.
2022 LOS ANGELES COUNTY BUILDING CODE
2022 CALIFORNIA RESIDENTIAL CODE (TITLE 24, PART 2.5)
2022 CALIFORNIA FIRE CODE
2022 CALIFORNIA MECHANICAL CODE
2022 CALIFORNIA ELECTRICAL CODE
2022 CALIFORNIA PLUMBING CODE
2022 CALIFORNIA BUILDING ENERGY EFFICIENCY STANDARDS
2022 CALIFORNIA GREEN BUILDING STANDARDS CODE
2022 CALIFORNIA EXISTING BUILDING CODE
2022 LA COUNTY AMENDMENTS
2022 T-24 ENERGY STANDARDS

NOTE:
ALL LOW RISE RESIDENTIAL BUILDINGS SHALL HAVE A PHOTOVOLTAIC
(PV) SYSTEM. PV SYSTEM TO BE DEFERRED APPROVAL.

## RESIDENTIAL PLAN GENERAL NOTES REQUIREMENTS

SECURITY REQUIREMENTS

CONSTRUCTION REQUIREMENTS

GLAZING REQUIREMENTS

MECHANICAL/PLUMBING/ELECTRICAL CODE REQUIREMENTS

## PROPERTY INFORMATION:

A.P.N. 5383-003-018
TRACT # 16897 LOT 17

ZONE: R1
USE TYPE: RESIDENTIAL
CONSTRUCTION TYPE: V-B
OCCUPANCY GROUP: R3

## SCOPE OF WORK:

REMOVE THE EXISTING GARAGE 400 SQ FT
PROPOSE NEW DETACHED ADU 1,200 SQ FT
PROPOSE NEW GARAGE 400 SQ FT

## AREA SUMMARY

| | |
|---|---|
| TOTAL LOT AREA: | 6,375 SQ FT |
| EXISTING MAIN HOUSE AREA: | 1,360 SQ FT |
| | 3B 2B |
| EXISTING GARAGE: | 431 SQ FT |
| PROPOSE NEW GARAGE AREA: | 400 SQ FT |
| PROPOSE NEW DETACHED ADU AREA: | 1,200 SQ FT |
| NUMBER OF ADU STORY: | 2 |

## OTHER PROJECT INFO

| | |
|---|---|
| OAK TREE: | NO |
| EASEMENT: | NO |
| ANY SLOPE 3:1 | NO |
| EXISTING FIRE SPRINKLER IN MAIN HOUSE: | NO |
| SWIMMING POOL: | NO |
| NEW LANDSCAPE 500 SQ FT OR LARGER: | NO |

## SHEET INDEX:

A-1    GENERAL NOTES
A-1.1  GENERAL NOTES
A-2    EXISTING SITE PLAN & PROPOSED SITE PLAN
A-3    PROPOSED FLOOR PLAN
A-4    PROPOSED ELECTRICAL PLAN & ROOF PLAN
A-5    ELEVATION & SECTION
A-6    GREEN STANDARD CODE
A-7    GREEN STANDARD CODE

## YANG ARCHITECT

WWW.YANGARCHITECT.COM
YANGARCHITECTINC@GMAIL.COM
(626)866-0234

JOB ADDRESS:

9705 ARDENDALE AVE
ARCADIA CA 91007

OWNER:

XXXXX

STAMP:

REVISIONS:

SHEET TITLE:

GENERAL NOTE

SHEET NUMBER:

A-1

# 9705 ARDENDALE AVE
# ARCADIA CA 91007
# DETACHED ADU

## GENERAL REQUIREMENTS

1. Plumbing fixtures and fixture fittings on the plans shall comply with the following flow rates:
   a. Water Closets – 1.28 GPF
   b. Urinals – 0.5 GPF
   c. Wall-mounted urinal – 0.125 GPF
   d. Single showerhead - 1.8 GPM at 80psi
   e. Multiple showerheads – 1.8 GPM at 80psi for all combined showerheads
   f. Lavatory faucets – 1.2 GPM at 60psi
   g. Lavatory faucets in public use areas – 0.5 GPM at 60psi
   h. Metering faucets - 0.2 gallons per cycle
   i. Kitchen faucets – 1.8 GPM at 60psi     (4.303.1)

2. Annular spaces around pipes, electrical cables, conduits, or other openings in sole/bottom plates at exterior walls shall be protected against the passage of rodents by closing such openings with cement mortar, concrete masonry, or a similar method acceptable to the enforcing agency.   (4.406.1)

3. Fireplaces shall be direct vent sealed combustion type. Indicate on the plans the manufacturer name and model number.   (4.503.1)

4. At the time of rough installation, during storage on the construction site, and until final startup of the heating, cooling and ventilating equipment, all duct and other related air distribution component openings shall be covered with tape, plastic, sheetmetal, or other acceptable methods to reduce the amount of water, dust and debris which may enter the system.   (4.504.1)

5. Building materials with visible signs of water damage shall not be installed. Wall and floor framing shall not be enclosed when the framing members exceed 19% moisture content. Insulation products which are visibly wet or have high moisture content shall be replaced or allowed to dry prior to enclosure in wall or floor cavities.   (4.505.3)

6. All mechanical exhaust fans in rooms with a bathtub or shower shall comply with the following:
   a. Fans shall be ENERGY STAR compliant and be ducted to terminate outside the building.
   b. Fans must be controlled by a readily accessible humidistat unless functioning as a component of a whole house ventilation system. Humidity control shall be capable of adjustment between a relative humidity range of 50% and 80%.   (4.506.1)

7. Adhesives, sealants and caulks shall meet or exceed the standards outlined in Section 4.504.2.1 and comply with the VOC limits in Tables 4.504.1 and 4.504.2 as applicable.   (4.504.2.1)

8. Paints and coatings shall meet or exceed the standards outlined in Section 4.504.2.2 and comply with the VOC limits in Table 4.504.3.   (4.504.2.2)

9. Aerosol paints and coatings shall meet or exceed the standards outlined in Section 4.504.2.3.   (4.504.2.3)

10. All carpet installed in the building interior shall meet all the testing and product requirements of one of the following:
    a. Carpet and Rug Institute's Green Label Plus Program OR
    b. California Department of Public Health Standard Method for the testing of VOC Emissions (Specification 01350) OR
    c. NSF/ANSI 140 at the Gold Level OR
    d. Scientific Certifications Systems Indoor Advantage Gold   (4.504.3)

11. All carpet cushion installed in the building interior shall meet the requirements of the Carpet and Rug Institute Green Label Program. Carpet adhesives shall not exceed a VOC limit of 50 g/L.   (4.504.3.1, 4.504.3.2)

12. A minimum of 80% of floor area receiving resilient flooring shall comply with one of the following:
    a. Products certified as a Low-Emitting Material in the CHPS High Performance Products Database, OR
    b. Products certified under UL GREENGUARD Gold (Formerly the Greenguard Children & Schools program), OR
    c. RFCI FloorScore program, OR
    d. Meet the California Department of Public Health Standard Method for the testing of VOC Emissions (Specification 01350)   (4.504.4)

13. Composite wood products (hardwood plywood, particle board, and MDF) installed on the interior or exterior of the building shall meet or exceed the standards outlined in Table 4.504.5. Verification of compliance with these sections must be provided at the time of inspection.   (4.504.5)

### TABLE 4.504.3/TABLE 5.504.4.3
### VOC CONTENT LIMITS FOR ARCHITECTURAL COATING
Grams of VOC per Liter of Coating, Less Water and Less Exempt Compounds

| COATING CATEGORY | VOC LIMIT | COATING CATEGORY | VOC LIMIT |
|---|---|---|---|
| Flat coatings | 50 | Magnesite cement coatings | 450 |
| Nonflat coatings | 100 | Mastic texture coatings | 100 |
| Nonflat high-gloss coatings | 150 | Metallic pigmented coatings | 500 |
| SPECIALTY COATINGS | | Multi-color coatings | 250 |
| Aluminum roof coating | 400 | Pretreatment wash primers | 420 |
| Basement specialty coatings | 400 | Primers, sealers, and undercoaters | 100 |
| Bituminous roof coatings | 50 | Reactive penetrating sealers | 350 |
| Bituminous roof primers | 350 | Recycled coatings | 250 |
| Bond breakers | 350 | Roof coatings | 50 |
| Concrete curing compounds | 350 | Rust preventative coatings | 250 |
| Concrete/masonry sealers | 100 | Shellacs: Clear | 730 |
| | | Shellacs: Opaque | 550 |
| Driveway sealers | 50 | Specialty primers, sealers and undercoaters | 100 |
| Dry fog coatings | 150 | Stains | 250 |
| Faux finishing coatings | 350 | Stone consolidants | 450 |
| Fire resistive coatings | 350 | Swimming pool coatings | 340 |
| Floor coatings | 100 | Traffic marking coatings | 100 |
| Form-release compounds | 250 | Tub and tile refinish coatings | 420 |
| Graphic arts coatings (sign paints) | 500 | Waterproofing membranes | 250 |
| High-temperature coatings | 420 | Wood coatings | 275 |
| Industrial maintenance coatings | 250 | Wood preservatives | 350 |
| Low solids coatings | 120 | Zinc-rich primer | 340 |

### TABLE 4.504.5/TABLE 5.504.4.5
### FORMALDEHYDE LIMITS
Maximum Formaldehyde Emissions in Parts per Million

| PRODUCT | CURRENT LIMIT |
|---|---|
| Hardwood plywood veneer core | 0.05 |
| Hardwood plywood composite core | 0.05 |
| Particleboard | 0.09 |
| Medium density fiberboard | 0.11 |
| Thin medium density fiberboard | 0.13 |

### TABLE 4.504.2/TABLE 5.504.4.2
### SEALANT VOC LIMIT
Less Water and Less Exempt Compounds in Grams Per Liter

| SEALANTS | VOC LIMIT |
|---|---|
| Architectural | 250 |
| Marine deck | 760 |
| Nonmembrane roof | 300 |
| Roadway | 250 |
| Single-ply roof membrane | 450 |
| Other | 420 |
| **SEALANT PRIMERS** | |
| Architectural Nonporous | 250 |
| Architectural Porous | 775 |
| Modified bituminous | 500 |
| Marine deck | 760 |
| Other | 750 |

