Mark Kleiman [SBN 115919]
KLEIMAN RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA 90025
Telephone: (310) 392-5455
Facsimile: (310) 306-8491
mark@krlaw.us

Thomas B. Harvey [SBN 287198]
LAW OFFICES OF THOMAS B. HARVEY
365 E. Avenida de Los Arboles #226
Thousand Oaks, CA 91360
(805) 768-4440
tbhlegal@proton.me

Ramsey Judah [SBN 342300]
JUDAH LAW GROUP
1026 W Foothill Blvd
Upland, CA 91786

Attorneys for Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHING LUNG LAU, HOI KAN LAU, SIU FAN TSANG,<br><br>Plaintiffs,<br><br>v.<br><br>KEVIN HERMANSEN, BEHNAM GHARAGOZLI, CHRISTOPHER LOPEZ, CYNTHIA CARTER, LAW OFFICES OF BEN GHARAGOZLI, LAW OFFICE OF KEVIN P. HERMANSEN, P.C.,<br><br>Defendants. | Case No: 2:26-CV-00305-MWF-CTSx<br><br>Judge: Hon. Michael W. Fitzgerald<br><br>**NOTICE OF MOTION, MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**(Filed concurrently with [Proposed] Order)**<br><br>Date: December 16, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 5A (5th floor)<br>Original Action Filed: January 12, 2026 |

## ***NOTICE OF MOTION AND MOTION TO DISMISS***

PLEASE TAKE NOTICE that on December 16, 2026 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 5A of the above-entitled Court located at 350 W. 1st Street, Los Angeles, CA 90012, Defendants KEVIN HERMANSEN, BEHNAM GHARAGOZLI, LAW OFFICES OF BEN GHARAGOZLI, and LAW OFFICE OF KEVIN P. HERMANSEN, P.C. , CHRISTOPHER LOPEZ and CYNTHIA CARTER, (collectively, "Defendants") will, and hereby do, move for dismissal of Plaintiffs' Second Amended Complaint, without leave to amend, under Federal Rule of Civil Procedure 12(b)(6).

This Motion is made under Federal Rule of Civil Procedure 12(b)(6) because the Second Amended Complaint ("SAC") does not plead facts establishing any claim under 42 U.S.C. § 1985(2), 42 U.S.C. § 1985(3), or 18 U.S.C. §§ 1962(b), (c), or (d). Specifically:

1. Protected Petitioning: The alleged misconduct consists entirely of pleadings, declarations, motions, service, advocacy, and witness examination in four unlawful-detainer matters and this action. The Noerr-Pennington doctrine bars RICO liability for that petitioning unless Plaintiffs plead the narrow sham exception, which they cannot do because the SAC itself alleges that Defendants prevailed in the underlying proceedings.

2. No Pattern: Although the SAC alleges activity from November 2023 through August 2026, its five alleged schemes concern one tenancy, one property, substantially the same participants, and the finite objective of prevailing in related litigation. Those facts do not plausibly establish closed- or open-ended continuity.

3. No Actionable RICO Enterprise or Acquisition: The SAC lists six overlapping enterprises but does not plausibly allege a continuing association-in-fact with a common illicit purpose, relationships, and longevity sufficient to pursue that purpose, or facts showing that any Defendant acquired or maintained an

interest in or control of an enterprise through racketeering activity as required by § 1962(b).

4. No Predicate Acts: The SAC does not plead wire fraud with Rule 9(b) particularity and does not plausibly allege material falsity, intent to obtain money or property, or causation. Its §§ 1956 and 1957 theories do not identify qualifying proceeds, the required transaction and knowledge, or promotion or concealment intent. Perjury under §§ 1621 and 1623 is not a RICO predicate, and the alleged litigation declarations do not satisfy §§ 1503, 1512(c), or 1512(k).

5. No Civil-RICO Injury or Causation; No Civil-Rights Conspiracy: The SAC does not plausibly connect a qualifying RICO violation directly to a concrete injury to business or property. It also does not plead force, intimidation, threat, retaliation, a specific conspiratorial agreement, or facts showing that Defendants acted because of Plaintiffs' race, national origin, limited English proficiency, or age.

6. No Leave to Amend: The Court has already ruled that the SAC "represents Plaintiffs' final chance to adequately plead their claims" and that "[a]ny future successful motion to dismiss shall be granted without leave to amend." (Docket No. 119 at 6–7.) Dismissal should therefore be with prejudice.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such other argument and evidence as may be presented at the hearing.

DATE: September 18, 2026

**KLEIMAN / RAJARAM**

By: [signature]
MARK KLEIMAN

**LAW OFFICES OF THOMAS HARVEY**

By: /s/ Thomas B. Harvey
THOMAS B. HARVEY

Attorneys for Defendants
KEVIN HERMANSEN, BEHNAM GHARAGOZLI, LAW OFFICES OF BEN GHARAGOZLI, LAW OFFICE OF KEVIN P. HERMANSEN, P.C.