### TABLE 4.504.1/TABLE 5.504.4.1
### ADHESIVE VOC LIMIT
Grams of VOC per Liter of Coating, Less Water and Less Exempt Compounds

| ARCHITECTURAL APPLICATIONS | VOC LIMIT |
|---|---|
| Indoor carpet adhesives | 50 |
| Carpet pad adhesives | 50 |
| Outdoor carpet and adhesives | 150 |
| Wood flooring adhesives | 100 |
| Rubber floor adhesives | 60 |
| Subfloor adhesives | 50 |
| Ceramic tile adhesives | 65 |
| VCT and asphalt tile adhesives | 50 |
| Drywall and panel adhesives | 50 |
| Cove base adhesives | 50 |
| Multipurpose construction adhesives | 70 |
| Structural glazing adhesives | 100 |
| Single-ply roof membrane adhesives | 250 |
| Other adhesives | 50 |
| **SPECIALTY APPLICATIONS** | |
| PVC welding | 510 |
| CPVC welding | 490 |
| ABS welding | 325 |
| Plastic cement welding | 250 |
| Adhesive primer for plastic | 550 |
| Contact adhesive | 80 |
| Special purpose contact adhesive | 250 |
| Structural wood member adhesive | 140 |
| Top and trim adhesive | 250 |
| **SUBSTRATE SPECIFIC APPLICATIONS** | |
| Metal to metal | 30 |
| Plastic foams | 50 |
| Porous material (except wood) | 50 |
| Wood | 30 |
| Fiberglass | 80 |

YANG ARCHITECT

WWW.YANGARCHITECT.COM
YANGARCHITECTINC@GMAIL.COM
(626)866-0234

JOB ADDRESS:
9705 ARDENDALE AVE
ARCADIA CA 91007

STAMP:

REVISIONS:

SHEET TITLE:
GENERAL NOTES

SHEET NUMBER:
A-1.1









Case 2:26-cv-00305-MWF-CTS    Document 117    Filed 07/29/26    Page 106 of 140    Page ID #:2872

# 2022 CALIFORNIA GREEN BUILDING STANDARDS CODE
## RESIDENTIAL MANDATORY MEASURES, SHEET 1 (January 2023)



**CHAPTER 3 — GREEN BUILDING**

SECTION 301 GENERAL
301.1 SCOPE.
301.1.1 Additions and alterations. [HCD]
301.2 LOW-RISE AND HIGH-RISE RESIDENTIAL BUILDINGS. [HCD]

SECTION 302 MIXED OCCUPANCY BUILDINGS
302.1 MIXED OCCUPANCY BUILDINGS.

DIVISION 4.1 PLANNING AND DESIGN
SECTION 4.102 DEFINITIONS
4.103 SITE DEVELOPMENT
4.106 SITE DEVELOPMENT

**CHAPTER 4 — RESIDENTIAL MANDATORY MEASURES**

DIVISION 4.2 ENERGY EFFICIENCY
4.201 GENERAL

DIVISION 4.3 WATER EFFICIENCY AND CONSERVATION
4.303 INDOOR WATER USE
4.304 OUTDOOR WATER USE

DIVISION 4.4 MATERIAL CONSERVATION AND RESOURCE EFFICIENCY
4.406 ENHANCED DURABILITY AND REDUCED MAINTENANCE
4.408 CONSTRUCTION WASTE REDUCTION, DISPOSAL AND RECYCLING
4.410 BUILDING MAINTENANCE AND OPERATION

DIVISION 4.5 ENVIRONMENTAL QUALITY
SECTION 4.501 GENERAL
SECTION 4.502 DEFINITIONS

### TABLE H-2
STANDARDS FOR COMMERCIAL PRE-RINSE SPRAY VALUES MANUFACTURED ON OR AFTER JANUARY 28, 2019

| PRODUCT CLASS [spray force in ounce force (ozf)] | MAXIMUM FLOW RATE (gpm) |
| --- | --- |
| Product Class 1 (< 5.0 ozf) | 1.00 |
| Product Class 2 (> 5.0 ozf and ≤ 8.0 ozf) | 1.20 |
| Product Class 3 (> 8.0 ozf) | 1.28 |

### TABLE — MAXIMUM FIXTURE WATER USE

| FIXTURE TYPE | FLOW RATE |
| --- | --- |
| SHOWER HEADS (RESIDENTIAL) | 1.8 GPM @ 80 PSI |
| LAVATORY FAUCETS (RESIDENTIAL) | MAX. 1.2 GPM @ 60 PSI MIN. 0.8 GPM @ 20 PSI |
| LAVATORY FAUCETS IN COMMON & PUBLIC USE AREAS | 0.5 GPM @ 60 PSI |
| KITCHEN FAUCETS | 1.8 GPM @ 60 PSI |
| METERING FAUCETS | 0.2 GAL/CYCLE |
| WATER CLOSET | 1.28 GAL/FLUSH |
| URINALS | 0.125 GAL/FLUSH |

YANG ARCHITECT
WWW.YANGARCHITECT.COM
YANGARCHITECTINC@GMAIL.COM
(626)866-0234

JOB ADDRESS:
9705 ARDENDALE AVE
ARCADIA CA 91007

STAMP:

SHEET TITLE: XXXX

SHEET NUMBER:

**A-6**

Case 2:26-cv-00305-MWF-CTS   Document 117   Filed 07/29/26   Page 107 of 140   Page ID #:2873

# 2022 CALIFORNIA GREEN BUILDING STANDARDS CODE
## RESIDENTIAL MANDATORY MEASURES, SHEET 2 (January 2023)

**A.I.A. California**



**MAXIMUM INCREMENTAL REACTIVITY (MIR).** The maximum change in weight of ozone formed by adding a compound to the "Base Reactive Organic Gas (ROG) Mixture" per weight of compound added, expressed in hundredths of a gram (g O³/g ROC).
Note: MIR values for individual compounds and hydrocarbon solvents are specified in CCR, Title 17, Sections 94700 and 94701.

**MOISTURE CONTENT.** The weight of the water in wood expressed in percentage of the weight of the oven-dry wood.

**PRODUCT-WEIGHTED MIR (PWMIR).** The sum of all weighted-MIR for all ingredients in a product subject to this article. The PWMIR is the total product reactivity expressed in hundredths of a gram of ozone formed per gram of product (excluding container and packaging).
Note: PWMIR is calculated according to equations found in CCR, Title 17, Section 94521 (a).

**REACTIVE ORGANIC COMPOUND (ROC).** Any compound that has the potential, once emitted, to contribute to ozone formation in the troposphere.

**VOC.** A volatile organic compound (VOC) broadly defined as a chemical compound based on carbon chains or rings with vapor pressures greater than 0.1 millimeters of mercury at room temperature. These compounds typically contain hydrogen and may contain oxygen, nitrogen and other elements. See CCR Title 17, Section 94508(a).

## 4.503 FIREPLACES
**4.503.1 GENERAL.** Any installed gas fireplace shall be a direct-vent sealed-combustion type. Any installed woodstove or pellet stove shall comply with U.S. EPA New Source Performance Standards (NSPS) emission limits as applicable, and shall have a permanent label indicating they are certified to meet the emission limits. Woodstoves, pellet stoves and fireplaces shall also comply with applicable local ordinances.

## 4.504 POLLUTANT CONTROL
**4.504.1 COVERING OF DUCT OPENINGS & PROTECTION OF MECHANICAL EQUIPMENT DURING CONSTRUCTION.** At the time of rough installation, during storage on the construction site and until final startup of the heating, cooling and ventilating equipment, all duct and other related air distribution component openings shall be covered with tape, plastic, sheet metal or other methods acceptable to the enforcing agency to reduce the amount of water, dust or debris which may enter the system.

**4.504.2 FINISH MATERIAL POLLUTANT CONTROL.** Finish materials shall comply with this section
**4.504.2.1 Adhesives, Sealants and Caulks.** Adhesives, sealant and caulks used on the project shall meet the requirements of the following standards unless more stringent local or regional air pollution or air quality management district rules apply:

1. Adhesives, adhesive bonding primers, adhesive primers, sealants, sealant primers and caulks shall comply with local or regional air pollution control or air quality management district rules where applicable or SCAQMD Rule 1168 VOC limits, as shown in Table 4.504.1 or 4.504.2, as applicable. Such products also shall comply with the Rule 1168 prohibition on the use of certain toxic compounds (chloroform, ethylene dichloride, methylene chloride, perchloroethylene and trichloroethylene), except for aerosol products, as specified in Subsection 2 below.

2. Aerosol adhesives, and smaller unit sizes of adhesives, and sealant or caulking compounds (in units of product, less packaging, which do not weigh more than 1 pound and do not consist of more than 16 fluid ounces) shall comply with statewide VOC standards and other requirements, including prohibitions on use of certain toxic compounds, of California Code of Regulations, Title 17, commencing with section 94507.

**4.504.2.2 Paints and Coatings.** Architectural paints and coatings shall comply with VOC limits in Table 1 of the ARB Architectural Suggested Control Measure, as shown in Table 4.504.3, unless more stringent local limits apply. The VOC content limit for coatings that do not meet the definitions for the specialty coatings categories listed in Table 4.504.3 shall be determined by classifying the coating as a Flat, Nonflat or Nonflat-High Gloss coating, based on its gloss, as defined in subsections 4.21, 4.36, and 4.37 of the 2007 California Air Resources Board, Suggested Control Measure, and the corresponding Flat, Nonflat or Nonflat-High Gloss VOC limit in Table 4.504.3 shall apply.

**4.504.2.3 Aerosol Paints and Coatings.** Aerosol paints and coatings shall meet the Product-weighted MIR Limits for ROC in Section 94522(a)(3) and other requirements, including prohibitions on use of certain toxic compounds and ozone depleting substances, in Sections 94522(a)(1) and (f)(1) of California Code of Regulations, Title 17, commencing with Section 94520; and in areas under the jurisdiction of the Bay Area Air Quality Management District additionally comply with the percent VOC by weight of product limits of Regulation 8, Rule 49.

**4.504.2.4 Verification.** Verification of compliance with this section shall be provided at the request of the enforcing agency. Documentation may include, but is not limited to, the following:
1. Manufacturer's product specification.
2. Field verification of on-site product containers.