**JUDAH LAW GROUP**

By: /s/ Ramsey Judah
RAMSEY JUDAH

ATTORNEY FOR CYNTHIA CARTER AND CHRISTOPHER LOPEZ

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ 7

STATEMENT OF ISSUES TO BE DECIDED ........ 11

MEMORANDUM OF POINTS AND AUTHORITIES ........ 12

I. INTRODUCTION ........ 12

II. THE SAC'S FACTUAL ALLEGATIONS ........ 13

A. The Underlying State Court Litigation ........ 13

B. The Alleged "Racketeering" Activity ........ 14

III. ARGUMENT ........ 16

A. Rule 12(b)(6) Motion to Dismiss Standard ........ 16

B. Noerr-Pennington Doctrine Bars RICO Liability for Litigation Activities ........ 16

C. California's Litigation Privilege Does Not Independently Bar the Federal Claims ........ 19

D. The § 1985(2) Conspiracy Claim Fails (Count II) ........ 19

E. The § 1985(3) Conspiracy Claim Fails as a Matter of Law (Count III) ........ 20

1. Plaintiffs Fail to Allege a State Actor ........ 21

2. Plaintiffs Fail to Allege Class-Based Discriminatory Animus ........ 21

3. Plaintiffs Fail to Plead the Conspiracy with Specificity ........ 22

F. The SAC Does Not Plead a Violation of 18 U.S.C. § 1962(b) ........ 23

G. The SAC Does Not Plead a Pattern of Racketeering Activity Under § 1962(c) ........ 23

H. The SAC Does Not Plead a Cognizable Enterprise or Operation or Management....25

1. The Six Proposed Enterprises Do Not Cure the Pleading Defects....26

2. The Alleged Association-in-Fact Structures Are Conclusory....26

3. The SAC Does Not Pleasd a Shared Illicit Purpose and Direction....27

I. The SAC Does Not Plead Predicate Acts....27

1. The Wire Fraud Allegations are Deficient....27

2. The § 1957 Allegations are Deficient....30

3. The § 1956 Allegations are Deficient....30

4. The Obstruction and Perjury Allegations Are Deficient....31

J. The SAC Does Not Plead Direct Injury to Business or Property....31

K. The § 1962(d) Conspiracy Theory Fails....33

L. Leave to Amend Should Be Denied....33

IV. CONCLUSION....34

CERTIFICATE OF SERVICE....36

CERTIFICATE OF COMPLIANCE....37

DECLARATION REGARDING L.R. 7-3 COMPLIANCE....38

# TABLE OF AUTHORITIES

**Page**

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) 32

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) 16

*Baumer v. Pachl*, 8 F.3d 1341 (9th Cir. 1993) 25

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) 16,23

*Boyle v. United States*, 556 U.S. 938 (2009) 25,26

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) 19

*Bretz v. Kelman*, 773 F.2d 1026, 1028–30 (9th Cir. 1985) (en banc) 19

*Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008) 27

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) 26

*David v. United States*, 820 F.2d 1038 (9th Cir. 1987) 19,20

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) 29

*Fischer v. United States*, 603 U.S. 480 (2024) 31

*Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180 (9th Cir. 2005) 17,18

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) 20

*Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010) 32

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) 23,24

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992) 32

*Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000) 33

*Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621 (9th Cir. 1988) 22

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018) 19

*Kottle v. Northwest Kidney Centers*, 146 F.3d 1056 (9th Cir. 1998) .................... 18

*Kush v. Rutledge*, 460 U.S. 719 (1983) .............................................................. 19

*Lau v. Nichols*, 414 U.S. 563 (1974) .................................................................. 22

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005) ..................................................................... 18

*McCalden v. California Library Ass'n*, 955 F.2d 1214 (9th Cir. 1990) ................ 16

*Mendez v. Westminster,* 161 F.2d 774 (9th Cir. 1947) ........................................ 22

*Miller v. Yokohama Tire Corp.*, 385 F.3d 616 (9th Cir. 2004) ............................ 28

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .................................................. 16

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (en banc) ...................... 25

*Oregon Natural Resources Council v. Mohla*, 944 F.2d 531 (9th Cir. 1991) ..................................................................... 18

*Oscar v. University Students Co-op. Ass'n*, 965 F.2d 783 (9th Cir. 1992) (en banc) ................................................ 31,32

*Portman v. County of Santa Clara*, 995 F.2d 898, 908–09 (9th Cir. 1993) ........................................................ 19

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, (1993) ................................ 17

*Raney v. Allstate Ins. Co.*, 370 F.3d 1086 (11th Cir. 2004) ................................. 29

*Religious Technology Center v. Wollersheim*, 971 F.2d 364 (9th Cir. 1992) ..................................................................... 24

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ..................................................... 25

*Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010) ............................. 33

*Scott v. Kuhlmann*, 746 F.2d 1377 (9th Cir. 1984) .............................................. 16

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992) ........................ 22,23,24

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 930, (9th Cir. 2006) ........................ 17,18,28

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) ..................................................................23

*Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004)..................................................24

*United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825 (1983)..........................................................................21

*United States v. Aguilar*, 515 U.S. 593 (1995) .....................................................31

*United States v. Van Alstyne*, 584 F.3d 803 (9th Cir. 2009).................................30

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)........................16,27

*Walter v. Drayson*, 538 F.3d 1244 (9th Cir. 2008)...............................................25

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009)...............34

**STATUTES AND RULES**

18 U.S.C. § 1503.......................................................................... 11,15,27,31

18 U.S.C. § 1512...................................................................................27,31

18 U.S.C §1512(c) ............................................................................ 11,15,31

18 U.S.C §1512(k)............................................................................ 11,15,31

18 U.S.C. § 1621.......................................................................... 11,15, 27,31

18 U.S.C. § 1623.......................................................................... 11,15,27,31

18 U.S.C. § 1956.......................................................................... 11,15,27,30

18 U.S.C. § 1957.......................................................................... 11,15,27,30

18 U.S.C § 1957(a) ..........................................................................................30

18 U.S.C §1957(f)............................................................................................30

18 U.S.C. § 1961(1) ........................................................................27,31
18 U.S.C. § 1962(b) ........................................................................ 11,12,12,23,34
18 U.S.C. § 1962(c) ........................................................................ 11,23,25,26
18 U.S.C. § 1962(d) ........................................................................33
18 U.S.C. § 1964(c) ........................................................................ 12,31,32
42 U.S.C. § 1985(2) ........................................................................ 11,12,19,34
42 U.S.C. § 1985(3) ........................................................................ 11,12,20,21,22,
Federal Rule of Civil Procedure 9(b) ........................................................ 11,16,27,28
Federal Rule of Civil Procedure 12(b)(6) ........................................................16
California Civil Code § 47(b) ........................................................................19

## ***STATEMENT OF ISSUES TO BE DECIDED***

1. Whether the SAC alleges a claim under § 1962(b).
2. Whether the SAC alleges a § 1962(c) enterprise and Defendants' operation or management of it.
3. Whether five alleged schemes arising from one tenancy, one property, four related state cases, and this federal action plausibly establish closed- or open-ended continuity.
4. Whether the SAC pleads wire fraud under Rule 9(b).
5. Whether the SAC pleads money-laundering predicates under §§ 1956 and 1957.
6. Whether alleged false declarations and litigation advocacy satisfy the elements of § 1503 or § 1512(c), and whether the SAC pleads an agreement under § 1512(k), where perjury under §§ 1621 and 1623 is not enumerated as racketeering activity.
7. Whether Plaintiffs plausibly allege that a qualifying RICO violation directly caused a concrete injury to business or property.
8. Whether the § 1985(2) claim fails because the SAC does not plead force, intimidation, threat, or retaliation directed at federal testimony or attendance, and does not plead facts showing class-based animus for the state-court clause.
9. Whether the § 1985(3) claim fails because the SAC does not plead a specific agreement, action taken because of protected-class status, or state action for any theory dependent on First or Fourteenth Amendment rights.
10. Whether, in light of the Court's August 6, 2026 Order that "there will be no Third Amended Complaint" (Docket No. 119 at 6–7), dismissal should be with prejudice.