### TABLE 4.504.1 - ADHESIVE VOC LIMIT[1,2]
(Less Water and Less Exempt Compounds in Grams per Liter)

| ARCHITECTURAL APPLICATIONS | VOC LIMIT |
|---|---|
| INDOOR CARPET ADHESIVES | 50 |
| CARPET PAD ADHESIVES | 50 |
| OUTDOOR CARPET ADHESIVES | 150 |
| WOOD FLOORING ADHESIVES | 100 |
| RUBBER FLOOR ADHESIVES | 60 |
| SUBFLOOR ADHESIVES | 50 |
| CERAMIC TILE ADHESIVES | 65 |
| VCT & ASPHALT TILE ADHESIVES | 50 |
| DRYWALL & PANEL ADHESIVES | 50 |
| COVE BASE ADHESIVES | 50 |
| MULTIPURPOSE CONSTRUCTION ADHESIVE | 70 |
| STRUCTURAL GLAZING ADHESIVES | 100 |
| SINGLE-PLY ROOF MEMBRANE ADHESIVES | 250 |
| OTHER ADHESIVES NOT LISTED | 50 |
| **SPECIALTY APPLICATIONS** | |
| PVC WELDING | 510 |
| CPVC WELDING | 490 |
| ABS WELDING | 325 |
| PLASTIC CEMENT WELDING | 250 |
| ADHESIVE PRIMER FOR PLASTIC | 550 |
| CONTACT ADHESIVE | 80 |
| SPECIAL PURPOSE CONTACT ADHESIVE | 250 |
| STRUCTURAL WOOD MEMBER ADHESIVE | 140 |
| TOP & TRIM ADHESIVE | 250 |
| **SUBSTRATE SPECIFIC APPLICATIONS** | |
| METAL TO METAL | 30 |
| PLASTIC FOAMS | 50 |
| POROUS MATERIAL (EXCEPT WOOD) | 50 |
| WOOD | 30 |
| FIBERGLASS | 80 |

1. IF AN ADHESIVE IS USED TO BOND DISSIMILAR SUBSTRATES TOGETHER, THE ADHESIVE WITH THE HIGHEST VOC CONTENT SHALL BE ALLOWED.
2. FOR ADDITIONAL INFORMATION REGARDING METHODS TO MEASURE THE VOC CONTENT SPECIFIED IN THIS TABLE, SEE SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT RULE 1168.

### TABLE 4.504.2 - SEALANT VOC LIMIT
(Less Water and Less Exempt Compounds in Grams per Liter)

| SEALANTS | VOC LIMIT |
|---|---|
| ARCHITECTURAL | 250 |
| MARINE DECK | 760 |
| NONMEMBRANE ROOF | 300 |
| ROADWAY | 250 |
| SINGLE-PLY ROOF MEMBRANE | 450 |
| OTHER | 420 |
| **SEALANT PRIMERS** | |
| ARCHITECTURAL | |
| NON-POROUS | 250 |
| POROUS | 775 |
| MODIFIED BITUMINOUS | 500 |
| MARINE DECK | 760 |
| OTHER | 750 |

### TABLE 4.504.3 - VOC CONTENT LIMITS FOR ARCHITECTURAL COATINGS[1,2]
GRAMS OF VOC PER LITER OF COATING, LESS WATER & LESS EXEMPT COMPOUNDS

| COATING CATEGORY | VOC LIMIT |
|---|---|
| FLAT COATINGS | 50 |
| NON-FLAT COATINGS | 100 |
| NONFLAT-HIGH GLOSS COATINGS | 150 |
| **SPECIALTY COATINGS** | |
| ALUMINUM ROOF COATINGS | 400 |
| BASEMENT SPECIALTY COATINGS | 400 |
| BITUMINOUS ROOF COATINGS | 50 |
| BITUMINOUS ROOF PRIMERS | 350 |
| BOND BREAKERS | 350 |
| CONCRETE CURING COMPOUNDS | 350 |
| CONCRETE/MASONRY SEALERS | 100 |
| DRIVEWAY SEALERS | 50 |
| DRY FOG COATINGS | 150 |
| FAUX FINISHING COATINGS | 350 |
| FIRE RESISTIVE COATINGS | 350 |
| FLOOR COATINGS | 100 |
| FORM-RELEASE COMPOUNDS | 250 |
| GRAPHIC ARTS COATINGS (SIGN PAINTS) | 500 |
| HIGH TEMPERATURE COATINGS | 420 |
| INDUSTRIAL MAINTENANCE COATINGS | 250 |
| LOW SOLIDS COATINGS | 120 |
| MAGNESITE CEMENT COATINGS | 450 |
| MASTIC TEXTURE COATINGS | 100 |
| METALLIC PIGMENTED COATINGS | 500 |
| MULTICOLOR COATINGS | 250 |
| PRETREATMENT WASH PRIMERS | 420 |
| PRIMERS, SEALERS, & UNDERCOATERS | 100 |
| REACTIVE PENETRATING SEALERS | 350 |
| RECYCLED COATINGS | 250 |
| ROOF COATINGS | 50 |
| RUST PREVENTATIVE COATINGS | 250 |
| SHELLACS | |
| CLEAR | 730 |
| OPAQUE | 550 |
| SPECIALTY PRIMERS, SEALERS & UNDERCOATERS | 100 |
| STAINS | 250 |
| STONE CONSOLIDANTS | 450 |
| SWIMMING POOL COATINGS | 340 |
| TRAFFIC MARKING COATINGS | 100 |
| TUB & TILE REFINISH COATINGS | 420 |
| WATERPROOFING MEMBRANES | 250 |
| WOOD COATINGS | 275 |
| WOOD PRESERVATIVES | 350 |
| ZINC-RICH PRIMERS | 340 |

1. GRAMS OF VOC PER LITER OF COATING, INCLUDING WATER & EXEMPT COMPOUNDS
2. THE SPECIFIED LIMITS REMAIN IN EFFECT UNLESS REVISED LIMITS ARE LISTED IN SUBSEQUENT COLUMN IN THE TABLE.
3. VALUES IN THIS TABLE ARE DERIVED FROM THOSE SPECIFIED BY THE CALIFORNIA AIR RESOURCES BOARD, ARCHITECTURAL COATINGS SUGGESTED CONTROL MEASURE, FEB. 1, 2008. MORE INFORMATION IS AVAILABLE FROM THE AIR RESOURCES BOARD.

### TABLE 4.504.5 - FORMALDEHYDE LIMITS[1]
MAXIMUM FORMALDEHYDE EMISSIONS IN PARTS PER MILLION

| PRODUCT | CURRENT LIMIT |
|---|---|
| HARDWOOD PLYWOOD VENEER CORE | 0.05 |
| HARDWOOD PLYWOOD COMPOSITE CORE | 0.05 |
| PARTICLE BOARD | 0.09 |
| MEDIUM DENSITY FIBERBOARD | 0.11 |
| THIN MEDIUM DENSITY FIBERBOARD[2] | 0.13 |

1. VALUES IN THIS TABLE ARE DERIVED FROM THOSE SPECIFIED BY THE CALIF. AIR RESOURCES BOARD, AIR TOXICS CONTROL MEASURE FOR COMPOSITE WOOD AS TESTED IN ACCORDANCE WITH ASTM E 1333. FOR ADDITIONAL INFORMATION, SEE CALIF. CODE OF REGULATIONS, TITLE 17, SECTIONS 93120 THROUGH 93120.12
2. THIN MEDIUM DENSITY FIBERBOARD HAS A MAXIMUM THICKNESS OF 5/16" (8 MM).

## DIVISION 4.5   ENVIRONMENTAL QUALITY (continued)
**4.504.3 CARPET SYSTEMS.** All carpet installed in the building interior shall meet the requirements of the California Department of Public Health, "Standard Method for the Testing and Evaluation of Volatile Organic Chemical Emissions from Indoor Sources Using Environmental Chambers," Version 1.2, January 2017 (Emission testing method for California Specification 01350).

See California Department of Public Health's website for certification programs and testing labs.
https://www.cdph.ca.gov/Programs/CCDPHP/DEODC/EHLB/IAQ/Pages/VOC.aspx.

**4.504.3.1 Carpet cushion.** All carpet cushion installed in the building interior shall meet the requirements of the California Department of Public Health, "Standard Method for the Testing and Evaluation of Volatile Organic Chemical Emissions from Indoor Sources Using Environmental Chambers," Version 1.2, January 2017 (Emission testing method for California Specification 01350).

See California Department of Public Health's website for certification programs and testing labs.
https://www.cdph.ca.gov/Programs/CCDPHP/DEODC/EHLB/IAQ/Pages/VOC.aspx.

**4.504.3.2 Carpet adhesive.** All carpet adhesive shall meet the requirements of Table 4.504.1.

**4.504.4 RESILIENT FLOORING SYSTEMS.** Where resilient flooring is installed, at least 80% of floor area receiving resilient flooring shall meet the requirements of the California Department of Public Health, "Standard Method for the Testing and Evaluation of Volatile Organic Chemical Emissions from Indoor Sources Using Environmental Chambers," Version 1.2, January 2017 (Emission testing method for California Specification 01350).

See California Department of Public Health's website for certification programs and testing labs.
https://www.cdph.ca.gov/Programs/CCDPHP/DEODC/EHLB/IAQ/Pages/VOC.aspx.

**4.504.5 COMPOSITE WOOD PRODUCTS.** Hardwood plywood, particleboard and medium density fiberboard composite wood products used on the interior or exterior of the building shall meet the requirements for formaldehyde as specified in ARB's Air Toxics Control Measure for Composite Wood (17 CCR 93120 et seq.), by or before the dates specified in those sections, as shown in Table 4.504.5.

**4.504.5.1 Documentation.** Verification of compliance with this section shall be provided as requested by the enforcing agency. Documentation shall include at least one of the following:
1. Product certifications and specifications.
2. Chain of custody certifications.
3. Product labeled and invoiced as meeting the Composite Wood Products regulation (see CCR, Title 17, Section 93120, et seq.).
4. Exterior grade products marked as meeting the PS-1 or PS-2 standards of the Engineered Wood Association, the Australian AS/NZS 2269, European 636 3S standards, and Canadian CSA 0121, CSA 0151, CSA 0153 and CSA 0325 standards.
5. Other methods acceptable to the enforcing agency.

## 4.505 INTERIOR MOISTURE CONTROL
**4.505.1 General.** Buildings shall meet or exceed the provisions of the California Building Standards Code

**4.505.2 CONCRETE SLAB FOUNDATIONS.** Concrete slab foundations required to have a vapor retarder by California Building Code, Chapter 19, or concrete slab-on-ground floors required to have a vapor retarder by the California Residential Code, Chapter 5, shall also comply with this section.