***MEMORANDUM OF POINTS AND AUTHORITIES***

## I. INTRODUCTION

Plaintiffs' SAC attempts to transform disputes arising from a residential tenancy and related litigation into federal racketeering and civil-rights claims. It identifies five alleged wire-fraud schemes and 57 purported predicate acts arising from four unlawful-detainer matters and this federal action; six proposed enterprises; and claimed compensatory and punitive damages approaching $69 million. (SAC ¶¶ 42–73, 76–214, 268–319.) Even accepting well-pleaded facts as true, the SAC does not plead the elements connecting those allegations to a viable federal claim. Stripped of its labels, the SAC alleges that Plaintiffs sued their tenants four times, and that each case ended in a judgment for the tenants, a fee award against Plaintiffs under their own lease, or Plaintiffs' voluntary dismissal, and that Plaintiffs now seek treble damages from the tenants and the lawyers who defeated them. (SAC ¶¶ 91, 99, 199, 268–273, 320.) Every one of the 57 "predicate crimes" is the electronic filing or service of a litigation document, a declaration filed in this action, or the receipt of fees a state court awarded. (SAC ¶¶ 174–213.)

The SAC asserts three causes of action: civil RICO under 18 U.S.C. § 1964(c), based on alleged violations of §§ 1962(b), (c), and (d); conspiracy under the federal- and state-court clauses of 42 U.S.C. § 1985(2); and conspiracy under 42 U.S.C. § 1985(3). (SAC ¶¶ 15–41, 216–248.)

Noerr-Pennington protects genuine petitioning, including litigation activity, subject to the narrow sham exception. Because the SAC itself pleads that Defendants prevailed, the sham exception is unavailable as a matter of law.

The SAC now alleges protected-class characteristics and invokes both state and federal proceedings. Those additions require a clause-specific analysis, but they do not supply facts showing force, intimidation, threat, retaliation, a meeting

of the minds, or action taken because of Plaintiffs' race, national origin, limited English proficiency, or age.

The Court should dismiss the SAC with prejudice. The Court ruled that the SAC "represents Plaintiffs' final chance to adequately plead their claims," that "there will be no Third Amended Complaint," and that "[a]ny future successful motion to dismiss shall be granted without leave to amend." (Docket No. 119 at 6–7.) Plaintiffs used that final chance to replead the same litigation conduct under new labels.

## II. THE SAC'S FACTUAL ALLEGATIONS

The following summary is drawn from the SAC and its exhibits. Defendants accept well-pleaded facts as true solely for this Motion, but not legal conclusions or characterizations of advocacy as crimes.

### A. The Underlying State Court Litigation

Plaintiffs own residential property occupied by Defendants Cynthia Carter and Christopher Lopez. The dispute generated four unlawful-detainer matters: Nos. 23PDUD01863, 24PDUD01782, 24PDUD04392, and 26PDUD00798. Carter and Lopez were represented at various times by Defendants Kevin Hermansen and Behnam Gharagozli and their law practices.

Following the dismissal of the first unlawful-detainer matter, the Attorney Defendants sought attorney's fees. Plaintiffs allege that they discharged their prior attorney, Charles Pok, without filing a substitution of attorney and that Defendants served the fee papers on Pok rather than directly on Plaintiffs. (SAC ¶¶ 91–96.) Plaintiffs characterize the service and the ensuing fee proceedings as fraudulent and allege that the court ultimately awarded $46,901.97. (Id.)

The remaining state cases followed the same course. Plaintiffs allege that the second action ended on August 1, 2024, when the trial court found the notice defective after hearing testimony from Plaintiff Shing Lung Lau, with Plaintiffs

represented by counsel. (SAC ¶¶ 97, 99, 102–103.) Plaintiffs allege that they then paid the Attorney Defendants $32,385.54 after the second case and $116,405.16 after the third, and that they paid $2,208.84 in costs after Plaintiff Shing Lung Lau voluntarily dismissed the fourth case on August 10, 2026. (SAC ¶¶ 98, 199, 269–273, 278.) The SAC attributes these payments to the lease's "uncapped attorney's fee provision," which Plaintiffs ask this Court to void so that they will not have to "pay attorney's fees to the defendants" in future eviction actions. (SAC ¶¶ 44, 320.)

**B. The Alleged "Racketeering" Activity**

The SAC organizes its theory into five alleged wire-fraud schemes, 65 alleged misrepresentations, and 57 purported predicate acts. (SAC ¶¶ 76–214.) Schemes One through Four concern the state proceedings; Scheme Five concerns declarations and briefing submitted in this federal action.

The specific acts alleged to constitute "racketeering" remain derived from state court litigation:

a. **Service of Process**: Plaintiffs allege that Defendants used email and electronic filing in connection with service of the attorney-fee papers on former counsel Charles Pok, despite allegedly knowing that Pok had been discharged. (SAC ¶¶ 91–96.)

b. **Arguments in Court**: Plaintiffs allege that the Attorney Defendants made fraudulent misrepresentations concerning Plaintiffs' counsel, the nature of Plaintiffs' request for relief, and whether it was a motion for reconsideration rather than a first application under California Code of Civil Procedure § 473(b). (SAC ¶¶ 91–96.)

c. **Witness Examination**: Plaintiffs allege that Hermansen manipulated testimony during the August 1, 2024 trial by asking about the frequency of a

family member's visits and later characterizing the answer as meaning that the person never visited. (SAC ¶¶ 98–109.)

d. **Interpreter Dispute**: Plaintiffs allege that Hermansen caused the court to remove Nathan Huang as Hoi Kan Lau's interpreter on August 1, 2024, impairing Lau's ability to understand and respond during the proceeding. (SAC ¶¶ 98–109.)

e. **Declarations and Answers**: Plaintiffs allege that Defendants made false statements concerning notice, habitability, rent, and related issues in answers, declarations, and other filings in the state proceedings. (SAC ¶¶ 110–165.) Forty-nine of the sixty-five "misrepresentations" (Nos. 10–48 and 50–59) are affirmative defenses quoted from the tenants' answers or statements in their discovery responses, such as "Plaintiff lacks standing and/or capacity to bring this action" and "Plaintiff failed to serve the Notice at all." (SAC ¶¶ 110–163.) The SAC separately challenges four declarations filed in this federal action as Scheme Five. (SAC ¶¶ 166–209.) The alleged falsehood in each is the declarant's statement that he or she "did not engage in any unlawful conduct." (SAC ¶ 168.)

f. **Money Laundering and Obstruction**: The SAC invokes both § 1957 (SAC ¶¶ 210–211) and § 1956 (id. ¶¶ 212–213), and characterizes filings in this action as obstruction under §§ 1503, 1512(c), and 1512(k), as well as perjury under §§ 1621 and 1623.