**4.505.2.1 Capillary break.** A capillary break shall be installed in compliance with at least one of the following:
1. A 4-inch (101.6 mm) thick base of 1/2 inch (12.7mm) or larger clean aggregate shall be provided with a vapor barrier in direct contact with concrete and a concrete mix design, which will address bleeding, shrinkage, and curling, shall be used. For additional information, see American Concrete Institute, ACI 302.2R-06
2. Other equivalent methods approved by the enforcing agency.
3. A slab design specified by a licensed design professional.

**4.505.3 MOISTURE CONTENT OF BUILDING MATERIALS.** Building materials with visible signs of water damage shall not be installed. Wall and floor framing shall not be enclosed when the framing members exceed 19 percent moisture content. Moisture content shall be verified in compliance with the following:
1. Moisture content shall be determined with either a probe-type or contact-type moisture meter. Equivalent moisture verification methods may be approved by the enforcing agency and shall satisfy requirements found in Section 101.8 of this code.
2. Moisture readings shall be taken at a point 2 feet (616 mm) to 4 feet (1219 mm) from the grade stamped end of each piece verified.
3. At least three random moisture readings shall be performed on wall and floor framing with documentation acceptable to the enforcing agency provided at the time of approval to enclose the wall and floor framing.

Insulation products which are visibly wet or have a high moisture content shall be replaced or allowed to dry prior to enclosure in wall or floor cavities. Wet-applied insulation products shall follow the manufacturers' drying recommendations prior to enclosure.

## 4.506 INDOOR AIR QUALITY AND EXHAUST
**4.506.1 Bathroom exhaust fans.** Each bathroom shall be mechanically ventilated and shall comply with the following:
1. Fans shall be ENERGY STAR compliant and be ducted to terminate outside the building.
2. Unless functioning as a component of a whole house ventilation system, fans must be controlled by a humidity control.
   a. Humidity controls shall be capable of adjustment between a relative humidity range less than or equal to 50% to a maximum of 80%. A humidity control may utilize manual or automatic means of adjustment.
   b. A humidity control may be a separate component to the exhaust fan and is not required to be integral (i.e., built-in).

Notes:
1. For the purposes of this section, a bathroom is a room which contains a bathtub, shower or tub/shower combination.
2. Lighting integral to bathroom exhaust fans shall comply with the California Energy Code.

## 4.507 ENVIRONMENTAL COMFORT
**4.507.2 HEATING AND AIR-CONDITIONING SYSTEM DESIGN.** Heating and air conditioning systems shall be sized, designed and have their equipment selected using the following methods:
1. The heat loss and heat gain is established according to ANSI/ACCA 2 Manual J - 2011 (Residential Load Calculation), ASHRAE handbooks or other equivalent design software or methods.
2. Duct systems are sized according to ANSI/ACCA 1 Manual D - 2014 (Residential Duct Systems), ASHRAE handbooks or other equivalent design software or methods.
3. Select heating and cooling equipment according to ANSI/ACCA 3 Manual S - 2014 (Residential Equipment Selection), or other equivalent design software or methods.
Exception: Use of alternate design temperatures necessary to ensure the system functions are acceptable.

## CHAPTER 7
## INSTALLER & SPECIAL INSPECTOR QUALIFICATIONS
### 702 QUALIFICATIONS
**702.1 INSTALLER TRAINING.** HVAC system installers shall be trained and certified in the proper installation of HVAC systems including ducts and equipment by a nationally or regionally recognized training or certification program. Uncertified persons may perform HVAC installations when under the direct supervision and responsibility of a person trained and certified to install HVAC systems or contractor licensed to install HVAC systems. Examples of acceptable HVAC training and certification programs include but are not limited to the following:
1. State certified apprenticeship programs
2. Public utility training programs
3. Training programs sponsored by trade, labor or statewide energy consulting or verification organizations.
4. Programs sponsored by manufacturing organizations.
5. Other programs acceptable to the enforcing agency

**702.2 SPECIAL INSPECTION [HCD].** When required by the enforcing agency, the owner or the responsible entity acting as the owner's agent shall employ one or more special inspectors to provide inspection or other duties necessary to substantiate compliance with this code. Special inspectors shall demonstrate competence to the satisfaction of the enforcing agency for the particular type of inspection or task to be performed. In addition to other certifications or qualifications acceptable to the enforcing agency, the following certifications or education may be considered by the enforcing agency when evaluating the qualifications of a special inspector:
1. Certification by a national or regional green building program or standard publisher.
2. Certification by a statewide energy consulting or verification organization, such as HERS raters, building performance contractors, and home energy auditors.
3. Successful completion of a third party apprentice training program in the appropriate trade.
4. Other programs acceptable to the enforcing agency.

Notes:
1. Special inspectors shall be independent entities with no financial interest in the materials or the project they are inspecting for compliance with this code.
2. HERS raters are special inspectors certified by the California Energy Commission (CEC) to rate homes in California according to the Home Energy Rating System (HERS).

[HCD] When required by the enforcing agency, the owner or the responsible entity acting as the owner's agent shall employ one or more special inspectors to provide inspection or other duties necessary to substantiate compliance with this code. Special inspectors shall demonstrate competence to the satisfaction of the enforcing agency for the particular type of inspection or task to be performed. In addition, the special inspector shall have a certification from a recognized state, national or international association, as determined by the local agency. The area of certification shall be closely related to the primary job function, as determined by the local agency.

Note: Special inspectors shall be independent entities with no financial interest in the materials or the project they are inspecting for compliance with this code.

### 703 VERIFICATIONS
**703.1 DOCUMENTATION.** Documentation used to show compliance with this code shall include but not limited to, construction documents, plans, specifications, builder or installer certification, inspection reports, or other methods acceptable to the enforcing agency which demonstrate substantial conformance. When specific documentation or special inspection is necessary to verify compliance, that method of compliance will be specified in the appropriate section or identified applicable checklist.

YANG ARCHITECT
WWW.YANGARCHITECT.COM
YANGARCHITECTINC@GMAIL.COM
(626)866-0234

JOB ADDRESS:
9705 ARDENDALE AVE
ARCADIA CA 91007

STAMP:

REVISIONS:

SHEET TITLE:
GREEN STANDARD CODE

SHEET NUMBER:
## A-7

DISCLAIMER: THIS DOCUMENT IS PROVIDED AND INTENDED TO BE USED AS A MEANS TO INDICATE AREAS OF COMPLIANCE WITH THE CALIFORNIA GREEN BUILDING STANDARDS (CALGREEN) CODE. DUE TO THE VARIABLES BETWEEN BUILDING DEPARTMENT JURISDICTIONS, THIS CHECKLIST IS TO BE USED ON AN INDIVIDUAL PROJECT BASIS AND MAY BE MODIFIED BY THE END USER TO MEET THOSE INDIVIDUAL NEEDS. THE END USER ASSUMES ALL RESPONSIBILITY ASSOCIATED WITH THE USE OF THIS DOCUMENT, INCLUDING VERIFICATION WITH THE FULL CODE.

# EXHIBIT #12

PASADENA COURTHOUSE
300 EAST WALNUT STREET
PASADENA, CA. 91101
000-000-0000
**SALE**

Clerk #: 008602

REF#: 00000003

Batch #: 538
03/11/26                    13:39:27
APPR CODE: 07693D
Trace: 3
VISA                        Contactle
***********2731                 **

**AMOUNT**          **$240.**

**APPROVED**

CHASE VISA
AID: A0000000031010
TVR: 00 00 00 00 00

THANK YOU
CUSTOMER COPY

---

PASADENA COURTHOUSE
300 EAST WALNUT STREET
PASADENA, CA. 91101
000-000-0000
**SALE**

Clerk #: 008602

REF#: 00000001

Batch #: 557
04/08/26                    09:54:20
APPR CODE: 02607D
Trace: 1
VISA                        Contactless
***********2731                 **/**

**AMOUNT**          **$60.00**

**APPROVED**

CHASE VISA
AID: A0000000031010
TVR: 00 00 00 00 00

THANK YOU
CUSTOMER COPY

---

PASADENA COURTHOUSE
300 EAST WALNUT STREET
PASADENA, CA. 91101
000-000-0000
**SALE**

Clerk #: 008602

REF#: 00000002

Batch #: 557
04/08/26                    10:01:03
APPR CODE: 03098D
Trace: 2
VISA                        Contactless
***********2731                 **/**

**AMOUNT**          **$60.00**

**APPROVED**

CHASE VISA
AID: A0000000031010
TVR: 00 00 00 00 00

THANK YOU
CUSTOMER COPY

---

PASADENA COURTHOUSE
300 EAST WALNUT STREET
PASADENA, CA. 91101
000-000-0000
**SALE**

Clerk #: 008602

REF#: 00000003

Batch #: 557
04/08/26                    10:05:56
APPR CODE: 06690D
Trace: 3
VISA                        Contactless
***********2731                 **/**

**AMOUNT**          **$60.00**

**APPROVED**

CHASE VISA
AID: A0000000031010
TVR: 00 00 00 00 00

THANK YOU
CUSTOMER COPY

---

PASADENA COURTHOUSE
EAST WALNUT STREET
PASADENA, CA. 91101
000-000-0000
**SALE**

Clerk #: 008602

REF#: 00000002

Batch #: 604
07/09/26                    12:11:52
APPR CODE: 04568D
Trace: 2
VISA                        Contactless
***********2731                 **/**

**AMOUNT**          **$60.00**

**APPROVED**

CHASE VISA
AID: A0000000031010
TVR: 00 00 00 00 00

THANK YOU
CUSTOMER COPY

---

PASADENA COURTHOUSE
300 EAST WALNUT STREET
PASADENA, CA. 91101
000-000-0000
**SALE**

Clerk #: 008601

REF#: 00000001

Batch #: 607
07/14/26                    09:00:55
APPR CODE: 01665D
Trace: 1
VISA                        Contactless
***********2731                 **/**

**AMOUNT**          **$60.00**

**APPROVED**

CHASE VISA
AID: A0000000031010
TVR: 00 00 00 00 00

THANK YOU
CUSTOMER COPY

109

# EXHIBIT #13

MC-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY    STATE BAR NUMBER  266254 | FOR COURT USE ONLY |
|---|---|
| NAME  Kevin Hermansen<br>FIRM NAME: Law Office of Kevin P. Hermansen, P.C.<br>STREET ADDRESS  13654 Victory Boulevard, Suite 111<br>CITY: Van Nuys    STATE CA    ZIP CODE 91401<br>TELEPHONE NO.: (818) 971-9992    FAX NO.:<br>EMAIL ADDRESS:  kevin@kphlegal.com<br>ATTORNEY FOR (name): Defendants Cynthia Carter and Christopher Lopez | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 300 East Walnut Street
MAILING ADDRESS: 300 East Walnut Street
CITY AND ZIP CODE: Pasadena, CA 91101
BRANCH NAME: Pasadena Courthouse