Plaintiffs claim approximately $1.246 million in current economic loss, seek trebling to approximately $3.738 million, claim approximately $6.23 million in non-economic loss, and demand approximately $58.74 million in punitive damages. (SAC ¶¶ 268–319.)

## III. ARGUMENT

### A. Rule 12(b)(6) Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While the court must accept all well-pleaded factual allegations as true, it is not required to accept "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Furthermore, allegations of fraud, which underpin Plaintiffs' RICO claims, must meet the heightened pleading standard of Rule 9(b), requiring the plaintiff to state with particularity the circumstances constituting the fraud, including the "who, what, when, where, and how" of the misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Additionally, an affirmative defense may be raised by a motion to dismiss when the defense is apparent on the face of the complaint. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984); *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).

### B. The Noerr-Pennington Doctrine Bars RICO Liability for Litigation Activities

As a threshold matter, Plaintiffs' RICO claims must be dismissed because they are predicated entirely on Defendants' petitioning activities—filing motions, making legal arguments, serving notices, and examining witnesses. The Noerr-

Pennington doctrine provides immunity from statutory liability for conduct that implicates the First Amendment right to petition the government for redress of grievances. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). This immunity extends to RICO claims. *Id.* at 930.

That protection reaches "not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit.'" *Id.* at 934–35. In *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005), the Ninth Circuit explained that "[a] complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something," are petitions, that discovery is "conduct incidental to" a petition, *id.* at 1185, and that the immunity extends to the litigants' "law firms and lawyers, as their agents in that litigation," *id.* at 1186.

Here, every "wrongdoing" alleged by Plaintiffs constitutes protected litigation activity. See infra II.B. above.

The "sham litigation" exception to Noerr-Pennington is narrow and requires a two-part showing: the underlying litigation must be "objectively baseless" meaning no reasonable litigant could realistically expect success on the merits, and the litigant's subjective motivation must be to use the governmental process itself as an anticompetitive weapon. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993).

Plaintiffs cannot meet this standard. The SAC pleads that Defendants prevailed. The first case was dismissed and fees were awarded, the second was tried to judgment for the tenants, the third ended with Plaintiffs paying Attorney Defendants a further $116,405.16, and Plaintiffs dismissed the fourth. (SAC ¶¶ 91, 99, 199, 268–273.) "A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Id.* at 60 n.5. The same is true of

a winning defense. *Freeman*, 410 F.3d at 1185 (a defense with "enough objective merit and subjective good faith" is covered, "and the conduct incidental to it, with the Noerr-Pennington cloak"). Because Plaintiffs' RICO claims seek to penalize Defendants for exercising their constitutional right to litigate the underlying landlord-tenant dispute, they are barred by Noerr-Pennington and must be dismissed.

Plaintiffs' theory that Defendants lied to the courts does not change the analysis. The Ninth Circuit recognizes a third, narrow form of sham where "a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Sosa*, 437 F.3d at 938 (quoting *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998)). Such allegations face a heightened pleading standard that "would have no force if in order to satisfy it, a party could simply recast disputed issues from the underlying litigation as 'misrepresentations' by the other party." *Kottle*, 146 F.3d at 1063 (quoting *Oregon Natural Resources Council v. Mohla*, 944 F.2d 531, 536 (9th Cir. 1991)). Recasting disputed issues is all the SAC does. Its "misrepresentations" are affirmative defenses, discovery responses, an opposition brief's characterization of a motion, counsel's summary of trial testimony, a demurrer's reading of a recorded deed, and sworn denials of wrongdoing, each of which Plaintiffs contested before the tribunal that heard it. (SAC ¶¶ 94–96, 104–109, 110–165, 168.) An isolated instance of litigation misconduct, even if proven, does not "deprive the defense as a whole of its legitimacy" where the defense succeeded. *Freeman*, 410 F.3d at 1185 n.2.

Nor does *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005), assist Plaintiffs. That case involved the concealment and falsification of physical test evidence that other courts had already sanctioned as fraud, conduct *Sosa* placed within the third *Kottle* category. 437 F.3d at 940. The

SAC alleges nothing comparable; every challenged statement was made openly to a court and resolved by that court on a contested record. Other circuits reach the same result without Noerr-Pennington, holding that allegations of "frivolous, fraudulent, or baseless litigation activities," without more, "cannot constitute a RICO predicate act," because otherwise "every unsuccessful lawsuit could spawn a retaliatory action." *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018); *accord Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004).

**C. California's Litigation Privilege Does Not Independently Bar the Federal Claims**

Defendants do not rely on California Civil Code § 47(b), which cannot supply immunity from federal statutory liability. The governing protection is the federal Noerr-Pennington doctrine addressed in Part III.B.

**D. The § 1985(2) Conspiracy Claim Fails (Count II)**

Section 1985(2) contains distinct federal- and state-court clauses. The first addresses conspiracies using force, intimidation, or threat to deter a party or witness from attending or testifying in federal court, or retaliation for doing so; it does not require class-based animus. The second addresses conspiracies to obstruct justice in state court with intent to deny equal protection and requires class-based, invidiously discriminatory animus. *Kush v. Rutledge*, 460 U.S. 719, 724–26 (1983). A federal-clause claim requires a conspiracy to deter a party or witness "by force, intimidation or threat," and it fails unless "the litigant was hampered in being able to present an effective case." *David v. United States*, 820 F.2d 1038, 1040 (9th Cir. 1987); *see Portman v. County of Santa Clara*, 995 F.2d 898, 908–09 (9th Cir. 1993); *Bretz v. Kelman*, 773 F.2d 1026, 1028–30 (9th Cir. 1985) (en banc) (state-court clause requires class-based animus).

Scheme Five concerns this federal action, so the SAC cannot be dismissed on the premise that no federal proceeding is alleged. But it does not plead facts

showing that any Defendant used force, intimidation, or threat to deter attendance or testimony, or injured a party or witness for attending or testifying. Allegedly false declarations and opposition papers do not themselves satisfy the federal clause's specified means and objects. The only federal-court conduct alleged is that Defendants filed declarations denying Plaintiffs' accusations in reply to Plaintiffs' own opposition. (SAC ¶¶ 166–168.) Answering an accusation under oath is the opposite of deterring a party by force, intimidation, or threat, and Plaintiffs, who opposed those motions and then filed this SAC, were not "hampered in being able to present an effective case." *David*, 820 F.2d at 1040.

For the state-court clause, the SAC alleges that Plaintiffs are Asian, of Chinese national origin, older, and have limited English proficiency. (SAC ¶¶ 233–248.) The Court must accept those characteristics, but it need not accept the conclusion that Defendants acted from discriminatory animus. The pleaded litigation and fee objectives are not facts showing action because of protected-class status. As shown in Part III.E.2, the SAC's own theory of motive is economic, and § 1985 does not reach economically motivated conspiracies.