PLAINTIFF: SHING LUNG LAU

DEFENDANT: CYNTHIA CARTER, et al.

| MEMORANDUM OF COSTS (SUMMARY) | CASE NUMBER<br>26PDUD00798 |
|---|---|

**The following costs are requested:**

| | | TOTALS |
|---|---|---|
| 1. | Filing and motion fees | $ 1,016.25 |
| 2. | Jury fees | $ 150.00 |
| 3. | Jury food and lodging | $ |
| 4. | Deposition costs | $ |
| 5. | Service of process | $ 65.00 |
| 6. | Attachment expenses | $ |
| 7. | Surety bond premiums | $ |
| 8. | Witness fees | $ |
| 9. | Court-ordered transcripts | $ |
| 10. | Attorney fees (enter here if contractual or statutory fees are fixed without necessity of a court determination; otherwise a noticed motion is required) | $ |
| 11. | Court reporter fees as established by statute | $ |
| 12. | Interpreter fees | $ |
| 13. | Models, enlargements, and photocopies of exhibits | $ 15.00 |
| 14. | Fees for electronic filing or service | $ 370.85 |
| 15. | Other (Westlaw) | $ 591.74 |
| **TOTAL COSTS** | | $ 2,208.84 |

I am ☐ the party ☒ counsel for the party ☐ agent for the party    who claims the costs listed above.
To the best of my knowledge, the items of costs are correct and were necessarily incurred in this case.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 06/25/2026

Kevin Hermansen
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF DECLARANT)

(Proof of service on reverse)                    Page 1 of 2

Form Approved for Optional Use
Judicial Council of California MC-010
[Rev. January 1, 2025]

**MEMORANDUM OF COSTS (SUMMARY)**

Code of Civil Procedure, §§ 1032, 1033.5,
Cal. Rules of Court, rule 3.1700(a)
www.courts.ca.gov

MC-010

| SHORT TITLE | CASE NUMBER: |
|---|---|
| Lau v. Carter | 26PDUD00798 |

**PROOF OF** ☒ **MAILING** ☐ **PERSONAL DELIVERY**

1. At the time of mailing or personal delivery, I was at least 18 years of age and **not a party** to this legal action.

2. My residence or business address is *(specify)*:

   13654 Victory Boulevard, Suite 111, Van Nuys, CA 91401

3. I mailed or personally delivered a copy of the *Memorandum of Costs (Summary)* as follows *(complete either a or b)*:

   a.   ☒  **Mail.** I am a resident of or employed in the county where the mailing occurred.

   (1)  I enclosed a copy in an envelope AND

   (a)  ☐  **deposited** the sealed envelope with the United States Postal Service with the postage fully prepaid.

   (b)  ☒  **placed** the envelope for collection and mailing on the date and at the place shown in items below following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

   (2)  The envelope was addressed and mailed as follows:

   (a)  Name of person served:  Shing Lung Lau

   (b)  Address on envelope:

        6726 Salter Avenue, Arcadia, CA 91007

   (c)  Date of mailing: 06/25/2026

   (d)  Place of mailing *(city and state)*: Van Nuys, California

   b.   ☐  **Personal delivery.** I personally delivered a copy as follows:

   (1)  Name of person served:

   (2)  Address where delivered:

   (3)  Date delivered:

   (4)  Time delivered:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 06/25/2026

Kevin Hermansen
_____(TYPE OR PRINT NAME)_____   ► _____(SIGNATURE OF DECLARANT)_____

MC-010 [Rev. January 1, 2025]   **MEMORANDUM OF COSTS (SUMMARY)**

privacy, please press the Clear This Form button after y:   [Print this Form]  [Save this form]   [Clear this form]

# EXHIBIT #14

Kevin Hermansen, State Bar No. 266254
Law Office of Kevin P. Hermansen, P.C.
13654 Victory Boulevard, Suite 111
Van Nuys, California 91401
Telephone: (818) 971-9992
Email: kevin@kphlegal.com

Attorney for Defendants Cynthia Carter and Christopher Lopez

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| SHING LUNG LAU,<br><br>         Plaintiff,<br><br>    v.<br><br>CYNTHIA CARTER; CHRISTOPHER LOPEZ;,<br><br>         Defendants. | Case No. 26PDUD00798<br><br>**NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST PLAINTIFF SHING LUNG LAU PURSUANT TO CODE OF CIVIL PROCEDURE § 128.5; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KEVIN HERMANSEN**<br><br>DATE: August 10, 2026<br>TIME: 1:30 p.m.<br>DEPT: R<br>         Pasadena Courthouse<br>         300 East Walnut Street<br>         Pasadena, CA 91101 |

**NOTICE OF MOTION FOR SANCTIONS (Code Civ. Proc. § 128.5)**

**TO THE COURT, all parties AND their ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on August 10, 2026, at 1:30 p.m. in Department R of the above-entitled Court, located at the Pasadena Courthouse, 300 East Walnut Street, Pasadena, CA 91101, or as soon thereafter as the matter may be heard, Defendant Cynthia Carter ("Defendant"), by and through her attorney of record, will and hereby does move this Court for an order imposing

1

NOTICE OF MOTION

114

monetary sanctions of $28,980 against Plaintiff Shing Lung Lau ("Plaintiff"), pursuant to Code of Civil Procedure § 128.5. Defendant seeks sanctions for Plaintiff's bad-faith actions and tactics that were frivolous and intended solely to harass Defendant's counsel and to cause unnecessary delay—namely, (1) Plaintiff's bad-faith prosecution of this unlawful detainer action, which he abandoned by an oral dismissal on the morning of trial, June 10, 2026, after compelling Defendant to prepare a complete jury trial; and (2) Plaintiff's pervasive use of abusive, false, and harassing accusations against Defendant's counsel throughout his court filings and correspondence.

This motion is made pursuant to Code of Civil Procedure § 128.5. As required by section 128.5, subdivision (f)(1)(A), this motion is made separately from all other motions or requests. This motion is based on this notice, the attached memorandum of points and authorities, the Declaration of Kevin Hermansen and the exhibits thereto, all papers and records on file in this action, and any evidence and argument presented at the hearing.

DATED: July 13, 2026     Law Office of Kevin P. Hermansen, P.C.

By: _____
Kevin Hermansen
Attorney for Defendants Cynthia Carter and Christopher Lopez

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Shing Lung Lau, a self-represented landlord, did not prosecute this unlawful detainer action to obtain a good-faith adjudication of his right to possession. He prosecuted it to harass Defendant's counsel and to impose cost and delay. From his first responsive papers through the eve of trial, Plaintiff's filings and emails were saturated with baseless accusations that Defendant's counsel, Kevin Hermansen, is a "fraudster," a "conman," and a "criminal" who "lies" to the Court—accusations Plaintiff made without any factual or legal basis and which were repeatedly rejected by the trial court.

Plaintiff then did what a litigant pursuing a good-faith claim does not do: after forcing Defendant through two rounds of demurrers, compelling her to move to compel discovery he refused to answer, requiring her to post jury fees, and obligating her to prepare a complete jury trial, Plaintiff dismissed the entire action on the morning of trial—June 10, 2026—without offering a shred of evidence.

Code of Civil Procedure § 128.5 exists to remedy exactly this conduct. It authorizes the Court to order a party to pay the reasonable expenses, including attorney's fees, caused by "actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." Plaintiff's harassment of counsel and his bad-faith prosecution and trial-day abandonment of this case fit that description precisely.

Defendant requests that the Court impose sanctions against Plaintiff in the amount of the reasonable attorney's fees Defendant incurred as a result of Plaintiff's bad-faith tactics.

## II.    FACTUAL SUMMARY

### A.  Plaintiff's Bad-Faith Prosecution and Trial-Day Dismissal

Plaintiff filed this unlawful detainer action on March 11, 2026, seeking possession of 9705 Ardendale Avenue, Arcadia. Defendant appeared and demurred. Rather than stand on his complaint, Plaintiff filed a First Amended Complaint on April 16, 2026, to which Defendant again demurred. (Hermansen Decl., ¶¶ 3–4.)

3

MEMORANDUM OF POINTS AND AUTHORITIES

116

Defendant propounded written discovery on Plaintiff. When Plaintiff failed to respond, Defendant was forced to prepare and file four motions to compel and a motion to deem requests for admission admitted. (Id., ¶ 5.)

Defendant posted jury fees on June 3, 2026, and prepared a complete jury trial—including a witness list, exhibit list, statement of the case, jury instructions, a special verdict form, and oppositions to Plaintiff's motions in limine. (Id., ¶ 6.)

On June 10, 2026—the morning of trial—Plaintiff made an oral motion to dismiss the entire action. The Court granted the motion and dismissed the action without prejudice. Plaintiff never presented any evidence, and the Court ordered that Defendant recover her costs. (Id., ¶ 7, Ex. A.)

**B. Plaintiff's Campaign of Abusive Accusations Against Defendant's Counsel**

Throughout this action, Plaintiff's filings accused Defendant's counsel, by name, of fraud, criminality, and dishonesty—for no purpose other than to harass. In his opposition and motion to strike, Plaintiff wrote: "Don't believe Kevin Hermansen's LIES"; that counsel had filed a "CRIMINALLY FRAUDULENT DEMURRER"; "Don't believe Kevin Hermansen, he is a fraudster"; and that counsel "must think the court more stupid than a rock." In his motion to strike, he called counsel "just a really really good conman." (Hermansen Decl., ¶ 8, Exs. 1–4.)

Plaintiff carried the same abuse into his emails to counsel. On March 28, 2026, he wrote that counsel "committed more wire fraud and added more jail time." On April 4, 2026, he wrote "You will be very popular in prison" and demanded counsel withdraw his "CRIMINALLY FRAUDULENT DEMURRER." On April 7, 2026, Plaintiff wrote that counsel's "scams are absolutely brilliant," that counsel is "unchained by ethics," and that "Now you will lose your license and go to prison." The same day, Plaintiff emailed counsel's non-attorney staff member directly, warning her that if she "helped Kevin Hermansen in the commission of any fraud or other crime in any capacity, you WILL be included in a federal WIRE FRAUD and RACKETEERING lawsuit," and that if she failed to respond she "shall be sued as a Jane Doe." On April 28, 2026, he wrote: "you reek of stupidity and desperation … fool." (Id., ¶ 9, Ex. 5.)