The SAC also does not plead a specific agreement among the tenants, their lawyers, and law practices to obstruct state-court justice for an equal-protection purpose. Parallel positions within ordinary attorney-client representation do not, without supporting facts, plausibly allege the required meeting of the minds. Count II should be dismissed.

### E. The § 1985(3) Conspiracy Claim Fails as a Matter of Law (Count III)

Section 1985(3) requires a conspiracy, an act in furtherance, injury or deprivation, and a racial or otherwise class-based invidiously discriminatory motive. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). It creates no

substantive rights; Plaintiffs must identify a qualifying underlying federal right and plead facts establishing its deprivation.

**1. Plaintiffs Fail to Allege a State Actor**

To the extent Plaintiffs predicate § 1985(3) on First or Fourteenth Amendment rights, the alleged deprivation must involve state action. *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 830, 833 (1983). Because "[t]here are few such rights" protected against private encroachment, and the First and Fourteenth Amendments are not among them, a private conspiracy aimed at those rights is not actionable under § 1985(3) at all. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993).

The pleaded Defendants are private tenants, attorneys, and law practices. The SAC does not allege facts showing that they jointly acted with a state official or that their conduct was otherwise fairly attributable to the State.

The SAC alleges that Defendants exercised "undue influence" over courts through misrepresentations and therefore involved a state actor. (SAC ¶ 230.) That conclusion does not plead joint action.

A judge's acceptance of a private litigant's position does not make the litigant a state actor or the judge a participant in the alleged conspiracy. The SAC alleges adjudication, not an agreement between Defendants and a judicial officer.

**2. Plaintiffs Fail to Allege Class-Based Discriminatory Animus**

The SAC now expressly alleges protected-class status and discriminatory animus. (SAC ¶¶ 233–248.) The defect is therefore not the complete absence of an animus allegation, but the absence of nonconclusory facts supporting it.

The factual narrative attributes the challenged conduct to defending a tenancy, prevailing in litigation, and obtaining fees. It does not identify a statement, agreement, comparator, or other circumstance plausibly showing that Defendants acted because Plaintiffs are Asian, Chinese, older, or limited-English-

proficient. Section 1985(3) requires that the conspirators act "at least in part 'because of,' not merely 'in spite of,'" the plaintiffs' protected status. *Bray*, 506 U.S. at 271–72. The SAC pleads the opposite. It alleges that the Attorney Defendants took the tenants' cases because the lease contained an "uncapped attorney's fee provision," that "economic enrichment" was the enterprises' purpose, and that the fees collected are "Bona Fide proof of their Intent." (SAC ¶¶ 44–45, 56, 63, 214.) Section 1985 does not "reach conspiracies motivated by economic or commercial animus." *Scott*, 463 U.S. at 838; *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). The SAC's remaining animus allegations infer "deep seated hatred" from the fact that Defendants litigated against Plaintiffs for three years and won. (SAC ¶¶ 236–237, 260–261.) Prevailing in litigation is not evidence of racial animus toward the losing party.

*Mendez v. Westminster,* 161 F.2d 774 (9th Cir. 1947) and *Lau v. Nichols*, 414 U.S. 563 (1974), do not substitute for those missing facts. They concern substantive legal protections in different institutional settings; citation to them does not establish Defendants' motive or a conspiratorial agreement here.

**3. Plaintiffs Fail to Plead the Conspiracy with Specificity**

A § 1985(3) plaintiff must plead specific facts supporting the alleged conspiracy. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Conclusory assertions that parties "conspired" do not establish an agreement to deprive a federal right.

The SAC alleges coordinated litigation positions within attorney-client and marital relationships, but not facts showing when or how Defendants agreed to target Plaintiffs because of protected-class status or to violate an independently protected right. Count III should be dismissed.

### F. The SAC Does Not Plead a Violation of 18 U.S.C. § 1962(b)

Section 1962(b) prohibits acquiring or maintaining, through a pattern of racketeering activity, an interest in or control of an enterprise. A civil plaintiff must also plead injury caused by the acquisition or maintenance of that interest or control, distinct from injury caused by predicate acts alone. *Sybersound Records, Inc. v. UAV Corp*., 517 F.3d 1137, 1147–48 (9th Cir. 2008).

The SAC identifies no enterprise interest or control that any Defendant acquired or maintained through racketeering. Nor does it identify a distinct acquisition or control injury. The pleaded fee awards, rent, litigation expenses, and related losses concern the alleged acts and case outcomes, not a change in ownership or control of an enterprise. Indeed, the SAC's only § 1962(b) allegation reproduces the statute without a subject or a verb, asserting that Hermansen and Gharagozli violated it by "[t]hrough a pattern of racketeering activity, directly or indirectly, any interest in or control of any enterprise." (SAC ¶ 18.) That is the "formulaic recitation of the elements" that *Twombly* rejects. 550 U.S. at 555. The § 1962(b) theory therefore fails.

### G. The SAC Does Not Plead a Pattern of Racketeering Activity Under § 1962(c)

A pattern requires related predicates and either closed-ended continuity or a threat of continued racketeering. *H.J. Inc. v. Northwestern Bell Telephone Co*., 492 U.S. 229, 239–43 (1989). The alleged period is not merely weeks or months: the SAC alleges conduct from November 2023 through August 2026. Duration, however, is considered with the number of victims, schemes, injuries, and the conduct's finite objective. The five labeled schemes arise from one property, one tenancy, substantially the same parties, and related efforts to obtain or defend litigation outcomes. The alleged conduct pursued a finite objective and affected the same alleged victims, which weighs against closed-ended continuity. See *Sever v.*

*Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992). In *Sever*, the Ninth Circuit found no pattern where the defendants' conduct was "a single episode having the singular purpose of impoverishing" the plaintiff and "there was but a single victim involved." *Id.* The Ninth Circuit applied the same reasoning to litigation conduct in *Religious Technology Center v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992), holding that predicate acts committed by a litigant's attorneys and experts in prosecuting a single state-court case satisfied relatedness but not continuity, because the "only goal of the Greene defendants was the successful prosecution of the Wollersheim state tort suit," so "there was no threat of activity continuing beyond the conclusion of that suit."