True and correct copies of the filings and emails containing these statements—with the

4

MEMORANDUM OF POINTS AND AUTHORITIES

abusive language highlighted—are compiled in the accompanying Compendium of Exhibits (Exhibits 1–5).

## III.    ARGUMENT

### A. Code of Civil Procedure § 128.5 Authorizes Sanctions for Bad-Faith, Frivolous, and Harassing Tactics

Code of Civil Procedure § 128.5, subdivision (a), provides that "[a] trial court may order a party, the party's attorney, or both, to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay."

The statute defines "frivolous" to mean " totally and completely without merit or for the sole purpose of harassing an opposing party." (Code Civ. Proc. § 128.5, subd. (b)(2).) Actions or tactics subject to sanctions under section 128.5 include, but are not limited to, " the making or opposing of motions" (Id., subd. (b)(1).) Notably, willfulness is not required; the statute applies even when the attorney's conduct was not willful. In re Marriage of Gumabao (1984) 150 Cal.App.3d 572, 577 [CCP 128.5 sanctions affirmed against attorney who failed to appear at hearing and failed to notify opposing counsel; "sanctions may be imposed under section 128.5 even if [the attorney's] actions were not willful since the section does not require willfulness to be an aspect of the actions or tactics"].) That definition codifies the standard of In re Marriage of Flaherty (1982) 31 Cal.3d 637, 649–650, under which a tactic is frivolous if any reasonable attorney would agree it is totally and completely without merit, or if it is prosecuted to harass an opposing party or to delay.

Section 128.5 was enacted to broaden the powers of trial courts to manage their calendars and promote the expeditious processing of civil actions. Brewster v. Southern Pacific Transportation Co. (1991) 235 Cal.App.3d 701, 710. The remedial attorney fee sanctions sought here fit precisely within that goal and have been permitted in multiple published appellate opinions. The discourtesy and the waste of judicial and opposing counsel's resources is sufficient.

"A review of precedent indicates that the bad faith requirement of section 128.5 does not impose a determination of evil motive. The concept of "harassment" includes vexatious tactics

which [] requires that counsel, even if on technically correct legal ground, not take action which unreasonably or unnecessarily injures the opposing counsel or party." West Coast Development v. Reed (1992) 2 Cal.App.4th 693, 702; Mungo v. UTA French Airlines (1985) 166 Cal.App.3d 327, 333 [affirming sanctions against counsel who had the responsibility not to lead the court and opposing counsel to believe that there would be a hearing that was not likely go forward]; Wong v. Davidian (1988) 206 Cal.App.3d 264, 272 [affirming sanctions after "a finding ... that the failure of [defendant's] attorney to notify both the Court and [plaintiff's] counsel of his failure or the circumstances of his failure, or his plan not to appear at the original hearing ..., is inexcusable, and was an act in bad faith ... which caused the defendant to incur attorneys fees for unnecessary legal service."]

### B. Plaintiff's Pervasive Abuse of Counsel Was Frivolous Because It Served Only to Harass

Plaintiff's filings were not advocacy; they were harassment. A litigant need not call opposing counsel a "fraudster," a "conman," and a "criminal" who belongs "in prison" in order to argue that a demurrer should be overruled. Plaintiff did so dozens of times, by name, in filing after filing and email after email. (Hermansen Decl., Exs. 1–5.) That is the essence of sanctionable harassment: conduct that "unreasonably or unnecessarily injures the opposing counsel or party." (West Coast Development, supra, 2 Cal.App.4th at p. 702.) Because these statements served no legitimate litigation purpose and were made for the sole purpose of harassing counsel, they were frivolous within the meaning of section 128.5, subdivision (b)(2). Summers v. City of Cathedral City (1990) 225 Cal.App.3d 1047, 1073 ["When a tactic or action utterly lacks merit, a court is entitled to infer the party knew it lacked merit yet pursued the action for some ulterior motive."] Here, the Court need not rest on inference alone. Plaintiff's own words—his repeated, false accusations that counsel is a "fraudster," a "conman," and a criminal bound for "prison"—are direct evidence of the subjective bad faith and harassing purpose section 128.5 condemns.

Plaintiff's accusations were not merely abusive; they were false. A "misrepresentation of material fact is subject to sanction under section 128.5." (Levine v. Berschneider (2020) 56 Cal.App.5th 916, 922.) Plaintiff told this Court, in writing, that Defendant's counsel had committed

6

MEMORANDUM OF POINTS AND AUTHORITIES

"fraud," "wire fraud," and "crime[s]"—accusations he never supported and could not support. Making knowingly false accusations of criminal conduct against opposing counsel, to harass him, is sanctionable bad faith.

Plaintiff's harassment did not stop at counsel. On April 7, 2026, Plaintiff emailed counsel's non-attorney staff member directly and warned her that if she "helped Kevin Hermansen in the commission of any fraud or other crime in any capacity," she "WILL be included in a federal WIRE FRAUD and RACKETEERING lawsuit," and that if she failed to respond she "shall be sued as a Jane Doe." (Hermansen Decl., ¶ 9, Ex. 5.) That same day, Plaintiff told counsel that his "scams are absolutely brilliant," that he is "unchained by ethics," and that "[n]ow you will lose your license and go to prison." (Id.) Threatening opposing counsel with disbarment and imprisonment—and threatening his non-attorney employee, who had no role whatever in this litigation, with a federal racketeering suit—serves no conceivable litigation purpose. It is the paradigm of a vexatious tactic that "unreasonably or unnecessarily injures the opposing counsel or party," and it supplies the subjective bad faith that § 128.5 requires. West Coast Development, supra, 2 Cal.App.4th at p. 702.

### C. Plaintiff's Meritless Prosecution and Trial-Day Dismissal Caused Unnecessary Delay and Waste

Plaintiff compelled Defendant to defend two demurrers, to move to compel discovery he refused to answer, to post jury fees, and to prepare a complete jury trial—then dismissed on the morning of trial without offering any evidence. (Hermansen Decl., ¶¶ 4–7.) A plaintiff who intends to prove his case does not abandon it the moment it is called for trial. The only rational inference is that Plaintiff never intended to prove his claim and used the trial setting to inflict maximum cost on Defendant before walking away. Forcing an opponent to prepare for a proceeding the proponent does not intend to pursue is a paradigm of sanctionable bad faith. See Brewster, supra, 235 Cal.App.3d at pp. 714–715.; Mungo v. UTA French Airlines (1985) 166 Cal.App.3d 327, 333 [party's tactic of declaring preparedness for trial, then dismissing the suit six days later after the opposing party prepared for trial, justified the award of sanctions by the trial court.]

7

MEMORANDUM OF POINTS AND AUTHORITIES

## D. Plaintiff's Self-Represented Status Is Not a Defense

Plaintiff is self-represented, but that is no shield. Our Supreme Court has held that self-represented litigants are held to the same rules as represented parties, and that exceptional treatment of self-represented parties "would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (Rappleyea v. Campbell (1994) 8 Cal.4th 975, 984–985.) Section 128.5 applies to "a party"—represented or not—and Plaintiff is fully subject to it.

## E. The 21-Day Safe Harbor Does Not Apply to the Conduct at Issue

Section 128.5, subdivision (f)(1)(B), provides a 21-day safe harbor only where "the alleged action or tactic is the making or opposing of a written motion or the filing and service of a complaint, cross-complaint, answer, or other responsive pleading that can be withdrawn or appropriately corrected." By its express terms, the safe harbor reaches only withdrawable written motions and pleadings.

None of the conduct for which Defendant seeks sanctions is a withdrawable motion or pleading. Defendant seeks sanctions for Plaintiff's bad-faith course of conduct—his harassing prosecution of a meritless action, his abandonment of that action by an oral motion to dismiss on the morning of trial after forcing Defendant to prepare a complete jury trial, and his relentless abusive correspondence accusing counsel of crimes. None of these is a paper that could be "withdrawn or appropriately corrected." Moreover, the action is now dismissed, so there is nothing left to withdraw. The safe harbor's withdrawal mechanism therefore has no possible application. (Changsha, supra, 57 Cal.App.5th at pp. 18–21 [safe harbor inapplicable where compliance is impractical]; Zarate, supra, 97 Cal.App.5th at p. 490 [same].)

The safe harbor exists so that an offending party may withdraw or correct a challenged paper and thereby avoid sanctions. (Eichenbaum v. Alon (2003) 106 Cal.App.4th 967, 976–977; Malovec v. Hamrell (1999) 70 Cal.App.4th 434, 439–441.) Where, as here, there is no paper to withdraw and nothing to correct, the safe harbor serves no function and does not apply.

## F. The Court Retains Jurisdiction to Award Sanctions Notwithstanding the Dismissal

Plaintiff cannot escape sanctions by having dismissed his case. A motion for sanctions is a

8

MEMORANDUM OF POINTS AND AUTHORITIES

collateral proceeding that is not based on the merits of the dismissed action, and the trial court retains jurisdiction to hear and decide it after a dismissal. (Day v. Collingwood (2006) 144 Cal.App.4th 1116, 1125 [reversing trial court that believed it lacked jurisdiction to award sanctions after dismissal]; Department of Forestry & Fire Protection v. Howell (2017) 18 Cal.App.5th 154, 196 [trial court has jurisdiction to award sanctions post-judgment].)

The Court of Appeal explained, "[w]hen a postdismissal or postjudgment motion involves collateral statutory rights, then the court may retain jurisdiction to determine and enforce those rights," and jurisdiction "is retained postdismissal to hear motions for sanctions." (Pittman v. Beck Park Apartments Ltd. (2018) 20 Cal.App.5th 1009, 1022.) The purpose of statutory sanctions—"to discourage parties and their attorneys from engaging in bad faith tactics and to compensate a party victimized by such tactics"—would be defeated if a litigant could escape them by dismissing; "there is no basis in logic or public policy to deny the victim the remedy of sanctions simply because, through the bad actor's own doing, the victim is no longer a party." (Id. at pp. 1022–1023.)