Open-ended continuity requires facts showing that the predicates project into the future with a threat of repetition. *H.J. Inc.*, 492 U.S. at 241–42. The SAC ties the alleged acts to pending disputes between these parties; it does not allege that racketeering is Defendants' regular way of conducting an ongoing business or threatens unrelated victims. Its only gestures toward other victims are speculation that there are "very likely many other victims" and that Hermansen "will most likely similarly discriminate against OTHER people." (SAC ¶¶ 53, 258.) Conjecture about hypothetical victims is not a fact showing a threat of continued racketeering. By the SAC's own account, the alleged objective is to keep Carter and Lopez in one house "for forever or as long as possible," and the alleged harm "will not end until the defendants give back possession of the property." (SAC ¶¶ 67, 173.) That is a single landlord-tenant dispute with a natural end point, which is the antithesis of open-ended continuity. In *Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004), a RICO claim against a judgment creditor and his collection attorneys failed for the same reason, because the alleged communications "were finite in nature" and "would cease once appellees collected the outstanding tort judgment."

### H. The SAC Does Not Plead a Cognizable Enterprise or Operation or Management

An association-in-fact enterprise must have a purpose, relationships among those associated, and sufficient longevity to permit pursuit of the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009). In this Circuit, the plaintiff must plead "a common purpose," "an ongoing organization, formal or informal," and that "the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (en banc). Section 1962(c) also requires the RICO person to participate in directing the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Under *Reves*, an attorney who renders legal services to an alleged enterprise does not thereby direct its affairs, however the services are characterized. In *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993), a lawyer who prepared an allegedly false partnership agreement and letters to regulators was not liable under § 1962(c) because his "role was limited to providing legal services," and "[w]hether Pachl rendered his services well or poorly, properly or improperly, is irrelevant to the *Reves* test." In *Walter v. Drayson*, 538 F.3d 1244, 1248–49 (9th Cir. 2008), the court dismissed a § 1962(c) claim against an attorney who "allegedly wrote emails, gave advice, and took positions on behalf of her clients," assuming her performance was deficient, because "[s]imply performing services for the enterprise does not rise to the level of direction, whether one is 'inside' or 'outside.'" The SAC alleges nothing more against Hermansen and Gharagozli than that they filed pleadings, argued motions, examined witnesses, and collected court-awarded fees for their clients. (SAC ¶¶ 42–56, 87, 174–201.)

### 1. The Six Proposed Enterprises Do Not Cure the Pleading Defects

The SAC proposes: Enterprise A, an alleged attorney partnership; Enterprise B, the tenant spouses; Enterprise C, all Defendants; Enterprise D, a subset of Defendants; and Enterprises E and F, the two law practices. (SAC ¶¶ 42–73.) Listing overlapping combinations does not plead the purpose, relationships, longevity, and decision-making of each asserted enterprise or connect each Defendant to its operation or management.

The SAC must identify the RICO person and enterprise for each § 1962(c) theory. Even where a law practice is a distinct legal entity, *see Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001), the SAC must plead facts showing that the particular person conducted that entity's affairs through a pattern of racketeering.

The SAC does not supply those person-enterprise pairings or operation-and-management facts. It largely attributes ordinary legal work to attorneys and their firms and ordinary joint interests to spouses. Indeed, the SAC concedes that the members of Enterprise A "work together even when they do not commit crimes," that Enterprise B is a marriage whose purpose is "the purpose of all marriages; companionship and legal protection," and that Enterprise D "is just Enterprise D without the temporary involvement of Behnam Gharagozli." (SAC ¶¶ 56, 62, 68.) A law practice, a marriage, and a subset of a subset do not become racketeering enterprises because Plaintiffs lost lawsuits to them.

### 2. The Alleged Association-in-Fact Structures Are Conclusory

An enterprise need not have formal hierarchy, and it may include defendants. *Boyle*, 556 U.S. at 948. But the SAC must still plead facts supporting a continuing unit with a shared purpose. Alleging that lawyers represented clients,

spouses acted together, and all opposed Plaintiffs does not by itself establish a separate continuing unit directed toward racketeering.

**3. The SAC Does Not Plead a Shared Illicit Purpose and Direction**

The SAC alleges that Defendants sought litigation success, continued tenancy, and fees. It does not plead facts showing that each proposed member shared the alleged fraudulent objective or participated in directing the affairs of the proposed enterprise, rather than pursuing ordinary and sometimes distinct personal or professional interests.

**I. The SAC Does Not Plead Actionable Predicate Acts**

The SAC invokes wire fraud, §§ 1956 and 1957 money laundering, obstruction under §§ 1503 and 1512, and perjury under §§ 1621 and 1623. Each predicate must be an offense enumerated in § 1961(1) and must be plausibly pleaded; fraud allegations must also satisfy Rule 9(b).

Wire fraud requires a scheme to defraud, use of interstate wires in furtherance, and specific intent to deceive and cheat a victim of money or property. Rule 9(b) requires the who, what, when, where, and how of each alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106–07 (9th Cir. 2003).

First-party reliance is not an element of civil RICO predicated on fraud. *Bridge*, 553 U.S. at 648–49. But Plaintiffs must still plead a material misrepresentation, fraudulent intent, and proximate causation. The SAC frequently aggregates speakers and communications or disputes legal characterizations, testimony, and advocacy without facts establishing knowing material falsity and intent to obtain money or property.

**1. The Wire-Fraud Allegations Are Deficient**

Plaintiffs complain of statements that concern the legal effect of service, reconsideration procedure, the meaning of testimony, habitability positions, or

other matters presented to a court. Labeling a disputed position "fraudulent" does not plead why a specific factual statement was knowingly false when made or how it formed part of a scheme to obtain money or property. The SAC's own examples confirm the problem. Specifically, the challenged statements are drawn from opposition briefs, answers, and declarations disputing procedural characterizations. For example, that a filing "fails to provide any new facts or law" or "still makes the same arguments." (SAC ¶¶ 94–96.) Such statements are advocacy positions capable of being right or wrong as a matter of legal argument, not factual assertions capable of being knowingly false. See *Sosa*, 437 F.3d at 940 (observing that it is well established that "misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statues, because statements of the law are considered merely opinions and may not be relied upon absent special circumstances".[1]). This is the same defect that independently bars these allegations under Noerr-Pennington, supra Part III.B: Plaintiffs cannot convert an adverse litigation position into wire fraud merely by alleging that the position was insincere. The same is true of the forty-nine "misrepresentations" that are affirmative defenses and discovery responses. (SAC ¶¶ 110–163.) An affirmative defense is a contention to be tested in the litigation rather than a representation of fact, and pleading it obtains no money or property from an adversary.