This is exactly the situation section 128.5 was meant to reach. As the court warned in Frank Annino & Sons Construction, Inc. v. McArthur Restaurants, Inc. (1989) 215 Cal.App.3d 353, 359, if a dismissal stripped the court of power to sanction, then "a party or an attorney could act in the most egregious bad faith, engage in the most outrageous conduct, and do so with impunity. They could avoid sanctions by simply dismissing the action." Such a result "is untenable given the obvious purpose of the sanction statute" and "violates any reasonable sense of justice and fair play." (Ibid.) That is precisely what Plaintiff did: he litigated abusively for months, then dismissed on the morning of trial. The Court retains full power to sanction him.

### G. Sanctions Should Be Imposed Against Plaintiff

Section 128.5, subdivision (a), authorizes sanctions against "a party, the party's attorney, or both." Plaintiff prosecuted this action in propria persona and is personally responsible for the bad-faith tactics described above. Sanctions should be imposed against Plaintiff Shing Lung Lau.

### H. Amount of Sanctions Requested

Section 128.5, subdivision (a), authorizes recovery of the reasonable expenses "incurred …

9

MEMORANDUM OF POINTS AND AUTHORITIES

as a result of" the sanctionable conduct. Defendant does not seek her entire defense costs. She seeks only the fees directly caused by Plaintiff's bad-faith tactics: the fees to bring the motions to compel that Plaintiff's refusal to respond to discovery made necessary; the fees to oppose Plaintiff's frivolous motion to strike; the fees for the complete jury trial Plaintiff forced Defendant to prepare and then abandoned on the morning of trial; and the fees for this motion. Each was the direct result of Plaintiff's conduct, not of any legitimate litigation position.

Defendant requests sanctions in the amount of the reasonable attorney's fees she incurred as a result of Plaintiff's bad-faith tactics, as authorized by section 128.5, subdivision (a). "The statute permits the award of attorney fees, not simply as appropriate compensation to the prevailing party, but as a means of controlling burdensome and unnecessary legal tactics." Childs v. PaineWebber Incorporated (1994) 29 Cal.App.4th 982, 995–996.

Mr. Hermansen's hourly rate is $575. Defendant requests a total award of $28,980.00, as itemized in the Declaration of Kevin Hermansen.

## IV.    CONCLUSION

Plaintiff Lau prosecuted this action in bad faith, harassed Defendant's counsel with relentless and baseless accusations of fraud and criminality, and—after forcing Defendant to prepare a complete jury trial—dismissed the case on the morning of trial without offering any evidence. This is precisely the conduct Code of Civil Procedure § 128.5 was enacted to deter and remedy. Defendant respectfully requests that the Court impose monetary sanctions against Plaintiff in the amount of the reasonable attorney's fees Defendant incurred, as set forth in the accompanying declaration.

Dated: July 13, 2026                                Law Office of Kevin P. Hermansen, P.C.

By: _____
Kevin Hermansen
Attorney for Defendants
Cynthia Carter and Christopher Lopez

## DECLARATION OF KEVIN HERMANSEN

I, Kevin Hermansen, declare:

1.    I am an attorney at law duly licensed to practice before all courts of the State of California. I am the principal of the Law Office of Kevin P. Hermansen, P.C. I am counsel of record for Defendants Cynthia Carter and Christopher Lopez in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently thereto.

2.    Plaintiff Shing Lung Lau filed this unlawful detainer action on March 11, 2026, seeking possession of the premises at 9705 Ardendale Avenue, Arcadia, California.

3.    Defendant appeared and demurred to the complaint. Plaintiff thereafter filed a First Amended Complaint on April 16, 2026, and I filed a demurrer to the First Amended Complaint on Defendant's behalf.

4.    I served written discovery on Plaintiff. Plaintiff did not serve responses, and I was required to prepare and file four motions to compel and a motion to deem requests for admission admitted.

5.    Defendant posted jury fees on June 3, 2026. In preparation for the jury trial set for June 10, 2026, I prepared a witness list, an exhibit list, a statement of the case, jury instructions, a special verdict form, and oppositions to Plaintiff's motions in limine.

6.    On June 10, 2026, when the matter was called for trial, Plaintiff made an oral motion to dismiss the entire action. The Court granted the motion and dismissed the action without prejudice. Plaintiff presented no evidence. The Court's June 10, 2026 minute order and its Order of Dismissal, which are part of the Court's own record in this action, reflect that Plaintiff dismissed the action on the morning of trial and that Plaintiff presented no evidence.

7.    Throughout this action, Plaintiff's written filings repeatedly accused me, by name, of fraud, criminal conduct, and dishonesty. True and correct copies of the filings in which those statements appear are attached to the Compendium of Exhibits as follows: Exhibit 1 is a true and correct copy of the conformed, file-stamped copy of Plaintiff's Opposition to Defendants' Demurrer

11
DECLARATION

124

and Motion to Strike; Exhibit 2 is a true and correct copy of Plaintiff's Opposition to the Demurrer to the First Amended Complaint, as he served it on me; Exhibit 3 consists of true and correct copies of Plaintiff's Motion to Strike Clerk's Application and his Amended Motion to Strike Clerk's Application, as he served them on me; and Exhibit 4 is a true and correct copy of Plaintiff's Reply in support of the Motion to Strike, as he served it on me.

8. Plaintiff also sent me numerous emails containing the same kind of abuse. Exhibit 5 to the Compendium of Exhibits contains true and correct copies of six of Plaintiff's emails, as printed from the Gmail account of my law office, kevin@kphlegal.com, at which I received them. They are his emails of March 28, 2026 (stating I "committed more wire fraud and added more jail time"); April 4, 2026 (stating I "will be very popular in prison" and demanding I withdraw my "CRIMINALLY FRAUDULENT DEMURRER"); April 7, 2026, sent to my non-attorney staff member, warning her that if she "helped Kevin Hermansen in the commission of any fraud or other crime in any capacity, you WILL be included in a federal WIRE FRAUD and RACKETEERING lawsuit," and that if she failed to respond she "shall be sued as a Jane Doe"; April 7, 2026 (stating that my "scams are absolutely brilliant," that I am "unchained by ethics," and that "Now you will lose your license and go to prison"); April 20, 2026 ("your fraudulent scam worked"); and April 28, 2026 (stating I "reek of stupidity and desperation … fool").

**Fees and Costs Incurred**

9. I have been a member of the California State Bar since 2009. For over fifteen years, my practice has focused on landlord-tenant litigation, including eviction defense trials, appeals, habitability cases, and judgment enforcement. I began my career at BASTA, Inc., a nonprofit organization advancing the legal rights of tenants, where I rose from associate attorney to Director of Operations before opening my own practice in 2024.

10. As a seventeenth-year attorney with specialized experience in the defense of unlawful detainer cases, judgment enforcement, and appeals, as of December 1, 2025, my time is billed at $575 per hour. I have reviewed countless fee declarations from attorneys practicing in the landlord-tenant field of law, and the hourly rate of $575 based on my level of experience is well within the standard

12

DECLARATION

of the legal community generally and the area of landlord-tenant practice in particular.

11.    The Laffey Matrix is a widely and commonly accepted objective measure of the reasonableness of attorney's fees based upon various regional markets, commonly employed and relied upon by numerous Courts in the Superior Court of the State of California and the United States District Courts for California. The Courts of Appeal ratified its use in Syers Properties III, Inc. v. Rankin (2014) 226 Cal. App. 4th 691. The market average for an 11-19 year attorney is of $1,019 an hour. The Laffey Matrix that is current through May 2026 and can be accessed here: http://www.laffeymatrix.com/see.html

12.    On April 2, 2025, I was awarded the billing rate of $550 by Judge Ericka J. Wiley for work performed in an unlawful detainer action that was won on summary judgment in Delia Juuldum v. Tonja Eakes, LASC Case No. 24SMUD02157.

13.    On April 30, 2025, I was awarded the billing rate of $550 by Judge Sharon L. Ransom for work performed in an unlawful detainer action that was dismissed after filing a Motion to Quash in Nazaret Avetisyan v. Maria Estela Aragon, LASC Case No. 25VEUD000148.

14.    On May 22, 2025, I was awarded the billing rate of $550 by Judge Jeffery McFarland for work performed in an unlawful detainer that was resolved with a bench trial in Gizela M. Aguirre v. Leticia Martinez, LASC Case No. 24STUD09741.

15.    On September 15, 2025, I was awarded the billing rate of $550 by Judge Jerry B. Marshak for work performed in an unlawful detainer bench trial pursuant to Civil Code § 1942.4 in Nashat Metri v. Yadira Del Carmen Quinonez, LASC Case No. 25PDUD00226.

16.    On September 29, 2025, I was awarded the billing rate of $550 by Judge David W. Swift for work performed in an unlawful detainer bench trial in SM 10000 Property LLC v. Michel Chakchay, LASC Case No. 24SMCV03946.

17.    On October 8, 2025, I was awarded the billing rate of $550 by Judge Teresa A. Beaudet in Vanessa Guitierrez v. Lorenza Roman, LASC Case No. 21STCV29932 for work performed in an affirmative habitability lawsuit where the Plaintiff tenants prevailed in a bench trial and obtained a judgment of $116,450.00.

13
DECLARATION

18.    On October 16, 2025, I was awarded the billing rate of $550 by Judge Andrew E. Cooper in Napa Industries, LLC v. A-Z Communications, Inc., LASC Case No. 22CHCV00394 for work performed in a commercial unlawful detainer action and appeal.

19.    On November 17, 2025, I was awarded the billing rate of $550 by Judge Tricia Garcia in Siu Fant Tsang v. Cynthia Carter, LASC Case No. 24PDUD04392 for work performed in an unlawful detainer bench trial.

20.    Taking into account both general inflation and the specific upward trends in the legal services market, it is necessary to adjust my rate to reflect present economic conditions. Accordingly, effective December 1, 2025 as I entered in to my 17th year of practice, my hourly rate increased from $550 to $575.