While the SAC does supply some dates, document titles, and dollar figures for many of the challenged transmissions, e.g., SAC ¶¶ 174–177 that level of detail satisfies the mechanical who-what-when-where of Rule 9(b) for the transmission itself, but it does not supply the "how"—facts showing the transmitted statement

---

[1] This portion of Sosa cites to *Miller v. Yokohama Tire Corp.*, 385 F.3d 616, 621 (9th Cir. 2004). *Miller* explains the four situations that would justify reliance on a misrepresentation of law. None of those "four special situations" are present in the case at bar.

was knowingly false when made, as opposed to a genuine, if ultimately unsuccessful, legal position. Use of email or electronic filing supplies a wire only if it furthers an adequately pleaded fraudulent scheme; routine electronic transmission of litigation papers does not cure the missing falsity and intent allegations.

The allegations also do not plausibly connect each communication to Defendants' alleged intent to deceive and cheat. Plaintiffs opposed many of the positions in real time, and the SAC's contrary conclusions do not establish fraudulent intent. Where an "obvious alternative explanation" for the defendant's conduct exists, allegations that are "merely consistent with" fraud do not plausibly plead a RICO scheme, and the plaintiff must plead "facts tending to exclude the possibility that the alternative explanation is true." *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014). The obvious explanation here is that lawyers asserted defenses, argued motions, and summarized testimony on behalf of clients who were being sued, and that the courts agreed with them. The SAC pleads nothing that excludes it. Its proof of "Intent" is that Defendants "demanded for and GOT the money" that the state courts awarded. (SAC ¶ 214.) Plaintiffs' claims of evidentiary fabrication in Scheme 3 fare no better. Plaintiffs allege that Defendant Carter created a video purporting to show Ms. Tsang refusing a rent payment that was never in fact offered. (SAC ¶¶ 130, 251–255.) Even crediting that allegation, it does not state a wire-fraud predicate. The SAC does not allege that the video itself, or any communication describing it, was ever transmitted by wire, nor that the video was used to obtain any judgment, payment, or other property—Plaintiffs allege only that Carter intended to use it in the unlawful-detainer proceeding. (Id. ¶ 253.) A predicate act requires actual or attempted use of the wires to execute the scheme, not preparation of evidence that went unused. Nor does the SAC allege a non-

speculative connection between that unused video and any concrete injury to Plaintiffs' business or property. See infra Part III.J.

**2. The § 1957 Allegations Are Deficient**

Section 1957 requires a monetary transaction of more than $10,000 in property derived from specified unlawful activity, knowledge that the property is criminally derived, and a transaction through or affecting a financial institution or in interstate or foreign commerce. 18 U.S.C. § 1957(a), (f).

Court-awarded fees are not categorically incapable of being criminal proceeds. The defect is that the SAC does not plausibly plead the antecedent specified unlawful activity, trace more than $10,000 in criminally derived proceeds into an identified monetary transaction, or allege facts supporting the recipient's knowledge that the property was criminally derived. The SAC also runs into the merger problem the Ninth Circuit identified in *United States v. Van Alstyne*, 584 F.3d 803, 814–16 (9th Cir. 2009). The only transactions it identifies are the payments that allegedly completed the wire-fraud schemes themselves (SAC ¶¶ 210–213), and a transfer "central to the mail fraud charges" cannot be recharged as laundering of the same scheme's proceeds. *Id.* at 815. The SAC concedes that any "subsequent" transaction "would be known upon financial investigations," which is an admission that none has been pleaded. (SAC ¶¶ 212–213.)

**3. The § 1956 Allegations Are Deficient**

The SAC cites § 1956 without identifying a coherent subsection or facts satisfying its distinct elements. It does not plausibly allege a financial transaction involving proceeds of specified unlawful activity undertaken with intent to promote that activity or to conceal or disguise the nature, source, ownership, or control of proceeds. A speculative assertion that funds might frustrate a future investigation is insufficient.

#### 4. The Obstruction and Perjury Allegations Are Deficient

Perjury under §§ 1621 and 1623 is not listed as racketeering activity in § 1961(1). Those allegations therefore cannot serve as RICO predicates merely by being relabeled as part of the pattern.

Section 1503 requires a corrupt endeavor with a relationship in time, causation, or logic to a particular judicial proceeding, such that the act has the natural and probable effect of interfering with the due administration of justice. *United States v. Aguilar*, 515 U.S. 593, 599–600 (1995). The SAC alleges denials and advocacy submitted to the tribunal for adjudication, not facts plausibly showing the required corrupt endeavor and nexus.

Section 1512(c), as construed in *Fischer v. United States*, 603 U.S. 480, 486–87 (2024), targets impairing the availability or integrity of records, documents, objects, or other things used in an official proceeding. The SAC does not allege destruction, alteration, concealment, or impairment of evidence of that kind. Section 1512(k) separately requires an agreement to commit a § 1512 offense, which is alleged only conclusorily.

Because the SAC does not adequately plead any qualifying predicate family, it does not plead the required pattern of racketeering activity.

### J. The SAC Does Not Plead Direct Injury to Business or Property

Section 1964(c) requires injury to business or property by reason of the RICO violation. Personal injury and emotional-distress damages are not recoverable. *Oscar v. University Students Co-op. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc).

The SAC groups together fees paid to counsel, fee awards, alleged lost rent and property value, emotional distress, trebling, and punitive damages. It does not link each economic category to a particular predicate or explain a nonspeculative, direct causal chain.

The proper inquiry is whether the alleged RICO violation directly caused the claimed business-or-property injury. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). A link that is "too remote," "purely contingent," or "indirec[t]" is insufficient, and a theory that "rests on the independent actions of third and even fourth parties" fails. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9, 15 (2010). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

Here, independent judicial decisions followed contested submissions. The SAC does not plead facts showing that a qualifying predicate, rather than the courts' evaluation of the parties' competing positions and other case-specific causes, directly produced each award or loss. Every dollar Plaintiffs claim to have paid the Attorney Defendants was paid under a fee or cost award entered by a state court after contested proceedings, under a fee provision in Plaintiffs' own lease. (SAC ¶¶ 44, 91, 268–273, 278, 320.) The lost-rent and property-value theories depend on the tenants' continued possession, which Plaintiffs have unsuccessfully sought to end in four state-court actions. (SAC ¶¶ 67, 173, 275–276, 287.) Each injury is separated from the alleged predicate by the independent judgment of a court, which is the kind of "separate actions carried out by separate parties" that defeats proximate cause. *Hemi*, 559 U.S. at 11.

The claim for approximately $6.23 million in non-economic harm concerns personal injury and is outside § 1964(c). Punitive damages and trebling are remedies, not freestanding injuries. Speculative future losses likewise do not establish present injury to business or property. The Ninth Circuit requires "concrete financial loss," *Oscar*, 965 F.2d at 785, and the SAC's projected sixty-year loss of a property-tax discount ($297,141) and the unrealized diminution in

value of a house Plaintiffs have not sold ($380,000 to $400,000) are neither concrete nor realized. (SAC ¶¶ 286–287.) Scheme Four sought $28,980 in sanctions that were never awarded (SAC ¶¶ 199–201), leaving only $2,208.84 in costs taxed by the state court after Plaintiff Shing Lung Lau dismissed his own case. (SAC ¶¶ 199, 278.)