21.    As a result of Plaintiff's bad-faith prosecution and trial-day dismissal, Defendant incurred the attorney's fees itemized below, all at my rate of $575 per hour. I maintain contemporaneous time records, and the entries below reflect work that was necessary, reasonable, and caused by Plaintiff's conduct:

| DATE | WORK PERFORMED | TIME |
|---|---|---|
| 03/28/26 | Receive and review Plaintiff's email accusing me of making "reckless fraudulent statements," committing "wire fraud," and adding "jail time," and demanding that I retract Defendant's demurrer within 24 hours or face a motion to strike and a motion for sanctions; analyze whether Plaintiff's accusations required any response or correction | 0.7 hours |
| 04/02/26 | Review Plaintiff's email asserting that I had refused the "mandatory meet and confer" and that my refusal would be reported to the Court in his motion to strike; review the correspondence record to confirm the accusation was false | 0.4 hours |
| 04/06/26 | Review Plaintiff's April 4, 2026 email stating that I "will be very popular in prison" and demanding that I withdraw my "CRIMINALLY FRAUDULENT DEMURRER"; confer with the client regarding Plaintiff's escalating accusations of criminal conduct against counsel | 0.6 hours |
| 04/07/26 | Review Plaintiff's emails of this date accusing me of "scams," of being "unchained by ethics," and stating that I would "lose [my] license and go to prison"; review Plaintiff's email sent directly to my non-attorney assistant threatening that she "WILL be included in a federal WIRE FRAUD and RACKETEERING lawsuit" and would "be sued as a Jane Doe"; meet with my | 2.4 hours |

14

DECLARATION

| Date | Description | Hours |
|---|---|---|
| | assistant regarding that threat and advise her not to respond; begin reviewing Plaintiff's 69-page Opposition and Motion to Strike served the same day | |
| 04/08/26 | Prepare for and appear at the hearing on Defendant's demurrer at the Pasadena Courthouse, including preparation to address the accusations of fraud and criminal conduct Plaintiff leveled against counsel in his opposition; travel to and from court | 3.1 hours |
| 04/09/26 | Complete review of Plaintiff's 69-page Opposition and Motion to Strike, the bulk of which consists of accusations that counsel is a "fraudster" who committed "wire fraud," "attorney deceit," and "racketeering"; research the sanctions and professional-responsibility implications of Plaintiff's accusations and whether any response was required | 2.6 hours |
| 04/17/26 | Review Plaintiff's failure to serve any responses to the written discovery served on April 8, 2026; analyze the deficiencies and outline the discovery motions; begin drafting motions to compel responses to Form Interrogatories–General and Form Interrogatories–Unlawful Detainer, including separate statements | 2.4 hours |
| 04/20/26 | Draft motions to compel responses to Special Interrogatories and Requests for Production, including separate statements and supporting declarations; review Plaintiff's email of this date accusing me of a "fraudulent scam" in connection with service of the discovery | 2.8 hours |
| 04/21/26 | Draft motion to deem Requests for Admission admitted; finalize all five discovery motions, prepare supporting declarations and proofs of service, and e-file | 3.4 hours |
| 04/29/26 | Review Plaintiff's April 28, 2026 email stating that I "reek of stupidity and desperation" and calling me a "fool" | 0.3 hours |
| 05/19/26 | Review Plaintiff's ex parte motion to strike; legal research regarding the motion to strike and Plaintiff's renewed accusations of fraud against counsel | 1.8 hours |
| 05/20/26 | Draft and e-file opposition to Plaintiff's motion to strike and opposition to Plaintiff's ex parte application | 3.2 hours |
| 06/01/26 | Prepare witness list and exhibit list for the jury trial set for June 10, 2026; assemble and organize trial exhibits | 1.9 hours |
| 06/02/26 | Draft statement of the case and trial brief | 2.1 hours |
| 06/03/26 | Prepare and file Notice of Posting of Jury Fees (.3); begin drafting proposed jury instructions (1.6) | 1.9 hours |
| 06/04/26 | Complete proposed jury instructions and prepare special verdict form | 2.6 hours |
| 06/05/26 | Research and draft opposition to Plaintiff's motion in limine no. 1 | 1.4 hours |
| 06/08/26 | Research and draft opposition to Plaintiff's motion in limine no. 2 | 2.2 hours |
| 06/09/26 | Meet and confer with Plaintiff regarding joint trial documents; finalize, serve, and e-file Defendant's trial documents; final trial | 2.3 hours |

15

DECLARATION

| Date | Description | Hours |
|---|---|---|
| | preparation | |
| 06/10/26 | Prepare associate counsel to appear for jury trial at the Pasadena Courthouse, at which Plaintiff orally moved to dismiss the action; confer after re hearing details | 2.1 hours |
| 06/25/26 | Legal research regarding the Court's jurisdiction to award sanctions following a voluntary dismissal and the inapplicability of the section 128.5 safe harbor | 1.6 hours |
| 06/26/26 | Draft memorandum of points and authorities in support of this Motion for Sanctions | 2.3 hours |
| 07/09/26 | Compile Plaintiff's abusive filings and emails and prepare the Compendium of Exhibits | 1.2 hours |
| 07/10/26 | Draft this declaration; finalize the notice of motion and memorandum; prepare for filing and service | 1.7 hours |
| (Anticipated) | Review Plaintiff's opposition, prepare a reply, and appear at the August 10, 2026 hearing in Department R | 3.4 hours |
| | **TOTAL (at $575 per hour)** | **50.4 hours** |
| | 50.4 hours × $575 = $28,980.00 | |

22.    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on July 13, 2026, in Los Angeles, California.

_Kevin Hermansen_
Kevin Hermansen

16
DECLARATION

PROOF OF SERVICE
LASC Case # 26PDUD00798

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 13654 Victory Boulevard, Suite 111, Van Nuys, CA 91401.

On July 13, 2026, I served the foregoing document(s) described as:

**NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST PLAINTIFF SHING LUNG LAU PURSUANT TO CODE OF CIVIL PROCEDURE § 128.5; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KEVIN HERMANSEN; COMPENDIUM OF EXHIBITS IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS (CODE CIV. PROC. §128.5)**

on the interested parties to this action as follows:

Shing Lung Lau
6726 Salter Avenue
Arcadia, CA 91007

☒    (BY MAIL)  I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service.  This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our office's address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☒    (BY ELECTRONIC SERVICE) I served the foregoing document electronically to: justiceforthepeopleca@gmail.com

Executed on July 13, 2026 at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*Kevin Hermansen*
Kevin Hermansen

17
PROOF OF SERVICE

130

# EXHIBIT #15



# EXHIBIT #16



**$1,230,000** Sale Price

3 Beds  1.5 Baths  1370 sq. ft.

9656 Ardendale Ave, Arcadia

# EXHIBIT #17

## <u>DECLARATION OF BEHNAM GHARAGOZLI</u>

I, BEHNAM GHARAGOZLI declare as follows:

1. My name is Behnam Gharagozli and I am named Defendant in the present action.

2. The following facts are within my own personal knowledge, except as to those facts that are based on information and belief. If called upon to testify I could and would do so competently.

3. I make this declaration on behalf of myself individually and on behalf of Law Offices of Ben Gharagozli. I am authorized to speak on behalf of Law Offices of Ben Gharagozli.

4. I did not engage in any unlawful conduct in litigating the unlawful detainer cases that Plaintiffs identify in their lawsuit in this action. I do not concede that I have committed any unlawful act. I do not concede that I have committed any illegal act.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct. Executed this 9th day of June 2026.

*/s/ Ben Gharagozli*
_____

Behnam Gharagozli

9

REPLY IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE FIRST AMENDED COMPLAINT
[Cal. Code of Civ. Proc. § 425.16]; DECLARATIONS IN SUPPORT

## DECLARATION OF KEVIN HERMANSEN

I, KEVIN HERMANSEN declare as follows:

1. My name is Kevin Hermansen and I am named Defendant in the present action.

2. The following facts are within my own personal knowledge, except as to those facts that are based on information and belief. If called upon to testify I could and would do so competently.

3. I make this declaration on behalf of myself individually and on behalf of Law Office of Kevin P. Hermansen, P.C.. I am authorized to speak on behalf of Law Office of Kevin P. Hermansen, P.C.

4. I did not engage in any unlawful conduct in litigating the unlawful detainer cases that Plaintiffs identify in their lawsuit in this action. I do not concede that I have committed any unlawful act. I do not concede that I have committed any illegal act.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct. Executed this 9th day of June 2026.

*/s/ Kevin Hermansen*
_____

Kevin Hermansen

10

REPLY IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE FIRST AMENDED COMPLAINT
[Cal. Code of Civ. Proc. § 425.16]; DECLARATIONS IN SUPPORT

## **DECLARATION OF CYNTHIA CARTER**

I, CYNTHIA CARTER, declare as follows:

1. My name is Cynthia Carter and I am named Defendant in the present action.

2. The following facts are within my own personal knowledge, except as to those facts that are based on information and belief. If called upon to testify I could and would do so competently.

3. I make this declaration on behalf of myself individually.

4. I did not engage in any unlawful conduct in litigating the unlawful detainer cases that Plaintiffs identify in their lawsuit in this action. I do not concede that I have committed any unlawful act. I do not concede that I have committed any illegal act.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed this 9th day of June 2026.

/s/ Cynthia Carter
_____
Cynthia Carter

9

REPLY IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE FIRST AMENDED COMPLAINT
[Cal. Code of Civ. Proc. § 425.16]; DECLARATIONS IN SUPPORT

## DECLARATION OF CHRISTOPHER LOPEZ

I, CHRISTOPHER LOPEZ, declare as follows:

1. My name is Christopher Lopez and I am named Defendant in the present action.

2. The following facts are within my own personal knowledge, except as to those facts that are based on information and belief. If called upon to testify I could and would do so competently.

3. I make this declaration on behalf of myself individually.

4. I did not engage in any unlawful conduct in litigating the unlawful detainer cases that Plaintiffs identify in their lawsuit in this action. I do not concede that I have committed any unlawful act. I do not concede that I have committed any illegal act.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed this 9th day of June 2026.

/s/ Christopher Lopez

Christopher Lopez

REPLY IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE FIRST AMENDED COMPLAINT
[Cal. Code of Civ. Proc. § 425.16]; DECLARATIONS IN SUPPORT

**PROOF OF SERVICE**

I am over the age of 18.

I am a resident of or employed in the county where the mailing occurred; my residence address is : 6726 Salter ave., Arcadia, CA 91007

On 7/29/2026, I emailed the foregoing document(s) described as:

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE RE STANDING; DECLARATION; EXHIBITS;**

Onto the following person(s):
Mark Kleiman, attorney for Kevin Hermansen and his law office and Ben Gharagozli and his law office, mark@krlaw.us
Ramsey Judah, ramsey@judahlawgroup.com
Thomas Harvey, tbh1910@gmail.com

[X] By Electronic Transmission
I emailed the defendants the documents.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Respectfully,

Date: July 29, 2026

_____
Signature
Shing Lung Lau