The SAC therefore does not plausibly plead statutory injury or proximate cause.

**K. The § 1962(d) Conspiracy Theory Fails**

Section 1962(d) requires an agreement to violate a substantive RICO provision. *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). The SAC must plead an agreement directed to the elements of § 1962(b) or (c), not merely awareness of or participation in litigation.

The SAC does not plead facts showing that Defendants agreed to acquire or maintain control of an enterprise through racketeering, or agreed that a member would conduct an enterprise through a pattern of qualifying predicates. The failure of the substantive theories and the absence of agreement facts require dismissal of the § 1962(d) theory. "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) (quoting *Howard*, 208 F.3d at 751); *see Wollersheim*, 971 F.2d at 367 n.8. The SAC's conspiracy "evidence" is that Hermansen and Gharagozli served as co-counsel and shared court-awarded fees, and that "all of the defendants PROFITED or GAINED something." (SAC ¶¶ 25–26.) Co-counsel who divide a fee award have agreed to nothing more than to practice law together.

**L. Leave to Amend Should Be Denied**

Consistent with the Court's observations in the August 6, 2026 Order (Docket No. 119), leave to amend should be denied. Indeed, the Court explicitly

stated that "there will be no Third Amended Complaint. In other words, the SAC represents Plaintiffs' final chance to adequately plead their claims. Any future successful motion to dismiss will be granted without leave to amend, which may result in dismissal of the action with prejudice." (Docket No. 119 at 6.) The Court repeated the point in its conclusion, ordering that "[a]ny future successful motion to dismiss shall be granted without leave to amend." (*Id.* at 7.) Plaintiffs' SAC demonstrates the futility of any amendment as Plaintiffs continue to demand that Defendants be held liable for litigation conduct. Plaintiffs have not and cannot provide any basis for the Court to reconsider. Where a plaintiff "has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). Plaintiffs have now pleaded their case three times, and the third version confirms that they have no facts to add beyond the litigation record itself.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request dismissal of each of the SAC's three causes of action and every asserted theory under 18 U.S.C. §§ 1962(b), (c), and (d) and 42 U.S.C. §§ 1985(2) and (3).

The Court has already ordered that "there will be no Third Amended Complaint" and that "[a]ny future successful motion to dismiss shall be granted without leave to amend." (Docket No. 119 at 7.) Defendants respectfully request that the SAC be dismissed with prejudice.

DATE: September 18, 2026

**KLEIMAN / RAJARAM**

By: ______________________

MARK KLEIMAN

**LAW OFFICES OF THOMAS HARVEY**

By: /s/ Thomas B. Harvey

THOMAS B. HARVEY

Attorneys for Defendants KEVIN HERMANSEN, BEHNAM GHARAGOZLI, LAW OFFICES OF BEN GHARAGOZLI, LAW OFFICE OF KEVIN P. HERMANSEN, P.C.

**JUDAH LAW GROUP**

By: /s/ Ramsey Judah

RAMSEY JUDAH

Attorney for Cynthia Carter and Christopher Lopez

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF System.

Participants in the case who are registered CM/ECF Users will be served by the CM/ECF System.

I also emailed a copy to Plaintiffs at justiceforthepeopleca@gmail.com as requested by Plaintiffs.

KLEIMAN / RAJARAM

By: *Mark Kleiman*

MARK KLEIMAN

Attorney for Defendants

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, KEVIN HERMANSEN, BEHNAM GHARAGOZLI, LAW OFFICES OF BEN GHARAGOZLI, LAW OFFICE OF KEVIN P. HERMANSEN, P.C., CYNTHIA CARTER AND CHRISTOPHER LOPEZ certifies that this brief contains 6974 words, which complies with the word limit of L.R. 11-6.1.

DATE: September 18, 2026

**KLEIMAN / RAJARAM**

By: Mark Kleiman
MARK KLEIMAN

**LAW OFFICES OF THOMAS HARVEY**

By: /s/ Thomas B. Harvey
THOMAS B. HARVEY

Attorneys for Defendants
KEVIN HERMANSEN, BEHNAM GHARAGOZLI, LAW OFFICES OF BEN GHARAGOZLI, LAW OFFICE OF KEVIN P. HERMANSEN, P.C.

JUDAH LAW GROUP

By: /s/Ramsey Judah
RAMSEY JUDAH
Attorney for Cynthia Carter and Christopher Lopez

## DECLARATION REGARDING L.R. 7-3 COMPLIANCE

The undersigned, counsel of record for Defendants, KEVIN HERMANSEN, BEHNAM GHARAGOZLI, LAW OFFICES OF BEN GHARAGOZLI, and LAW OFFICE OF KEVIN P. HERMANSEN, P.C., CYNTHIA CARTER AND CHRISTOPHER LOPEZ, pursuant to L.R. 7-3, declares under penalty of perjury that, before bringing the present motion, counsel attempted to meet and confer with Plaintiffs on September 15, 2026. Counsel for Attorney Defendants, Thomas B. Harvey, emailed Plaintiff Shing Lau asking for a time to meet and confer on September 15, 2026. Plaintiffs' position was that they were available to meet at times proposed by Defendants but that meeting fewer than 7 days before the filing of this motion would not comply with rule 7-3. Defendants' position was that the parties should attempt to meet and confer in good faith prior to the filing deadline set by the Court for Defendants' Motion to Dismiss, September 18, 2026. After several emails over the course of more than four hours on September 15, 2026 in which Defendants explained their reasoning for filing the instant motion (including emailing a summary of all Defendants' arguments and discussions of case law in support of certain arguments), Plaintiff refused to meet by phone, stating that Defendants had "deliberately lied" to him to confuse him and "defraud" him and that the Court would provide clarity about compliance with rule 7-3.

DATE: September 18, 2026

**LAW OFFICES OF THOMAS HARVEY**

By: /s Thomas B. Harvey
THOMAS B. HARVEY
Attorneys for Defendants
KEVIN HERMANSEN, BEHNAM GHARAGOZLI, LAW OFFICES OF BEN GHARAGOZLI, LAW OFFICE OF KEVIN P. HERMANSEN, P.C.

JUDAH LAW GROUP

By: /s/ Ramsey Judah
RAMSEY JUDAH
Attorney for Cynthia Carter and
Christopher Lopez